UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

JAMES DOMER BRENNER,
CHARLES DEAN JONES,
STEPHEN SCHLAIRET, and
OZZIE RUSS

        **Plaintiffs,**

vs.

                                       **Case No.: 4:14-cv-00107-RH-CAS**

RICK SCOTT, in his official
capacity as Governor of Florida;
PAMELA BONDI, in her
official capacity as Attorney
General of Florida;
JOHN H. ARMSTRONG,
in his official capacity as
Surgeon General and Secretary
of Health for the State of Florida;
CRAIG J. NICHOLS, in his official
capacity as Agency Secretary for the
Florida Department of Management
Services; and HAROLD BAZZELL,
in his official capacity as Clerk of Court
and Comptroller for Washington
County, Florida,

        **Defendants.**

---

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION TO INTERVENE OF FLORIDA FAMILY ACTION, INC.

Plaintiffs, by and through undersigned counsel, hereby respond to Proposed

Intervenor Florida Family Action, Inc.'s ("FFAI") motion to intervene as a defendant in

this cause [Doc. 22].  For the reasons set forth herein, the motion to intervene should be denied.

## INTRODUCTION

FFAI, a Florida corporation, has moved to intervene in this cause, arguing it has a different and greater stake than the named defendants such that this Court should grant it what is a disfavored status in this circuit, that of intervenor.   In doing so, it argues this lawsuit is an attack on a "foundational societal institution," and the "amendment process in Florida," which only FFAI is in a position to defend against in this litigation.  FFAI also argues that its political agenda of opposing same-sex marriage entitles it to intervene. [Doc. 22, p. 2; Doc. 22-1, p. 2].

FFAI's interest in this case, however, is no greater or more significant than the recognizable interest of defendants, namely the advancement of legal arguments urging the constitutionality of the challenged law.  There has been no showing FFAI's interests will not be adequately represented by the Solicitor General of the State of Florida.  FFAI claims it would make more flamboyant arguments than the current defendants, and due to its political agenda, would be able to argue against bad precedent and assert more "public policy and social welfare arguments." [Doc. 21-1, p. 6, 7].  But the advancement of a particular political agenda is no reason to permit intervention.  Instead, it is a reason to deny intervention as such agenda will unnecessarily delay the progression of this case. FFAI does not have standing to intervene and the legal arguments it proposes to raise will duplicate the efforts of the current defendants.  FFAI's political goals would best be served by filing an amicus brief in support of the current defendants, but it is not entitled

to intervene in this cause.  Accordingly, FFAI's motion to intervene should be denied.

## I.   FLORIDA FAMILY ACTION, INC. IS NOT ENTITLED TO INTERVENE AS A MATTER OF RIGHT.

Pursuant to Fed.R.Civ.P. 24(a)(2), a party is entitled to intervene as a matter of right if the party's interest in the subject matter of the litigation is "direct, substantial, and legally protectable." *Georgia v. U.S. Army Corp. of Engineers*, 302 F.3d 1242, 1249 (11th Cir. 2002).  This rule provides that upon a timely motion, the Court must permit anyone to intervene who:

> claims an interest relating to the property or transaction which is the subject of the action, is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed.R.Civ.P. 24(a)(2).  Thus, "[t]he proposed intervenor *must* show that it has an interest in the subject matter of the suit, that its ability to protect that interest may be impaired by the disposition of the lawsuit, *and* that existing parties in the suit cannot adequately protect that interest." *Georgia*, 302 F.3d at 1250 (emphasis added).  This test is three-prong and each prong of the test must be met or intervention status will be denied.  FFAI cannot show a legally recognizable interest in this lawsuit which may be impaired by its disposition, nor can it argue that the Solicitor General will fail to adequately to protect its interests.

### A.   FFAI Does Not Have an Interest in the Constitutional Controversy at Issue, and Therefore it Does Not Have Standing to Intervene.

