UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

JAMES DOMER BRENNER, et al.,

      Plaintiffs,

                                  Case No. 4:14-cv-107-RH-CAS

v.

RICK SCOTT, et al.,

      Defendants.

_____

SLOAN GRIMSLEY, et al.,

      Plaintiffs,                      Case No. 4:14-cv-00138-RH-CAS

v.

RICK SCOTT, et al.,

      Defendants.

_____

### *GRIMSLEY* PLAINTIFFS' RESPONSE IN OPPOSITION TO
### FLORIDA FAMILY ACTION, INC.'S MOTION TO INTERVENE

**Daniel B. Tilley**
Florida Bar No. 102882
**Maria Kayanan**
Florida Bar No. 305601
ACLU Foundation of Florida
4500 Biscayne Blvd., Suite 340
Miami, FL 33137
(786) 363-2700
dtilley@aclufl.org
mkayanan@aclufl.org


ATTORNEYS FOR PLAINTIFFS
*Admission to N.D. Fla. pending

**Stephen F. Rosenthal**
Florida Bar No. 131458
Podhurst Orseck, P.A.
25 West Flagler Street, Suite 800
Miami, FL 33130
(305) 358-2800
srosenthal@podhurst.com

**Leslie Cooper***
ACLU Foundation
125 Broad Street, 18th Floor
New York, New York 10004
(212) 549-2627
LCooper@aclu.org

The *Grimsley* Plaintiffs hereby respond to Proposed Intervenor Florida Family Action Inc.'s ("FFAI") motion to intervene as a defendant (*Grimsley* DE 13) and respectfully request that it be denied.

## Introduction

In its motion, FFAI asks that it be permitted to intervene as of right pursuant to Rule 24(a) of the Federal Rules of Civil Procedure or in the alternative that it be granted permissive intervention under Rule 24(b). (*Grimsley* DE 13-1 at 1-2). Both requests should be denied, as FFAI's members do not have sufficiently significant interest in the action and any interest its members have is already adequately represented by the State Defendants. In addition, some of FFAI's asserted interests in the litigation are not even grounded in the claims and defenses of the parties in this action.

## I.      FFAI does not satisfy the requirements to intervene as of right under Rule 24(a).

Intervention as of right under Rule 24(a)(2) may not be granted unless

(1) the application to intervene is timely; (2) the applicant has an interest relating to the property or transaction which is the subject of the action; (3) the applicant is so situated that the disposition of the action, as a practical matter, may impede or impair his ability to protect that interest; and (4) the applicant's interest will not be represented adequately by the existing parties to the suit.

*Sierra Club, Inc. v. Leavitt*, 488 F.3d 904, 910 (11th Cir. 2007) (internal quotation marks omitted).

FFAI states that its interests in this case are "[1] in maintaining the integrity of the constitutional amendment process in Florida, [2] in protecting Floridians' voting rights and [3] the definition of marriage as the union of one man and one woman for posterity, and [4] in strengthening intact biological families." (*Grimsley* DE 13-1 at 6) (alterations added). Except for the timeliness of its motion to intervene, FFAI fails to satisfy the elements of *Sierra Club*. FFAI

does not have an interest in the subject of the litigation—a constitutional challenge to the marriage exclusion. Even if FFAI had such an interest, it is adequately represented by the State Defendants. And any interest FFAI has in the amendment process and voting rights will not be affected by this litigation because such issues are not before the Court.

A.      **FFAI's members do not have legally protectable interests in the marriage recognition bans (Fla. Const. Art. I, § 27, and § 741.212, Fla. Stat.).**

"To support intervention, a nonparty's interest must be direct, substantial, [and] legally protectable." *United States v. S. Fla. Water Mgmt. Dist.*, 922 F.2d 704, 707 (11th Cir. 1991) (internal quotation marks omitted). "In essence, the intervenor must be at least a real party in interest in the transaction which is the subject of the proceeding." *Athens Lumber Co. v. Fed. Election Comm'n*, 690 F.2d 1364, 1366 (11th Cir. 1982). A "general concern" about the impact of the law being invalidated that is shared by other supporters of the law is not enough. *Id.*

