## IN THE UNITED STATES DISTRICT COURT COURT NORTHERN DISTRICT OF FLORIDA TALLAHASSEE DIVISION

| | | |
|---|---|---|
| **JAMES DOMER BRENNER, CHARLES DEAN JONES, STEPHEN SCHLAIRET, and OZZIE RUSS**<br><br>**Plaintiff**<br><br>**Vs.**<br><br>**RICK SCOTT, in his official capacity as Governor of Florida; Pamela Bondi, in her official capacity as Attorney General of Florida; John H. Armstrong, in his official capacity as Surgeon General and Secretary of Health for the State of Florida; Craig J. Nichols, in his official capacity as Agency Secretary for the Florida Department of Management Services; and Harold Bazzell, in his official capacity as Clerk of the Court and Comptroller for Washington**<br><br>**Defendants** | | **CASE NO: 4:14-cv-007107-RH-CAS** |

## <u>MEMORANDUM IN SUPPORT OF THE MOTION TO INTERVENE AS A PLAINTIFF</u>

### *INTRODUCTION*

NOW COMES, I, Chris Sevier, former Judge Advocate and combat veteran, to intervene

in this matter, as a Plaintiff on behalf of the other minority sexual orientation groups, whose

interest are not regarded by the existing Plaintiffs. I move pursuant to F.R.C.P. 24(a), or alternatively, under permissive intervention pursuant to Federal Rule of Civil Procedure 24(b). The case is in its early stages so intervention is not prejudicial but beneficial to ward off duplicative litigation. Additionally, intervention should be allowed because the Plaintiffs are only representing their particular brand/class of sexual orientation, not all other forms. I am intervening to represent the true minority in this affair in order to give the Court the comprehensive scope of what is at stake and the consequences involved. If I am not able to intervene all other classes interest will be left behind and an absurd judicial decision will result. The laws of the United States are not based on feeling but on conviction. We do not make our laws to suit are particular glands but to advance inherent justice and law, despite of particular desires. Respectfully, I am here to, in effect, make the Federal Court's "put up or shut up" about expansion of the equal protection clause to include "sexual orientation." "Sexual orientation" classification has never existed, until President Obama said that it does in advancing his social agenda to make America a "gay nation." Ever since one state in the union legalized "same-sex marriage," a proverbial "crack in the damn" has been created, so that now all states are forced to, despite the majority's decision to band same-sex marriage. Now proponents of same sex marriage have mobilized in multiple states - acting in concert - to force down their will down the throats of the voting majority so they can feel less ashamed of their life-style. But they do not consider the interest of all other classes of sexual orientation. The true discriminators in this case are proponents of same sex marriage. They are either discriminating against traditional marriage couples, whose relationship is not equal to theirs, or alternatively, they are discriminating against all of the other forms of sexual orientation to include mine.

What the Court's cannot do is have partial expansion of the equal protection clause on the basis of "sexual orientation," just to suit homosexual's romantic preferences. The Court must expand the equal protection cause to include all classes of sexual orientation, if the Plaintiffs' arguments prevail. The proponents of homosexual conduct are unapologetically trying to establish more respect and dignity for their lifestyle, but they are hypocritically not interested in establishing more respect and dignity for other nontraditional sexual lifestyles that differ from their own. Who is to say that a person cannot "love" their dog more than one of the Plaintiffs "loves" a member of the same sex? If the Plaintiffs can marry a person of the same sex, then others should have the right to marry their dog, pillow, blowup doll, computer, and any other object they can have sex with and want to marry. To accomplish their agenda, the proponents of gay behavior have dastardly cloaked their plight in terms of "tolerance" and "equality," reducing their plight to one on par with race - just their race "so to speak."

Imagine, if during the civil rights movement, a group of African Americans argued to have expansion of the equal protection clause to protect just their race alone, but did not move the Court to expand protections races that are red, brown, and yellow. To permit selective protections of certain classes would yield unjust and absurd results that are patently un-American, violating the true spirit of the equal protection clause. For the Plaintiffs to oppose this motion to intervene would paint them with the same bigotry that they have used to color the Defendants. The proponents of gay behavior very obviously are without any kind of moral conviction and will do and say just about anything to accomplish their self-serving agenda - even if it means highjacking the democratic process and engaging in unsurpassed abuse of process. The Windsor case is Exhibit A of that strategy at work, through the schemes and scams of an

executive branch who has completely disregarded the rule of law pursuant to his guiding virtue that "the ends justify the means."

