UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

JAMES DOMER BRENNER, et al.,

     Plaintiffs,

vs.                         Case No.: 4:14-cv-00107-RH-CAS

RICK SCOTT, et al.,

     Defendants.

_____

SLOAN GRIMSLEY, et al.,

     Plaintiffs,

vs.                         Case No.: 4:14-cv-00138-RH-CAS

RICK SCOTT, et al.,

     Defendants.

_____

**PLAINTIFFS' RESPONSE TO CLERK OF COURT OF WASHINGTON COUNTY, FLORIDA ("CLERK")'S EMERGENCY MOTION FOR CLARIFICATION AND MEMORANDUM OF LAW**

Before this Court is an Emergency Motion for Clarification and Memorandum of Law filed by Defendant Clerk of Court in Washington County, Florida (Doc. 99), in which the Defendant contends he is uncertain of whether this Court's Order of August 21, 2014 (Doc. 74), requires him to issue same-sex marriage licenses to couples other than the named Plaintiffs Stephen Schlairet and Ozzie Russ, in light of § 741.05, Fla. Stat. (2014), which criminalizes the issuance of same-sex marriage licenses in this state. Underlying his confusion is an "advisory opinion" prepared by private counsel for the Florida Association of Court Clerks and Comptrollers, which advises Clerks of Court

throughout the state to refuse to issue such licenses upon risk of arrest for violation of this statute.[1]

Defendant's emergency motion brings to this Court the issue of whether entities acting as agents of with Defendants can willfully refuse to comply with this Court's Order, on the grounds that § 741.05, Fla. Stat. (2014) prohibits such compliance. While a single clerk has sought guidance from this Court, Clerks throughout the State are advising various media outlets that they intend to disregard this Court's Order. (Exhibit C). As discussed more fully in this response, there is no legal bar to enforcement of this Court's Order.

## I.    Procedural History

On February 28, 2014, Plaintiffs sued Rick Scott, in his official capacity as Governor of Florida and Pamela Bondi, in her official capacity as Attorney General of Florida. (Doc. 1). Plaintiffs requested this Court to grant declaratory relief and "any and all further relief this Court deems just and proper." *Id.* Plaintiffs filed an amended complaint on March 18, 2014 and added, *inter alia*, John H. Armstrong, in his official capacity as Surgeon General and Secretary of Health for the State of Florida. (Doc. 10). Plaintiffs sued Governor Scott because Scott is the chief executive officer of the State of Florida and is responsible for the faithful execution of the laws of the State of Florida, including the laws that exclude same-sex couples from the legal benefits of marriage within this state. (Doc. 1, 10). Plaintiffs sued Pamela Bondi because Bondi is the chief legal officer of the State of Florida and is charged with advising state and local officials

---

[1] See attached Exhibit A and B.

on questions of Florida and federal law. *Id.* Plaintiffs sued Armstrong because he is responsible for uniform enforcement of laws relating to vital records of this State and for creating forms used in registering, recording, certifying and preserving the State's vital records, including marriage certificates. *Id.*; *see also* § 382.003, Fla. Stat. (2014).

Defendants moved to dismiss. (Doc. 50). This Court dismissed Governor Scott and Attorney General Bondi as redundant because it believed that an order directed to the Secretary or the Surgeon General would be sufficient to provide *"complete relief."* *Brenner v. Scott*, 999 F. Supp. 2d 1278, 1286 (N.D. Fla. 2014) (emphasis added). This Court also opined, "If it turns out later that *complete relief* cannot be afforded against the Secretary and Surgeon General, any necessary and proper additional defendant can be added." *Id.* (emphasis added).

On August 21, 2014, this Court declared Florida's same-sex marriage laws unconstitutional on due process and equal protection grounds. *Id.* at 1293. It stayed enforcement for 91 days after lifting of the stays in *Bostic, Bishop*, and *Kitchen*, to give Defendants the opportunity to seek a longer stay from this Court or a stay from the Eleventh Circuit or Supreme Court. *Id.* at 1292. The stays in *Bostic, Bishop*, and *Kitchen* were lifted on October 6, 2014. *See Schaefer v. Bostic,* ___ U.S. ___, 135 S.Ct. 308 (2014); *Smith v. Bishop,* ___ U.S. ___, 135 S.Ct. 271 (2014); *Herbert v. Kitchen,* ___ U.S. ___,135 S.Ct. 265 (2014). Thus, the stay will expire at the end of the day on January 5, 2015.

On October 24, 2014, Defendants filed a motion to extend the stay. (Doc. 92). This Court denied all motions to alter the stay in any way. (Doc. 95). On November 18,

2014, Defendants filed a motion to extend the stay in the Eleventh Circuit.   In their motion Defendants stated, "The Health and DMS Secretaries *acknowledge that the injunctions as to them would have statewide effect, because the Secretaries have statewide duties and the order preliminary enjoins their enforcing the marriage laws.*" ~~Id.~~ at 6 n. 1 (emphasis added).   Appellants' Motion to Extend Stay of Preliminary Injunction Pending Appeal, and for Expedited Treatment of This Motion.   Respondents opposed the motion and it was denied on December 3, 2014, without dissent, by a three-judge panel of that court.

On December 15, 2014, Defendants filed a petition directed to Justice Clarence Thomas, asking that Justice Thomas issue a stay.   In their petition, Defendants stated, "The Health and DMS Secretaries *acknowledge that the injunctions as to them would have statewide effect, because the Secretaries have statewide duties and the order preliminary enjoins their enforcing the marriage laws.*"   Application to Stay Preliminary Injunctions of the United States District Court for the Northern District of Florida Pending Appeal.   On December 19, 2014, the application for stay was likewise denied. *Armstrong v. Brenner*, No. 14A650, 2014 WL 7210190, at *1 (U.S. Dec. 19, 2014).

During the pendency of these proceedings, the Florida Association of Clerk Courts and Comptrollers, sought and received an advisory opinion from private counsel, which advised the Association that this Court's Order was not applicable to the Clerks of Courts and which also concluded that issuance of same-sex marriage licenses would constitute a crime under Florida law.  (Exhibit A, p. 1-2; Exhibit B, p. 1).  On December 22, 2014, Plaintiffs served notice to all Clerks pursuant to Paragraph 4 of the Court's Order.  (Exhibit D).  Enclosed with that notice was a copy of this Court's Order as well as

the full text of § 382.003 Fla. Stat. (2013).  On December 23, 2014, Defendant Clerk of Court of Washington County filed an Emergency Motion for Clarification and Memorandum of Law.  (Doc. 99).  Plaintiffs hereby respond to that motion.

**II.    The Clerks are Bound by the Injunction as Agents or Other Persons in Active Concert With Defendant Armstrong.**

An injunction binds not only parties to a proceeding but also the parties' officers, agents, servants, employees, and attorneys, and other persons in active concert or participation with the parties.  *Alderwoods Grp., Inc. v. Garcia*, 682 F.3d 958, 971-72 (11th Cir. 2012); *Le Tourneau Co. of Ga. v. N.L.R.B.*, 150 F.2d 1012, 1013 (5th Cir. 1945); Fed. R. Civ. P. 65(d)(2).

In the present case, Defendant John H. Armstrong was sued in his official capacity as the Surgeon General and Secretary of the Department of Health for the State of Florida. *See Brenner*, 999 F. Supp. 2d at 1278; *see also* § 20.43(2), Fla. Stat. (2014) ("The head of the Department of Health is the State Surgeon General...").  This Court ordered Defendant Armstrong to take no steps to enforce or apply the following provisions on same-sex marriage: Fla. Const. art I, § 27; §§741.212 and 741.04(1), Fla. Stat. *See Brenner*, 999 F. Supp. 2d at 1293.  This Court further stated, "The preliminary injunction binds the Secretary, the Surgeon General, *and their officers, agents, servants, employees, and attorneys—and others in active concert or participation with any of them*—who receive actual notice of this injunction by personal service or otherwise." *Id.* (emphasis added).

Under the express language of § 382.003(3), Fla. Stat. (2014), the Department of Health is tasked to "[u]niformly enforc[e] the law throughout the state," in all matters relating to vital statistics.  § 382.003(3), Fla. Stat. (2014).  The Department must procure "the complete registration of all vital records in each registration district," which includes marriage records.  § 382.003(2), Fla. Stat. (2014).  The Department must also:

> *Approve all forms used in registering, recording, certifying, and preserving vital records*, or in otherwise carrying out the purposes of this chapter, and *no other forms shall be used other than those approved by the department*. The department is responsible for the *careful examination* of the certificates received monthly from the local registrars and *marriage certificates* and dissolution of marriage reports *received from the circuit and county courts*. A certificate that is complete and satisfactory shall be accepted and given a state file number and considered a state-filed record. If any such certificates are incomplete or unsatisfactory, the department shall require further information to be supplied as may be necessary to make the record complete and satisfactory.

§ 382.003(7), Fla. Stat. (2014) (emphasis added).  The Department must also "*adopt and enforce all rules necessary for the acceptance, use, production, issuance, recording, maintenance, and processing of such records, reports, and documents...*" § 382.003(10), Fla. Stat. (2014) (emphasis added).  It also, "may commence and maintain all proper and necessary actions and proceedings to enforce the rules adopted pursuant to this chapter and *may defend all actions and proceedings involving the department's powers and duties.*" § 382.0012(1), Fla. Stat. (2014) (emphasis added).

Clerks of Court are "persons who are in active concert or participation" with the Department within the meaning of Fed. R. Civ. P. 65.  Additionally, under Florida's statutory scheme, relating to the issuance of marriage licenses, the Clerks of Court act as agents for the Department within the meaning of Fed. R. Civ. P. 65.  "The phrase 'in active concert or participation' stands in [Fed. R. Civ. P. 65] in the ordinary and usual sense and means a purposeful acting of two or more persons together or toward the same

end, a purposeful acting of one in accord with the ends of the other, or the purposeful act or omission of one in a manner or by a means that furthers or advances the other." *Estate of Kyle Thomas Brennan v. Church of Scientology Flag Serv. Org.*, Inc., 2010 WL 4007591 (M.D. Fla. 2010). First, the Clerks must report to the Department with all original marriage licenses. *See* § 382.021, Fla. Stat. (2014). The Clerks must also use the forms for marriage records provided by the Department. *See* Fla. Admin. Code r. 64V-1.0131(5); § 382.003(7), Fla. Stat. (2014). Thus, the Clerks of Court are agents or *at least* in active concert with Defendant Armstrong. As agents or other persons in active concert with Defendant Armstrong, they are bound by the this Court's order. *See Alderwoods*, 682 F.3d at 971-72; *Le Tourneau*, 150 F.2d at 1013; Fed. R. Civ. P. 65(d)(2). On December 22, 2014, the Clerks were given notice to that effect. (Exhibit D).

In its advisory opinion, private counsel posited that Clerks who are not parties to the federal action are not bound by the ruling. (Exhibit A; Exhibit B). Not only does this advisory opinion fail to discuss *Loving* or the myriad number of same-sex marriage decisions rendered throughout this County this year, it also completely ignores an entire body of law relative to the enforcement of federal district court opinions voiding state statutes on constitutional grounds.[2] It, therefore, cannot form a legal basis by which to deny Plaintiffs' constitutional right to marry.

---

[2] The advisory opinion provided to the Clerks does cite the case of *Dow Jones & Co. v. Kaye*, 256 F.3d 1251, 1255 n.3 (11th Cir. 2001), for the proposition that, "An injunction against a single state official sued in his official capacity does not enjoin all state officials from the prohibited conduct." However, reliance on this case is misplaced because the case arose in an entirely different context. The court was offering support for the proposition that the district court's preliminary injunction against one judge does not enjoin every other Florida state judge from enforcing a similar gag order. Also, the

## III.   Perceived Threat of Prosecution Cannot Excuse Compliance with This Court's Order

Much alleged confusion has arisen in this case as a result of the position of some Clerks of Court that compliance with this Court's Order will subject them to criminal prosecution under § 741.05, Fla. Stat. (2014). What the Clerks and their counsel fail to acknowledge is that this statute is no more than a recitation of the penalty to be imposed for a violation of § 741.04, Fla. Stat. (2014), the substantive statute, which has been held unconstitutional by this Court. Since § 741.04, Fla. Stat. (2014) no longer has legal effect, the penalty provision of § 741.05, Fla. Stat. (2014) cannot be independently implemented.

Additionally, an unconstitutional statute is void under state law and "*can have no effect whatsoever.*" *Coral Springs St. Sys., Inc. v. City of Sunrise*, 371 F.3d 1320, 1334 (11th Cir. 2004) (emphasis added); *see also Penn v. Atty. Gen of State of Ala.*, 930 F.2d 838, 841 (11th Cir. 1991). A person cannot be prosecuted for violating an unconstitutional law. *See Penn*, 930 F.2d at 841 (quoting *Ex Parte Siebold*, 100 U.S. 371, 376-77 (1879)); *Coral Springs*, 371 F.3d at 1334 ("There is no question that an unconstitutional statute is void under state law.") To date, no law enforcement agency has indicated that it would prosecute the Clerks. (Exhibit E). In fact, State Attorney Jeff Ashton has stated that he will not prosecute clerks in Orange and Osceola counties for issuing same-sex marriage licenses. *Id.* Even if the Clerks could theoretically be prosecuted for a violation of § 741.05, Fla. Stat. (2014), they could assert the

---

statement is dicta as it was not relevant to the court's actual holding. Therefore, *Dow Jones* offers no guidance to the Clerks.

unconstitutionality of the ban as a defense.  Moreover, any convictions under this statute would be vacated in light of this Court's Order.  *See Loving v. Virginia*, 388 U.S. 1, 12 (1967) (reversing conviction based on unconstitutional statute); *see also McLaughlin v. State of Fla.*, 379 U.S. 184, 196 (1964) (reversing conviction based on unconstitutional statute).

Indeed, an analysis of whether agents for Defendants can rely on a statute which criminalizes issuance of same-sex marriage licenses must necessarily begin with *Loving*. 388 U.S. 1.  Although it is common knowledge that the *Loving* decision declared unconstitutional state laws prohibiting interracial marriage, less commonly discussed are the historical facts of *Loving*.

Mildred and Richard Loving were married in Washington, D.C. in 1958, because they were prohibited, under the threat of criminal prosecution, from doing so in their home state of Virginia.  After the couple returned to Virginia, the police received an anonymous tip about their marital status and arrested the couple for violating Sections 20-58 and 20-59 of the Virginia Code, which made it a *felony*, punishable by one to five years imprisonment, for an interracial couple to marry out of state and return to Virginia. The Lovings pled guilty to the charges and were sentenced to one year in prison, with the sentence suspended for 25 years on the condition they leave the state of Virginia.  Five years later, after moving to Washington D.C., the couple moved to vacate their criminal convictions and sentences of imprisonment, which set in motion a series of lawsuits which ultimately resulted in the *Loving* decision.  388 U.S. 1.

Had the reasoning of the advisory opinion provided to the Florida Association of Court Clerks and Comptrollers been legally sound, the *Loving* decision would have

resulted in absolutely no change in the status of interracial marriages in Virginia and throughout this country.   The Court would have declared the Virginia statute unconstitutional, the Defendants would claim inability to comply with that decision because of the existence of statutes which criminalized such marriages, and the constitutional rights of interracial couples would continue to be violated.   Instead, the court system throughout this country declared such statutes unconstitutional and their enforcement was suspended.   Nonetheless, these laws remained "on the books" in many states, with Alabama being the last state, in 2000, to amend its constitution to remove language from its laws prohibiting interracial marriage.   Once rendered, however, the *Loving* decision superseded state criminal statutes criminalizing interracial marriages.

Similarly, this Court has declared Florida's same-sex marriage laws to be unconstitutional in all respects. *See Brenner*, 999 F. Supp. 2d at 1293.   Because § 741.05, Fla. Stat. (2014), is predicated on a violation of § 741.04(1), Fla. Stat. (2014) ("Any county court judge, clerk of the circuit court, or other person who shall violate any provision of…741.04(1) shall be guilty of a misdemeanor of the first degree, punishable as provided in s. 775.082 or s. 775.083") these two statutes must be read in *pari materia*, by necessity, must rise or fall together.   This Court ruled that § 741.04, Fla. Stat. (2014), is unconstitutional, stating:

> Just last year the Court struck down a federal statute that prohibited federal recognition of same-sex marriages lawfully entered in other jurisdictions. The Florida provisions that prohibit the recognition of same-sex marriages lawfully entered elsewhere, like the federal provision, are unconstitutional. *So is the Florida ban on entering same-sex marriages.*

*Id.* at 1293 (emphasis added).   Defendants cannot be held criminally liable for violating an unconstitutional statute.   Thus, to the extent that § 741.05, Fla. Stat. (2014), is

predicated on a violation of § 741.04(1), Fla. Stat. (2014), it was held unconstitutional by this Court.   Therefore, the Clerks perceived threat of prosecution cannot excuse compliance with this Court's order.

**IV.**   **As Part of Its Inherent Authority, This Court Has the Authority to Suspend the Application of § 741.05, Fla. Stat. (2014)**

To the extent that § 741.05, Fla. Stat. (2014), impedes enforcement of this Court's Order, this Court has the authority to suspend its application.   As a general rule, federal courts, like their state counterparts, have certain "inherent powers" beyond those powers conferred by the Constitution or by Congress: "inherent powers" of federal courts include, for example, the power to enter such orders as may be necessary to give effect to their judgments, decrees, and orders and to prevent interference with, and obstruction to, their implementation. *See Coffey v. Braddy*, 372 F. Supp. 116, 125 (M.D. Fla. 1971).   In short, "inherent powers" of the Court consist of those powers that are, "necessary to preserve the authority of the court."   *See Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (1980) (stating that inherent powers "are those which are necessary to the exercise of all others"); *Young v. United States*, 481 U.S. 787, 819-20 (1987) (holding that inherent powers are those powers "necessary to permit the court to function.")

**V.**   **The Clerks  of Court Can Also Be Enjoined to Comply with This Court's Order on Other Grounds.**

Were this Court to find that the Clerks are not agents or other persons in active concert with Defendant Armstrong, the Clerks can also be enjoined to comply as nonparties who seek to interfere with a court order.   As part of its inherent powers, federal courts may enjoin persons not before the court who, having actual notice of the

proceeding, seek to block efforts to comply with the decree. *See Coffey v. Braddy*, 372 F. Supp. 116 (M.D. Fla. 1971); *Mims v. Duval County School Board*, 338 F. Supp. 1208 (M.D. Fla. 1971), *subsequent opinion*, 350 F. Supp. 553 (M.D. Fla. 1972) (injunction against demonstrators to prevent non-party disruption of school integration). Nonparties who engage in enjoined conduct can also be sanctioned when their conduct would frustrate the court's "ability to render a binding judgment." *Alderwoods*, 682 F.3d at 971-72; *See also United States v. Hall*, 472 F.2d 261 (5th Cir. 1972), cited with approval in *Golden State Bottling Co. v. NLRB*, 414 U.S. 168 (1973); *Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc.*, 96 F.3d 1390, 1395 (Fed. Cir. 1996) (holding federal court had power to punish nonparty where nonparty's activities imperiled the court's fundamental power to make a legally binding adjudication between parties properly before it), cited with approval by *Golden State Bottling Co. v. NLRB*, 414 U.S. 168 (1973); *Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc.*, 96 F.3d 1390, 1395 (Fed. Cir. 1996) ("prohibition against entering an injunction against non-parties does not mean that non-parties may not be held in contempt of court for violating injunctions directed at others"). "Rule 65(d), as a codification rather than a limitation of courts' common-law powers, cannot be read to restrict the inherent power of a court to protect its ability to render a binding judgment." *Hall*, 472 F.2d at 267. Accordingly, the Clerks can also be enjoined as nonparties who seek to interfere with a court's order.