FFAI contends its political involvement of collecting signatures and supporting Amendment 2, which became Art. I, §27, Fla. Const., and its work in opposing legal

protections for same-sex couples entitles it to defend the constitutionality of the laws currently defended by the Solicitor General.  FFAI argues it still has an interest in Art. I, §27, Fla. Const., because of its ongoing political efforts to prevent same-sex couples from being afforded the same legal rights and protections as opposite-sex couples.  [Doc. 22, pp. 3, 6-7].  However, the Amendment became *Florida law,* a duly enacted amendment to the Florida Constitution, once approved by the people of Florida, and therefore extinguished all alleged interests FFAI had as its proponent.

In *Hollinsworth v. Perry,* ___ U.S. ___, 133 S.Ct. 2652 (2013), same-sex couples challenged the constitutionality of California's Proposition 8, which amended the California State Constitution to define marriage as a union between one man and one woman. *Id.* at 2660.  The plaintiffs challenged the constitutionality of Proposition 8 under the Due Process and Equal Protection clauses of the Fourteenth Amendment, and the defendants, California's Governor and Attorney General, among other officials, "refused to defend the law." *Id.* at 2660.  As a result, political proponents of the ballot initiative that eventually became California law after approved by voters, moved to intervene to defend the law. *Id.*  The district court declared the law unconstitutional, the Ninth Circuit affirmed, and the Supreme Court granted certiorari to decide (1) the case on the merits and (2) whether the intervenors had standing under article III, section 2 to intervene. *Id.* at 2660-2661.

Ultimately concluding that the intervenor defendants lacked standing to defend the law, the Court succinctly addressed the intervenor's argument "that the California Constitution and its election laws [gave] them a 'unique,' 'special,' and 'distinct' role in

the initiative process - one 'involving both authority and responsibilities that differ from other supporters of the measure.'" *Id.* at 2663.  The Court soundly rejected the intervenors assertion of standing to defend the lawsuit:

> True enough - but only when it comes to the process of enacting the law.  Upon submitting the proposed initiative to the attorney general, petitioners become the official 'proponents' of Proposition 8.  As such, they were responsible for collecting the signatures required to qualify the measure for the ballot.  After those signatures were collected, the proponents alone had the right to file the measure with election officials to put it on the ballot. Petitioners also possessed control over the arguments in favor of the initiative that would appear in California's ballot pamphlets.

> But once Proposition 8 was approved by the voters, the measure became 'a duly enacted constitutional amendment or statute.'  Petitioners have no role - special or otherwise - in enforcement of Proposition 8.  They therefore have no 'personal stake' in defending its enforcement that is distinguishable from the general interest of every citizen of California.

> Article III standing is not to be placed in the hands of 'concerned bystanders,' who will use it simply as a 'vehicle for the vindication of value interests.'  No matter how deeply committed petitioners may be to upholding Proposition 8 or how "zealous [their] advocacy," that is not a "particularized" interest sufficient to create a case or controversy under Article III.

*Id.* at 2662-2663 (internal citation omitted).  Although the *Hollinsworth* decision discusses the issue of standing, as opposed to the ability of a third party to intervene in a pending lawsuit, the Supreme Court's reasoning is nonetheless instructive in determining the issue before this Court.  The Supreme Court's discussion in this context leads to the necessary conclusion that FFAI lacks any significantly protectable interest because its proposed

amendment has become the law of Florida.

Proposed intervenor's reliance on *Georgia, supra,* is misplaced and does not grant it the right to intervene. In *Georgia,* the State of Florida sought to intervene in a lawsuit by the State of Georgia against the Army Corps of Engineers which sought to force the Corps to grant the City of Atlanta more water. 302 F.3d at 1246. However, the water, which the states of Georgia, Alabama, and Florida share, originates in a North Georgia river and terminates in Florida. *Id.* at 1246-1247. Granting more water to the State of Georgia would "adversely effect Florida['s] downstream interests by hindering the continued existence of endangered or threatened species in Florida and reducing the stock of fish and seafood available for harvest [in] Florida." *Id.* at 1250. As "a state's right to an equitable apportionment of water flowing through an interstate stream located within its borders is well established[,]" Florida was entitled to intervene because its "interests in the water in [Georgia] could be effected by the resolution of Georgia's lawsuit." *Id.* at 1252. In sum, if not entitled to intervene, the State of Florida would suffer cognizable harm based on the disposition of the *Georgia* case.