FFAI does not have a legally protectable interest in defending Amendment 2 (the ballot measure that became Fla. Const. Art. I, § 27, the constitutional ban on same-sex marriage and similar unions). It clearly cares about the marriage amendment being maintained, but that is not a direct interest; it is an interest shared by any of the 5 million Florida voters FFAI says voted for the amendment. (*Grimsley* DE 13-1 at 2). *See, e.g.*, *Fox Valley Reprod. Health Care Ctr., Inc. v. Arft*, 82 F.R.D. 181, 182 (E.D. Wis. 1979) ("No voter may claim a 'significantly protectable interest' in every piece of legislation he supports so as to entitle him to intervention as a matter of right in a case to review the constitutionality of the legislation."). The outcome of this litigation will have no direct effect on FFAI or its members.[1]

---

[1] This distinguishes this case from *Georgia v. U.S. Army Corps. of Engineers*, 302 F.3d 1242 (11th Cir. 2002), and *Stone v. First Union Corp.*, 371 F.3d 1305 (11th Cir. 2004), cited by FFAI (*Grimsley* DE 13-1 at 3, 7). In *Georgia*, the proposed intervenor—the State of Florida—had an interest in the litigation because its access to water would be directly affected by the outcome of

FFAI contends that its status as a proponent gives it a right to intervene here. (*Grimsley* DE 13-1 at 2). In support of this contention, it points to *Wash. State. Bldg. & Constr. Trades Council, v. Spellman*, 684 F.2d 627 (9th Cir. 1982) and *Jackson v. Abercrombie*, 282 F.R.D. 507 (D. Haw. 2012), but those cases are grounded in a rule peculiar to the Ninth Circuit allowing public interest groups to intervene in actions challenging the legality of measures they sponsored. *Spellman*, 684 F.2d at 630. *See Nat'l Right to Live Pol. Action Comm. State Fund v. Devine*, CIV. 96-359-P-H, 1997 WL 33163631, at *1 (D. Me. Mar. 19, 1997) ("Only the Ninth Circuit has conferred on initiative proponents the mantle of virtually automatic qualification to intervene as of right . . . ."). The Ninth Circuit decisions establishing this principle have been "properly criticized . . . as 'lacking any illuminating legal analysis on the issue of intervention.'" *Resort Timeshare Resales, Inc. v. Stuart* [hereinafter *Resort Timeshare*], 764 F. Supp. 1495, 1498 (S.D. Fla. 1991) (citing *Yniguez v. Mofford*, 130 F.R.D. 410, 415 (D. Ariz. 1990)). "The Eleventh Circuit has yet to address the specific question whether a public interest group has a right to intervene in any litigation involving legislation which it sponsored or for which it lobbied." *Resort Timeshare*, 764 F. Supp. at 1498. But courts outside of the Ninth Circuit have rejected this idea.[2] In *Resort Timeshare*, 764 F. Supp. at 1499, the Southern District of Florida denied intervention by an association that had lobbied for a statute, explaining that "[a]n important purpose of Rule 24(a) is 'to foster economy of judicial administration.' This purpose is hardly

---

the litigation. *Georgia*, 302 F.3d at 1252. In *Stone*, the parties agreed that the proposed intervenors had an interest in the litigation. *Stone*, 371 F.3d at 1309.

[2] *See, e.g., Coalition to Defend Affirmative Action v. Granholm*, 501 F.3d 775, 782 (6th Cir. 2007) (where "an organization has only a general ideological interest in the lawsuit—like seeing that the government zealously enforces some piece of legislation that the organization supports— and the lawsuit does not involve the regulation of the organization's conduct, without more, such an organization's interest in the lawsuit cannot be deemed substantial"); *Keith v. Daley,* 764 F.2d 1265, 1269 (7th Cir. 1985) (stating that an "interest as chief lobbyist . . . is not a direct and substantial interest sufficient to support intervention").

served by granting lobbyists the full right to intervene." The court noted that "such an expanded definition of 'interest' might open the courtroom door to every citizen who has called his congressman concerning legislation, thereby compromising 'the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches.'" *Id.* (citation omitted). For the same reason, FFAI's members do not have a legally protectable interest such that FFAI may intervene in this litigation.