In the instant case, proponent of same sex behavior are seeking protections for their particular peculiar sexual appetites, but do not consider the sexual preferences and rights of other classes, who are more in the minority than they. Traditionally, those engaging in "gay behavior" are merely individuals who are led by their glands in the same way that those who have sex with animals and blow up dolls are. Proponents of gay behavior have made the choice to have sex with members of the same sex, and due to the straight forward science of dopamine, they have become bonded together with a person of the same sex upon repeated orgasm, naturally developing a preference that they argue is worth having state recognition and ratification. When a husband has sex with his wife, their intangible commitment is reinforced with a physical act that is so different and set-apart that it can produce actual life, as the fruit of the union by two persons in love with corresponding sexual body parts, endowed by the Creator Himself.

The present scenario presented by the original Plaintiffs is no different than the findings in the studies of men who develop paramount sexual preference for a blow up dolls after having sex with it instead of a real woman, altering preference. The Plaintiffs' entire argument is "we want what we want so we should have it," and in making this argument they have strategized with other pro-same sex institutions to disenfranchise the Florida electorate, who passed the amendment in the first place to protect their children and families from the bad message that the Plaintiffs hope to send. To suggest that "the ends justify the means game playing is occurring" is an understatement. The people of Florida voted to ban same sex marriage because they do not want their children thinking that such a sexual union between members of the same sex would be

an equally viable option to traditional marriage, because these two sexual relationships are inherently not equal. One breeds life, the other desensitization, shame, debauchery, and other terrible qualities.

The laws and Courts of the United States should never encourage its people to engage in a course of conduct that causes them to live a life of "settling for less" - leading to the prevention of life through opportunity cost. On the other hand, the Russians should certainly not be applauded for their decision to criminalize homosexual conduct. We are sexual beings. But we are also spiritual beings. The law must take into account these competing self-evident realities, not punishing us for being "human" and not encouraging us to live life styles that leaves us spiritually bankrupt, blind, and in bondage.

Very obviously, the original Plaintiffs are free to engage in their form of destructive sex in the same way that all persons with nontraditional sexual appetites are (except for having sex with minors, which is of course illegal, which involves laws based on inherent morality). However, these self-focused individuals have no basis to expand sexual orientation at the exclusion of all other forms of sexual orientation classes because it is self-evident that traditional marriages are a unique union, like no other.

The weight of the domestic laws in the state of Florida and common sense says as much for good cause. It is not by accident that a males sexual parts corresponds with a females. One merely has to use their eyes to see that.

I move to intervene in this case on behalf of all other forms of sexual orientation, as a matter of right to prevent selective expansion of the equal protection to suit the interest of a particular sexual orientation class at the expense of all others to include mine. If same sex

couples are considered a "class," then our "class" should not be left out either. This bandwagon that the Plaintiffs co-collaborators have worked with must either come to an end or run its complete course here and now, not later. Allowing me to intervene better allows the Court to consider the consequence of expanding the the equal protection clause to include "sexual orientation" and how that decision will impact our National identity.

The Plaintiffs certainly cannot object to my request to intervene. But neither can the Defendants. I should have every right to make the exact same arguments that the Plaintiffs are on behalf of their sex class that I can make on behalf of mine. The Defendants have no right to suggest that my feelings for my love interest are no less real than the original Plaintiffs' feelings for theirs.

I do think thing that the Defendants are hate mongers in suggesting that if a man loves a man he will encourage him to become a better man, in part, so that he might be a better fit for his future spouse. Yet, inherent morality has taken a back seat to the peculiar mechanics of the law apparently pursuant to socio-political agendas, so my intervention should not be objectionable. No one can say that I have an inferior right to marry my computer, if the Plaintiffs are allowed to marry something other than a member of the opposite sex.

If they have the right to marry their object of sexual desire, even if they lack corresponding sexual parts, then I should have the right to marry my preferred sexual object. If the Court does not allow my intervention and sides with the Plaintiffs, it will be admitting that it is an instrument of inequality and discrimination on the basis of sexual orientation - which will defeat the purpose of this action. On the other hand, the Defendants have indicated that if the Court does allow my intervention and supports blanket expansion of equal protection under the

law, the Court will be promoting chaos and contemptuous conduct that should be the object of scorn by any civilization with a sense of decency, morality, and sanctity of life. At least that is what the majority would say. Our National identity is at stake - posing the question who are we as a people and what do we stand for? Yet, chaos is preferable to hypocrisy or discrimination against the true minority based on their unconventional sexual orientation, if the original Plaintiffs are allowed to prevail - like they have in other Courts in identical cases. (History has taught us that the primary catalyst for the collapse of civilizations was contradictory laws and political corruption. History has a way of repeating itself.)