## CONCLUSION

In sum, § 741.04, Fla. Stat. (2014), has been held to be unconstitutional by this Court. Simply, once this Court declared that statute unconstitutional, the enforcement mechanism contained in § 741.05, Fla. Stat. (2014), becomes meaningless and unenforceable. As agents of Defendant Armstrong, the Clerks of Court within the state, including Defendant Bazzell, who have received actual notice of this Court's Order, are bound to comply with it.

Respectfully submitted,

_s/ Wm. J. Sheppard_
Wm. J. Sheppard, Esquire
Florida Bar No.: 109154
Elizabeth L. White, Esquire
Florida Bar No.: 314560
Matthew R. Kachergus, Esquire
Florida Bar No.: 503282
Bryan E. DeMaggio, Esquire
Florida Bar No.: 055712
Sheppard, White, Kachergus & DeMaggio, P.A.
215 Washington Street
Jacksonville, Florida 32202
Telephone:    (904) 356-9661
Facsimile:    (904) 356-9667
Email:        sheplaw@att.net
COUNSEL FOR PLAINTIFFS

Samuel Jacobson, Esquire
Florida Bar No.: 39090
Bledsoe, Jacobson, Schmidt, Wright
    Lang & Wilkinson
1301 Riverplace Blvd., Suite 1818
Jacksonville, Florida 32207
Telephone:    (904) 398-1818
Facsimile:    (904) 398-7073
Email:    sam@jacobsonwright.com
CO-COUNSEL FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 29th, 2014, I electronically filed the foregoing with the Clerk of the Court by using CM/ECF System which will send a notice of electronic filing to the following:

| | |
|---|---|
| **Allen C. Winsor, Esquire**<br>**Adam S. Tanenbaum, Esquire**<br>**Florida Attorney General**<br>**The Capitol PL-01**<br>**Tallahassee, Florida 32399-1050** | **James Jeffery Goodman , Jr., Esquire**<br>**Jeff Goodman, P.A.**<br>**935 Main Street**<br>**Chipley, Florida 32428** |
| **Daniel Boaz Tilley, Esquire**<br>**Maria Kayanan, Esquire**<br>**ACLU Foundation of Florida, Inc.**<br>**4500 Biscayne Boulevard**<br>**Suite 340**<br>**Miami, Florida 33137** | **Horatio G. Mihet, Esquire**<br>**Liberty Counsel**<br>**PO Box 540774**<br>**Orlando, Florida 32854** |
| **Stephen F. Rosenthal, Esquire**<br>**Podhurst Orseck, P.A.**<br>**25 West Flagler Street**<br>**Suite 800**<br>**Miami, Florida 33130** | **Stephen C. Emmanuel, Esquire**<br>**Ausley & McMillen**<br>**123 South Calhoun Street**<br>**Tallahassee, Florida 32301** |

I HEREBY CERTIFY that on December 29th, 2014, a true and correct copy of the foregoing document and the notice of electronic filing was sent by United States Mail to the following non-CM/ECF participants:

N/A

_s/ Wm. J. Sheppard_
ATTORNEY

Ldh[Brenner.james.expedite.support.motion]

# EXHIBIT A

# GREENBERG TRAURIG

## MEMORANDUM

To:      FACC

From:    John Londot, Esq.
         Hope Keating, Esq.
         Michael Moody, Esq.

Date:    July 1, 2014

Re:      *Potential Invalidation of Florida's Same-Sex Marriage Ban;*
         *Clerks' Duties*

---

### INTRODUCTION

Florida's same-sex marriage ban is subject to challenge in two federal cases before the United States District Court for the Northern District of Florida, and in two state-court cases in Miami-Dade County and Monroe County, with a potentially imminent decision. If the ban is declared invalid by any of these courts, Clerks' day-to-day operations may be affected, since the Clerks issue marriage licenses pursuant to state law. Many Clerks may be faced with the immediate appearance of numerous same-sex couples wishing to obtain marriage licenses, perhaps seeking to have their ceremonies performed in the Clerks' offices.

Should a court declare the ban invalid, the obligations with respect to Clerks' offices depends upon whether they are named defendants in the litigation. If a trial court declares Florida's same-sex marriage ban unconstitutional, the decision is technically binding *only* upon the parties to the suit – but is otherwise not mandatory for Clerks who are not named as defendants. Thus, ordinarily, Clerks in other jurisdictions may consider it prudent, but not necessary, to follow the example of the deciding court. However, as the Clerks know, issuance of marriage licenses is one of the ministerial duties of the Clerks' offices, governed by Sections 741.01 and 741.04, Florida Statutes, and issuance of a license in violation of Section 741.04 – which bans issuance to same-sex couples – is a misdemeanor of the first degree, punishable by imprisonment of not more than one year and a fine of not more than $1,000. §§741.05, 775.082, and 775.083, FLA. STAT. Thus, Clerks who are not named defendants and who issue licenses to same-sex couples may be susceptible to a charge of violating criminal law.

This thorny situation will hopefully be avoided, since a decision declaring Florida's same-sex marriage ban would likely be stayed pending appeal. In federal court, all recent district court decisions nationwide on the subject of same-sex marriage have stayed their rulings, pending appeal; and in state court, a stay pending review is automatic upon a public official's filing of a notice of appeal.

To:   FACC
From: Greenberg Traurig, P.A.
Date: July 1, 2014
Re:   *Potential Invalidation of Florida's Same-Sex Marriage Ban; Clerks' Duties*          Page 2

## I.     *Florida's Same-Sex Marriage Ban*

Currently, Florida law bans same-sex marriage. Specifically, a 1997 statute provides (underscore added):

> 741.212   Marriages between persons of the same sex.—
> (1)   Marriages between persons of the same sex entered into in any jurisdiction, whether within or outside the State of Florida, the United States, or any other jurisdiction, either domestic or foreign, or any other place or location, or relationships between persons of the same sex which are treated as marriages in any jurisdiction, whether within or outside the State of Florida, the United States, or any other jurisdiction, either domestic or foreign, or any other place or location, are not recognized for any purpose in this state.
> (2)   The state, its agencies, and its political subdivisions may not give effect to any public act, record, or judicial proceeding of any state, territory, possession, or tribe of the United States or of any other jurisdiction, either domestic or foreign, or any other place or location respecting either a marriage or relationship not recognized under subsection (1) or a claim arising from such a marriage or relationship.
> (3)   For purposes of interpreting any state statute or rule, the term "marriage" means only a legal union between one man and one woman as husband and wife, and the term "spouse" applies only to a member of such a union.

Similarly, a related 1997 statute specifically requires the Clerks to only issue marriage licenses to opposite-sex couples (underscore added):

> 741.04   Marriage license issued.—
> (1)   No county court judge or clerk of the circuit court in this state shall issue a license for the marriage of any person unless there shall be first presented and filed with him or her an affidavit in writing, signed by both parties to the marriage, providing the social security numbers or any other available identification numbers of each party, made and subscribed before some person authorized by law to administer an oath, reciting the true and correct ages of such parties; unless both such parties shall be over the age of 18 years, except as provided in s. 741.0405; and unless one party is a male and the other party is a female.…

Finally, Article I, Section 27 of the Florida Constitution was added pursuant to popular vote[1] in 2008, providing:

---

[1] The popular vote was 61.92% in support of the amendment, and 31.08% against.

To:     FACC
From:   Greenberg Traurig, P.A.
Date:   July 1, 2014
Re:     *Potential Invalidation of Florida's Same-Sex Marriage Ban; Clerks' Duties*        Page 3

> Inasmuch as marriage is the legal union of only one man and one woman as husband and wife, no other legal union that is treated as marriage or the substantial equivalent thereof shall be valid or recognized.

Sections 741.212 and 741.04(1), Florida Statutes, along with Article I, Section 27 of the Florida Constitution, are hereinafter referred to as "Florida's same-sex marriage ban."

Issuance of marriage licenses is a ministerial duty, and issuance in violation of Section 741.04 is a misdemeanor of the first degree, punishable by imprisonment of not more than one year and a fine of not more than $1,000. §§741.05, 775.082, and 775.083, FLA. STAT.

## II.    Court Challenges to Florida's Same-Sex Marriage Ban

In four recently-filed cases in Florida – two in the Northern District of Florida (federal court) and two in state court – plaintiffs seek to invalidate Florida's same-sex marriage ban as unconstitutional in violation of the Due Process and Equal Protection clauses of the U.S. Constitution. Each case includes a claim for a declaratory judgment to declare the ban unconstitutional, and a motion for injunctive relief seeking to enjoin the defendants from enforcing the ban.

The first federal case filed was *Grimsley v. Scott*, Case No. 4:14-cv-00107-RH-CAS, filed February 28, 2014 in the Northern District of Florida, Tallahassee Division, before Judge Robert Hinkle. The second was *Brenner v. Scott*, Case No. 4:14-cv-138, filed March 12, 2014, also in the Northern District. Judge Hinkle consolidated both cases for case-management purposes under Consolidated Case No. 4:14-cv-00107-RH-CAS (the first-filed *Grimsley* case number). Procedurally, the motion for injunctive relief in *Grimsley* (and perhaps in both cases) is likely to be heard in the near future, though a hearing is not yet scheduled. After the hearing, based on past practice, Judge Hinkle is likely to take some time to write a considered opinion, rather than rule from the bench. Therefore, even if a hearing on the motions for injunctive relief occurred tomorrow, there would likely be at least several weeks before a decision.

The two state-court cases are pending at the circuit court level:

1.  *Pareto v. Ruvin*, Case No. 14-1661-CA-(24), in the Circuit Court of the Eleventh Circuit Court in and for Miami-Dade County (complaint filed January 21, 2014). Motions for summary judgment are pending, but the State's motion to intervene was just granted on June 27, 2014, so a decision may not be as imminent as the fact of pending summary judgment motions might otherwise suggest. However, *Pareto* is still ripe for decision should the Court wish to move quickly.

To:     FACC
From:   Greenberg Traurig, P.A.
Date:   July 1, 2014
Re:     *Potential Invalidation of Florida's Same-Sex Marriage Ban; Clerks' Duties*     Page 4

2.   *Huntsman v. Heavilin*, Case No. 2014-ca-0305-k, in the Circuit Court of the Sixteenth Judicial Circuit in and for Monroe County (complaint filed April 1, 2014). In *Huntsman*, a motion for summary judgment was filed on May 20, 2014. A hearing set for July 7, 2014. However, as in *Pareto*, the State's motion to intervene was just granted on June 27, 2014.

III.    *Likelihood of Invalidation of Florida's Same-Sex Marriage Ban*

Although the constitutional aspect of Florida's same-sex marriage ban was passed by popular vote, the tide of public opinion appears to have turned. For example, Quinnipiac polls of Floridians show that while in January 2009, 27% supported same-sex marriage, by April 2014 the number had almost doubled to 56%. This is generally consistent with public-opinion reversals in other states. *See, e.g.*, "A Shifting Landscape: A Decade of Change in American Attitudes about Same-Sex Marriage and LGBT Issues," Public Religion Research Institute, February 26, 2014 (see particularly discussion beginning on page 8, "Few public policy issues have experienced as dramatic a shift in public opinion as same-sex marriage....Today, with few exceptions, surveys generally find that a majority of Americans favor same-sex marriage, while opposition generally remains around the 40% mark.").

Public opinion polling, of course, does not directly affect the legal decisions on the matter, but does give courts (both federal and state) a basis to strike down same-sex marriage bans on the theory that there has been an "evolving understanding of the meaning of equality," *see United States v. Windsor*, 133 S.Ct. 2675, 2693 (2013) (striking down the Defense of Marriage Act (commonly called "DOMA"), which denied federal benefits to same-sex couples married under state laws), which leads courts to finding a federal "equal protection"-derived fundamental right to same-sex marriage. Indeed, such has been the trend among federal district courts around the country. As recently as last week, the Southern District of Indiana struck down that state's same-sex marriage ban, and, discussing *Windsor* (and an older case, *Baker v. Nelson*, 191 N.W.2d 185 (Minn. 1971), *aff'd*, 409 U.S. 810 (1972)), in which the U.S. Supreme Court affirmed a state-court holding that there was no fundamental right to same-sex marriage), observed that its decision was one in a unanimous chorus of federal district courts:

> ...in the last year even more has changed in the Supreme Court's jurisprudence shedding any doubt regarding the effect of *Baker*. The Supreme Court granted certiorari for two cases involving the constitutionality of laws adversely affecting individuals based on sexual orientation. First, in *United States v. Windsor*, the Supreme Court invalidated Section 3 of The Defense of Marriage Act ("DOMA"), which defined marriage for purposes of federal law as "only a legal union between one man and one woman." 133 S.Ct. at 2694 (quoting 1 U.S.C. § 7). The Court noted that the differentiation within a state caused by DOMA "demeans the couple, whose moral and sexual choices the Constitution protects." *Windsor*, 133 S.Ct. at 2694. Additionally, the Court

To:     FACC
From:   Greenberg Traurig, P.A.
Date:   July 1, 2014
Re:     *Potential Invalidation of Florida's Same-Sex Marriage Ban; Clerks' Duties*        Page 5

found that the purpose of DOMA "is to ensure that if any State decides to recognize same-sex marriages, those unions will be treated as second-class marriages." *Id.* at 2693. Second, the Supreme Court dismissed an appeal of California's prohibition on same-sex marriages, not because *Baker* rendered the question insubstantial, but because the law's supporters lacked standing to defend it. *Hollingsworth v. Perry*, 133 S.Ct. 6252 (2013). These developments strongly suggest, if not compel, the conclusion that *Baker* is no longer controlling and does not bar the present challenge to Indiana's laws. *See Windsor v. United States*, 699 F .3d 169, 178 (2d Cir.2012), *aff'd*, 133 S.Ct. 2675 (2013) (holding that *Baker* was not controlling as to the constitutionality of DOMA, reasoning that "[i]n the forty years after *Baker*, there have been manifold changes to the Supreme Court's equal protection jurisprudence" and that "[e]ven if *Baker* might have had resonance...in 1971, it does not today").

The court acknowledges that this conclusion is shared with all other district courts that have considered the issue post-*Windsor*.[2]

*Baskin v. Bogan*, 2014 WL 2884868, *6 (S.D. Ind. June 25, 2014). The state court cases of *Pareto* and *Huntsman*, are faced with the same questions.

The first federal *appellate* court ruling consistent with this trend occurred (also) on June 25, 2014, when the 10th Circuit Court of Appeals affirmed the striking down of Utah's same-sex marriage ban,[3] *Kitchen v. Herbert*, No. 13-4178, 2014 WL 2868044 (10th Cir. June 25, 2014), with words that will no doubt be cited by plaintiffs in Florida:

We hold that the Fourteenth Amendment protects the fundamental right to marry, establish a family, raise children, and enjoy the full protection of a state's marital laws. A state may not deny the issuance of a marriage

---

[2] *See Wolf v. Walker*, No. 3:14-cv-00064-bbc, 2014 WL 2558444, 3-6 (W.D. Wisc. June 6, 2014); *Whitewood v. Wolf*, No. 1:13-cv-1861, 2014 WL 2058105, 4-6 (M.D. Penn. May 20, 2014); *Geiger v. Kitzhaber*, No. 6:13-cv-01834-MC, 2014 WL 2054264, *1 n .1 (D. Or. May 19, 2014); *Latta v. Otter*, 1:13-cv-482-CWD, 2014 WL 1909999, 7-10 (D. Idaho May 13, 2013); *DeBoer v. Snyder*, 973 F.Supp.2d 757, 773 n.6 (E.D. Mich. 2014); *DeLeon v. Perry*, 975 F.Supp.2d 632, 648 (W.D. Tex. 2014); *Bostic v. Rainey*, 970 F.Supp.2d 456, 469-70 (E.D. Va. 2014); *Bishop v. U.S. ex rel. Holder*, 962 F.Supp.2d 1252, 1274-77 (N.D. Okla. 2014); *McGee v. Cole*, No. 3:13-cv24068, 2014 WL 321122, 8-10 (S.D. W.Va. Jan. 29, 2014); *Kitchen v. Herbert*, 961 F.Supp.2d 1181, 1195 (D. Utah 2013); *Love v. Beshear*, Case No. 3:13-cv-750-H (W.D. Ky. July 1, 2014) (invalidating Kentucky's same-sex marriage ban, but staying its order pending resolution by the 6th Circuit Court of Appeals).

[3] The U.S. Supreme Court is not likely to hear the matter (assuming it chooses to at all) until 2015, with a decision perhaps as late as 2016.

To:   FACC
From: Greenberg Traurig, P.A.
Date: July 1, 2014
Re:   *Potential Invalidation of Florida's Same-Sex Marriage Ban; Clerks' Duties*          Page 6

license to two persons, or refuse to recognize their marriage, based solely upon the sex of the persons in the marriage union.

*Id.* at *1.

In sum, the possibility that Judge Hinkle or the judges in the *Pareto* and *Huntsman* cases will strike down Florida's same-sex marriage ban appears to be very real.

### IV.   Clerks' Obligations If Florida's Same-Sex Marriage Ban Is Invalidated

This section addresses the effects of a ruling that Florida's same-sex marriage ban is unconstitutional by (a) the state courts, or (b) the Northern District (federal) Court.  It also addresses the likelihood of a stay of judgment in each jurisdiction.

#### A.   Ruling of Invalidity by the State Courts; Automatic Stay Pending Review

If one of the state court cases results in a ruling that the law is unconstitutional, the parties to the lawsuit – including any Clerk who is a party – would be immediately bound by the ruling.  Clerks who are not a party to the action would not be bound by the ruling during the pendency of the appeal, since decisions of Florida circuit courts acting in a trial capacity can only bind the immediate parties. *Taylor v. Sturgell*, 128 S.Ct. 2161, 2171 (2008) ("we have often repeated the general rule that 'one is not bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he has not been made a party by service of process.'") (citations omitted); *In re Guardianship of Shell*, 978 So. 2d 885, 891 (Fla. 2d DCA 2008) (citing *Leighton v. First Universal Lending, LLC*, 925 So. 2d 462, 464 (Fla. 4th DCA 2006) ("'A court is without jurisdiction to issue an injunction which would interfere with the rights of those who are not parties to the action.  An injunction can lie only when its scope is limited in effect to the rights of parties before the court.'")) (other citations omitted).  Thus, for Clerks who are not named in the litigation, Florida's same-sex marriage ban would still be in effect.