Here, unlike Florida's direct and substantial interests in preserving its water quality, FFAI's only arguably related interest in this case is that, as a political group, it supported the passage of Amendment 2. Plaintiffs' lawsuit does not challenge Amendment 2, it only disputes the constitutionality of Art. I, §27, Fla. Const., which is now law in the State of Florida. As such, it is the duty for the State of Florida, not a political group, to defend. FFAI's political support for the Amendment before it became law simply is insufficient to confer intervenor status to it.

Likewise, FFAI's reliance on *Jackson v. Ambercrombie,* 282 F.R.D. 507 (D.Haw. 2012) is misplaced and of little value in this case.  In *Jackson,* the Hawaii Family Forum (HFF) sought to intervene in a challenge to Hawaii's constitutional amendment prohibiting same-sex marriage.  *Id.* at 510-12.  Importantly, a fact ignored by FFAI in its pleading, is a quirk in Ninth Circuit jurisprudence which provides, "[a] public interest group is entitled *as a matter of right* to intervene in an action challenging the legality of a measure it has supported." (emphasis added). [1]  Further, other than *Jackson* being superficially analogous to the instant case because it addresses intervenors in the same-sex marriage context, its facts are easily distinguishable.  The proposed intervenors in *Jackson* supported the discriminatory marriage amendment by spending great sums of money "producing for radio, tv, and newspaper advertisements," in support of the challenged law, something which FFAI has not alleged to have done.  *Id.* at 516.

Also, while FFAI here relies on *Jackson* to demonstrate its "significant protectable interest," the *Jackson* court also dealt with serious inadequacies regarding the representation of the intervenor's interests by the named defendants.  *Id.* at 517.  In *Jackson,* the governor issued a press release proclaiming he would not defend the law, while the director of the Department of Health took the contrary position, an issue which has not arisen here.  Indeed, as discussed, *infra,* the Solicitor General's Office represents both the Governor and Attorney General, and will zealously defend the constitutionality

---

[1] *See Resort Timeshare Resales, Inc. v. Stewart,* 764 F.Supp. 1495, 1498 (S.D. Fla. 1991)(finding the Eleventh Circuit, unlike the Ninth Circuit, has not addressed whether a public interest group has a right to intervene in any litigation involving legislation which it sponsored and further finding that a district court in the Ninth Circuit "properly criticized" the theory of entitlement to intervene as a matter of right for public interest groups adopted by the Ninth Circuit).

of the challenged provisions.

In this matter, FFAI has not been authorized to represent the people of Florida and, therefore, its application to intervene cannot be characterized as an attempt to protect any institutional interest it may have.  It has not alleged any injury to itself as a legal entity, the institutional injury it alleges is wholly abstract, and its attempt to intervene in this litigation at this time and in this forum is contrary to historical experience and legal precedent.  FFAI has failed to allege a sufficiently concrete injury to establish standing to intervene.  It has thus failed to meet the first element of Fed.R.Civ.P. 24(a) and its motion to intervene should be denied.

**B.      FFAI Does Not Have an Interest Which Will be Impaired if the Court Holds the Amendment and Statutes at Issue to be Unconstitutional.**

FFAI states it is a not-for-profit Florida corporation "involved from the very beginning in the initiation, qualification, defense and passage of Amendment 2." [Doc. 22-2, p. 2].  It argues dire consequences will result, most of which are not at issue in this lawsuit, if this Court finds the challenged amendment and statutes unconstitutional.  First, FFAI claims the "integrity of amendment process will be diminished[,]" which, if it were a real harm, would be applicable to all Floridians, not just FFAI.  [Doc. 22-1, p. 7].  Yet it fails to articulate how the amendment process will be harmed by this Court's finding that the amendment is unconstitutional.  Certainly, other provisions of the Florida Constitution have been declared unconstitutional without endangering the amendment process itself.  *See e.g. Fair v. Fair*, 317 F.Supp. 859 (M.D.Fla. 1970).