  **B.**  **Any interest FFAI has in the marriage recognition bans is adequately represented by the State Defendants.**

  Even if FFAI's interest in maintaining the marriage recognition bans were legally protectable, that interest is adequately represented by counsel for the State Defendants.

  "Where an existing party pursues the same ultimate objective as an applicant seeking intervention, the proposed intervenor's interest is presumed to be adequately represented." *Johnson v. Mortham*, 915 F. Supp. 1529, 1536-37 (N.D. Fla. 1995) (three-judge panel). Moreover, "[a]dequacy of representation can be presumed when the party on whose behalf the applicant seeks intervention is a governmental body or officer charged by law with representing the interests of the proposed intervenor." *Keith*, 764 F.2d at 1270; *see also Mass. Food Ass'n v. Mass. Alcoholic Beverages Control Comm'n,* 197 F.3d 560, 567 (1st Cir. 1999) ("[T]he courts have been quite ready to presume that a government defendant will 'adequately represent' the interests of all private defenders of the statute or regulation unless there is a showing to the contrary.").

  In contending that the State of Florida's two most senior litigators are ill-equipped to defend this lawsuit, FFAI argues that while the State Defendants "are expected to argue that Amendment 2 and the challenged statutes are validly enacted measures that do not violate the United States Constitution," they "are not well equipped [to] make the public policy and social

welfare arguments that underlie the memorialization of the definition of marriage as the union of one man and one woman as part of the Florida Constitution." (*Grimsley* DE 13-1 at 9-10). But there is no indication that the State Defendants will eschew a discussion of public policy in defending this case or that they are ill-equipped to make such arguments. As counsel for the State Defendants suggested during the April 18 status conference, that is precisely what they will do.[3] And if the arguments of the state defendants in marriage litigation around the country are any indication, such discussion will likely be the central focus of the State Defendants' anticipated contention that there is a rational basis for the marriage recognition bans.[4] Even if FFAI were correct in its assumptions about the State Defendants' litigation strategy, this is merely a disagreement about the best way to defend against Plaintiffs' claim. The "relevant and settled rule is that disagreement over how to approach the conduct of the litigation is not enough to rebut the presumption of adequacy." *Stuart v. Huff*, 706 F.3d 345, 353 (4th Cir. 2013); *see also*, *e.g.*, *Saldano v. Roach*, 363 F.3d 545 (5th Cir. 2004) ("Simply because the [intervenor]

---

[3] The Solicitor General's office is hardly inexperienced in formulating public policy arguments to defend the constitutionality of Florida's laws. *See generally* Rachel E. Nordby, *Florida's Office of the Solicitor General: The First Ten Years,* 37 Fla. St. U. L. Rev. 219 (2009). Indeed, it did so in the context of a challenge to Florida's gay adoption ban. *See Fla. Dep't of Children & Families v. Adoption of X.X.G. & N.R.G.*, 45 So. 3d 79 (Fla. 3d DCA 2010).

[4] A brief review of the other same-sex marriage cases currently being litigated shows that state defendants around the country are making the very same kind of public policy arguments that FFAI contends it would make—including arguments similar to "strengthening intact biological families." *See*, *e.g.*, *Bishop v. U.S. ex rel. Holder*, 962 F. Supp. 2d 1252, 1288, 1290 (N.D. Okla. 2014) (advancing arguments related to promoting morality, encouraging "responsible procreation and child-rearing," steering "naturally procreative relationships" into stable unions, promoting "the ideal that children be raised by both a mother and a father in a stable family unit," and avoiding a "redefinition" of marriage that would "necessarily change the institution and could have serious unintended consequences"); *Kitchen v. Herbert*, 961 F. Supp. 2d 1181, 1211-14 (D. Utah 2013) (advancing arguments related to "responsible procreation," optimal child-rearing, proceeding with caution, and "preserving the traditional institution of marriage"); *DeBoer v. Snyder*, --- F. Supp. 2d ----, 2014 WL 1100794, at *12 (E.D. Mich. Mar. 21, 2014) (advancing arguments related to optimal child-rearing, proceeding with caution, and upholding tradition and morality).

would have made a different [litigation] decision does not mean that the Attorney General is inadequately representing the State's interest . . . .").  As one court explained:

> There will often be differences of opinion among lawyers over the best way to approach a case. It is not unusual for those who agree in principle to dispute the particulars. To have such unremarkable divergences of view sow the seeds for intervention as of right risks generating endless squabbles at every juncture over how best to proceed. There is much to be said, frankly, for simplifying rather than complicating the litigation process. We thus hold that the district court did not err in concluding that the appellants failed to establish adversity of interest with the Attorney General.