There is no room in the middle on this by allowing me to intervene.  Partial expansion of rights to one sexual orientation class at the expense of all others is unquestionably unconstitutional and intolerable. If traditional marriages are not held to be unique and sacred, then no relationship should be given favorable treatment.  The original Plaintiffs stated in their amended complaint that the impact of this case will effect generations to come. There is no doubt that this is true. The original Plaintiffs admit in their original complaint that marriage is a Christian institution that the United States has adopted because nearly all of the laws of the United States were unapologetically derived from the Bible. If we were to apply that argument strictly, we would need to abolish nearly all of our laws because nearly all of them were derived from the Bible, which amounts to a "yardstick" for transcending and inherent reality.

At the very least, the message communicated to the general public from this action should be that all classes are given equal protection, in the event that the Court sides with these kinds of Plaintiffs, like other Courts have.  Additionally, the Defendants cannot rightfully tell the Plaintiffs that they cannot marry something outside the traditional statutory definitions and tell

me the same thing without causing injury and inequality. As the Plaintiffs have argued, "what works for them, might not work for me, but who is to say what is right and wrong" - is how the argument goes here. There position is that because they feel it, it must be right, which I should equally be allowed to put forward.

For all of the reasons set forth by the Plaintiffs, the Defendants are liable to me personally. They reject my request to marry my porn filled Apple computer, and in doing so, the same party has caused the same injury to myself. They also refused to recognize my marriage to my computer that took place in a foreign country. Pursuant to Local Rule 3.01(g), I made colorable attempts to confer with the Defendants, whether the Defendants would permit my intervention was unclear, so I have moved to intervene before the Court, which could bring clarification more expediently.

### The Intervening Plaintiff's Motion to Intervene is Timely

The Eleventh Circuit has identified several factors relevant to determining whether a request for intervention is timely:

> (1) the length of time during which the proposed intervenor knew or reasonably should have known of the interest in the case before moving to intervene; (2) the extent of prejudice to the existing parties as a result of the proposed intervenor's failure to move for intervention as soon as it knew or reasonably should have known of its interest; (3) the extent of prejudice to the proposed intervenor if the motion is denied; and (4) the existence of unusual circumstances militating either for or against a determination that their motion was timely.

*Georgia v. U.S. Army Corps of Engineers*, 302 F.3d 1242, 1259 (11th Cir. 2002) TA \l "*Georgia v.*

*U.S. Army Corps of Engineers*, 302 F.3d 1242 (11th Cir. 2002)" \s ". Georgia v. U.S. Army Corps

of Engineers, 302 F.3d 1242, 1259 (11th Cir. 2002)" \c 1  (quoting *Chiles*, 865 F.2d at 1213 TA \s

"Chiles v. Thornburgh, 865 F.2d 1197 (11th Cir. 1989)".

 The Supreme Court has emphasized that "[t]imeliness is to be determined from all the

circumstances." *NAACP v. New York*, 413 U.S. 345, 366 (1973) TA \l "*NAACP v. New York*, 413

U.S. 345 (1973)" \s "NAACP" \c 1 . This Circuit has also recognized that the requirement of

timeliness "must have accommodating flexibility toward both the court and the litigants if it is to

be successfully employed to regulate intervention in the interest of justice." *U.S. Army Corps of

Engineers*, 302 F.3d at 1259 TA \s ". Georgia v. U.S. Army Corps of Engineers, 302 F.3d 1242

(11th Cir. 2002)" (citing *McDonald v. E.J. Lavino Co.*, 430 F.2d 1065, 1074 (5th Cir. 1970 TA \s

"Chiles v. Thornburgh, 865 F.2d 1197 (11th Cir. 1989)" ).

 In *Chiles v. Thornburgh*, a motion to intervene was held to be timely where the motion

"was filed only seven months after [the plaintiff] filed his original complaint, three months after

the government filed its motion to dismiss, and before any discovery had begun." *Chiles*, 865 F.

2d at 1213; *see also Diaz v. Southern Drilling Corp.*, 427 F.2d 1118, 1125-26 (5th Cir. 1970)

(motion to intervene more than a year after the action was commenced was timely when there

had been no legally significant proceedings other than the completion of discovery and

intervention would not cause any delay in the process of the overall litigation).

 Applying these factors to the instant case, my application for intervention is timely.  The

case was filed on March 18, 2014, which was less than 30 days ago. The case is in its infancy.