If a Florida district court of appeal affirms the invalidation of the ban, the ban would effectively be stricken state-wide, as long as there is no contrary ruling by another district court.  "[I]n the absence of inter-district conflict or contrary precedent from the Florida Supreme Court, the decision of a district court of appeal is binding throughout the State." *Pardo v. State*, 596 So. 2d 665, 666 (1992).

A court may on its own motion stay, limit, or otherwise condition the entry of the order imposing a stay. *Mariner Health Care of Nashville, Inc. v. Baker*, 739 So. 2d 608, 609 (Fla. 1st DCA 1999) (noting the general principle that trial court has discretion to create conditions of stay pending review).  It is unclear whether the judges involved in the two state-court cases are

To:     FACC
From:   Greenberg Traurig, P.A.
Date:   July 1, 2014                                                          Page 7
Re:     *Potential Invalidation of Florida's Same-Sex Marriage Ban; Clerks' Duties*

likely to stay their rulings. But once a public officer (i.e., a Clerk) who is a party to a case files a notice of appeal, the judgment is automatically stayed pending review. Fla. R. App. P. 9.310(b)(2) ("the filing of a notice shall automatically operate as a stay pending review...when the state, any public officer in an official capacity, board, commission, or other public body seeks review."). Such a stay will remain in effect until a mandate issues, unless otherwise modified or vacated.[4] Fla. R. App. P. 9.310(e); *Boutwell v. Nichol's Alley of Jacksonville, Inc.*, 364 So. 2d 1246 (Fla. 1st DCA 1978), *cert. denied*, 376 So. 2d 74 (Fla. 1979).

In the event there is a period of time between the issuance of the ruling and the notice of appeal, the ruling would stand until such time as a notice of appeal is filed. During this time, the Clerk who is bound by the ruling (named as a defendant) would be obligated to comply with the invalidation and issue marriage licenses to same-sex couples. However, it would be advisable for the Clerk who issues such a license to do so with a written advisory that the license is subject to invalidation in the event the ruling is overturned on appeal.[5] As stated above, Clerks who are not a party to the action would not be bound by the ruling during the pendency of the appeal. *See Taylor*, 553 U.S. 880.

**B.      Ruling of Invalidity by the Northern District;
         Likelihood of Stay**

If the District Court finds a federal constitutional right to same-sex marriage and declares the ban unconstitutional in *Brenner* and *Grimsley* ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬ *See Taylor*, *Stinger* ▬▬▬▬▬▬▬▬▬ 553 U.S. ▬▬ 161, 174 (2008). In fact, the greater weight of authority indicates that the District Court's ruling would not have precedential effect on other courts, state or federal (though courts could consider it for its persuasive value).[6]

_____

[4] If a stay is entered, the trial court may extend a stay, impose any lawful conditions, or vacate the stay. Fla. R. App. P. 9.310(b)(2). But the stay should be vacated or dissolved only in the most "compelling circumstances." *St. Lucie County v. North Palm Development Corp.*, 444 So. 2d 1133 (Fla. 4th DCA 1984); *Reform Party of Fla. v. Black*, 885 So. 2d 303, 306 n.3 (Fla. 2004). In consideration of "compelling circumstances" courts are to consider "the likelihood of irreparable harm if the stay is not granted and the likelihood of success on the merits by the entity seeking to maintain the stay." *Mitchell v. State*, 911 So. 2d 1211 (Fla. 2005).

[5] Once an appeal is filed, a district court of appeal must hear a case involving the invalidation of a state statute. Fla. R. App. P. 9.030(b)(1)(A). If a district court of appeal affirms the invalidation of a statute, or otherwise declares a statute invalid, a party to the matter may then invoke the jurisdiction of the Florida Supreme Court, which is required to hear such appeals. Art. V, § 3(b)(1), Fla. Const.

To:    FACC
From:  Greenberg Traurig, P.A.
Date:  July 1, 2014
Re:    *Potential Invalidation of Florida's Same-Sex Marriage Ban; Clerks' Duties*        Page 8

For the parties to the lawsuits, absent a stay of such a judgment, the injunction would be immediately effective, and the state laws ineffective. The subject Clerks would then ordinarily be obligated to issue marriage licenses to same-sex couples should they appear the next day. Federal Rule of Civil Procedure 62(a) provides for an automatic 14-day stay of judgments, but expressly excepts injunctions, unless the issuing court orders otherwise. Therefore, injunctive relief would be immediately effective unless the Court orders otherwise. *See* Fed. R. Civ. P. 62(a) ("AUTOMATIC STAY; EXCEPTIONS FOR INJUNCTIONS, RECEIVERSHIPS, AND PATENT ACCOUNTINGS. Except as stated in this rule, no execution may issue on a judgment, nor may proceedings be taken to enforce it, until 14 days have passed after its entry. But unless the court orders otherwise, the following are not stayed after being entered, even if an appeal is taken: (1) an interlocutory or final judgment in an action for an injunction...."). Nor does an appeal, by itself, stay a judgment. *See, e.g., Newhall v. Offshore Logistics Int'l*, 803 F .2d 821, 827 (5th Cir. 1986) ("An appeal of an order does not have the affect [sic] of an automatic stay of that order."); *Florida Businessmen for Free Enterprise v. City of Hollywood*, 684 F.2d 956, 959 (5th Cir. 1981) (noting that an injunction pending appeal of a district court order invalidating state law is "extraordinary relief that should be granted sparingly").

Still, if injunctive relief is granted in federal court, there are several methods by which the injunction may be stayed:

1.  *Sua sponte by the District Court.* Before an appeal is pending the District Court may stay, limit, or otherwise condition the entry of any order or injunction pursuant to Rule 62(a). *See, e.g., Brotherhood of Locomotive Engineers v. Missouri-Kansas-Texas R.R. Co.*, 363 U.S. 528, 530 (1960) (stating that conditions could be imposed upon the grant of injunctive relief). In addition, if an appeal is pending, the District Court may stay enforcement of its injunction under Rule 62(c). That Rule expressly provides for such a stay: "While an appeal is pending from an

---

[6] *See Doe v. Pryor*, 344 F. 3d 1282, 1286 (11th Cir. 2003) ("The only federal court whose decisions bind state courts is the United States Supreme Court.") (citing *Glassroth v. Moore*, 335 F.3d 1282, 1302 n.6 (11th Cir. 2003) ("[S]tate courts when acting judicially, which they do when deciding cases brought before them by litigants, are not bound to agree with or apply the decisions of federal district courts and courts of appeal.") (citing *Arizonans for Official English v. Arizona*, 520 U.S. 43, 58 n. 11, 117 S.Ct. 1055, 1064 n. 11 (1997); *Powell v. Powell*, 80 F.3d 464, 467 (11th Cir. 1996)); *see also State v. Dwyer*, 332 So. 2d 333, 334-35 (Fla. 1976) (Florida courts were bound by the Florida Supreme Court's decision that a statute of that state is constitutional even though the Fifth Circuit had since declared the same statute unconstitutional); *Titus v. State*, 696 So. 2d 1257 (Fla. 4th DCA 1997) ("a Florida District Court of Appeal takes its direction on matters of federal constitutional law first from the United States Supreme Court and, in the absence of definitive precedent from that Court, from the Florida Supreme Court."); *see also* David L. Shapiro, *State Courts and Federal Declaratory Judgments*, 74 NW. U. L. REV. 759, 771 (1979) ("only the Supreme Court sits atop the state courts in the national hierarchy. Other federal courts are no more than coordinate with the state courts on issues of federal law.").

To:     FACC
From:   Greenberg Traurig, P.A.
Date:   July 1, 2014
Re:     *Potential Invalidation of Florida's Same-Sex Marriage Ban; Clerks' Duties*     Page 9

interlocutory order or final judgment that grants, dissolves, or denies an injunction, the court may suspend, modify, restore, or grant an injunction." The factors for a district court to consider are (1) the likelihood of success on appeal, (2) the threat of irreparable harm absent a stay, (3) the absence of harm to opposing parties if the stay is granted, and (4) any risk of harm to the public interest. *See, e.g., Siebert v. Allen*, 506 F.3d 1047, 1049 (11th Cir. 2007). Movants seeking a stay pending appeal "need not always establish a high probability of success on the merits" but instead must show, at a minimum, the existence of "serious questions going to the merits." *See, e.g., Grutter v. Bollinger*, 247 F.3d 631, 632-33 (6th Cir. 2001).

2.      *On motion to the District Court.* A party may appeal and request a stay from the District Court pending the appeal pursuant to Federal Rule of Civil Procedure 62(c). The same considerations and factors at issue as in the Court's *sua sponte* stay, described above, would be determinative. Note, however, that the mere filing of a motion to stay does not stay the judgment or order. *See* Fed. R. Civ. P. 62(c); *In re Zapata Gulf Marine Corp.*, 941 F.2d 293, 295 (5th Cir. 1991) (a district court does, however, have the authority to stay the underlying judgment or order while considering post-trial motions).

3.      *On motion to the Eleventh Circuit Court of Appeals.* A party may appeal and seek a stay from the Eleventh Circuit Court of Appeals pursuant to Federal Rule of Appellate Procedure 8(a). A party must ordinarily wait until its motion for a stay is denied by the district court before seeking a stay in the appellate court. *See* Fed. R. App. P. 8(a)(1)(A), (C). However, a motion seeking a stay pursuant to Federal Rule of Appellate Procedure 8(a)(1) may be made directly to a court of appeals if moving first in the district court would be impracticable." *See* Fed. R. App. P. 8(a)(2)(A)(i), (ii). The factors, again, are those set forth in *Siebert v. Allen*, above.

4.      *On motion to the U.S. Supreme Court.* Finally, the U.S. Supreme Court may stay enforcement. *See, e.g., Herbert v. Kitchen*, 134 S.Ct. 893 (Jan. 6, 2014) (staying order determining Utah's same sex marriage ban to be unconstitutional until disposition of appeal in the Tenth Circuit Court of Appeals.

        In any scenario in federal court, Judge Hinkle appears likely to acknowledge that because that question of same-sex marriage involves such a fundamental institution, with all the legal implications derived therefrom, the threat of irreparable harm and the risk of harm to the public interest if there were a reversal of course -- or potentially two reversals, first at the Eleventh Circuit and then at the U.S. Supreme Court -- likely weigh in favor of granting a stay. Moreover, following the Supreme Court's issuance of the stay in *Herbert v. Kitchen*, 134 S.Ct. 893 (2014), *all* federal district courts issuing judgments on the question of same-sex marriage -- perhaps

To:      FACC
From:   Greenberg Traurig, P.A.
Date:   July 1, 2014
Re:      *Potential Invalidation of Florida's Same-Sex Marriage Ban; Clerks' Duties*          Page 10

cognizant of the unsettled precedential nature of their rulings – have also granted stays of their rulings, pending appeals to their respective appellate courts. *See Baskin v. Bogan,* 2014 WL 2884868, *6 (S.D. Ind. June 25, 2014); *and see* note 2, above.

Thus, while it appears likely that the Northern District will in fact invalidate the ban, it appears just as likely that the court would stay its judgment. Such a stay would be effective through a decision by the Eleventh Circuit, which would be a year or more away, and possibly even through a decision by the Supreme Court – which, of course, could issue a state-wide (and likely nationally affective) ruling.

If there is a period of time between the issuance of the ruling and a stay, the ruling would be effective until such time as the stay is entered. During this time, just as in a state-court ruling, the Clerk who is named as a defendant would be obligated to issue marriage licenses to same-sex couples. Again, it would be advisable for such a Clerk to provide a written advisory regarding the license's potential invalidation.

### CONCLUSION

The likelihood of a near-future invalidation of Florida's same-sex marriage ban, as set forth in Sections 741.212 and 741.04(1), Florida Statutes, and Article I, Section 27 of the Florida Constitution, appears strong. In such case, absent a stay of injunctive relief, named-defendant Clerks would be immediately obligated to provide marriage licenses to same-sex couples in the same way they would provide licenses to opposite-sex couples. However, it is likely a stay would issue, and the injunction against enforcement of Florida's same-sex marriage ban would be in a "time-out" status until the question is resolved by the U.S. Supreme Court: in state court, a stay is automatic if a named-defendant Clerk files a notice of appeal, and in federal court, all districts appear to be staying their own rulings in light of the U.S. Supreme Court's example.

Clerks who are not named defendants in the litigation would not technically be bound by a decision of the Northern District of Florida, or by the circuit courts. While such Clerks might feel public pressure to follow the guidance of the decision of a court of competent jurisdiction (but no precedential authority), Florida's same-sex marriage ban would still be in place unless they were named parties in one of the lawsuits striking the ban. Thus, issuing same-sex marriage licenses would place them at risk of criminal violation of Florida's same-sex marriage ban – if and until the ban is invalidated by a Florida district court of appeal (absent inter-district conflict), the Florida Supreme Court, or the U.S. Supreme Court.

# EXHIBIT B

# GREENBERG TRAURIG

## MEMORANDUM

| | |
|---|---|
| **To:** | FACC |
| **From:** | Fred Baggett, Esq. <br> John Londot, Esq. <br> Hope Keating, Esq. <br> Michael Moody, Esq. |
| **Date:** | December 15, 2014 |
| **Re:** | Addendum to July 1, 2014 Memorandum |

---

### Background

On July 1, 2014 our firm provided you with a memorandum, pursuant to your request, detailing the obligations of Florida's clerks of court in light of the possibility that either Florida's state courts or the United States District Court for the Northern District of Florida would find Florida's same-sex marriage ban unconstitutional. A copy of our July 1, 2014 memorandum is attached hereto.

In the memorandum, we concluded that "[t]he likelihood of a near-future invalidation of Florida's same-sex marriage ban, as set forth in sections 741.212 and 741.04(1), Florida Statutes, and article I, section 27 of the Florida Constitution, appears strong." We further concluded:

> Clerks who are not named defendants in the litigation would not technically be bound by a decision of the Northern District of Florida, or by the circuit courts. While such Clerks might feel public pressure to follow the guidance of the decision of a court of competent jurisdiction (but no precedential authority), Florida's same-sex marriage ban would still be in place unless they were named parties in one of the lawsuits striking the ban. Thus, issuing same-sex marriage licenses would place them at risk of criminal violation of Florida's same-sex marriage ban – if and until the ban is invalidated by a Florida district court of appeal (absent inter-district conflict), the Florida Supreme Court, or the U.S. Supreme Court.

Our conclusion was based on rules of law that a person who is not a party to the litigation cannot be bound by a trial court's order or injunction, and that a federal district court's order (or a Florida circuit court's order) does not have binding precedential effect on other courts, state or federal.

To:    FACC
From:  Greenberg Traurig, P.A.
Date:  December 15, 2014                                                      Page 2
Re:    Addendum to July 1, 2014 Memorandum

In the memorandum we specifically discussed the consolidated cases of *Grimsley v. Scott*, Case No. 4:14-cv-00107-RH/CAS, and *Brenner v. Scott*, Case No. 4:14-cv-138-RH/CAS, which were then pending in the United States District Court for the Northern District of Florida. On August 21, 2014, Judge Hinkle entered his *Order Denying Motions to Dismiss, Granting a Preliminary Injunction, and Temporarily Staying the Injunctions* ("Order"). In the Order, Judge Hinkle held "marriage is a fundamental right as that term is used in cases arising under the Fourteenth Amendment's Due Process and Equal Protection Clauses, that Florida's same-sex marriage provisions thus must be reviewed under strict scrutiny, and that, when so reviewed, the provisions are unconstitutional." Judge Hinkle awarded injunctive relief, in pertinent part, directing that the Washington County Clerk issue a marriage license to the two un-wed plaintiffs, as follows:

> The defendant Clerk of Court of Washington County, Florida, must issue a marriage license to Stephen Schlairet and Ozzie Russ. The deadline for doing so is the later of (a) 21 days after any stay of this preliminary injunction expires or (b) 14 days after all information is provided and all steps are taken that would be required in the ordinary course of business as a prerequisite to issuing a marriage license to an opposite-sex couple. The preliminary injunction set out in this paragraph will take effect upon the posting of security in the amount of $100 for costs and damages sustained by a party found to have been wrongfully enjoined. The preliminary injunction binds the Clerk of Court and his officers, agents, servants, employees, and attorneys—and others in active concert or participation with any of them—who receive actual notice of this injunction by personal service or otherwise.

Order, ¶ 6. Thus, while the Order declares Florida's same-sex marriage ban unconstitutional, the injunctive relief granted by Judge Hinkle was specific to the parties before the court.

Judge Hinkle entered a stay of the injunction pending appeal, but the stay expires at the end of the day on January 5, 2015. In light of the pending expiration of the stay, you have now requested that we specifically address the Order and the scope of its application. Our evaluation of this issue requires an analysis of (1) whether Judge Hinkle's injunctive relief applies to clerks of court who were not a party to the Northern District case, and (2) whether other courts in Florida are bound by Judge Hinkle's ruling so as to prevent the prosecution of non-party clerks of court. Significantly, unlike other states that have imposed bans on same-sex marriage, Florida imposes criminal penalties specifically on clerks of court who issue same-sex marriage licenses.

**Analysis**

*Scope of Injunctive Relief*

It is a general principle of law, derived from federal and state due process requirements, that a person is not bound by a trial court's judgment in litigation in which he or she is not designated as party or to which he or she has not been made a party by service of process.

To:   FACC
From: Greenberg Traurig, P.A.
Date:  December 15, 2014                                          Page 3
Re:   Addendum to July 1, 2014 Memorandum

*Taylor v. Sturgell,* 553 U.S. 880, 884 (2008); *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd,* 484 U.S. 97, 104 (1987). In other words, a trial court does not have jurisdiction or power over a non-party. An injunction binds only parties to a proceeding, the parties' officers, agents, servants, employees, and attorneys, and other persons acting in concert or participation with the parties with regard to property that is the subject of the injunction. *Alderwoods Grp., Inc. v. Garcia,* 682 F.3d 958, 971-72 (11th Cir. 2012); *Le Tourneau Co. of Ga. v. N.L.R.B.,* 150 F.2d 1012, 1013 (5th Cir. 1945)[1]; Fed. R. Civ. P. 65(d)(2). Notably, it has been specifically held that an injunction against a single state official sued in his official capacity does not enjoin all state officials. *Dow Jones & Co., Inc. v. Kaye,* 256 F.3d 1251, 1255 n.3 (11th Cir. 2001) ("An injunction against a single state official sued in his official capacity does not enjoin all state officials from the prohibited conduct.").

       Additionally, every injunction must state in specific terms and reasonable detail the conduct it restrains or requires. *Garrido v. Dudek,* 731 F.3d 1152, 1159 (11th Cir. 2013); Fed. R. Civ. P. 65(d)(1). "The specificity requirements of Rule 65(d) are designed to prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the possible founding of a contempt citation on a decree too vague to be understood." *Garrido,* 731 F.2d at 1159.