Further, FFAI's argument focuses upon the invalidation of Amendment 2 itself, which is not at issue in this litigation.  [Doc. 22-1, p. 7].  This suit challenges only a

constitutional amendment and two related statutes.  It in no way challenges the *process by which the Florida Constitution is amended by voters of this state*.  FFAI makes a "slippery slope" argument claiming this Court's decision could lead to the "deconstruct[ion]" of the "institution of marriage."  [Doc. 22-1, p. 7].  Plaintiffs are not challenging the institution of marriage.  To the contrary, they believe strongly in the institution of marriage, which is one of the reasons they are seeking recognition of their marriage and the right to marry.

FFAI's reliance on *Stone v. First Union Crop.*, 371 F.3d 1305 (11th Cir. 2009) is similarly misguided.  In *Stone*, the court decertified a class, and members of the former class sought to intervene in Stone's individual lawsuit.  *Id.* at 1307-1308.  The proposed intervenors alleged the same company policy of the defendant that violated the Age Discrimination and Employment Act in Stone's case led to their injury.  *Id.* at 1310. Because the same policy was at issue for all plaintiffs, Stone's lawsuit could have created a negative precedential effect that would have directly impacted the former class member's suit against the same defendant.  *Id.*  Importantly, the court noted, "the potential negative stare decisis effect does not automatically grant the plaintiffs the right to intervene," but rather, the "practical impairment the plaintiffs may face here is significant."  *Id.* at 1310.

As discussed above, FFAI does not have direct, substantially legally protectable interest in the instant case, but even assuming, *arguendo*, it did, its interests would not be impaired by the disposition of this case.  Contrary to its assertion, this case does not address the integrity of the amendment process.  Nor does this lawsuit in any way

eliminate or negatively affect FFAI's ability to "bolster the societal benefits of intact biological families," whatever that may mean.  [Doc. 22-1, p. 7].  Regardless of the outcome of this case, FFAI will be able to continue its political goals, including advocating for constitutional amendments, so long as when they become law they do not violate the Constitution of the United States or the Constitution of Florida.

FFAI has failed to satisfy the second element for intervention, as its ability to protect its alleged interest will not be impaired by the disposition of this lawsuit. Accordingly, it is not entitled to intervention as a matter of right under Fed.R.Civ.P. 24(a).

### C.   FFAI's Identical Interests are Adequately Represented by the Solicitor General of Florida.

Proposed intervenor argues its interests are different than the State of Florida because it will present a more complex defense of the laws in question.  It argues that "broader issues of the societal benefits" exist in this lawsuit, which justify the prohibition of marriage between same-sex couples.  It claims this Court should grant its motion to intervene because its interests will not be adequately represented by the Solicitor General of Florida, who currently represents Defendants Scott, Bondi, Armstrong, and Nichols. Yet, FFAI's interests in this litigation are identical to those of the named defendants, namely, to defend the constitutionality of Article I, §27, Fla. Const.  It has not and cannot present any facts by which this Court could conclude the Solicitor General will not adequately represent its interests.

In a nearly identical case, *Bishop v. United States, ex rel. Holder*, an Oklahoma state representative and Oklahoman's for Protection of Marriage, Inc. ("OFPM"), a non-profit Oklahoma corporation who advocated for the passage of a constitutional

amendment barring same-sex marriage in Oklahoma, sought to intervene in a constitutional challenge of, *inter alia*, the Oklahoma constitutional provision prohibiting same-sex marriage. *Bishop v. U.S., ex rel. holder*, Case No. 4:04-cv-00848-TCK-TLW, (N.D.Okla. Jan. 14, 2014) at [Doc. 4 at p. 9]. Among other arguments, the representative and OFPM argued their interests would not be adequately represented by the Oklahoma Attorney General who was defending the constitutionality of the challenged law. *Id.* at 9. As in the present case, the burden of showing inadequate representation and that the "government's representation of the public interest generally cannot be assumed to be identical to the individual parochial interests" was borne by the proposed intervenors. *Id.* at 9.