*Stuart*, 706 F.3d at 354.

Because the goals of the State Defendants and FFAI with respect to opposing recognition of same-sex marriages are wholly aligned, FFAI's interest is adequately represented by the State, and any differences of strategy as to how best to defend Florida's laws are insufficient to rebut the presumption of adequacy. For these reasons, FFAI cannot intervene as of right.

**C.   Asserted interests (1) and (2)—"maintaining the integrity of the constitutional amendment process in Florida" and "protecting Floridians' voting rights"—are not grounded in this litigation.**

Even if FFAI's members could be said to have legally protectable interests in the constitutional amendment process or in citizens' voting rights, they do not have such interests *in this case*. The proposed intervenor's "argument misunderstands the nature of the present action and the precise relief sought by the plaintiffs." *Fla. Wildlife Fed'n, Inc. v. Johnson*, No. 4:08cv324-RH/WC, 2009 WL 248078, at *2 (N.D. Fla. Feb. 2, 2009) (Hinkle, J.). This case is not about the constitutional amendment *process* or voting rights.[5] Plaintiffs do not seek to change through this lawsuit the processes through which laws or constitutional amendments are

---

[5] An intervenor may not enlarge issues already before the court or "compel an alteration of the nature of the proceeding." *Vinson v. Wash. Gas Light Co.,* 321 U.S. 489, 498 (1944). Nor may an intervenor introduce issues which are outside the scope of issues in the main suit; it can only argue issues that have been raised by the principal parties. *See, e.g., Thompson v. Deal,* 49 F. Supp. 366, 369 (D.D.C. 1943).

enacted. Further, the Court's ultimate ruling on the constitutionality of the statute and state constitutional provision at issue will have no bearing—procedural or substantive—on FFAI's members' "voting rights." Therefore, disposition of this action will not "impede or impair [FFAI's] ability to protect" these two asserted interests. *Sierra Club*, 488 F.3d at 910. To be sure, an ultimate ruling in Plaintiffs' favor would strike down the Florida marriage amendment (Fla. Const. Art. I, § 27), which FFAI members voted for, but, as discussed above, FFAI has no legally protectable interest in defending the marriage amendment, and any interest it has is adequately represented by the State Defendants.

Because this litigation does not threaten any interest in the amendment process or voting rights generally, those interests are insufficient for intervention as of right.

## II.    FFAI should not be granted permissive intervention under Rule 24(b).

Under Rule 24(b), an entity may be granted permissive intervention if its "claim or defense and the main action have a question of law or fact in common and the intervention will not unduly prejudice or delay the adjudication of the rights of the original parties." *Mt. Hawley Ins. Co. v. Sandy Lake Props., Inc.*, 425 F.3d 1308, 1312 (11th Cir. 2005) (internal quotation marks omitted).

For the same reasons that this Court should deny intervention as of right, it should deny permissive intervention as well: (1) FFAI does not have an interest in the subject of the litigation—a constitutional challenge to the marriage exclusion; (2) even if FFAI had such an interest, it is adequately represented by the State Defendants; and (3) any interest FFAI has in the

amendment process and voting rights will not be affected by this litigation because such issues are not before the Court.[6]

Unlike in *Johnson*, 915 F. Supp. at 1538, where a three-judge panel of this Court found that the NAACP "br[ought] a unique perspective to the case" because its redistricting plan substantially influenced the Special Master in the creation of the relevant district, FFAI's members can offer no such unique perspective. Despite having been the proponents of Amendment 2, they have neither arguments at their disposal nor specialized understanding of public policy or technical expertise that the State Defendants do not possess.