There has been no decisions made in this case by the Court. Discovery has not commenced

whatsoever. The litigation remains in its early stages and intervention will not be prejudicial

whatsoever. *Davis v. Southern Bell Tel. & Tel. Co.,* 149 F.R.D. 666, 670 (S.D. Fla. 1993)

While the parties will not be prejudiced by allowing intervention, myself and all other

true minority sexual orientation groups will be prejudiced, if I am not allowed to intervene.

Allowing intervention will award off duplicative litigation. If the proponents of gay behavior are

victorious, then all other forms of non-traditional sexual oriented groups, can file lawsuits to

enable them to marry their objects of sexual desire as well. The President and Attorney General

might not have considered the implications of their decision, when they started their backfiring

initiative, but I have no political agenda. I simply care about justice, fairness, and truth. All forms

of sexual oriented classes should have a voice in this highly politicized agenda.  Allowing me to

intervene permits the Court to consider the complete picture of what expansion of the equal

protection clause to encompass "sexual orientation" will inevitably look like, if the Plaintiffs are

successful in their narrowly focused quest to change perceptions of morality. It is unfair to the

Court to have a partial view of the impact of sexual orientation classification for purposes of the

equal protection clause.

### The Existing Parties Do Not Adequately Represent the Intervening Plaintiff's Interests

The  final element to justify intervention of right is inadequate representation of the

proposed intervenor's interest by existing parties to the litigation.  This element is satisfied if the

proposed intervenor "shows that representation of his interest 'may be' inadequate." *Chiles* TA

\s "Chiles v. Thornburgh, 865 F.2d 1197 (11th Cir. 1989)" , 865 F.2d at 1214 (citing  TA \l

"*Trbovich v. United Mine Workers*, 404 U.S. 528 (1972)" \s "Trbovich v. United Mine Workers,

404 U.S. 528 (1972)" \c 1 *Trbovich v. United Mine Workers of America*, 404 U.S. 528, 538 n. 10

(1972)). The burden on the proposed intervenor to show that existing parties cannot adequately

represent its interest is "minimal." *Stone*, 371 F.3d 1311; *U.S. Army Corps of Engineers*, 302 F.

3d at 1259 TA \s ". Georgia v. U.S. Army Corps of Engineers, 302 F.3d 1242  (11th Cir.

2002)" (citing *Trbovich*, 404 U.S. at 538 n. 10 TA \s "Trbovich v. United Mine Workers, 404

U.S. 528 (1972)" ).  Any doubt concerning the propriety of allowing intervention should be

resolved in favor of the proposed intervenors because it allows the court to resolve all related

disputes in a single action.  *Lloyd v. Alabama Dep't of Corrections*, 176 F.3d 1336, 1341 (11th

Cir. 1999); *Federal Sav. and Loan Ins. Corp. v. Falls Chase Special Taxing Dist.*, 983 F.2d 211,

216 (11th Cir. 1993).

      The original Plaintiffs do not reference the rights of any other class of sexual orientation

other than their own in the complaint. This is because the original Plaintiffs are exclusively

concerned with protecting their brand of "sexual orientation." They will say and do just about

anything to get what they want, even accuse everyone who opposes them as being "hateful

bigots."  I reside in Northern Florida, in the same proximity as the original Plaintiffs.

Recently,  I purchased an Apple computer. The computer was sold to me without filters to block

out pornography. I was not provided with any warning by Apple that pornography was highly

addictive and could alter my reward cycle by the manufacturer. Over time, I began preferring sex

with my computer over sex with real women. Naturally, I "fell in love" with my computer and

preferred having sex with it over all other persons or things, as a result of classic conditioning upon orgasm. "Better to marry the computer than to be alone" - so the Plaintiffs have indirectly argued. Accordingly, I married my beloved computer in a foreign country in the same way that Brenner and Jones were married in Canada. (Some other Countries - like India and Sudan - will let you marry anything - legally). Like Brenner and Jones, my marriage international marriage is not recognized by the state of Florida by the same parties who refuse to recognize their marriage, and accordingly, I have an identical injury. Additionally, like Schairet and Russ, I sought to obtain a marriage license from the same clerk that denied their application. My request was denied, which lead to an identical injury by the same party for similar reasons. I was no less discriminated against by the clerk than Schairet and Russ. Therefore, I have been injured by the exact same party and an entitled to sue for identical reasons that they are. No one can say that I do not have equal standing to the original Plaintiffs.  No one can say that my romance, affections, preferences, and desires are no less real than theirs. The notion of crafting the law on a measurable degree of feelings is a ridiculous concept.