       In *Grimsley* and *Brenner,* the only clerk of court who was a party to the case in the Northern District, and over whom Judge Hinkle had jurisdiction, was the Washington County Clerk. In this regard, Judge Hinkle specifically enjoined only the Washington County Clerk with regard to the issuance of marriage licenses to same-sex couples. While we recognize that there is case law suggesting that a government official may abide by an order of a federal district court issued in a case to which he or she was not a party, we have uncovered no case law stating that a non-party official, or any other non-party, is bound by such order.[2] Therefore, we do not

_____

[1] Decisions of the Fifth Circuit issued prior to October 1, 1981 are binding precedent for courts of the Eleventh Circuit. *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir. 1981).

[2] Cases have been cited by others for the proposition that government officials who are not parties to an action are obligated to abide by a trial court's ruling declaring a statute unconstitutional. However, such cases do not state that non-party officials are bound by a trial court's order. Nor do the suggested cases involve a statute – like the statute at issue here – that specifically criminalizes the conduct involved. *See Made in the USA Found. v. United States,* 242 F.3d 1300, 1309-11 (11th Cir. 2001) (in analyzing plaintiffs' standing, which involved question of whether the President could be ordered to take certain acts, and in finding standing appropriate because lower executive branch officials would be bound by decision, the court observed in dicta "we may assume it is substantially likely that the President and other executive and congressional officials would abide by an authoritative interpretation of the census statute and constitutional provision by the District Court, even though they would not be directly bound by such determination.") (quoting four Justices in *Franklin v. Massachusetts,* 505 U.S. 788, 803 (1992) (emphasis added) (*and see Franklin,* 505 U.S. at 825 expressly disagreeing with the four

To:     FACC
From:   Greenberg Traurig, P.A.
Date:   December 15, 2014                                           Page 4
Re:     Addendum to July 1, 2014 Memorandum

interpret the Order to mean that any clerk other than the Clerk of Washington is bound by it or obligated to abide by it.

Also, we do not believe any clerk other than the Washington County Clerk would be clearly protected by the preemptive effect of the Order from criminal prosecution in another court. As set forth below, the greater weight of authority shows that the Order is not binding precedent on any other court.

Justices' view that an "'authoritative interpretation of the census statute and constitutional provision' rendered by the District Court will induce the President to submit a new reapportionment") (Scalia, J., partially concurring)); *Chamber of Commerce v. Edmondson*, 594 F.3d 742, 758 n.16 (10th Cir. 2010) (holding that partial relief is enough to afford standing where complete relief is unavailable, and noting in dicta, "In any event 'we may assume it is substantially likely that [other] officials would abide by an authoritative interpretation of the…provisions…even though they would not be directly bound by such a determination.'") (emphasis added) (citing *Utah v. Evans*, 536 U.S. 452, 460 (2002)); *Los Angeles Cnty. Bar Ass'n v. Eu*, 979 F.2d 697, 701 (9th Cir. 1992) (affirming decision that the Los Angeles County Bar Association had standing to pursue constitutional challenge to a statute prescribing the number of judges in Los Angeles County stating that "[w]ere this court to issue the requested declaration, we must assume that it is substantially likely that the California legislature, although its members are not all parties to this action, would abide by our authoritative determination.") (emphasis added) (citing *Franklin*, 505 U.S. at 803). In each of the cited cases, the courts' assumption that the other non-party officials would comply with the trial courts' orders involved officials with the ability or discretion to lawfully comply, which is not the case here.

Similarly, other suggested cases describing plaintiff class qualifications do not provide protection to non-parties faced with criminal liabilities. *See Alliance to End Repression v. Rochford*, 565 F.2d 975, 980 (7th Cir. 1977) (holding that certifying the plaintiff class was appropriate because the case presented an as-applied constitutional challenge, but observing in dicta that a plaintiff class may not be required where a statute is challenged as facially unconstitutional and assuming that if the court declares the statute or regulation unconstitutional the enforcing government officials will discontinue the statute's enforcement); *Soto-Lopez v. New York City Civil Serv. Comm'n*, 840 F.2d 162, 168-69 (2d Cir. 1988) (holding that after Supreme Court had declared a statute unconstitutional, it was appropriate to grant injunctive relief to prohibit enforcement of the statute against other non-party plaintiffs without the requirement of the filing of a class action lawsuit against the defendants) (citing *Cooper v. Aaron*, 358 U.S. 1, 17-18 (1958), which confirmed that the prior Supreme Court precedent of *Brown v. Board of Education*, 347 U.S. 483 (1954), could not be defied by state officials); *Mills v. Dist. of Columbia*, 266 F.R.D. 20, 22 (D.D.C. 2010) (denying a motion for class certification in a facial challenge where enforcement authority was the defendant).

In sum, none of these cases support the proposition that a non-party Florida clerk does not remain subject to Florida's criminalization of clerks' issuance of marriage licenses to same-sex couples, pending binding appellate authority.

To:     FACC
From:   Greenberg Traurig, P.A.
Date:   December 15, 2014                                        Page 5
Re:     Addendum to July 1, 2014 Memorandum

*Precedential Value of a Federal District Court Holding a State Law Unconstitutional*

The Florida Supreme Court has held on multiple occasions that a federal district court's ruling that a Florida statute is unconstitutional is not binding on a state court. *E.g., Merck v. State*, 124 So. 3d 785, 803 (Fla. 2013) (finding a federal district court's determination that Florida's death penalty procedures are unconstitutional was not binding on the Florida Supreme Court); *Roche v. State*, 462 So. 2d 1096, 1099 n.2 (Fla. 1985) (decision of federal district court that Florida statute relating to administrative searches of places of business and vehicles in the cause of agricultural inspections was unconstitutional was not binding on Florida state courts); *State v. Dwyer*, 332 So. 2d 333, 335 (Fla. 1976) (decision of federal court of appeals finding Florida's disorderly conduct statute unconstitutional was not binding on Florida trial court); *Bradshaw v. State*, 286 So. 2d 4, 6-7 (Fla. 1973) ("It is axiomatic that a decision of a federal trial court, while persuasive if well-reasoned, is not by any means binding on the courts of a state."), *cert. denied*, 417 U.S. 919 (1974). *See also Titus v. State*, 696 So. 2d 1257, 1262 (Fla. 4th DCA 1997) ("[A] Florida District Court of Appeal takes its direction on matters of federal constitutional law first from the United States Supreme Court and, in the absence of definitive precedent from that Court, from the Florida Supreme Court"), *approved*, 702 So. 2d 706 (Fla. 1998). As pointed out in our July 1 memorandum at footnote six, the Eleventh Circuit Court of Appeals has consistently upheld this rule of law. *See, e.g., Doe v. Pryor*, 344 F.3d 1282, 1286 (11th Cir. 2003) ("The only federal court whose decisions bind state courts is the United States Supreme Court") (citing *Glassroth v. Moore*, 335 F.3d 1282, 1302 n.6 (11th Cir. 2003) ("[S]tate courts when acting judicially, which they do when deciding cases brought before them by litigants, are not bound to agree with or apply the decisions of federal district courts and courts of appeal.") (citing *Arizonans for Official English v. Arizona*, 520 U.S. 43, 58 n.11 (1997))).

Furthermore, a decision of a federal district court judge is not binding precedent on either a federal district court in another jurisdiction, a federal district court or judge in the same jurisdiction, or even upon the same judge in a different case. *Camreta v. Greene*, 131 S.Ct. 2020, 2033 n.7 (2011); *Am. Elec. Power Co. v. Connecticut*, 131 S.Ct. 2527, 2540 (2011).

Therefore, because Judge Hinkle's decision is not binding on another court, state or federal, it unfortunately does not provide a clerk of court who was not a party to the case in the Northern District with protection from being criminally penalized in another court for issuing marriage licenses to same-sex couples.[3]

---

[3] Despite our conclusion regarding the non-binding precedential effect of Judge Hinkle's Order on other courts, as we pointed out in our July 1, 2014 memorandum, a Florida district court of appeal decision pertaining to the same-sex marriage ban would have considerable precedential value. If a Florida district court of appeal affirms a state court trial court's invalidation of the ban, we believe that such decision would bind all Florida trial courts in the absence of contrary precedent from another district court of appeal or the Florida Supreme Court. "The decisions of the district courts of appeal represent the law of Florida unless and until they are overruled by [the Florida Supreme] Court. Thus, in the absence of interdistrict conflict,

To:     FACC
From:   Greenberg Traurig, P.A.
Date:   December 15, 2014                                              Page 6
Re:     Addendum to July 1, 2014 Memorandum

## Conclusion

We realize that it may seem to many that Judge Hinkle's federal district court ruling that Florida's same-sex marriage ban is unconstitutional and violates fundamental rights would permit all Florida clerks of court to lawfully issue marriage licenses to same-sex couples. However, as discussed above, our review of the law indicates that an order and injunction issued at the federal trial level is not binding on any person, including a clerk of court, who is not a named party in the action. Nor does such a ruling bind any other court.

Thus, we remain of the opinion that clerks of court who were not parties to the Northern District case are not bound by Judge Hinkle's Order – or protected by it. Clerks are subject to Florida's criminal penalties for the issuance of marriage licenses to same-sex couples. Until such time as there is a binding appellate ruling (*see* footnote 3, *supra*), we are constrained to advise that despite the Order, clerks remain exposed to Florida's apparently unique criminalization of the issuance of marriage licenses to same-sex couples.

district court [of appeal] decisions bind all Florida trial courts." *Pardo v. State,* 596 So. 2d 665, 666 (1992) (citing *Stanfill v. State,* 384 So. 2d 141, 143 (Fla. 1980)).

# EXHIBIT C

# Tampa Bay Times
### WINNER OF 10 PULITZER PRIZES

# Bay area court clerks will not issue same-sex marriage licenses Jan. 6

 **Tony Marrero, Times Staff Writer**

**Monday, December 22, 2014 1:06pm**

Pinellas Clerk of Court Ken Burke expects same-sex couples will show up to his office Jan. 6 to seek a marriage license.

At this point, they will leave empty-handed, and so will couples who try in Hillsborough, Pasco and Hernando counties.

"We're sympathetic but we have to follow what we know is the direction of the court, based on advice from our legal counsel," Burke said Monday, three days after a decision by the U.S. Supreme Court that gay marriage advocates say clears the way for clerks throughout the state to marry same-sex couples.

Gay-rights groups on Monday vowed to take legal action against Florida clerks who deny licenses to couples on Jan. 6. That's the day after a federal judge's stay on a ruling striking down the ban on gay marriage expires.

The U.S. Supreme Court's decision on Friday to turn down Florida Attorney General Pam Bondi's request to extend the stay hasn't changed the opinion of a law firm that advises court clerks statewide.

"The denial of a stay is not a ruling on the merits of the marriage-equality issue," Hilarie Bass, co-president for the law firm Greenberg Traurig, said in a statement. "Florida law continues to prohibit a Clerk from issuing a marriage license to a same-gender couple and provides criminal sanctions for doing so."

In August, U.S. District Judge Robert Hinkle found that Florida's voter-approved ban on same-sex marriage is unconstitutional. Hinkle's ruling came amid appeals in similar cases from other parts of the country, and he placed a stay on his decision. That stay will expire at the end of the day Jan. 5.

Greenberg Traurig attorneys warned clerks in a memo last week that Hinkle's ruling only applies to the clerk in the rural Panhandle's Washington County, where one of the gay couples involved in the challenge to the ban lives. The memo advised clerks not to issue marriage licenses "until a binding order is issued by a court of proper jurisdiction," and warned that clerks could be subject to criminal prosecution if they allow gay couples to wed.

On Monday, the firm recommended that Washington County Clerk Lora Bell consider filing a motion for an emergency hearing "seeking clarification from Judge Hinkle regarding the specific parties intended to be bound by his order," Bass said in the statement.

"We understand that action is currently under consideration," Bass said.

A message left for Bell was not returned Friday.

12/29/2014

Equality Florida, a prominent group advocating for same-sex marriage, asserted Monday that clerks now have a legal obligation to issue marriage licenses to same-sex couples, "or risk expensive litigation, including liability for damages and attorney fees," the group said in a news release.

"Clerks can stand in the doorway and try to block equality or they can welcome gay couples who have waited for decades for this moment," Equality Florida CEO Nadine Smith said in the news release. "We expect every clerk to uphold their oath and protect the constitutional rights of gay couples seeking marriage licenses. No legal firm's memo overrides their clear legal obligation."

Also Monday, Miami-Dade Clerk Harvey Ruvin, the defendant in a lawsuit by Equality Florida and six same-sex couples, filed a motion requesting that Florida's 11th Circuit Court clarify the details of the stay's expiration.

Hillsborough Clerk Pat Frank said she would gladly risk arrest on a first-degree misdemeanor and pay the $1,000 fine for issuing licenses to same-sex couples, but won't break the law because doing so would leave her vulnerable to suspension by the governor at a time when her office is in the midst of a reorganization.

Pasco County Clerk Paula O'Neil has a message on her website citing the law and legal advice as the reasons why she won't be issuing licenses unless she gets clarification from the court.

"We have attorneys for a reason," she said. "I have to rely on our legal counsel."

Hernando Clerk Don Barbee, a former assistant state attorney, called the legal advice "sound." He said he assumes his former boss, State Attorney Brad King, would probably not prosecute him for issuing licenses.

"But as long as that law exists, I don't feel comfortable" doing so, he said.

In an email to Burke and other clerks on Monday, Greenberg attorney Fred W. Baggett said his firm is creating a template document that clerks can file if they're sued for refusing to issue a license. The filing, Baggett wrote, would simply ask what the clerk's "duty is in the matter before the court."

"In other words, 'Judge, I'm not fighting this, just tell me what you want me to do,' " Baggett wrote.

Burke said he agrees with that approach.

"Maybe," he said, "that's the way this gets decided."

*Contact Tony Marrero at tmarrero@tampabay.com or (727) 893-8779. Follow @tmarrerotimes.*



*Equality Florida CEO Nadine Smith challenges the clerks.*

Bay area court clerks will not issue same-sex marriage licenses Jan. 6 | Tampa Bay Times

## Bay area court clerks will not issue same-sex marriage licenses Jan. 6 12/22/14
## Photo reprints | Article reprints

© 2014 Tampa Bay Times

 Commenting Guidelines  Abuse Policy

www.tampabay.com/news/politics/stateroundup/florida-gay-rights-groups-vow-legal-fights-if-clerks-deny-marriage-licenses/2211147?sf34975041=1

3/3

Lawyers, activists: Greenberg Traurig wrong advising clerks not to issue same-sex marriage licenses | The Miami Herald



# Lawyers, activists: Greenberg Traurig wrong advising clerks not to issue same-sex marriage licenses

BY STEVE ROTHAUS - SROTHAUS@MIAMIHERALD.COM
12/22/2014 12:08 PM | Updated: 12/22/2014 8:25 PM



From left: Don Price Johnston and partner, Jorge Isaias, Melanie and partner Vanessa Alenier, Attorney Cristina Alonso of Carlton Fields Jorden Burt, Pamela Faerber and partner Summer Greene, Catherine Pareto and partner Karla Arguello, attorney Elizabeth F. Schwartz, Todd and Jeff Delmay, and NCLR Legal Director Shannon Minter, after press conference announcing that six same-sex couples and Equality Florida Institute filed a lawsuit in Florida state court in Miami seeking the freedom to marry. Tuesday, Jan. 21, 2014. The announcement was made at the LGBT Visitors center on Miami Beach.   WALTER MICHOT / MIAMI HERALD FILE

Leading LGBT activists and attorneys on Monday blasted a top Miami-based law firm for "an exaggerated warning" to county clerks that they could be fined or prosecuted for issuing marriage licenses Jan. 6 to same-sex couples.

"A law firm memo does not override a federal judge's order and the actions of the 11th Circuit and the U.S. Supreme Court," said Nadine Smith, executive director of Equality Florida (http://www.eqfl.org/), a major LGBT-rights lobbying group. "They're actually exaggerating the risk on one hand and ignoring the extraordinary risk clerks will face in lawsuits and damages for violating the constitutional rights of every couple they turn away."

Same-sex marriage is set to begin Jan. 6 in Florida, after the U.S. Supreme Court on Friday evening denied Florida Attorney General Pam Bondi's reques (http://www.miamiherald.com/news/local/community/gay-south-florida/article4699455.html)t to Justice Clarence Thomas that he extend a stay preventing the state from recognizing the marriages of eight gay and lesbian couples.

On Aug. 21, U.S. District Court Judge Robert L. Hinkle of Tallahassee overturned Florida's 2008 constitutional gay-marriage ban (http://www.miamiherald.com/news/local/community/miami-dade/article1980952.html)and stayed his ruling through Jan. 5, to give Bondi time to take the case to the U.S. Circuit Court of Appeals in Atlanta. The appeal still hasn't been heard by that court, but on Dec. 3 three 11th Circuit judges told Bondi it would not extend Hinkle's stay.

After the Supreme Court announcement Friday night, Bondi conceded in a statement that "the Supreme Court has now spoken, and the stay will end on Jan. 5."

The hitch: Top law firm Greenberg Traurig (http://www.gtlaw.com/), which represents the Florida Association of Court Clerks, has advised them that only the clerk in Washington County, in rural North Florida — named in Florida's federal gay-marriage lawsuit — would be bound by Hinkle's ruling. All other Florida clerks who are not parties in the lawsuit could face "a misdemeanor of the first degree, punishable by imprisonment of not more than one year and a fine of not more than $1,000" if they went ahead and married same-sex couples, according to Greenberg Traurig.

Despite the Supreme Court announcement on Friday, Greenberg Traurig on Monday night stood by its original recommendation.

"The denial of the stay by the U.S. Supreme Court does not change our advice to the Florida Association of Court Clerks & Comptrollers that Judge Hinkle's ruling only applies to the Washington County clerk," Hilarie Bass, Greenberg Traurig's Miami-based co-president, said in a statement. "The denial of a stay is not a ruling on the merits of the marriage-equality issue."

Bass continued: "Florida law continues to prohibit a clerk from issuing a marriage license to a same-gender couple and provides criminal sanctions for doing so. Our legal advice cannot be affected by assurances that certain law enforcement authorities might not take action to prosecute violators of the criminal statute."

At least one clerk, Linda Doggett of Lee County, said her office would abide by the Greenberg Traurig recommendation and not issue marriage licenses to same-sex couples on Jan. 6.

"Per an opinion recently issued by the Florida Court Clerks & Comptrollers' legal counsel, the Florida constitutional ban still applies in most counties including Lee County making the issuance of same-sex marriage licenses illegal for our office. The recent decision only affects the clerk's office named as a party in the lawsuit. Until a binding order is issued by a court of proper jurisdiction, the law is not changed," Doggett said in news release Monday.

Shannon Minter, legal director for the National Center for Lesbian Rights (http://www.nclrights.org/), said Monday that Doggett is wrong, that Hinkle's order "is worded not just to the named defendants but to anyone acting in concert or in participation with them. That applies to all state and local officials who have any role in enforcing Florida's marriage laws."

Minter co-represents Equality Florida Institute and six same-sex couples who in January sued Miami-Dade County Clerk Harvey Ruvin to issue them marriage licenses. He says the Greenberg Traurig memo has "sowed needless confusion."

Flagler County Clerk Gail Wadsworth told FlaglerLive.com, a nonprofit news website (http://flaglerlive.com/73665/wadsworth-same-sex-marriage/), that she and her deputy are ready to issue same-sex marriage licenses on Jan 6.