In denying their motion to intervene, the court found that the representative and OFPM did not qualify for intervention as of right because their interests were "adequately represented" by the State defendants as the "Proposed Intervenors and the State Defendants have identical objectives of defending the constitutionality of [the challenged Oklahoma amendment]." *Id.* at [Doc. 93, p. 26-27]. Further, the court declined to allow proposed intervenors to permissively intervene because it did not believe having them "as actual parties to the litigation [was] necessary or valuable to resolving [the] case." *Id.* at [Doc. 93, p. 27]. Instead, the court allowed proposed intervenors to file an *amicus* brief to avoid "the procedural difficulties and delays that could occur by making them formal parties" of the case. *Id.*

"[W]hen applicants for interventions seek to achieve the *same objectives* as an existing party in the case[,]" *they must "overcome a presumption"* that "it is adequately represented." *United States v. City of Miami*, 278 F.3d 1174, 1178 (11th Cir.

2002)(emphasis added).  In *City of Miami*, a 1975 lawsuit by the United States alleged the City of Miami, city officials, and the Fraternal Order of Police ("FOP") discriminated against black, female, and Spanish-surnamed individuals in city employment "opportunities and conditions." *Id.* at 1176.  The lawsuit ultimately resulted in a consent decree. *Id.*  In 1999, after the "basic objectives of the consent decree [had] been achieved" because the demographics of the police department had changed dramatically, the United States moved to terminate the decree and enter an order directing the city to "continue the development of lawful selection procedures," which would expire if satisfied. *Id.* at 1177.

Thereafter, the Miami Community Police Benevolent Association ("MCPBA") sought to intervene. *Id.*  MCPBA claimed the FOP could not adequately represent its interests regarding black and women officers as FOP's position was "diabolically (sic) opposed" to the MCPBA's position. *Id.* at 1177.  The district court denied MCPBA's motion to intervene, and the Eleventh Circuit affirmed. *Id.* at 1177, 1179.  The Eleventh Circuit held that the district court correctly found the MCPBA's failed to establish its interests were inadequately represented by existing parties to the suit. *Id.*  The Court found intervention inappropriate where the proposed intervenor's objectives were the same as the party to the lawsuit: MCPBA sought to promote the "upward mobility of blacks and females," and the United States' sought to "end discrimination 'for all minorities.'" *Id.* at 1179.

Likewise, in *Athens Lumber Co. v. F.E.C.*, 690 F.2d 1364, 1366 (11th Cir. 1982), the F.E.C. defended a constitutional challenge of a campaign finance law for corporations

made by a corporation. A union sought to intervene to defend the challenged law arguing "it [would] lose significant political ground if restrictions on corporate political expenditures [were] lifted." *Id.* Specifically, the union feared that the F.E.C. lacked "the incentive to represent vigorously what [the union] perceive[d] as a private interest." *Id.* In denying intervention, the court first found the union did not have a sufficient interest to support intervention. *Id.* at 1366. Concluding that an "intervenor must be at least a real party in interest in the transaction which is the subject of the proceeding," the court found the union only had a "general concern" of "disproportionate corporate expenditures" if the law was found unconstitutional. *Id.* at 1366. The court further concluded the union's general interest was shared "with all unions and all citizens concerned about the ramifications of direct corporate expenditures." *Id.* In doing so, the court distinguished *Trbovitch v. United Mineworkers*, 404 U.S. 528 (1972), because like the instant case, the F.E.C. and union had the same objective of upholding the constitutionality of the challenged law. *Id.* at 1367. Thus, even if the union had an interest sufficient to support intervention, its intervention would be denied due to adequate representation. *Id.* at 1360.