FFAI points to *Arizona v. California*, 460 U.S. 605, 614-15 (1983), in which the Supreme Court granted permissive intervention to Native American tribes to defend their *own* interest in *water*. But nothing will be denied or taken from FFAI if judgment is entered for Plaintiffs in this matter. FFAI is certainly not seeking to enter into same-sex marriages, and any interest its members have in entering into different-sex marriages is simply not affected by this litigation.[7]

This Court should further deny permissive intervention on the additional ground that FFAI's proposed intervention will unnecessarily complicate the proposed joint schedule the parties labored to present to the Court, and which the Court accepted with minor adjustments,

---

[6] Even in the case cited by FFAI to suggest it should be granted permissive intervention, *Jackson v. Abercrombie*, 282 F.R.D. 507, 620 (D. Haw. 2012), the court granted permissive intervention with the note that "the existing parties may not adequately represent" the proposed intervenor's interest. The *Jackson* court did not explain its reasons for that conclusion, but under *this* Court's precedent, FFAI's interests are presumed to be adequately represented. *Johnson*, 915 F. Supp. at 1536-37 ("Where an existing party pursues the same ultimate objective as an applicant seeking intervention, the proposed intervenor's interest is presumed to be adequately represented."). And, as explained above, *Jackson* was based on precedent that is peculiar to the Ninth Circuit.

[7] Plaintiffs note that FFAI's counsel for its intervention motion, Liberty Counsel, itself sought to intervene—both as of right and permissively—in a same-sex marriage lawsuit in the Middle District of Florida, citing this same interest against same-sex marriages. *See* DE 9 in *Wilson v. Ake*, Case No. 8:04-cv-01680-JSM-TBM (M.D. Fla. July 22, 2004). The motion was denied. *See* DE 15 at 2 in *Wilson* ("Generalized statements that their interests won't be protected are inadequate to satisfy the requirements of Rule 24(a).")

during the April 18 status conference. *See Johnson v. Bd. of Regents of Univ. of Ga.*, 263 F.3d 1234, 1269-70 (11th Cir. 2001) (affirming denial of intervention where district court declined to alter case management schedule to allow intervenors opportunity to develop argument not advanced by university).

Counsel for all parties in both cases attended the status conference. Although the conference was a matter of public record, and FFAI had stated its interest in intervening, its counsel did not attend. The *Brenner* case includes an additional defendant with different counsel; during the status conference, the Court sketched out its framework for consolidating this case with *Brenner*, and the Court announced its intention to enter an order memorializing that framework and the briefing schedule. Permitting FFAI to intervene could complicate this plan, unnecessarily prolong this litigation, and interfere with the parties' mutually expressed efforts to act expeditiously to present the Court with a factual record upon which it can issue a merits ruling ripe for review by the Eleventh Circuit. While FFAI may wish to express its opinions through an amicus brief, participating as a party-defendant will be an unnecessary additional burden on both the Court and the parties.

For these reasons, permissive intervention should be denied.

## Conclusion

Accordingly, Plaintiffs respectfully request that the Court deny FFAI's motion to intervene.

Dated: April 21, 2014                                    Respectfully submitted,


**/s/ Daniel B. Tilley**
**Daniel B. Tilley**                                     **Stephen F. Rosenthal**
Florida Bar No. 102882                                   Florida Bar No. 131458
ACLU Foundation of Florida                               Podhurst Orseck, P.A.
4500 Biscayne Blvd., Suite 340                           25 West Flagler Street, Suite 800
Miami, FL 33137                                          Miami, FL 33130
(786) 363-2700                                           (305) 358-2800
dtilley@aclufl.org                                       srosenthal@podhurst.com

**Maria Kayanan**                                        **Leslie Cooper***
Florida Bar No. 305601                                   ACLU Foundation
ACLU Foundation of Florida                               125 Broad Street, 18th Floor
4500 Biscayne Blvd., Suite 340                           New York, New York 10004
Miami, FL 33137                                          (212) 549-2627
(786) 363-2700                                           LCooper@aclu.org
mkayanan@aclufl.org

ATTORNEYS FOR PLAINTIFFS                                 *Admission to N.D. Fla. pending


## Certificate of Service

I certify that on April 21, 2014, I electronically filed this document with the Clerk of Court using CM/ECF, which automatically serves all counsel of record via electronic transmission of Notices of Electronic Filing generated by CM/ECF.

                                    /s/ Daniel B. Tilley
                                    Daniel B. Tilley