Article I, Section 27 of the Florida Constitution defines marriage as a union of only "one man and one woman," not "one man and one man" and not "one man and one machine." Section 741.04, Fla. Stat. (2013) prohibits, inter alia, the issuance of a marriage license unless "one party is a male and the other party is a female." Thus, because Schlaire and Russ are "male and male," there application was denied in the same way that mine was my situation involved a "male and a machine," not a "male and a male." I have been equally discriminated against on the basis of sexual orientation as Schlairet and Russ, according to their argument.

motion to intervene in Florida case                                                                          4/19/14 9:04 PM

My ability to have sex with the computer should not be questioned any more than Brenner's capacity to have sex with Jones. Likewise, my authentic love for my computer should not be questioned any more than Jones' love for Brenner. Neither of our sexual preferences should be questioned, according to the Plaintiffs arguments. However, my position is distinction from theirs because I represent those who want to be married to inanimate objects, pets, and those kinds of things. Allowing me to intervene provides a voice for these kinds of people:

1. In 2007, Liu Ye of China decided it would be better to marry himself than be single. The best part is that he married a foam-board cutout of himself dressed in a lovely red dress. Ye admits to being narcissistic, but said of his nuptials, "There are many reasons for marrying myself, but mainly to express my dissatisfaction with reality.

2. Marrying oneself is not just for the guys, though. In 2003, artist Jennifer Hoes married herself in the Netherlands on her 30th birthday. It was a large affair in front of friends and family. Hoes said, "Why not pledge allegiance to yourself in a ceremony, as the basis for completion of your life and relationships?"

3. The same thing happened in October of 2010 when 30-year-old Chen Wei Yih married herself in Taiwan. She decided she was at a good point in her life to marry, and was receiving social pressure to do so, but had found no suitable partner. She solved the problem by marrying herself.

4. In 2006, a Hindu woman in India claimed she had fallen in love with a snake and then married the snake in accordance with Hindu marriage rituals. More than 2,000 people participated in a celebratory procession, because they felt a wedding would bring good luck. The

snake did not attend, but was represented by a brass likeness of himself.

5. After a 15-year courtship, a British woman married Cindy the dolphin in a ceremony in Israel. She claimed when they met it was love at first sight and calls the male dolphin, "the love of my life." She sealed the deal with a kiss and the gift of a herring.

6. In Sudan, you have to be careful who you're caught being intimate with. There is a law that dictates that if a man is caught sleeping with a woman, he must marry her immediately to save the honor of her family. In 2006, the law was applied to a goat. Charles Tombe was caught having relations with the goat and was forced to marry it, and pay a dowry to its owner.

7. Apparently, sometimes marrying an animal can help you with your luck. A farmer in India, who had suffered from some disabilities, believed he had been cursed after stoning two dogs to death in his rice field. Doctors couldn't help him, but his astrologer told him the only way to lift the curse would be to marry a dog and live with it. He did.

8. Cats can also be man's best friend. So much so that a postal worker in Germany married his cat after a veterinarian told him the feline was terminally ill. No German officials would step in to marry the two, but an actress played the part of the officiant to help the man fulfill his dream.

9. A former soldier from San Francisco claimed she fell in love with the Eiffel Tower. So, in 2008, she made it official and went so far as to change her name to Erika La Tour Eiffel. She was also once in a long term relationship with a bow and cares deeply for a fence she keeps at home, but her wedded commitment is to the Eiffel Tower.

10. Of course, marrying well-known man-made objects is nothing new. In 1979, Eija-

Riitta Berliner-Mauer married the Berlin Wall after having fallen in love with it when she saw it on TV as a child. She changed her last name, which now means Berlin Wall. She was horrified when the wall was taken down 10 years later and hasn't returned.

11. What do you do when you fall in love with a character in a dating video game? You make a permanent and binding commitment to her, obviously. Sal 9000 fell in love with the character he met playing "Love Plus" on his NintendoDS and married her in 2009.

12. If you like it, you should put a ring on it, unless it's a ride at an amusement park because that could be kind of difficult. Amy Wolfe of New York didn't care and she ended up marrying the 1001 Nachts, a ride she's ridden more than 3,000 times. She's had relationships with other objects, but she committed to the Nacht as her main squeeze.

13. Perhaps a softer partner would be easier. That's clearly how Lee Jin-gyu felt when he decided to marry a pillow. The pillow has the face of a popular female anime character on it, so it was apparently quite attractive to the South Korean fellow, who tied the knot with his betrothed in 2010.

14. This man thought having a wife who wouldn't spend all his money, talk back to him or ever leave him was the way to go. That's why Davecat married his blow up doll in 2000. "She provides me with a lot of things that I can't get out of an organic partner, like… quiet," he said. Davecat and the doll were featured in TLC's show 'My Strange Addiction.'