"It may apply only to Washington County. I hope not," Wadsworth told FlaglerLive.com. "I hope they don't do something in one piece of Florida and not another, let's let the rule be uniform. But I don't know, I'm not a lawyer." Flagler County is north of Daytona Beach on Florida's east coast.

South Florida clerks say they're waiting for more direction before deciding what to do.

On Dec. 17, the Miami Beach City Commission unanimously passed a resolution urging Ruvin to disregard the Greenberg Traurig recommendation and "to begin issuing marriage licenses to same-sex couples following the expiration, on Jan. 5, 2015, of the stay of the ruling entered by the U.S. District Court."

On Monday, Ruvin asked Miami-Dade Circuit Judge Sarah Zabel, who presided over the Equality Florida right-to-marry case and also found the state's gay-marriage ban unconstitutional, whether she planned to lift the stay she imposed last July in that case.

Ruvin told the Miami Herald on Monday that Zabel has "already immunized us if we follow her order" and issue marriage licenses to same-sex couples.

Also Monday, the Washington County Clerk's Office planned to ask Hinkle for clarification in the federal case, whether he intended only Washington County would be subject to his ruling.

Minter says the Greenberg Traurig recommendation "doesn't make sense."

"The memo to the clerks is incorrect," Minter said. "It's a classic case of missing the forest for the trees. In light of the overwhelming weight of national authority, the federal district court's ruling by Judge Hinkle and the 11th Circuit/Supreme Court denials of a stay, it is clear that clerks across the state and all state and local officials are legally bound to no longer enforce the discriminatory marriage ban once the stay expires at the end of Jan. 5."

"The Greenberg memo focus on the entirely implausible threat of criminal prosecution. What it misses is the far greater likelihood, if not certainty, that clerks who fail to comply will be sued. Then they will be at risk for having to pay damages and attorney fees," Minter added. "Those will come at taxpayer expense."

On Monday, a federal magistrate in Boise ordered the state of Idaho to pay more than $400,000 to a team of lawyers that fought that state's gay-marriage ban, The Associated Press reported.

Bass, Greenberg Traurig's co-president, said in a statement Friday the firm "is not advising the clerks as to the constitutionality of the Florida ban on same-sex marriage."

Bass told the Miami Herald that Greenberg Traurig actually supports same-sex couples' right to marry and on Monday filed a friend-of-the-court brief in Florida's Third District Court of Appeal "in support of two circuit court orders declaring unconstitutional Florida's ban on same-sex marriage," Bass said.

From the brief: "The issues in this case are not only about the rights of individuals to marry whom they choose — as important, compelling and essential as those issues are — it is about children and families. The State of Florida has no rational basis whatsoever — much less any basis that

could satisfy a higher standard — for denying those children, especially those whom the State itself places with a same-sex couple, from all the benefits, both actual and psychological, that living as the child of a married couple confers on that child."

Greenberg Traurig filed the brief on behalf of gay adoptive father Martin Gill. Bass and Greenberg Traurig, along with the ACLU of Florida, helped represent Gill in his quest to overturn a 1977 Florida law that prohibited gays and lesbians from adopting. Gill adopted his foster sons in 2010.

Gill on Monday asked other LGBT activists not to blame Greenberg Traurig for its advice to the county clerks, that Bondi and Gov. Rick Scott are responsible for the ongoing legal fight.

"In states such as Kansas where governors do not concede and welcome the decisions, we have seen chaos. In Kansas, counties within the same state have interpreted the court's decision differently or have flat out ignored the court's decision," Gill said. "By continuing their opposition, or by simply failing to lead, Rick Scott and Pam Bondi are inviting just such chaos."

12/29/2014

www.heraldtribune.com/article/20141217/article/141219730?template=printpicart



This copy is for your personal, noncommercial use only. You can order presentation-ready copies for distribution to your colleagues, clients or customers here or use the "Reprints" tool that appears above any article. Order a reprint of this article now.

# Local court clerks won't offer same-sex marriage licenses

*Staff and Wire Reports*
*Published: Wednesday, December 17, 2014 at 2:07 p.m.*

Clerks of the court in Manatee and Sarasota counties plan to stand pat on same-sex marriage in light of advice from one of the Florida's most prominent law firms, which advised court clerks they could face misdemeanor charges if they issue marriage licenses to same-sex couples.

Greenberg Traurig, the law firm for the association representing Florida's 67 court clerks, warned Tuesday that a federal judge's ruling overturning the state ban on gay marriage only applies to one Panhandle county, Washington County, the only place named in the lawsuit.

According to the Florida Association of Court Clerks and Comptrollers, clerks in all other counties are not bound by U.S. District Judge Robert Hinkle's ruling in August that the gay marriage ban is unconstitutional.

Clerks in both Sarasota and Manatee counties are planning to follow Greenberg Traurig's guidance and, unless the law changes, don't expect to begin issuing same-sex marriage license on Jan. 6.

"Our position is, we have to follow the current law," said Irene Plank, the attorney for Sarasota County Clerk Karen Rushing's office. "We're looking forward to the matter being resolved completely."

Christine Clyne, a spokeswoman for Manatee County Clerk of the Circuit Court R.B. "Chips" Shore, said Shore had reached the same conclusion.

Both Shore and Rushing will wait to be told it is legal to issue same-sex licenses.

"For right now, we have to act in accordance with Florida law," Clyne said. "Because things are so confused right now, we'll have to wait until a binding order comes down."

The law firm's guidance could set Florida on the same path as Kansas, where multiple judges have dissolved the state's same-sex marriage ban, but where some clerks in more rural areas have refused to issue licenses to gay couples.

Hinkle put a hold on his ruling until the end of the day Jan. 5, which the 11th U.S. Circuit Court of Appeals refused to extend. That led many gay marriage advocates to proclaim that licenses could be issued around the state beginning Jan. 6.

Betsy White, one of several civil rights attorneys in Jacksonville representing two of the gay couples named in the federal lawsuit said the clerks should begin issuing marriage licenses on Jan. 6.

She said Greenberg Traurig's advice "is dead wrong," noting that it essentially encourages 66 separate lawsuits, one for each Florida county not named in the current suit. That could leave Florida taxpayers with a massive legal bill if the state loses.

www.heraldtribune.com/article/20141217/article/141219730?template=printpicart

www.heraldtribune.com/article/20141217/article/141219730?template=printpicart

"If certain clerks are going to take the position that they're not bound by Judge Hinkle's decision, then we'll be going back to the court and asking those parties to be included," White said.

Greenberg Traurig's guidance leaves court clerks in an unenviable position. If they issue marriage licenses to gay couples, they could technically face criminal charges. If they do not, they are opening themselves up to dozens of suits brought by organizations supportive of gay marriage, such as the American Civil Liberties Union.

Howard Simon, executive director of the ACLU of Florida, said it is highly unlikely any clerk would face arrest for issuing a marriage license to a gay couple. And it would be impractical to file identical lawsuits naming all 67 court clerks as defendants, he said.

"When a federal judge declares a law unconstitutional, all public officials should cease enforcing that law. Period," Simon said.

On Monday, Attorney General Pam Bondi asked the U.S. Supreme Court to intercede and extend the stay beyond Jan. 5, preventing marriages from taking place while Florida continues its fight to protect its ban on gay marriage. Bondi cited confusion over the impact of Hinkle's ruling and specifically referenced similar advice Greenberg Traurig dispensed in July.

*Staff writer Ian Cummings contributed to this report, which includes information from the Tampa Bay Times.*

Copyright © 2014 HeraldTribune.com — All rights reserved. Restricted use only.

12/29/2014                                Clerks in 4th Circuit won't issue marriage licenses for same-sex couples after stay expires

**FINANCIAL NEWS &**

# Daily Record

Today there are 20 new Notices of
FORECLOSURE Sales

Login

Print Edition Online (PDF)

Search

I would like to...

HOME   BUSINESS   LEGAL   SALES   SERVICES   ABOUT US

Like 15   Tweet 20   8+1 0   Share 0   3

Articles ⇨ 2014 ⇨ December ⇨ 18th ⇨ Clerks in 4th Circuit won't issue marriage licenses for same-sex couples after stay expires

## Clerks in 4th Circuit won't issue marriage licenses for same-sex couples after stay expires

facebook  twitter     Article reprints available.
Find out more.

*Thursday, December 18, 9:59 AM EST*

By Max Marbut, Staff Writer

What's a clerk to do?

After Florida voters approved in 2008 a constitutional amendment prohibiting same-sex marriage, the issue started appearing before the courts as gay couples challenged the validity of the ban based on civil and equal rights issues.

In a case involving plaintiffs in Washington County, U.S. District Judge Robert Hinkle ruled in August that Florida's ban on same-sex marriage, which was approved by voters in 2008, is unconstitutional. He stayed his ruling to give the U.S. Supreme Court the opportunity to rule on the question. The highest court declined in October to take up the issue.

Hinkle's stay is set to expire at the end of the day on Jan. 5.



*Duval County Clerk Ronnie Fussell*

That puts Florida's 67 county clerks of court in the position of whether to follow the regulations that have been in effect for more than a decade or change state policy based on a ruling by a federal judge.

"It's unique," said Sean Hudson, spokesman for Florida Court Clerks & Comptrollers, the state association of clerks of court.

The association's attorneys, Miami-based Greenberg Traurig, advised Florida's court clerks as a group are not bound by Hinkle's ruling, since they were not individually named in the Washington County lawsuit.

The attorneys also said issuing same-sex marriage licenses would place clerks at risk of criminal violation of Florida's same-sex marriage ban – if and until the ban is invalidated by a Florida district court of appeal (absent inter-district conflict), the Florida Supreme Court, or the U.S. Supreme Court.

In Florida, it is a misdemeanor to violate the statute regarding issuance of marriage licenses, punishable by a maximum fine of $1,000 and up to one year in jail.

Kenneth Kent, executive director of the association, told members their duty is follow Florida law.

"It is not within their (members') purview to interpret the law or act without a full understanding of what the law does and does not allow," he said in a statement.

For the counties that comprise the 4th Judicial Circuit, there will be no policy change Jan. 6.

Duval County Clerk of Court Ronnie Fussell was not available for comment, but his office issued a statement saying it would not issue same-sex marriage licenses "until a binding order is issued by a court of proper jurisdiction."

Justin Horan, general counsel for the Clay County clerk of court, said the office will abide by the position endorsed by the state association. He said it will be "business as usual" on Jan. 6.

The Nassau County clerk's office also will be following the advice from the association, with no change in policy until a binding order is issued from a proper jurisdiction or Florida amends its constitution, said spokeswoman Liz Rodriguez.

"It's our responsibility to follow the law. We will not be issuing licenses for same-sex couples," she said.

On Monday, Florida Attorney General Pam Bondi asked the U.S. Supreme Court to maintain the ban while appeals run their course.

A similar request was rejected Dec. 3 by the 11th U.S. Circuit Court of Appeals.

Ellen Schmitt, president of the Jacksonville chapter of Parents and Friends of Lesbians and Gays, said the controversy over

Last Week  Month  3 Months

Suspended Jaguars wide receiver Justin Blackmon sells Queen's Harbour home

Bar Bulletin: All have a role in fight against human trafficking

Mission BBQ coming to Jacksonville, Orange Park

JAX Chamber announces 2015 board of directors

School Board member running for House

Cuba policy may rekindle Florida East Coast talk

Aldi plans Southside store near The Avenues

Gym owner giving free memberships, training to help people get healthy

Clerks in 4th Circuit won't issue marriage licenses for same-sex couples after stay expires

A loving family and a protector from above help 5-year-old Keegan Davis beat cancer

12/29/2014                              Clerks in 4th Circuit won't issue marriage licenses for same-sex couples after stay expires

same-sex marriage is reminiscent of a similar societal issue more than 50 years ago when mixed-race couples were prohibited from marrying.

"PFLAG supports marriage equality throughout the country," said Schmitt. "We feel it's appropriate to recognize same-sex marriages and afford same-sex couples the same rights under the law afforded to mixed-gender couples."

mmarbut@baileypub.com

@DRMaxDowntown

(904) 356-2466



Back to home      E-mail this article      print this article

Article reprints available.
Find out more.

Thursday, December 18, 2014 Headlines:

▶ Mark Frisch working to forge his own path

▶ Scott, state workers still at odds over drug testing

▶ Senate leader calls lottery 'a pretty big numbers racket'

▶ Dream Finders entered homebuilding market during recession and grew to second-largest in Northeast Florida

▶ Wal-Mart Supercenter opening on Collins Road in spring 2016

▶ Downtown calendar

▶ Development today

Published for 26,558 consecutive weekdays


We make you better.


PRINTING & Design

REALTY/BUILDER
CONNECTION
Covering events in the Realty and Building
communities in Northeast Florida.

10 North Newnan Street · Jacksonville, FL 32202 · (904) 356-2466 · Fax (904) 353-2628
© 2014 Bailey Publishing & Communications, Inc. All Right Reserved.

Privacy Policy · Refund Policy

https://www.jaxdailyrecord.com/showstory.php?Story_id=544529

# No gay marriage licenses in Leon for now

*Jeff Burlew, Tallahassee Democrat*   7:44 a.m. EST December 24, 2014

*Unless the courts give more guidance, Leon and other Florida counties won't issue same-sex marriage licenses next month.*



**(Photo: Democrat files)**

**5:30 p.m. update**

Gay couples hoping to get married in Tallahassee or elsewhere in Florida starting early next month may have to wait a while longer.

The association representing Florida's elected court clerks announced Tuesday it will be following the advice of its legal counsel, which has opined that a federal-court ruling finding unconstitutional the state's ban on gay marriage applies only in Washington County, where two men sued for the right to wed.

Leon Clerk of the Court Bob Inzer, who personally supports the right of gay couples to marry, said he and other county clerks plan to abide by counsel's advice until the courts provide more clarity. He said during a conference call with the state's clerks on Monday afternoon, no one indicated plans to issue same-sex marriage licenses starting next month.

"This is an evolving process," Inzer said Tuesday. "And absolutely this could change at any time. But given the information I have today and the guidance I have today, we will not be issuing licenses to same-sex couples beginning in January. But that is again subject to change. This is not a question of if this will happen — it's when and how."

Supporters of marriage equality expressed exasperation over the decision by the Florida Court Clerks & Comptrollers and pledged legal action if marriage licenses aren't issued.

"We believe that every clerk has a duty to issue marriage licenses as of Jan. 6 because the ban has been declared unconstitutional," said Nadine Smith, executive director and CEO of Equality Florida. "Any clerk who refuses to fulfill their oath and continues to discriminate can expect costly litigation including damages and lawyer fees."

Andy Janecek, president of the Capital City GLBTA Democratic Caucus, said he was angered and disappointed by Inzer's decision. In a Facebook post, Janecek said he applauded Inzer's office when it implemented Leon County's domestic-partnership registry in 2013.

"And now I applaud the community's right to sue him," Janecek said.

Others expressed optimism the issue will work itself out quickly.

Steven Hall, chair of the Family Tree Community Center board, said he expects marriage licenses to be issued to gay couples across Florida sometime next year.

"It may not be Jan. 6, but I believe it will be soon thereafter," he said. "I'm not sure what legalities stand between where we are today and the clerks issuing marriage licenses, but we are confident that those will be resolved in short order."

U.S. District Judge Robert Hinkle ruled in August in favor of the Washington County couple, finding that the statewide ban on gay marriage approved by voters in 2008 violated the U.S. Constitution.

Hinkle ordered the county clerk to issue the couple a marriage license, though he placed a stay on the decision through Jan. 5. Attorney General Pam Bondi sought an extension of the stay, but the U.S. Supreme Court earlier this month denied her request, opening the door for gay marriages to begin Jan. 6.

Greenburg Traurig, the law firm advising Florida's county clerks, issued a legal opinion saying clerks who are not named defendants in the federal litigation in Tallahassee could face criminal sanctions if they issue marriage licenses to same-sex couples.

"While such clerks might feel public pressure to follow the guidance of the decision of a court of competent jurisdiction ... Florida's same-sex marriage ban would still be in place unless they were named parties in one of the lawsuits striking the ban," the memo stated.

On Tuesday, Kenneth Kent, executive director of the clerks association, said only the U.S. Supreme Court, the Florida Supreme Court or a state appellate court could bring clarity to the issue through a binding, statewide decision.

"Absent a ruling from one of those three bodies, our opinion, as previously presented by our general counsel, will not change," he said in a written release.

Smith, of Equality Florida, and others said it was preposterous to think clerks would be jailed for issuing marriage licenses to gay couples, pointing out that prosecutors including State Attorney David Aronberg for the 15th Judicial Circuit have already said they will not do so.

"Greenburg Traurig's memo is a distortion of where things are right now," Smith said. "It has been blasted by legal experts, and even state attorneys are calling it out as absurd, the notion that clerks would be arrested."

Inzer, in an interview, said he personally believes same-sex couples should not be denied the right to marry. But he said he couldn't ignore the legal advice given to the state's clerks.

"I took the oath of office to follow state law and the constitution," he said. "And when my general counsel tells me this is a violation, then I'm not going to do it."

Inzer said the clerks are looking for further guidance from the courts on how to proceed. On Tuesday, an attorney for Washington County Clerk Lora Bell filed an emergency motion in U.S. District Court in Tallahassee seeking clarification of Hinkle's ruling.

Jeff Goodman, a Chipley attorney representing Bell, wrote that his client "is aware of confusion among clerks of court of counties throughout Florida as to whether or how to implement the court's order," including an injunction demanding a marriage license be issued to the Washington County couple.

"Because of the threat of being in contempt of the injunction on the one hand, and the jeopardy of being found to have violated her oath to uphold the law and facing criminal prosecution on the other, the clerk respectfully requests the court provide immediately clarification as to the scope of the injunction and whether it extends to other ... same-sex couples who apply to the clerk for a marriage license," Goodman wrote.

Joy Lynn Lewis of Tallahassee said she and her longtime wife, Sheila Ortiz-Taylor, remain optimistic gay marriage will move forward soon in Florida. Lewis and Ortiz-Taylor, both retired and in their 70s, have taken part over the past 23 years in several marriage ceremonies, both legal and off-the-books, and are planning to finally have a wedding reception in March.

"We're very hopeful," Lewis said. "We are optimistic by nature. We keep thinking now it's going to be OK, now it's going to be OK. But this time, I think it really is going to be OK."

**First update**

Gay couples hoping to get married in Tallahassee or elsewhere in Florida starting early next month may have to wait a while longer.

The Florida Court Clerks & Comptrollers, the association representing Florida's elected court clerks, announced Tuesday that it will continue to follow the advice of its legal counsel that a federal-court ruling finding the state's ban on gay marriage unconstitutional applies only in Washington County, where two men sued for the right to marry.

Leon Clerk of the Court Bob Inzer, who personally supports the right of gay couples to marry, said he and other county clerks plan to abide by counsel's advice until the courts provide more clarity.

"This is an evolving process," Inzer said Tuesday. "And absolutely this could change at any time. But given the information I have today and the guidance I have today, we will not be issuing licenses to same-sex couples beginning in January. But that is again subject to change."