Under the reasoning of both *City of Miami* and *Athens Lumber,* FFAI's motion to intervene should be denied. In both cases, interest groups with similar *interests,* but different *arguments* were denied intervention status. As in *City of Miami,* FFAI has the same objective as the named defendants, but wishes to raise "value" arguments. The Eleventh Circuit in *City of Miami* specifically rejected such value type arguments when it rejected the proposed intervenor's assertion that their interests were different because they wished to highlight the interests of black and women officers, as opposed to all

minorities. *City of Miami*, 278 F.3d at 1177-1179.  Similarly, *Athens Lumber* dispenses

with FFAI's assertion that it would more "vigorously" defend the challenged laws by

making additional arguments the Solicitor General will be unable to make. *Athens

Lumber*, 690 F.2d at 1366.  Under *Athens Lumber*, FFAI's "general interest" in the

litigation does not rise to the level of interest needed to establish it is entitled to

intervention. *Id.*

FFAI's attempt to intervene must also be denied because its recognizable legal

interests are more than adequately represented by the particular counsel assigned to

defend the State in this case.  The Solicitor General, Allen Windsor, Esquire, and the

Chief Deputy Solicitor General, Adam Tanenbaum, Esquire, have entered their

appearances on behalf of Governor Rick Scott, Attorney General Pamela Bondi, Surgeon

General John H. Armstrong, and Secretary of the Florida Department of Management

Services Craig J. Nichols. [Doc. 12 and 15].

Mr. Windsor and Mr. Tanenbaum are accomplished, experienced advocates.  Mr.

Windsor, prior to his appointment as the Solicitor General, served as the Principal Deputy

Solicitor General, where he represented the State in "significant trial and appellate

matters." *See Attorney General Pam Bondi Appoints Allen Windsor as Solicitor General,*

available at www.myfloridalegal.com/newsrelnsf/newsreleases/

DA1EA867270CE0E785257B8300730082.  Prior to his public service, he was a

shareholder of GrayRobinson. *Id.*  Mr. Windsor also served as the Editor-In-Chief of the

Florida Law Review when he attended the University of Florida College of Law. *Id.*

Following law school, he served as a clerk for the Honorable Judge Ed Carnes of the

United States Court of Appeals for the Eleventh Circuit, and he is the Richard W. Ervin Imminent Scholar Chair and a Visiting Professor of Law at Florida State University College of Law. *Id.*

Mr. Tanenbaum is also distinguished in his own right. *See* LinkedIn profile of Adam Tanenbaum, available at www.linkedin.com/in/adamtanenbaum. After graduating from Georgetown University Law Center, Mr. Tanenbaum served as a law clerk to then United States District Judge Stanley Marcus for the Southern District of Florida.[2] *Id.* As well as with practicing at Carlton Fields, P.A., he served as an Assistant Federal Public Defender. *Id.* He is described as a "seasoned trial and appellate lawyer," who has "tried cases to verdict in state and federal court," and was the "primary attorney on briefs in the DCAs and Supreme Court of Florida, the U.S. Eleventh Circuit, and the U.S. Supreme Court." *Id.* Due to his stature, he was selected as a "2012 SuperLawyers Rising Star in Appellate Practice." *Id.*

In addition to the pedigree of the defendants' counsel, they have been involved in this litigation since its inception, and are sure to defend the constitutional and statutory provisions at issue. Further, in response to this lawsuit, the Governor's Press Secretary stated: "Governor Scott supports traditional marriage, consistent with the amendment approved by Florida voters in 2008..." *See Jacksonville Civil Rights Attorneys Challenge Florida Law Refusing to Recognize Same-Sex Marriages,* available at www.jacksonville.com/news/ crime/2014-03-03/story/Jacksonville-civil-rights-attorneys-challenge-florida-laws-refusing.

---

[2] Judge Marcus now sits on the Eleventh Circuit Court of Appeals.

Because FFAI and the existing parties share the same ultimate objective in upholding the constitutionality of the challenged constitutional amendment and related statutes, and because the Solicitor General's highly capable office represents the above-named defendants, FFAI is not entitled to intervention as of right. Along with seeking to defend the challenged laws, the Governor has been clear in his support of "traditional marriage," which is consistent with FFAI's alleged additional "value" interest it seeks to defend. FFAI's allegations that it will make arguments in support of the constitutionality that the Solicitor General's Office may not make is without merit. Surely, the capable advocates in the Solicitor General's Office will attempt to argue "the application of rational basis and scrutiny that there are compelling interest for defining marriage as the union of one man and one woman." [Doc. 22-1, p. 10]. Defendants have in no way evidenced an intent to abandon this or any other legal argument.