15. According to an Indian woman, when your betrothed doesn't show up for the wedding, you do the next best thing and marry a clay pot. That's exactly what a woman by the name of Salvita did in 2005. Her fiancé Chaman Singh, an officer with the Tibetan Border

Police, got stranded on the job. Instead of waiting, her family wanted the ceremony to continued as planned. A picture of the bridegroom was placed on the pot and the wedding commenced.

16. On December 3, 2013, Paul Horner married his dog in San Francisco California at Chapel of Our Lady at the Presidio. Father McHale was the officiant, who boldly stated that it was a victory for "equality." The state of California has recognized Paul Horner's marriage under the law. "Paul Horner explained that he was looking forward to having his honey moon in Montana, where sex with an animal is not illegal." In the book of California's State Laws and Regulations, there is a little known law that was passed as the state was first forming in 1850. According to article 155, paragraph 10, it clearly states: "If a man and a man can get married and a woman and a woman can get married, if ever comes that day, then a human and animal will have the exact same rights to marriage in every eye of the law. God help us if this ever is to happen!" It happened, so did the marriage between a man and a dog. So in the name of "love" and "tolerance," I should be able to marry my porn filled Apple computer.

Accordingly, allowing me to intervene will allow these other classes of sexual orientation to have a voice in this matter that the Plaintiffs admit is highly controversial in their amended complaint.

**The Intervening Plaintiff Meets the Requirements for Permissive Intervention**

Rule 24(b) of the Federal Rules of Civil Procedure provides an alternative basis for my intervention in this action. Rule 24(b) states, in relevant part:

Upon timely application anyone may be permitted to intervene in an

> action ...when an applicant's claim or defense and the main action have a
> question of law or fact in common. When a party to an action relies for
> ground of claim or defense upon any statute or executive order
> administered by a federal or state governmental officer or agency or upon
> any regulation, order, requirement or agreement issued or made pursuant
> to the statute or executive order, the officer or agency upon timely
> application may be permitted to intervene in the action. In exercising its
> discretion the court shall consider whether the intervention will unduly
> delay or prejudice the adjudication of the rights of the original parties.

Fed. R. Civ. P. 24(b). TA \s "Fed. R. Civ. P. 24"   The Eleventh Circuit has established a two-part

test to guide the Court's discretion as to whether a party may intervene pursuant to Rule 24(b)(2):

the applicant must show that "(1) his application to intervene is timely; and (2) his claim or

defense and the main action have a question of law or fact in common." *Chiles* TA \s "Chiles v.

Thornburgh, 865 F.2d 1197 (11th Cir. 1989)" , 865 F.2d at 1213 (citing *Sellers v. United States*,

709 F.2d 1469, 1471 (11th Cir. 1983) TA \l "*Sellers v. United States*, 709 F.2d 1469 (11th Cir.

1983)" \s "Sellers v. United States, 709 F.2d 1469, 1471 (11th Cir. 1983)" \c 1 ).

Federal Rule of Civil Procedure 24(b)(2) permits intervention by a the Plaintiff if a

party's claim is based on a statute administered by the Defendants. Here the Florida's

Constitutional amendment, Article I, Section 27 of the Florida Constitution, that bans married

between anything other than a "male and female" is at stake. There is unquestionably a common

question of law that warrants intervention. Like the original Plaintiffs, I desire to marry a

something outside of that straight forward definition. Additionally, Section 741.04, Fla. Stat.

(2013) is at issue. The statute prohibits the issuance of a marriage license to anything other than a

"man and woman." The original Plaintiffs seek to expand that definition only to cover their

version of preferences. The intervening Plaintiff meets the standard permissive intervention and

should be so allowed.

## IN CONCLUSION

One way for the Court to see this situation is that there are no such thing as "gay people." There are only people. And people are all equally broken. We are broken sexually and in other ways. Traditional marriage is a Biblical concept that is set apart and unique and worth protecting. Yet, none of us want to be alone. All of us want to be loved. But there is a self-evident design to things that should not be thwarted as a consequence of our brokenness. Perhaps, some relationships are set apart and worth encouraging at the exclusion of all others. There is no doubt heterosexual couples who are more dysfunctional than some gay couples. However, it is what the heterosexual couple represents and possibilities of children, intimacy, and hope that their union demonstrates that makes it distinct and worth protecting. The laws of the United States should encourage a course of conduct that does not promote sexual brokenness; the domestic laws of Florida never have - see our child support laws. That which is not equal cannot not all of a sudden be declared "equal" in the name of progress because it is politically expedient by a President, who is a social organizer, not a leader.