U.S. District Judge Robert Hinkle ruled in August in favor of the Washington County couple, finding that the statewide ban on gay marriage approved by voters in 2008 violated the U.S. Constitution. Hinkle placed a stay on the decision through Jan. 5, and the U.S. Supreme Court opted not to extend the stay as requested by Attorney General Pam Bondi, opening the door for gay marriages to begin Jan. 6.

Gay-rights organizations and their supporters are vowing a legal fight if the clerks don't issue marriage licenses once the stay expires.

"We believe that every clerk has a duty to issue marriage licenses as of Jan. 6 because the ban has been declared unconstitutional," said Nadine Smith, executive director and CEO of Equality Florida. "Any clerk who refuses to fulfill their oath and continues to discriminate can expect costly litigation including damages and lawyer fees. And they can look to other states that have had to pay huge sums of money as a consequence of clinging to discrimination."

# EXHIBIT D

## SHEPPARD, WHITE, KACHERGUS & DEMAGGIO, P.A.
### Attorneys & Counselors at Law

215 WASHINGTON STREET
JACKSONVILLE, FLORIDA 32202

WM. J. SHEPPARD
Board Certified Criminal Trial Lawyer

904/356-9661
Telefax 904/356-9667
email: sheplaw@att.net

MATTHEW R. KACHERGUS

ELIZABETH L. WHITE
Also admitted to the Oregon Bar

BRYAN E. DEMAGGIO

December 22, 2014

Clerk of Courts
Alachua County
201 East University Avenue
Gainesville, Florida 32601

Dear Clerk:

Pursuant to Judge Hinkle's order in *Brenner v. Scott*, 999 F.Supp. 1278 (N.D. Fla. 2014), I am providing you with notice of that decision. Paragraph 5 of that Order states, "The preliminary injunction binds the Surgeon General and his *officers, agents, servants, employees*, and attorneys — *and others in active concert or participation with any of them* — who receive actual notice of this injunction by personal service or otherwise. *Id.* at 1293 (emphasis added). *See also* § 382.003(3)and (7), Fla. Stat. (2014). A stay of this Order has been denied by the Eleventh Circuit and United States Supreme Court.

Under the express terms of the Judge's Order, it is my expectation that you will comply with this Order. Please govern yourself accordingly.

Respectfully,

Wm. J. Sheppard

WJS/ldh[brenner.james.alachua.clerk.ltr]

Enclosures

**Brenner v. Scott, 999 F.Supp.2d 1278 (2014)**

25 Fla. L. Weekly Fed. D 11

999 F.Supp.2d 1278
United States District Court, N.D. Florida,
Tallahassee Division.

James Domer BRENNER et al., Plaintiffs,

v.

Rick SCOTT, etc., et al., Defendants.
Sloan Grimsley et al., Plaintiffs,

v.

Rick Scott, etc., et al., Defendants.

Case Nos. 4:14cv107–RH/CAS, 4:14cv138–
RH/CAS.  |  Signed Aug. 21, 2014.

**Synopsis**
**Background:** Same-sex couples brought action against
State of Florida officers, all in their official capacities,
asserting that Florida same-sex marriage provisions violated
Fourteenth Amendment's Due Process and Equal Protection
Clauses. Couples moved for preliminary injunction barring
enforcement of challenged provisions and defendants moved
to dismiss.

**Holdings:** The District Court, Robert L. Hinkle, J., held that:

[1] couples had standing to challenge Florida same-sex
marriage provisions;

[2] provisions of Florida Constitution and statutes banning
same-sex marriage violated Due Process and Equal Protection
Clauses of Fourteenth Amendment;

[3] grant of preliminary injunction barring enforcement of
provisions was warranted; and

[4] state was entitled to stay of execution of judgment
ordering preliminary injunction.

Defendants' motion denied and plaintiffs' motion granted.

West Headnotes (20)

[1]     **Constitutional Law**


                                              Family

law; marriage
Same-sex couples whose financial interests
were directly affected by provisions of Florida
statutes and Florida Constitution banning
same-sex marriage had standing to challenge
constitutionality of provisions. U.S.C.A. Const.
Art. 3, § 2, cl. 1; West's F.S.A. Const. Art. 1, §
27; West's F.S.A. §§ 741.014, 741.212.

Cases that cite this headnote

[2]     **Constitutional Law**


                                              Family

law; marriage
Plaintiff     challenging     constitutionality     of
provisions of Florida statutes and Florida
Constitution banning same-sex marriage had
standing to pursue a change in same-sex spouse's
death certificate and to seek social-security
benefits based on their marriage; death certificate
said spouse was "never married" and, in blank
for listing a spouse, said "none," and that a
spouse would find this offensive and seek to
have it changed was neither surprising nor trivial.
U.S.C.A. Const. Art. 3, § 2, cl. 1; West's F.S.A.
Const. Art. 1, § 27; West's F.S.A. §§ 741.014,
741.212.

Cases that cite this headnote

[3]     **Federal Courts**


                                              Suits

for injunctive or other prospective or equitable
relief; Ex parte Young doctrine
**Federal Courts**


                                              Agencies,

officers, and public employees
A plaintiff may pursue a federal constitutional
claim for prospective relief against an official-
capacity state defendant who is responsible
for the challenged action or who, by virtue
of his office, has some connection with the
unconstitutional act or conduct complained of.

Brenner v. Scott, 999 F.Supp.2d 1278 (2014)

25 Fla. L. Weekly Fed. D 11

Cases that cite this headnote

**[4]    States**


                                                                    Parties

Florida's Secretary of the Department of Management Services was proper defendant in action by same-sex couples challenging constitutionality of provisions of Florida statutes and Florida Constitution banning same-sex marriage; Secretary administered retirement and healthcare provisions that applied to current and former state employees, as required by challenged provisions, Secretary refused to recognize same-sex marriages, and couples asserted that Secretary thus violated Equal Protection and Due Process Clauses of United States Constitution. U.S.C.A. Const.Amend. 14; West's F.S.A. Const. Art. 1, § 27; West's F.S.A. §§ 741.014, 741.212.

Cases that cite this headnote

**[5]    States**


                                                                    Parties

Florida's Surgeon General was proper defendant in action by same-sex couples challenging constitutionality of provisions of Florida statutes and Florida Constitution banning same-sex marriage; Surgeon General was head of Florida's Department of Health, Department could change a death certificate's marital information when name of a surviving spouse was omitted or based on an order from court of competent jurisdiction, federal district court was court of competent jurisdiction, and one of the plaintiffs sought such an order from Surgeon General. U.S.C.A. Const.Amend. 14; West's F.S.A. Const. Art. 1, § 27; West's F.S.A. §§ 741.014, 741.212.

Cases that cite this headnote

**[6]    Attorney General**


                                                                    Actions

and other proceedings

**States**


                                                                    Parties

Florida's Governor and Attorney General were redundant official-capacity defendants entitled to dismissal from action by same-sex couples challenging constitutionality of provisions of Florida statutes and Florida Constitution banning same-sex marriage; order directed at Florida's Secretary of the Department of Management Services and Florida's Surgeon General would be sufficient to provide complete relief to couples. West's F.S.A. Const. Art. 1, § 27; West's F.S.A. §§ 741.014, 741.212.

Cases that cite this headnote

**[7]    Counties**


                                                                    Parties

Clerk of court for county was proper defendant in action by same-sex couples challenging constitutionality of provisions of Florida statutes and Florida Constitution banning same-sex marriage, where clerk denied marriage license to same-sex couple and would properly be ordered to issue license if they prevailed on their claims. West's F.S.A. Const. Art. 1, § 27; West's F.S.A. §§ 741.014, 741.212.

5 Cases that cite this headnote

**[8]    Constitutional Law**


                                                                    Rights

and interests protected; fundamental rights

Substantive due process is an exceedingly narrow concept that protects only fundamental rights. U.S.C.A. Const.Amend. 14.

Cases that cite this headnote

**[9]    Constitutional Law**


                                                                    Levels

of scrutiny; strict or heightened scrutiny

Under the Due Process Clause, when governmental action impinges on fundamental rights and is challenged in a case properly before a court, the court reviews the

Brenner v. Scott, 999 F.Supp.2d 1278 (2014)

25 Fla. L. Weekly Fed. D 11

governmental action with strict scrutiny. U.S.C.A. Const.Amend. 14.

Cases that cite this headnote

[10] **Constitutional Law**

                                                    Rational

Basis Standard; Reasonableness

**Constitutional Law**

                                                    Strict

scrutiny and compelling interest in general

Under the Equal Protection Clause, a court applies strict scrutiny to governmental actions that impinge on fundamental rights or employ suspect classifications; most other governmental actions are subject to only rational-basis review. U.S.C.A. Const.Amend. 14.

Cases that cite this headnote

[11] **Constitutional Law**

                                                    Marriage

and divorce in general

**Constitutional Law**

Marital

Relationship

The right to marry is a fundamental right protected by the Fourteenth Amendment's Due Process and Equal Protection Clauses. U.S.C.A. Const.Amend. 14.

Cases that cite this headnote

[12] **Constitutional Law**

Strict

scrutiny and compelling interest in general

**Constitutional Law**

Fundamental

rights

The point of fundamental-rights analysis in cases pursuant to the Due Process Clause and Equal Protection Clause is to protect an individual's

liberty against unwarranted governmental encroachment. U.S.C.A. Const.Amend. 14.

Cases that cite this headnote

[13] **Constitutional Law**

                                                    Marriage

and civil unions

**Constitutional Law**

                                                    Same-

sex marriage

The fundamental right to marry protected by the Due Process and Equal Protection Clauses encompasses the right to same-sex marriage. U.S.C.A. Const.Amend. 14.

Cases that cite this headnote

[14] **Constitutional Law**

                                                    Strict

or heightened scrutiny; compelling interest

Under strict scrutiny, a state may override a fundamental right through measures that are narrowly tailored to serve a compelling state interest.

Cases that cite this headnote

[15] **Constitutional Law**

                                                    Marriage

and civil unions

**Constitutional Law**

                                                    Same-

sex marriage

**Marriage**

                                                    Power

to regulate and control

**Marriage**

Same-

Sex and Other Non-Traditional Unions

Provisions of Florida Constitution and statutes banning same-sex marriage were not narrowly tailored to serve state's asserted goal of

3

Brenner v. Scott, 999 F.Supp.2d 1278 (2014)

25 Fla. L. Weekly Fed. D 11

procreation among married couples, and, thus, provisions violated Due Process and Equal Protection Clauses of Fourteenth Amendment; same-sex couples, like opposite-sex couples and single individuals, could adopt, and, while same-sex couples could not procreate, neither could many opposite-sex couples, and many opposite-sex couples did not wish to procreate. U.S.C.A. Const.Amend. 14; West's F.S.A. Const. Art. 1, § 27; West's F.S.A. §§ 741.04, 741.212.

Cases that cite this headnote

[16] **Courts**



Supreme

Court decisions

United States Supreme Court may indicate its willingness to reverse or reconsider a prior opinion with such clarity that a lower court may properly refuse to follow what appears to be binding precedent; even less clear-cut expressions by the Supreme Court can erode an earlier summary disposition because summary actions by the Court do not carry the full precedential weight of a decision announced in a written opinion after consideration of briefs and oral argument.

Cases that cite this headnote

[17] **Injunction**



Grounds

in general; multiple factors

As a prerequisite to a preliminary injunction, a plaintiff must establish a substantial likelihood of success on the merits, that the plaintiff will suffer irreparable injury if the injunction does not issue, that the threatened injury outweighs whatever damage the proposed injunction may cause a defendant, and that the injunction will not be adverse to the public interest.

Cases that cite this headnote

[18] **Civil Rights**



Preliminary

Injunction

Grant of preliminary injunction barring enforcement of provisions of Florida Constitution and statutes banning same-sex marriage was warranted; same-sex couples were likely to prevail on merits of their claim that provisions violated Due Process and Equal Protection Clauses of the Fourteenth Amendment, couples would have suffered irreparable harm by ongoing unconstitutional denial of their fundamental right to marry absent the injunction, threatened injury outweighed whatever damage proposed injunction might have caused state, and injunction would not have been adverse to public interest. U.S.C.A. Const.Amend. 14; West's F.S.A. Const. Art. 1, § 27; West's F.S.A. §§ 741.04, 741.212.

2 Cases that cite this headnote

[19] **Federal Courts**



Supersedeas

or Stay of Proceedings

A four-part test governs stays pending appeal: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

Cases that cite this headnote

[20] **Federal Courts**



Injunction

and temporary restraining order cases

State was entitled to stay of execution of judgment ordering preliminary injunction barring enforcement of provisions of Florida Constitution and statutes banning same-sex marriage; although state's interest in refusing to allow or recognize same-sex marriages was insufficient to override same-sex couples interest in vindicating their constitutional rights, there

**Brenner v. Scott, 999 F.Supp.2d 1278 (2014)**

25 Fla. L. Weekly Fed. D 11

was substantial public interest in stable marriage laws, which would allow those who would enter same-sex marriages the same opportunity for due deliberation that opposite-sex couples were routinely afforded. Fed.Rules Civ.Proc.Rule 62, 28 U.S.C.A.; West's F.S.A. Const. Art. 1, § 27; West's F.S.A. §§ 741.04, 741.212.

7 Cases that cite this headnote

**West Codenotes**

**Held Unconstitutional**
West's F.S.A. Const. Art. 1, § 27; West's F.S.A. §§ 741.04, 741.212

**Attorneys and Law Firms**

**\*1281** Bryan Everett Demaggio, William J. Sheppard, Sheppard White etc. PA, Samuel S. Jacobson, Bledsoe Jacobson Schmidt etc. PA, Jacksonville, FL, Daniel Boaz Tilley, Maria Kayanan, ACLU Foundation of Florida Inc., Stephen Frederick Rosenthal, Podhurst Orseck PA, Miami, FL, for Plaintiffs.

Allen C. Winsor, Florida Attorney General, Adam Scott Tanenbaum, Tallahassee, FL, James Jeffery Goodman, Jr., Jeff Goodman PA, Chipley, FL, Horatio G. Mihet, Liberty Counsel, Orlando, FL, for Defendants.

*ORDER DENYING THE MOTIONS TO DISMISS, GRANTING A PRELIMINARY INJUNCTION, AND TEMPORARILY STAYING THE INJUNCTION*

ROBERT L. HINKLE, District Judge.

The issue in these consolidated cases is the constitutionality of Florida's refusal to allow same-sex marriages or to recognize same-sex marriages lawfully entered elsewhere.

The founders of this nation said in the preamble to the United States Constitution that a goal was to secure the blessings of liberty to themselves and their posterity. Liberty has come more slowly for some than for others. It was 1967, nearly two centuries after the Constitution was adopted, before the Supreme Court struck down state laws prohibiting interracial marriage, thus protecting the liberty of individuals whose chosen life partner was of a different race. Now, nearly 50 years later, the arguments supporting the ban on interracial marriage seem an obvious pretext for racism; it must be hard for those who were not then of age to understand just how sincerely those views were held. When observers look back 50 years from now, the arguments supporting Florida's ban on same-sex marriage, though just as sincerely held, will again seem an obvious pretext for discrimination. Observers who are not now of age will wonder just how those views could have been held.

The Supreme Court struck down part of the federal Defense of Marriage Act last year. *United States v. Windsor*, —— U.S. ——, 133 S.Ct. 2675, 186 L.Ed.2d 808 (2013). Since that decision, 19 different federal courts, now including this one, have ruled on the constitutionality of state bans on same-sex marriage. The result: 19 consecutive victories for those challenging the bans. Based on these decisions, gays and lesbians, like all other adults, may choose a life partner and dignify the relationship through marriage. To paraphrase a civil-rights leader from the age when interracial marriage was first struck down, the arc of history is long, but it bends toward justice.

These consolidated cases are here on the plaintiffs' motions for a preliminary injunction and the defendants' motions to dismiss. This order holds that marriage is a fundamental right as that term is used in cases arising under the Fourteenth Amendment's Due Process and Equal Protection Clauses, that Florida's same-sex marriage provisions thus must be reviewed **\*1282** under strict scrutiny, and that, when so reviewed, the provisions are unconstitutional. The order dismisses the claims against unnecessary defendants but otherwise denies the motions to dismiss. The order grants a preliminary injunction but also grants a temporary stay.

All of this accords with the unbroken line of federal authority since *Windsor*. Indeed, except for details about these specific parties, this opinion could end at this point, merely by citing with approval the circuit decisions striking down state bans on same-sex marriage: *Bostic v. Schaefer*, Nos. 14–1167, 14–1169, 14–1173, 760 F.3d 352, 2014 WL 3702493 (4th Cir. July 28, 2014); *Bishop v. Smith*, Nos. 14–5003, 14–5006, 760 F.3d 1070, 2014 WL 3537847 (10th Cir. July 18, 2014); and *Kitchen v. Herbert*, 755 F.3d 1193 (10th Cir.2014).

**I. Background**

WestlawNext © 2014 Thomson Reuters. No claim to original U.S. Government Works.

Brenner v. Scott, 999 F.Supp.2d 1278 (2014)

25 Fla. L. Weekly Fed. D 11

This order addresses two cases that have been consolidated for pretrial purposes. The order sometimes refers to Case No. 4:14cv107 as the "Brenner case." The order sometimes refers to Case No. 4:14cv138 as the "Crrimsley case."

## A. The Plaintiffs

The combined total of 22 plaintiffs in the two cases includes 9 sets of same-sex spouses who were lawfully married in New York, the District of Columbia, Iowa, Massachusetts, or Canada; the surviving spouse of a New York same-sex marriage; 2 individuals who have been in a same-sex relationship for 15 years, are not married, but wish to marry in Florida; and an organization asserting the rights of its members who lawfully entered same-sex marriages outside Florida. All the individual plaintiffs live in Florida. The details follow.

The first two Brenner-case plaintiffs are James D. Brenner and Charles D. Jones. Mr. Brenner has worked for the Florida Forest Service since 1981. Mr. Jones has worked for the Florida Department of Education since 2003. They were married in Canada in 2009. Mr. Brenner asserts that the state's refusal to recognize their marriage eliminates a retirement option that would provide for Mr. Jones after Mr. Brenner's death.

Brenner-case plaintiffs Stephen Schlairet and Ozzie Russ live in Washington County, Florida. They are not married in any jurisdiction. They meet all requirements for marriage in Florida except that they are both men. They wish to marry and have applied to the defendant Washington County Clerk of Court for a marriage license. During breaks in employment, they have been unable to obtain healthcare coverage under one another's insurance plans because of Florida's challenged marriage provisions. Based solely on those provisions, the Clerk refuses to issue a license.

Grimsley-case plaintiffs Sloan Grimsley and Joyce Albu have been together for 9 years and were married in New York in 2011. They have two adopted minor children. Ms. Grimsley is a firefighter and paramedic for the City of Palm Beach Gardens, Florida. Ms. Grimsley and Ms. Albu are concerned that if something happens to Ms. Grimsley in the line of duty, Ms. Albu will not receive the same support the state provides to surviving opposite-sex spouses of first responders.