To the contrary, at all times defendants' attorneys have zealously defended their clients' position. Further, contrary to FFAI's assertions, the Solicitor General's Office has not indicated that it will fail to argue "the broader issues of the societal benefits of preserving that definition of marriage[,]" because, even though a weak argument, it might arguably establish a rational basis for the challenged laws. *Id.* Proposed intervenor's arguments notwithstanding, there is no reason to believe defendants will urge this Court to adopt a less rigorous level of scrutiny to its constitutional analysis. Accordingly, FFAI's motion to intervene should be denied because its alleged interests are more than adequately represented by the Solicitor General's Office.

## II.   FFAI DOES NOT SATISFY THE STANDARDS FOR PERMISSIVE INTERVENTION.

FFAI also does not meet the standards for permissive intervention under Fed.R.Civ.P. 24(b).  Under the terms of that rule, upon timely motion, a court may allow a party to intervene if it "has a claim or defense that shares with the main action a common question of law or fact."  Fed.R.Civ.P. 24(b).  While a "proposed intervenor may also be permitted to intervene in an action: (1) upon timely application; and (2) when the applicant's claim or defense in the main action have a common question of law or fact," significantly, the court "*must* consider whether the intervention will 'unduly delay or prejudice the adjudication of the rights of the original parties[,]'" and "whether the movant's interests are adequately represented by existing parties." *Johnson v. Mortham*, 915 F.Supp. 1529, 1535 (N.D.Fla. 1995)(emphasis added).  Additionally, "it is relevant whether the proposed intervenor has standing to assert a protected interest at issue in the suit." *Id.*  "Finally, judicial economy is a relevant consideration." *Id.*

### A.   FFAI's Defense Does Not Share Questions of Law and Fact in Common with Plaintiffs' Claim, it is Identical to Current Defendants' Interest.

FFAI's alleged interests add unnecessary and irrelevant issues to this case. FFAI seeks to usurp the position of the Governor and Attorney General in defending the constitutionality of the challenged laws.  FFAI's goals are identical to the adequately represented defendants, however, it seeks to add matters to this litigation which are simply unnecessary to the resolution of this cause.  Accordingly, FFAI should not be granted permissive intervention.

17

**B.     FFAI's Participation Will Unduly Delay and Prejudice the Proceedings.**

Where a proposed intervenor seeks to inject numerous additional issues into a case, it may unduly delay the proceeding. *ManaSota - 88, Inc. v. Tidwell*, 896 F.2d 1318, 1323 (11th Cir. 1990); *See also United States v. South Florida Water Management Dist.*, 922 F.2d 704, 711-712 (11th Cir. 1991)(finding the district court properly denied permissive intervention where the proposed intervenor sought to inject collateral issues into proceeding).

FFAI attempts to couch its defense of the challenged laws as providing a "more comprehensive perspective" than the Solicitor General will provide.  [Doc. 22-1, p. 13]. Based on the totality of its argument, however, it appears FFAI seeks to interject its political and possible religious beliefs into the proceedings.  Intervention by FFAI will thus introduce extraneous arguments promoting its political position that are irrelevant to the ultimate disposition of whether the challenged laws are constitutional.  At trial on the merits of this action, attempts by FFAI to prove these "comprehensive" arguments could well result in many wasted days of this Court's trial docket in an effort to prove facts wholly irrelevant to the ultimate disposition of this case.  Accordingly, because FFAI will unduly delay or prejudice the proceedings, in the interest of judicial economy and because its alleged interests are adequately protected by the named defendants, it should not be permitted to intervene.

III.    **FFAI's Alleged Interests Would Be Adequately Protected If It
Were Granted Leave to Participate as an *Amicus Curiae***

While FFAI has not sought leave to participate as an *amicus curiae* in this matter,

its alleged interests would be protected if it were permitted to do so, which would also

foster judicial economy and prevent any undue delay in the proceedings.  If permitted to

participate in this case, FFAI's involvement should be limited to *amicus curiae* instead of

being an intervenor.