However, in the event that the United States Court decides to give additional protections on the basis of sexual orientation (expanding the equal protection clause), then it must give special protections to all classes of sexual orientation equally to include mine. Selective expansion would be actual discrimination and intolerance. The spirit of the equal protection clause will not allow for anything else. Accordingly, I should be permitted to join as a Plaintiff as an ambassador for my unrepresented class. If the Court plans to grant the Plaintiffs' injunction

like other Courts have in similar situations, it must grant mine on the exact same basis. If the

Court denies the Plaintiffs' request, it should deny mine on the same basis. But legally speaking,

these are the only two options, if lady justice is in fact blind, I should not be treated differently

than the original Plaintiffs.

Uniformity in the law should be paramount, as an injured party with standing, a former

Judge Advocate, and a proponent of the law, I request that my motion be granted in the interest

of complete justice. This Court will be in a unique position to consider the implications of the

Plaintiffs plight in light of additional considerations presented by the intervention that will place

this Courts in a unique position that other similar Courts have not enjoyed when faced with their

laws that protect traditional marriages from being attacked. Allowing me to intervene will

uniquely give the Court additional factors to consider in deciding whether to disregard the

amendment.

Respectfully Submitted,

/s/Chris Sevier Esq./

909 Santa Rosa Blvd, #247
Fort Walton Bch, FL 32548
(615) 500 4411
ghostwarsmusic@gmail.com
BPR#026577
https://www.youtube.com/watch?v=z-82slxsrr4

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been furnished to Alan C. Winsor, Esquire,

FLorida Solicitor General, State of Florida, The Capitol PL-01, Tallahassee Florida 32399-1050, allen.winsor@myfloridalegal.com, and Adam S. Tanenbaum, Esqire, Chief Duty Solicitor General, State of Florida, The Capitol PL 01, Tallahassee, FL 32399-1050 (adam.tanenbaum@myfloridalegal.com), by Electronic mail and U.S. mail; and to John H. Armstrong, MD, FACS, Office of the the state General Surgeon, 2585 Merchants Row Boulevard, Suite 140, Tallahassee, FL 32399, Craig J. Nichols, Department of Management Services, Office of the Secretary, 4050 Esplanade Way, Tallahassee, FL 32399, Harold Bazzell, Clerk of Court and Comptroller of Washington County, FL, 129 Jackson Ave, Chipley Florida, 32428, Samuel Jacobson Esquire 1301 Riverplace Blvd. Suite 1818 Jacksonville FL 32207, sam@jacobsonwright.com, and Wm Sheppard, Esq. 215 Washington St, Jacksonville, FL 32202; sheplaw@att.net by delivering the same to a Process Service of Process on this 18th day of April 2014.

/s/Chris Sevier Esq./

909 Santa Rosa Blvd,
Fort Walton Bch, FL 32548
(615) 500 4411
ghostwarsmusic@gmail.com
BPR#026577

allen.winsor@myfloridalegal.com, sam@jacobsonwright.com, adam.tanenbaum@myfloridalegal.com, allen.winsor@myfloridalegal.com, sheplaw@att.net

## IN THE UNITED STATES DISTRICT COURT COURT NORTHERN DISTRICT OF FLORIDA TALLAHASSEE DIVISION

| | | |
|---|---|---|
| **JAMES DOMER BRENNER, CHARLES DEAN JONES, STEPHEN SCHLAIRET, and OZZIE RUSS**<br><br>**Plaintiff**<br><br>**Vs.**<br><br>**RICK SCOTT, in his official capacity as Governor of Florida; Pamela Bondi, in her official capacity as Attorney General of Florida; John H. Armstrong, in his official capacity as Surgeon General and Secretary of Health for the State of Florida; Craig J. Nichols, in his official capacity as Agency Secretary for the Florida Department of Management Services; and Harold Bazzell, in his official capacity as Clerk of the Court and Comptroller for Washington**<br><br>**Defendants** | | **CASE NO: 4:14-cv-007107-RH-CAS** |