Grimsley-case plaintiffs Chuck Hunziker and Bob Collier have been together for over 50 years. They lived most of their lives in New York and were married there in 2013. They now are retired and live in Florida.

Grimsley-case plaintiffs Lindsay Myers and Sarah Humlie have been together for nearly 4 years and were married in the District of Columbia in 2012. They live in Pensacola, Florida. Ms. Myers works for the University of West Florida. Ms. *1283 Myers seeks the option to designate Ms. Humlie as her joint annuitant for pension purposes. Ms. Humlie does not receive health insurance through her employer. Because state law prohibits public employers from providing insurance for same-sex spouses, Ms. Myers cannot get coverage for Ms. Humlie on Ms. Myers's health plan. The couple makes substantial payments each month for private health insurance for Ms. Humlie.

Grimsley-case plaintiffs Robert Loupo and John Fitzgerald have been together for 12 years. They were married in New York in 2013. Mr. Loupo is employed with the Miami–Dade County public schools. Mr. Fitzgerald is retired but previously worked for Miami–Dade County. Mr. Loupo wishes to designate Mr. Fitzgerald as his retirement-plan joint annuitant.

Grimsley-case plaintiffs Denise Hueso and Sandra Newson were married in Massachusetts in 2009. They lived in Massachusetts, but now they live in Miami. They have had custody of their now 15–year-old son for 5 years, first as foster parents and now as adoptive parents.

Grimsley-case plaintiffs Juan del Hierro and Thomas Gantt, Jr., have been together for 6 years and were married in Washington, D.C., in 2010. They live in North Miami Beach. They have an adopted son under age 2. Mr. Gantt taught for more than a decade in public schools but now works at a virtual school. If their marriage were recognized, Mr. Gantt would designate Mr. del Hierro as his pension beneficiary.

Grimsley-case plaintiffs Christian Ulvert and Carlos Andrade live in Miami. They have been together for 4 years and were married in the District of Columbia in 2013. Mr. Ulvert previously worked for the Florida Legislature and wishes to designate Mr. Andrade as his pension beneficiary. They wish to someday adopt children.

Grimsley-case plaintiffs Richard Milstein and Eric Hankin live in Miami Beach. They have been together for 12 years and were married in Iowa in 2010.

6

**Brenner v. Scott, 999 F.Supp.2d 1278 (2014)**

25 Fla. L. Weekly Fed. D 11

Grimsley-case plaintiff Arlene Goldberg married Carol Goldwasser in New York in 2011. Ms. Goldwasser died in March 2014. The couple had been together for 47 years. Ms. Goldwasser was the toll-facilities director for Lee County, Florida, for 17 years. Ms. Goldberg is retired but works part time at a major retailer. The couple had been living with and taking care of Ms. Goldwasser's elderly parents, but now Ms. Goldberg cares for them alone. Social-security benefits are Ms. Goldberg's primary income. Florida's refusal to recognize the marriage has precluded Ms. Goldberg from obtaining social-security survivor benefits. Ms. Goldberg says that for that reason only, she will have to sell her house, and Ms. Goldwasser's parents are looking for another place to live. Ms. Goldberg also wishes to amend Ms. Goldwasser's death certificate to reflect their marriage.

Grimsley-case plaintiff SAVE Foundation, Inc. was established in 1993 and is dedicated to promoting, protecting, and defending equality for lesbian, gay, bisexual, and transgendered people. SAVE's activities include education initiatives, outreach, grassroots organizing, and advocacy. In this action SAVE asserts the rights of its members who are same-sex couples and have lawfully married outside of Florida.

**B. The Defendants**

The Brenner and Grimsley cases have four defendants in common. The Brenner case adds a fifth.

The defendants in common are State of Florida officers, all in their official capacities: the Governor, the Attorney General, the Surgeon General, and the Secretary of *1284 the Department of Management Services. This order sometimes refers to these four defendants as the "state defendants." The order sometimes refers to the Secretary of the Department of Management Services as "the Secretary."

The fifth defendant in the Brenner case is the Clerk of Court of Washington County, Florida, again in his official capacity. This order sometimes refers to him as the "Clerk of Court" or simply "the Clerk."

**C. The Claims**

In each case, the plaintiffs have filed an amended complaint. Each amended complaint asserts that the Florida same-sex marriage provisions violate the Fourteenth Amendment's Due Process and Equal Protection Clauses. On the Equal Protection claim, the Brenner plaintiffs say the challenged provisions improperly discriminate based on sexual orientation, while the Grimsley plaintiffs assert improper discrimination based on both sexual orientation and sex (that is, gender). The Brenner plaintiffs assert additional claims based on the First Amendment's right of association, the Establishment Clause, and the Supremacy Clause.

**D. The Challenged Provisions**

The Brenner and Grimsley plaintiffs all challenge Article I, § 27, of the Florida Constitution, and Florida Statutes § 741.212. The Brenner plaintiffs also challenge Florida Statutes § 741.04(1).

Article I, § 27 provides:

*Marriage defined.*—Inasmuch as marriage is the legal union of only one man and one woman as husband and wife, no other legal union that is treated as marriage or the substantial equivalent thereof shall be valid or recognized.

Florida Statutes § 741.212 provides:

(1) Marriages between persons of the same sex entered into in any jurisdiction, whether within or outside the State of Florida, the United States, or any other jurisdiction, either domestic or foreign, or any other place or location, or relationships between persons of the same sex which are treated as marriages in any jurisdiction, whether within or outside the State of Florida, the United States, or any other jurisdiction, either domestic or foreign, or any other place or location, are not recognized for any purpose in this state.

(2) The state, its agencies, and its political subdivisions may not give effect to any public act, record, or judicial proceeding of any state, territory, possession, or tribe of the United States or of any other jurisdiction, either domestic or foreign, or any other place or location respecting either a marriage or relationship not recognized under subsection (1) or a claim arising from such a marriage or relationship.

(3) For purposes of interpreting any state statute or rule, the term "marriage" means only a legal union between one man and one woman as husband and wife, and the term "spouse" applies only to a member of such a union.

Florida Statutes § 741.04(1) provides:

No county court judge or clerk of the circuit court in this state shall issue a license for the marriage of any

person ... unless one party is male and the other party is female.

for listing a spouse, says "none." That a spouse would find this offensive and seek to have it changed is neither surprising nor trivial. Ms. Goldberg has a sufficient personal stake in pursuing this relief to have standing.

**E. The Pending Motions**
In each case, the plaintiffs have moved for a preliminary injunction barring enforcement of the challenged provisions. The defendants oppose the motions and assert that if a preliminary injunction is granted, it should be stayed pending appeal.

In each case, the state defendants have moved to dismiss the amended complaint. They do not contest the standing of most *1285 of the plaintiffs to bring these cases. They acknowledge that the Secretary of the Department of Management Services is a proper defendant, but they assert that the Governor, Attorney General, and Surgeon General are not. They say these defendants have no role in enforcing the challenged provisions. On the merits, the state defendants say the state's same-sex marriage provisions are constitutional.

The Clerk of Court has moved to dismiss the Brenner amended complaint—the only one in which the Clerk is named as a defendant—on the ground that he has done nothing more than comply with state law, that he therefore is not a proper defendant, and that, in any event, the state's same-sex marriage provisions are constitutional.

All parties have agreed that these motions should be decided based on the existing record, without further evidence.

## II. Standing

[1]   The plaintiffs whose financial interests are directly affected by the Florida marriage provisions plainly have standing to challenge them. This apparently includes most or all of the individual plaintiffs. The effect is the most direct for current or former public employees who are unable to obtain for themselves or their spouses the same benefits—primarily retirement benefits and healthcare coverage—as are available to opposite-sex couples. The defendants do not challenge the plaintiffs' standing in this respect.

[2]   The defendants question only Ms. Goldberg's standing to pursue a change in Ms. Goldwasser's death certificate or to seek social-security benefits based on their marriage. But Ms. Goldberg has standing on each basis. The death certificate says Ms. Goldwasser was "never married" and, in the blank

## III. The Proper Defendants

[3]   Under *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), a plaintiff may pursue a federal constitutional claim for prospective relief against an official-capacity state defendant who "is responsible for the challenged action" or who, " 'by virtue of his office, has some connection' with the unconstitutional act or conduct complained of." *Luckey v. Harris*, 860 F.2d 1012, 1015–16 (11th Cir.1988) (quoting *Ex parte Young*, 209 U.S. at 157, 28 S.Ct. 441).

[4]   The state defendants acknowledge that the Secretary meets this test. The Secretary administers the retirement and healthcare provisions that apply to current and former state employees. As required by the challenged provisions, the Secretary refuses to recognize same-sex marriages. The plaintiffs assert that the Secretary thus violates the United States Constitution.

[5]   The Surgeon General also meets the test. The Surgeon General is the head of the Department of Health. The Surgeon General thus must "execute the powers, duties, and functions" of the department. Fla. Stat. § 20.05(1)(a). Those functions include establishing the official form for death certificates, which must include the decedent's "marital status." *Id.* § 382.008(6). The official form includes a blank for listing the decedent's spouse. The Department may change a death certificate's marital information when the name of a "surviving spouse" is omitted or based on an order from "a court of competent jurisdiction." *Id.* § 382.016(2). This is a court of competent jurisdiction, Ms. Goldberg seeks such an order, and the person to whom such an order should properly be directed is the *1286 Surgeon General. He is a proper defendant in this action.

[6]   Whether the Governor and Attorney General are proper defendants is less clear. It also makes no difference. As the state defendants acknowledge, an order directed to the Secretary—or, for matters relating to the death certificate, to the Surgeon General—will be sufficient to provide complete relief. The Eleventh Circuit has held that a district court may dismiss claims against redundant official-capacity

Brenner v. Scott, 999 F.Supp.2d 1278 (2014)

25 Fla. L. Weekly Fed. D 11

defendants. *See Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir.1991) (approving the dismissal of official-capacity defendants whose presence was merely redundant to the naming of an institutional defendant). The prudent course here is to dismiss the Governor and Attorney General on this basis. *See generally Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 341, 345–46, 56 S.Ct. 466, 80 L.Ed. 688 (1936) (Brandeis, J., concurring) (setting out fundamental principles of constitutional adjudication, including that, "The Court will not 'anticipate a question of constitutional law in advance of the necessity of deciding it' ") (quoting earlier authorities in part); *see also Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445, 108 S.Ct. 1319, 99 L.Ed.2d 534 (1988) ("A fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them."), *quoted with approval in United States v. $242,484.00*, 318 F.3d 1240, 1242 n. 2 (11th Cir.2003).

If it turns out later that complete relief cannot be afforded against the Secretary and Surgeon General, any necessary and proper additional defendant can be added.

[7]  Finally, the Clerk of Court for Washington County is plainly a proper defendant. The Clerk denied a marriage license to Mr. Schlairet and Mr. Russ and would properly be ordered to issue the license if they prevail on their claims in this action. That the Clerk was acting in accordance with state law does not mean he is not a proper defendant. Quite the contrary. The whole point of *Ex parte Young* is to provide a remedy for unconstitutional action that is taken under state authority, including, as here, a state constitution or laws.

In sum, this action will go forward against the Secretary, the Surgeon General, and the Clerk. The claims against the Governor and Attorney General will be dismissed without prejudice as redundant.

## IV. The Merits

The Fourteenth Amendment provides, among other things, that a state shall not "deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." The amendment was added to the Constitution after the Civil War for the express purpose of protecting rights against encroachment by state governments. By that time it was well established that a federal court had the authority—indeed,

the duty—to strike down an unconstitutional statute when necessary to the decision in a case or controversy properly before the court. The State of Florida has itself asked federal courts to do so. So the suggestion that this is just a federalism case—that the state's laws are beyond review in federal court—is a nonstarter.

That this case involves marriage does not change this result. The Supreme Court recognized this in *Loving v. Virginia*, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967). There the Court struck down a Virginia statute that prohibited interracial marriage. The defendants say interracial marriage is different from same-sex marriage. But on the question of whether a federal court has the authority—indeed, the duty—to strike down a state marriage *1287 provision if it conflicts with a party's rights under the Fourteenth Amendment, *Loving* is on point and controlling. So are *Zablocki v. Redhail*, 434 U.S. 374, 98 S.Ct. 673, 54 L.Ed.2d 618 (1978), and *Turner v. Safley*, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), where the Court invalidated state provisions restricting marriage. Further, in *Windsor*, the Court said—three times—that a state's interest "in defining and regulating marital relations" is "subject to constitutional guarantees." 133 S.Ct. at 2691, 2692. In short, it is settled that a state's marriage provisions must comply with the Fourteenth Amendment and may be struck down when they do not.

It bears noting, too, that the defendants' invocation of Florida's prerogative as a state to set the rules that govern marriage loses some of its force when the issue raised by 20 of the 22 plaintiffs is the validity of marriages lawfully entered in other jurisdictions. The defendants do not explain why, if a state's laws on marriage are indeed entitled to such deference, the State of Florida is free to ignore the decisions of other equally sovereign states, including New York, Iowa, and Massachusetts.

In sum, the critical issue is whether the challenged Florida provisions contravene the plaintiffs' rights to due process and equal protection. The general framework that applies to such claims is well settled.

[8]  [9]  First, the Due Process Clause includes a substantive element—a check on a state's authority to enact certain measures regardless of any procedural safeguards the state may provide. Substantive due process is an exceedingly narrow concept that protects only fundamental rights. When governmental action impinges on fundamental rights and is challenged in a case properly before a court, the court

9

Brenner v. Scott, 999 F.Supp.2d 1278 (2014)

25 Fla. L. Weekly Fed. D 11

reviews the governmental action with strict scrutiny. Whether some actions that impinge on fundamental rights are properly subject to a lower level of scrutiny—sometimes labeled intermediate scrutiny—is unsettled and ultimately makes no difference here.

[10]  Second, under the Equal Protection Clause, a court applies strict scrutiny to governmental actions that impinge on fundamental rights or employ suspect classifications. Most other governmental actions are subject to only rational-basis review. Some actions are properly subject to intermediate equal-protection scrutiny, but the scope of actions subject to intermediate scrutiny is unsettled and ultimately makes no difference here.

[11]  So the first step in analyzing the merits in these cases, as both sides agree, is determining whether the right asserted by the plaintiffs is a fundamental right as that term is used in due-process and equal-protection jurisprudence. Almost every court that has addressed the issue since the Supreme Court's 2013 decision in *Windsor* has said the answer is yes. That view is correct.

The right asserted by the plaintiffs is the right to marry. The Supreme Court has repeatedly recognized that this is a fundamental right. Thus, for example, in *Loving*, the Court held that Virginia's ban on interracial marriage violated the Due Process and Equal Protection Clauses, even though similar bans were widespread and of long standing. The Court did not ask the issue as whether the right to *interracial* marriage was fundamental. *See Kitchen v. Herbert*, 961 F.Supp.2d 1181, 1202 (D.Utah 2013) ("Instead of declaring a new right to interracial marriage, the Court held [*in Loving* ] that individuals could not be restricted from exercising their existing right to marry on account of the race of their chosen partner.").

*1288  Similarly, in *Zablocki*, the Court labeled the right to marry fundamental and struck down, on equal-protection grounds, a Wisconsin statute that prohibited residents with unpaid court-ordered child-support obligations from entering new marriages. The Court did not ask whether the right not to pay child support was fundamental, or whether the right to marry while owing child support was fundamental; the Court started and ended its analysis on this issue with the accepted principle that the right *to marry* is fundamental.

The Court took the same approach in *Turner*. A Missouri regulation prohibited prisoners from marrying other than for

a compelling reason. The Court said the state's interests in regulating its prisons were insufficient to overcome the prisoners' fundamental right to marry. The Court did not ask whether there is a fundamental right to marry while in prison, as distinguished from the more general right to marry.

In other cases, too, the Court has said the right to marry is fundamental. Indeed, the Court has sometimes listed marriage as the very paradigm of a fundamental right. *See, e.g., Washington v. Glucksberg*, 521 U.S. 702, 720, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997) (refusing to recognize assisted suicide as a fundamental right, listing rights that *do* qualify as fundamental, and placing the right to marry first on the list); *Griswold v. Connecticut*, 381 U.S. 479, 485–86, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965) (including the right to marry in the fundamental right to privacy); *Skinner v. Oklahoma ex rel. Williamson*, 316 U.S. 535, 541, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942) (labeling marriage "one of the basic civil rights of man"); *Meyer v. Nebraska*, 262 U.S. 390, 399, 43 S.Ct. 625, 67 L.Ed. 1042 (1923) (saying that "[w]ithout doubt" the right "to marry" is within the liberty protected by the Due Process Clause); *Maynard v. Hill*, 125 U.S. 190, 205, 8 S.Ct. 723, 31 L.Ed. 654 (1888) (labeling marriage "the most important relation in life").

Perhaps recognizing these authorities, the defendants do not, and could not plausibly, assert that the right to marry is not a fundamental right for due-process and equal-protection purposes. Few rights are *more* fundamental. The defendants assert, though, that the right at issue in the cases at bar is the right to marry a person of the same sex, not just the right to marry. In support of this assertion, the defendants cite a principle derived from *Glucksberg*: due-process analysis requires a " 'careful description' of the asserted fundamental liberty interest." 521 U.S. at 721, 117 S.Ct. 2258 (citing *Reno v. Flores*, 507 U.S. 292, 302, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993)).

A careful description means only an accurate one, determined at the appropriate level of generality. Indeed, *Glucksberg* itself said the right to marry is fundamental, describing the right at that level of generality. 521 U.S. at 720, 117 S.Ct. 2258. And *Loving, Zablocki*, and *Turner* applied the right to marry at that level of generality, without asking whether the specific application of the right to marry—to interracial marriage or debtor marriage or prisoner marriage —was fundamental when viewed in isolation.

10

Brenner v. Scott, 999 F.Supp.2d 1278 (2014)
25 Fla. L. Weekly Fed. D 11

[12]   [13]   This approach makes sense. The point of fundamental-rights analysis is to protect an individual's liberty against unwarranted governmental encroachment. So it is a two-step analysis: is the right fundamental, and, if so, is the government encroachment unwarranted (that is, does the encroachment survive strict scrutiny)? At the first step, the right to marry—to choose one's own spouse—is just as important to an individual regardless of whom the individual chooses to marry. So the right to marry is just as important when *1289 the proposed spouse is a person of the same race and different sex (as in the most common marriages, those that have been approved without controversy for the longest period), or a person of a different race (as in *Loving* ), or a person with unpaid child-support obligations (as in *Zablocki* ), or a prisoner (as in *Turner* ), or a person of the same sex (as in the cases at bar).

It is only at the second step—on the question of whether the government encroachment is unwarranted—that the nature of the restriction becomes critical. The governmental interest in *overriding* a person's fundamental right to marry may be different in these different situations—that certainly was the case in *Zablocki* and *Turner*, for example—but that is a different issue from whether the right itself is fundamental. The right to marry is as fundamental for the plaintiffs in the cases at bar as for any other person wishing to enter a marriage or have it recognized.