Although the Federal Rules of Appellate Procedure and Supreme Court rules

provided specifically for the filing of *amicus curiae* briefs, the Federal Rules of Civil

Procedure "lack a parallel provision regarding amicus appearances at the trial level."

*Resort Time Share Resales, Inc.,* 764 F.Supp at 1500.  However, a district court "has the

inherent authority to appoint amicus curiae."  *Id.*  Indeed, "participation as *amicus curiae*

will alert the court to the legal contentions of concerned bystanders, and *because it leaves*

*the parties free to run their own case it is the strongly preferred option.*"  *Bethune Plaza,*

*Inc. v. Lumpkin,* 863 F.2d 525, 533 (7th Cir. 1988)(emphasis added).

Here, because FFAI has not proven that it is entitled to intervene as of right, and if

it were permitted to permissively intervene, would unduly delay the proceedings by

raising extraneous arguments, if this Court wishes to allow FFAI to participate in the

proceedings, it should grant FFAI leave to participate by filing *amicus curiae*

memorandums.

## CONCLUSION

This Court should deny FFAI's Motion to Intervene in this action. FFAI has failed to meet the statutory criteria for intervention in this matter as a matter of right pursuant to Fed.R.Civ.P. 24(a). It has not established that it has standing, nor has it proven an interest which will be impeded if the Court upholds plaintiffs' constitutional challenge. It has also failed to prove its stated interests are not adequately represented by the Solicitor General's Office. Since proposed intervenor cannot meet even one, much less all three of the factors necessary to satisfy the rule, it should not be permitted to intervene in this action as a matter of right. It has also failed to support its request for permissive intervention pursuant to Fed.R.Civ.P. 24(b) because the very matters it seeks to raise would unnecessarily delay a decision in this matter. Accordingly, this Court should deny the Motion to Intervene.[3]

---

[3] It should also be noted that FFAI has sought to intervene in the related case if *Grimsley, et al. v. Scott, et al.,* Case No. 4:14-cv-00107-RH-CAS, currently pending before this Court. The plaintiffs in the *Grimsley* matter also oppose FFAI's intervention and have filed a response to prevent the same. Plaintiffs in the instant case hereby adopt the *Grimsley* plaintiffs' response and arguments therein and incorporate the same herein as further reasons to deny FFAI's motion to intervene here.

Respectfully submitted,


_____
Wm. J. Sheppard, Esquire
Florida Bar No.:  109154
Elizabeth L. White, Esquire
Florida Bar No.:  314560
Matthew R. Kachergus, Esquire
Florida Bar No.:  503282
Bryan E. DeMaggio, Esquire
Florida Bar No.:  055712
Jonathan W. Graessle, Esquire
Florida Bar No.:  102640
Sheppard, White & Kachergus, P.A.
215 Washington Street
Jacksonville, Florida 32202
Telephone:      (904) 356-9661
Facsimile:      (904) 356-9667
Email:          sheplaw@att.net
COUNSEL FOR PLAINTIFFS



Samuel Jacobson, Esquire
Florida Bar No.: 39090
Bledsoe, Jacobson, Schmidt, Wright
        Lang & Wilkinson
1301 Riverplace Blvd., Suite 1818
Jacksonville, Florida 32207
Telephone:   (904) 398-1818
Facsimile:   (904) 398-7073
Email:     sam@jacobsonwright.com
CO-COUNSEL FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 21, 2014, I electronically filed the foregoing with the Clerk of the Court by using CM/ECF System which will send a notice of electronic filing to the following:

**Allen C. Winsor, Esquire**
**Adam S. Tanenbaum, Esquire**
**Florida Attorney General**
**The Capitol PL-01**
**Tallahassee, Florida 32399-1050**

**James Jeffery Goodman , Jr., Esquire**
**Jeff Goodman, P.A.**
**935 Main Street**
**Chipley, Florida 32428**

I HEREBY CERTIFY that on April 21, 2014, a true and correct copy of the foregoing document and the notice of electronic filing was sent by United States Mail to the following non-CM/ECF participants:

N/A

_____
ATTORNEY

mlh[brenner.james.resp.intervene.mot.msw]