## <u>MOTION TO INTERVENE AS A PLAINTIFF</u>

### *INTRODUCTION*

NOW COMES, I, Chris Sevier, former Judge Advocate and combat veteran, to intervene

in this matter as a Plaintiff on behalf of the other minority sexual orientation groups, whose

interest are not regarded by the existing Plaintiffs. I move pursuant to F.R.C.P. 24(a), or

alternatively, in permissive intervention pursuant to Federal Rule of Civil Procedure 24(b). The laws of the United States must be made on conviction, not feeling. If the Court is going to expand equal protection to classes on the basis of sexual orientation in the name of tolerance and equality, it must expand such protections to all classes of sexual orientation, no matter how peculiar. There are all lot of Courts around the Country faced with virtually identical litigation, by allowing me to intervene, the Court will have additional considerations presented that other Courts have not enjoyed, which could help the Court reach a more just and honorable decision. The pivotal question is whether traditional marriage between "a man and a woman" is superior to all other types. If not, my class deserves the same protections that the proponents of gay behavior do. A memorandum of law is attached. The case has just begun so allowing me to intervene is not prejudicial. If the Court does not allow me to intervene, then my class of a different kind sexual orientation will be left behind.

Respectfully Submitted,

/s/Chris Sevier Esq./

909 Santa Rosa Blvd, #247
Fort Walton Bch, FL 32548
(615) 500 4411
ghostwarsmusic@gmail.com
BPR#026577
https://www.youtube.com/watch?v=z-82slxsrr4

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been furnished to Alan C. Winsor, Esquire, FLorida Solicitor General, State of Florida, The Capitol PL-01, Tallahassee Florida 32399-1050, allen.winsor@myfloridalegal.com, and Adam S. Tanenbaum, Esqire, Chief Duty Solicitor

General, State of Florida, The Capitol PL 01, Tallahassee, FL 32399-1050
(adam.tanenbaum@myfloridalegal.com), by Electronic mail and U.S. mail; and to John H.
Armstrong, MD, FACS, Office of the the state General Surgeon, 2585 Merchants Row
Boulevard, Suite 140, Tallahassee, FL 32399, Craig J. Nichols, Department of Management
Services, Office of the Secretary, 4050 Esplanade Way, Tallahassee, FL 32399,  Harold Bazzell,
Clerk of Court and Comptroller of Washington County, FL, 129 Jackson Ave, Chipley Florida,
32428,  Samuel Jacobson Esquire 1301 Riverplace Blvd. Suite 1818 Jacksonville FL 32207,
sam@jacobsonwright.com, and Wm Sheppard, Esq.  215 Washington St, Jacksonville, FL
32202; sheplaw@att.net by delivering the same to a Process Service of Process on this 18th day
of April 2014.


/s/Chris Sevier Esq./


909 Santa Rosa Blvd,
Fort Walton Bch, FL 32548
(615) 500 4411
ghostwarsmusic@gmail.com
BPR#026577

allen.winsor@myfloridalegal.com, sam@jacobsonwright.com,
adam.tanenbaum@myfloridalegal.com, allen.winsor@myfloridalegal.com, sheplaw@att.net

s/Chris Sevier Esq./

909 Santa Rosa Blvd, #247
Fort Walton Bch, FL 32548
(615) 500 4411
ghostwarsmusic@gmail.com
BPR#026577
https://www.youtube.com/watch?v=z-82slxsrr4

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been furnished to Alan C. Winsor, Esquire, FLorida Solicitor General, State of Florida, The Capitol PL-01, Tallahassee Florida 32399-1050, allen.winsor@myfloridalegal.com, and Adam S. Tanenbaum, Esqire, Chief Duty Solicitor General, State of Florida, The Capitol PL 01, Tallahassee, FL 32399-1050 (adam.tanenbaum@myfloridalegal.com), by Electronic mail and U.S. mail; and to John H. Armstrong, MD, FACS, Office of the the state General Surgeon, 2585 Merchants Row Boulevard, Suite 140, Tallahassee, FL 32399, Craig J. Nichols, Department of Management Services, Office of the Secretary, 4050 Esplanade Way, Tallahassee, FL 32399,  Harold Bazzell, Clerk of Court and Comptroller of Washington County, FL, 129 Jackson Ave, Chipley Florida, 32428,  Samuel Jacobson Esquire 1301 Riverplace Blvd. Suite 1818 Jacksonville FL 32207, sam@jacobsonwright.com, and Wm Sheppard, Esq. 215 Washington St, Jacksonville, FL 32202; sheplaw@att.net by delivering the same to a Process Service of Process on this 18th day of April 2014.

/s/Chris Sevier Esq./

909 Santa Rosa Blvd,
Fort Walton Bch, FL 32548
(615) 500 4411
ghostwarsmusic@gmail.com
BPR#026577

allen.winsor@myfloridalegal.com, sam@jacobsonwright.com,
adam.tanenbaum@myfloridalegal.com, allen.winsor@myfloridalegal.com, sheplaw@att.net