[14]   That leaves for analysis the second step, the application of strict scrutiny. A state may override a fundamental right through measures that are narrowly tailored to serve a compelling state interest. A variety of justifications for banning same-sex marriages have been proffered by these defendants and in the many other cases that have plowed this ground since *Windsor*. The proffered justifications have all been uniformly found insufficient. Indeed, the states' asserted interests would fail even intermediate scrutiny, and many courts have said they would fail rational-basis review as well. On these issues the circuit decisions in *Bostic, Bishop,* and *Kitchen* are particularly persuasive. All that has been said there is not repeated here.

[15]   Just one proffered justification for banning same-sex marriage warrants a further note. The defendants say the critical feature of marriage is the capacity to procreate. Same-sex couples, like opposite-sex couples and single individuals, can adopt, but same-sex couples cannot procreate. Neither can many opposite-sex couples. And many opposite-sex couples do not wish to procreate.

Florida has never conditioned marriage on the desire or capacity to procreate. Thus individuals who are medically unable to procreate can marry in Florida. If married elsewhere, their marriages are recognized in Florida. The same is true for individuals who are beyond child-bearing age. And individuals who have the capacity to procreate when married but who voluntarily or involuntarily become medically unable to procreate, or pass the age when they can do so, are allowed to remain married. In short, the notion that procreation is an essential element of a Florida marriage blinks reality.

Indeed, defending the ban on same-sex marriage on the ground that the capacity to procreate is the essence of marriage is the kind of position that, in another context, might support a finding of pretext. It is the kind of argument that, in another context, might be "accompanied by a suspicion of mendacity." *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 511, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). The undeniable truth is that the Florida ban on same-sex marriage stems entirely, or almost entirely, from moral disapproval of the practice. Properly analyzed, the ban must stand or fall on the proposition that the state can enforce that moral disapproval without violating the Fourteenth Amendment.

The difficulty for the defendants is that the Supreme Court has made clear that moral disapproval, standing alone, cannot sustain a provision of this kind. *Windsor* so indicates. Further, in *Bowers v. Hardwick,* 478 U.S. 186, 106 S.Ct. 2841, 92 L.Ed.2d 140 (1986), the Court upheld a state law prohibiting sodomy, basing the decision on the state's prerogative to make *1290 moral choices of this kind. But later, in *Lawrence v. Texas,* 539 U.S. 558, 123 S.Ct. 2472, 156 L.Ed.2d 508 (2003), the Court revisited the issue, struck down a statute prohibiting gay sex, and expressly overruled *Bowers*. In his *Lawrence* dissent, Justice Scalia made precisely the point set out above—that a ban on same-sex marriage must stand or fall on the proposition that the state can enforce moral disapproval of the practice without violating the Fourteenth Amendment. Justice Scalia put it this way: "State laws against ... same-sex marriage ... are likewise sustainable only in light of *Bowers'* validation of laws based on moral choices." *Lawrence,* 539 U.S. at 590, 123 S.Ct. 2472 (Scalia, J., dissenting).

Had we begun with a clean slate, one might have expected the defendants to lead off their arguments in this case by invoking the state's moral disapproval of same-sex marriage. But the defendants did not start there, undoubtedly because

Brenner v. Scott, 999 F.Supp.2d 1278 (2014)

25 Fla. L. Weekly Fed. D 11

any such defense would run headlong into the Supreme Court's decisions in *Lawrence* and *Windsor*. *See also Romer v. Evans*, 517 U.S. 620, 116 S.Ct. 1620, 134 L.Ed.2d 855 (1996) (striking down a state constitutional amendment that discriminated based on sexual orientation). Each of these decisions rejected moral disapproval of same-sex orientation as a legitimate basis for a law. *See also Bowers*, 478 U.S. at 216, 106 S.Ct. 2841 (Stevens, J., dissenting) ("[T]he fact that the governing majority in a State has traditionally viewed a particular practice as immoral is not a sufficient reason for upholding a law prohibiting the practice; neither history nor tradition could save a law prohibiting miscegenation from constitutional attack.").

In short, we do not write on a clean slate. Effectively stripped of the moral-disapproval argument by binding Supreme Court precedent, the defendants must fall back on make-weight arguments that do not withstand analysis. Florida's same-sex marriage provisions violate the Due Process and Equal Protection Clauses.

In reaching this conclusion, I have not overlooked the defendants' reliance on *Baker v. Nelson*, 409 U.S. 810, 93 S.Ct. 37, 34 L.Ed.2d 65 (1972), and *Lofton v. Sec'y of Dep't of Children & Family Servs.*, 358 F.3d 804 (11th Cir.2004).

[16]   In *Baker*, the Supreme Court dismissed for want of a substantial federal question an appeal from a state supreme court decision rejecting a constitutional challenge to the state's ban on same-sex marriage. Such a summary disposition binds lower federal courts unless "doctrinal developments" in the Supreme Court undermine the decision. *See Hicks v. Miranda*, 422 U.S. 332, 344–45, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975) (holding that a summary disposition binds lower courts "except when doctrinal developments indicate otherwise") (quoting *Port Auth. Bondholders Protective Comm. v. Port of New York Auth.*, 387 F.2d 259, 263 n. 3 (2d Cir.1967) (Friendly, J.)). The Eleventh Circuit has recognized this principle:

> Doctrinal developments need not take the form of an outright reversal of the earlier case. The Supreme Court may indicate its willingness to reverse or reconsider a prior opinion with such clarity that a lower court may properly refuse to follow what appears to be binding precedent. Even less clear-cut expressions by the Supreme Court can erode an earlier summary disposition

because summary actions by the Court do not carry the full precedential weight of a decision announced in a written opinion after consideration of briefs and oral argument. The Court could suggest that a legal issue once thought to be settled by a summary action should now be treated as an open question, and it could do so without directly mentioning *1291 the earlier case. At that point, lower courts could appropriately reach their own conclusions on the merits of the issue.

*Hardwick v. Bowers*, 760 F.2d 1202 (11th Cir.1985) (citations omitted), *rev'd on other grounds, Bowers v. Hardwick*, 478 U.S. 186, 106 S.Ct. 2841, 92 L.Ed.2d 140 (1986), *overruled by Lawrence v. Texas*, 539 U.S. 558, 123 S.Ct. 2472, 156 L.Ed.2d 508 (2003).

Every court that has considered the issue has concluded that the intervening doctrinal developments—as set out in *Lawrence*, *Romer*, and *Windsor*—have sapped *Baker's* precedential force.

In *Lofton*, the plaintiffs challenged a Florida statute that prohibited adoptions by gays. Circuit precedent held, and both sides agreed, that adoption was *not* a fundamental right. The court said sexual orientation was not a suspect classification. With no fundamental right and no suspect classification, the court applied only rational-basis scrutiny, not strict or intermediate scrutiny. And the court said that, because of the primacy of a child's welfare, "the state can make classifications for adoption purposes that would be constitutionally suspect in other arenas." 358 F.3d at 810. The court criticized the Supreme Court's *Lawrence* decision, 358 F.3d at 816–17, and apparently gave it little or no sway. The court upheld the Florida statute. The statute—the last in the nation banning gay adoption—was later struck down by Florida's own courts. *See Florida Dep't of Children & Families v. Adoption of X.X.G.*, 45 So.3d 79, 81 (Fla. 3d DCA 2010).

The plaintiffs argue, with considerable force, that *Lofton* does not square with *Lawrence*, *Romer*, and *Windsor*. But *Lofton* is the law of the circuit. It establishes that, at least for now, sexual orientation is not a suspect classification in this circuit for equal-protection purposes. But *Lofton* says nothing about whether marriage is a fundamental right. *Lofton* does

Brenner v. Scott, 999 F.Supp.2d 1278 (2014)

25 Fla. L. Weekly Fed. D 11

not change the conclusion that Florida's same-sex marriage provisions violate the Due Process and Equal Protection Clauses.

The institution of marriage survived when bans on interracial marriage were struck down, and the institution will survive when bans on same-sex marriage are struck down. Liberty, tolerance, and respect are not zero-sum concepts. Those who enter opposite-sex marriages are harmed not at all when others, including these plaintiffs, are given the liberty to choose their own life partners and are shown the respect that comes with formal marriage. Tolerating views with which one disagrees is a hallmark of civilized society.

## V. Preliminary Injunction

**[17]**   As a prerequisite to a preliminary injunction, a plaintiff must establish a substantial likelihood of success on the merits, that the plaintiff will suffer irreparable injury if the injunction does not issue, that the threatened injury outweighs whatever damage the proposed injunction may cause a defendant, and that the injunction will not be adverse to the public interest. *See, e.g., Charles H. Wesley Educ. Found., Inc. v. Cox,* 408 F.3d 1349, 1354 (11th Cir.2005); *Siegel v. LePore,* 234 F.3d 1163, 1176 (11th Cir.2000) (en banc).

**[18]**   For the reasons set out above, the plaintiffs are likely to prevail on the merits. The plaintiffs also meet the other requirements for a preliminary injunction. The plaintiffs will suffer irreparable harm if an injunction is not issued. Indeed, the ongoing unconstitutional denial of a fundamental right almost always constitutes irreparable harm. The threatened injury to the plaintiffs outweighs whatever damage the proposed injunction may cause the defendants, that is, the state. And a preliminary injunction will not be adverse to the public interest. Vindicating constitutional *1292 rights almost always serves the public interest.

This order requires the plaintiffs' to give security for costs in a modest amount. Any party may move at any time to adjust the amount of security.

## VI. Stay

**[19]**   A four-part test governs stays pending appeal: "(1) whether the stay applicant has made a strong showing that he

is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton v. Braunskill,* 481 U.S. 770, 776, 107 S.Ct. 2113, 95 L.Ed.2d 724 (1987). *See also Venus Lines Agency v. CVG Industria Venezolana De Aluminio, C.A.,* 210 F.3d 1309, 1313 (11th Cir.2000) (applying the same test).

The four-part test closely tracks the four-part test governing issuance of a preliminary injunction. Because the governing four-part tests are so similar, it is a rare case in which a preliminary injunction is properly stayed pending appeal. This is the rare case.

**[20]**   As set out above, the state's interest in refusing to allow or recognize the plaintiffs' same-sex marriages is insufficient to override the plaintiffs' interest in vindicating their constitutional rights. The public interest does not call for a different result. So the preliminary injunction will issue, eliminating any delay in this court, and allowing an enjoined party to go forward in the Eleventh Circuit.

But at the stay-pending-appeal stage, an additional public interest comes into play. There is a substantial public interest in implementing this decision just once—in not having, as some states have had, a decision that is on-again, off-again. This is so for marriages already entered elsewhere, and it is more clearly so for new marriages. There is a substantial public interest in stable marriage laws. Indeed, there is a substantial public interest in allowing those who would enter same-sex marriages the same opportunity for due deliberation that opposite-sex couples routinely are afforded. Encouraging a rush to the marriage officiant, in an effort to get in before an appellate court enters a stay, serves the interests of nobody.

A stay thus should be entered for long enough to provide reasonable assurance that the opportunity for same-sex marriages in Florida, once opened, will not again close. The stay will remain in effect until stays have been lifted in *Bostic, Bishop,* and *Kitchen,* and for an additional 90 days to allow the defendants to seek a longer stay from this court or a stay from the Eleventh Circuit or Supreme Court.

There is one exception to the stay. The exception is the requirement to correct Ms. Goldwasser's death certificate. The correction is important to Ms. Goldberg. There is little if any public interest on the other side of the scale. There is no good reason to further deny Ms. Goldberg the simple

**Brenner v. Scott, 999 F.Supp.2d 1278 (2014)**

25 Fla. L. Weekly Fed. D 11

human dignity of being listed on her spouse's death certificate. Indeed, the state's refusal to let that happen is a poignant illustration of the controversy that brings us here.

### VII. Filing

Because this is an appealable order, it will be filed separately in each of the consolidated cases. Any notice of appeal must be filed separately in each case to which it applies.

### VIII. Conclusion

The Supreme Court has repeatedly recognized the fundamental right to marry. The Court applied the right to interracial marriage in 1967 despite state laws that were widespread and of long standing. **\*1293** Just last year the Court struck down a federal statute that prohibited federal recognition of same-sex marriages lawfully entered in other jurisdictions. The Florida provisions that prohibit the recognition of same-sex marriages lawfully entered elsewhere, like the federal provision, are unconstitutional. So is the Florida ban on entering same-sex marriages.

For the reasons set out in this order,

IT IS ORDERED:

1. The state defendants' motion to dismiss, ECF No. 50 in Case No. 4:14cv107, is granted in part and denied in part. All claims against the defendant Governor and Attorney General are dismissed without prejudice as redundant. I do *not* direct the entry of judgment under Federal Rule of Civil Procedure 54(b). In all other respects the motion to dismiss is denied.

2. The defendant Clerk of Court's motion to dismiss, ECF No. 49 in Case No. 4:14cv107, is denied.

3. The plaintiffs' motions for a preliminary injunction, ECF Nos. 2, 11, and 42 in Case No. 4:14cv107, are granted against the remaining defendants.

4. The defendant Secretary of the Florida Department of Management Services and the defendant Florida Surgeon General must take no steps to enforce or apply these Florida provisions on same-sex marriage: Florida Constitution, Article I, § 27; Florida Statutes § 741.212; and Florida Statutes § 741.04(1). The preliminary injunction set out in this

paragraph will take effect upon the posting of security in the amount of $500 for costs and damages sustained by a party found to have been wrongfully enjoined. The preliminary injunction binds the Secretary, the Surgeon General, and their officers, agents, servants, employees, and attorneys—and others in active concert or participation with any of them—who receive actual notice of this injunction by personal service or otherwise.

5. The defendant Florida Surgeon General must issue a corrected death certificate for Carol Goldwasser showing that at the time of her death she was married to Arlene Goldberg. The deadline for doing so is the later of (a) September 22, 2014, or (b) 14 days after all information is provided that would be required in the ordinary course of business as a prerequisite to listing an opposite-sex spouse on a death certificate. The preliminary injunction set out in this paragraph will take effect upon the posting of security in the amount of $100 for costs and damages sustained by a party found to have been wrongfully enjoined. The preliminary injunction binds the Surgeon General and his officers, agents, servants, employees, and attorneys—and others in active concert or participation with any of them—who receive actual notice of this injunction by personal service or otherwise.

6. The defendant Clerk of Court of Washington County, Florida, must issue a marriage license to Stephen Schlairet and Ozzie Russ. The deadline for doing so is the later of (a) 21 days after any stay of this preliminary injunction expires or (b) 14 days after all information is provided and all steps are taken that would be required in the ordinary course of business as a prerequisite to issuing a marriage license to an opposite-sex couple. The preliminary injunction set out in this paragraph will take effect upon the posting of security in the amount of $100 for costs and damages sustained by a party found to have been wrongfully enjoined. The preliminary injunction binds the Clerk of Court and his officers, agents, employees, and attorneys—and others in active concert or participation with any of them—who receive actual notice of this **\*1294** injunction by personal service or otherwise.

The preliminary injunctions set out in paragraphs 4 and 6 are stayed and will not take effect until 91 days after stays have been denied or lifted in *Bostic v. Schaefer*, Nos. 14–1167, 14–1169, 14–1173, 760 F.3d 352, 2014 WL 3702493 (4th Cir. July 28, 2014); *Bishop v. Smith*, Nos. 14–5003, 14–5006, 760 F.3d 1070, 2014 WL 3537847 (10th Cir. July 18, 2014); and *Kitchen v. Herbert*, 755 F.3d 1193 (10th Cir.2014). The stay may be lifted or extended by further order.

**Brenner v. Scott, 999 F.Supp.2d 1278 (2014)**

25 Fla. L. Weekly Fed. D 11

**Parallel Citations**

25 Fla. L. Weekly Fed. D 11

End of Document

© 2014 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT E




LIVE NEWSCAST    Watch WESH 2 News

Home / Local News

# Ashton won't prosecute clerks over same-sex marriage licenses
### *Clerks office says judicial clarification still needed*

Published    4:27 PM EST Dec 23, 2014

Tweet {8}
g+1 {2}

Text Size: A A A

Advertising

NEXT STORY
Official: Riders assisted off Universal's Harry Potter ride

State Attorney Jeff Ashton will not bring charges against an FBI agent in the shooting death of Ibragim Todashev in Orlando, an included.

VIEW LARGE

**ORANGE COUNTY, Fla.** — State Attorney Jeff Ashton said he will not prosecute clerks in Orange and Osceola counties for issuing same-sex marriage licenses, but confusion remains over when they can be issued.

**FLORIDA SAME-SEX MARRIAGES POSSIBLE JAN. 6**



Florida appears set to recognize same-sex marriages on January 6, after the U.S. Supreme Court on Friday declined to further delay a lower court's finding that the state's ban on the unions is unconstitutional. The high court Friday night, without exp...

MORE

The U.S. Supreme Court on Friday declined to delay a lower court's finding that the state's ban on the unions is unconstitutional. The stay on same-sex marriages expires on Jan. 6.

But lawyers have issued warnings that anyone outside of Washington County, where the original lawsuit began, could be arrested.

"With all respect to Mr. Ashton, his announcement does not mean a thing. We are still seeking judicial clarification as to whether or not the issuance of licenses by this office would constitute a misdemeanor," said Paul Donnelly, spokesman for Orange County Clerk Tiffany Moore Russell.

In a motion filed late Tuesday, Washington County asked a federal judge to say whether his ruling applies to just one couple or to any same-sex couple seeking a marriage license in the county.

## MOST POPULAR

SLIDESHOWS | STORIES | VIDEOS

1. **10 ways you are killing, wasting your home WiFi signal**


2. Florida mug shots: Dec. 29
3. 25 things you're not allowed to do at Disney parks
4. 67 people who vanished in Florida
5. 25 most common pet peeves
6. 20 famous people with central Florida roots
From the web

## FIND US ON GOOGLE+

WESH 2 News

g+ Follow  +1

+8,712



Advertising

Washington County became the focus of the debate after a lawsuit filed by two men seeking to be married there became a key basis for the judge's ruling that the state's same-sex marriage ban is unconstitutional.

Many of Florida's county clerks say the ruling applies only to Washington County.

**Also see: Undercover video released in alleged murder-for-hire plot**

Meanwhile, the Supreme Court says same-sex marriage cases will be added to its agenda. Most cases will be argued in late April.

The court would then have about two months to reach a decision.

**Related: Same-sex marriage by state**

### SAME-SEX MARRIAGE BY STATE



*1 of 34*                                                    Jonathan Ernst/Reuters

Gay marriages will begin in several states after the U.S. Supreme Court on Monday refused to hear appeals on the issue — at least for now.

    

Tweet {8} {g+1} {2}

Copyright 2014 by WESH.com The Associated Press contributed to this report. All rights reserved. This material may not be published, broadcast, rewritten or redistributed.

TAGS   Same-Sex Marriage   State Attorney Jeff Ashton   Florida   Legal

Comments                        Print

Ads by Adblade

## Trending Offers and Articles

15 Medieval Hygiene     20 Prom Pictures That     You Won't Believe Your     10 Screen Characters
Practices That Might     Went Horribly Wrong...     Eyes with These           You Never Knew Were
Make You Queasy                                     Perfectly Timed Pictures!  Based on Real People

## RECOMMENDED

## COMMENTS