# APPENDIX A

No. 14A_____

## In the
# Supreme Court of the United States

SECRETARY, FLORIDA DEPARTMENT OF HEALTH,
SECRETARY, FLORIDA DEPARTMENT OF MANAGEMENT SERVICES, AND
CLERK OF THE COURT FOR WASHINGTON COUNTY, FLORIDA,

*Applicants*,

v.

JAMES BRENNER, ET AL., &
SLOAN GRIMSLEY, ET AL.,

*Respondents.*

**Application to Stay Preliminary Injunctions of the United States District
Court for the Northern District of Florida Pending Appeal**

DIRECTED TO THE HONORABLE CLARENCE THOMAS
ASSOCIATE JUSTICE OF THE SUPREME COURT OF THE UNITED STATES
AND CIRCUIT JUSTICE FOR THE ELEVENTH CIRCUIT

PAMELA JO BONDI
  *Attorney General of Florida*

ALLEN WINSOR
  *Solicitor General*
    *Counsel of Record*

ADAM S. TANENBAUM
  *Chief Deputy Solicitor General*

OFFICE OF THE
ATTORNEY GENERAL
The Capitol – PL01
Tallahassee, Florida 32399-1050
Phone: (850) 414-3681
allen.winsor@myfloridalegal.com

*Counsel for Applicants*

December 15, 2014

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ ii

APPLICATION FOR STAY ....................................................................... 1

INTRODUCTION ..................................................................................... 2

BACKGROUND ...................................................................................... 4

JURISDICTION....................................................................................... 6

REASONS FOR GRANTING THE STAY .................................................. 8

I.     There Is a Likelihood that Certiorari Will Be Granted if the
Court of Appeals Affirms. ................................................................... 9

II.    There Is a Likelihood that the District Court's Decision Will Be
Overturned and the Injunction Held Invalid. ........................................ 10

III.   The Balance of Equities Weighs in Favor of a Stay. ....................... 13

CONCLUSION........................................................................................ 18

APPENDIX...........................................................................................App.

# TABLE OF AUTHORITIES

**Cases**

*Baker v. Nelson,*
   191 N.W.2d 185 (Minn. 1971) ................................................................ 11

*Baker v. Nelson,*
   409 U.S. 810 (1972) ........................................................................... 11

*Baskin v. Bogan,*
   766 F.3d 648 (7th Cir. 2014) ................................................................ 9

*Bishop v. Smith,*
   760 F.3d 1070 (10th Cir. 2014) ......................................................... 5, 9

*Bostic v. Schaefer,*
   760 F.3d 352 (4th Cir. 2014) ............................................................ 5, 9

*Bourke v. Beshear,*
   996 F. Supp. 2d 542 (W.D. Ky. 2014).................................................... 16

*Campaign for S. Equal. v. Bryant,*
   Case No. 14-60837 (5th Cir. Dec. 4, 2014)............................... 3, 8, 14, 16

*Coleman v. Paccar Inc.,*
   424 U.S. 1301 (1976) .......................................................................... 6

*Collins v. City of Harker Heights,*
   503 U.S. 115 (1992) .......................................................................... 13

*Conde-Vidal v. Garcia-Padilla,*
   Case No. 14-cv-1253, -- F. Supp. 3d --, 2014 WL 5361987
   (D.P.R. Oct. 21, 2014)....................................................................... 12

*DeBoer v. Snyder,*
   Case No. 14-1341 (6th Cir. Mar. 25, 2014)........................................... 16

*DeBoer v. Snyder,*
   Case No. 14-1341, -- F.3d --, 2014 WL 5748990 (6th Cir. Nov.
   6, 2014).................................................................................... *passim*

*DeLeon v. Perry,*
   975 F. Supp. 2d 632 (W.D. Tex. 2014) .............................................. 8, 16

*DeLeon v. Perry,*
   Case No. 14-50196 (5th Cir.)................................................................ 8

*Henry v. Himes,*
  Case No. 1:14-cv-129, 2014 WL 1512541 (S.D. Ohio Apr. 16, 2014) .................. 16

*Herbert v. Kitchen,*
  134 S. Ct. 893 (2014) ........................................................................................... 3

*Hollingsworth v. Perry,*
  133 S. Ct. 2652 (2013) ........................................................................................ 6

*Hollingsworth v. Perry,*
  558 U.S. 183 (2010) ............................................................................................ 9

*INS v. Legalization Assistance Project of L.A. Cnty. Fed'n of Labor,*
  510 U.S. 1301 (1993) ...................................................................................... 9, 15

*Kitchen v. Herbert,*
  755 F.3d 1193 (10th Cir. 2014) ........................................................................ 5, 9

*Land v. Dollar,*
  330 U.S. 731 (1947) ............................................................................................ 7

*Latta v. Otter,*
  771 F.3d 456 (9th Cir. 2014) ............................................................................... 9

*Lawrence v. Texas,*
  539 U.S. 558 (2003) .......................................................................................... 11

*Love v. Beshear,*
  989 F. Supp. 2d 536 (W.D. Ky. 2014) .............................................................. 16

*Loving v. Virginia,*
  388 U.S. 1 (1967) .............................................................................................. 12

*Mandel v. Bradley,*
  432 U.S. 173 (1977) .......................................................................................... 11

*Marshall v. Barlow's Inc.,*
  429 U.S. 1347 (1977) ........................................................................................ 16

*Maryland v. King,*
  133 S. Ct. 1 (2012) ............................................................................................ 16

*Moser v. Marie,*
  574 U.S. – (No. 14A503) ................................................................................... 10

*New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.,*
  434 U.S. 1345 (1977) ........................................................................................ 16

*Nken v. Holder,*
  556 U.S. 418 (2009) ........................................................................ 7, 8

*Parnell v. Hamby,*
  574 U.S. – (No. 14A413) ................................................................ 10

*Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott,*
  134 S. Ct. 506 (2013) .................................................................... 16

*Romer v. Evans,*
  517 U.S. 620 (1996) ...................................................................... 11

*San Diegans for Mt. Soledad Nat'l War Mem'l v. Paulson,*
  548 U.S. 1301 (2006) ................................................................... 7, 8

*Tanco v. Haslam,*
  Case No. 14-5297 (6th Cir. Apr. 25, 2014) .................................... 15

*Turner v. Safley,*
  482 U.S. 78 (1987) ........................................................................ 12

*Twentieth Century Airlines v. Ryan,*
  74 S. Ct. 8 (1953) ........................................................................... 7

*United States v. Nixon,*
  418 U.S. 683 (1974) ........................................................................ 7

*United States v. Windsor,*
  133 S. Ct. 2675 (2013) ............................................................. 11, 12

*Walters v. Nat'l Ass'n of Radiation Survivors,*
  468 U.S. 1323 (1984) .................................................................... 17

*Washington v. Glucksberg,*
  521 U.S. 702 (1997) ................................................................. 12, 13

*Wilson v. Condon,*
  574 U.S. – (No. 14A533) ................................................................ 10

*Zablocki v. Redhail,*
  434 U.S. 374 (1978) ...................................................................... 12

## Statutes

28 U.S.C. § 1254............................................................................... 6

28 U.S.C. § 1292............................................................................... 6

28 U.S.C. § 1331 ...................................................................................... 6

28 U.S.C. § 1343 ...................................................................................... 6

28 U.S.C. § 1651 ...................................................................................... 7

**Rules**

11th Cir. R. 35-4 ..................................................................................... 6

Sup. Ct. R. 10 .......................................................................................... 9

Sup. Ct. R. 23 .......................................................................................... 6

**Other Authorities**

Adolfo Pesquera, *Clerks Ready for Same-Sex Marriages,
    Whenever They Happen*, DAILY BUSINESS REVIEW, Dec. 4,
    2014,
    http://www.dailybusinessreview.com/id=1202678062785/Cler
    ks-Ready-for-SameSex-Marriages-Whenever-They-Happen.............................. 3

Claire McNeill, *Tampa Bay area prepares to issue same-sex
    marriage licenses*, TAMPA BAY TIMES, Dec. 4, 2014,
    http://www.tampabay.com/news/humaninterest/bay-area-
    prepares-to-issue-same-sex-marriage-licenses/2208997....................... 2

Jurisdictional Statement of Appellants,
    *Baker v. Nelson*, No. 71-1027 (U.S. Feb. 11, 1971) .............................. 11

Petition for Writ of Certiorari,
    *Bourke v. Beshear*, No. 14-574 (filed Nov. 18, 2014) ........................... 9

Petition for Writ of Certiorari,
    *DeBoer v. Snyder*, No. 14-571 (filed Nov. 14, 2014) ............................ 9

Petition for Writ of Certiorari,
    *Obergefell v. Hodges*, No. 14-556 (filed Nov. 14, 2014) ........................ 9

Petition for Writ of Certiorari,
    *Robicheaux v. George*, No. 14-596 (filed Nov. 20, 2014)....................... 10

Petition for Writ of Certiorari,
    *Tanco v. Haslam*, No. 14-562 (filed Nov. 14, 2014).............................. 9

Sean Daly, *Visit Tampa Bay plans target LGBT tourists as gay
    marriage legalization nears*, TAMPA BAY TIMES, Dec. 5, 2014,

http://www.tampabay.com/news/business/tourism/visit-tampa-bay-to-target-lgbt-tourists-as-florida-same-sex-marriage-nears/2209129 ........................................................................ 2

Steve Rothaus, *Appeals court: gay-marriage stay in Florida to end Jan. 5; weddings could begin next day*, MIAMI HERALD, Dec. 3, 2014, http://www.miamiherald.com/news/local/community/gay-south-florida/article4261997.html .......................................................... 2

Steve Rothaus, *Confusion remains over when gay couples can wed in Florida*, MIAMI HERALD, Dec. 5, 2014, http://www.miamiherald.com/news/local/community/gay-south-florida/article4304014.html .......................................................... 2

## APPLICATION FOR STAY

———————————

To the Honorable Clarence Thomas, Associate Justice of the Supreme Court of the United States and Circuit Justice for the United States Court of Appeals for the Eleventh Circuit:

The applicants are the Secretary of the Florida Department of Health ("Health Secretary"), the Secretary of the Florida Department of Management Services ("DMS Secretary"), and the Clerk of Court for Washington County, Florida ("Clerk"). A district judge preliminarily enjoined the applicants from following and enforcing Florida's marriage laws, which limit the definition of marriage to the legal union of one man and one woman. App. A. The judge stayed that preliminary injunction through January 5, 2015, to give the applicants time to seek a stay from the Eleventh Circuit pending appeal from the injunction. App. A; *cf.* App. B. Both the district judge and the Eleventh Circuit denied the applicants' requests to extend the stay beyond January 5. App. B, C.

The applicants respectfully request a stay for the duration of the appeal. Alternatively, and at a minimum, the applicants request a stay until this Court disposes of the four pending certiorari petitions relating to a Sixth Circuit decision that upheld similar marriage laws in four States, and if any of those petitions is granted, through issuance of the Court's mandate. The applicants further request that the stay be in place no later than January 5, 2015, when the lower court's stay will otherwise expire.

1

## INTRODUCTION

As the district court recognized, "[t]here is a substantial public interest . . . in not having, as some states have had, a decision that is on-again, off-again." App. A, Order at 28-29. "This is so for marriages already entered elsewhere, and it is more clearly so for new marriages." *Id.* at 29. The district court entered a limited stay after recognizing the "substantial public interest in stable marriage laws." *Id.* But that stay is now set to expire on January 5, 2015, and both the district court and Eleventh Circuit have denied requests to extend it.

The Eleventh Circuit's recent decision denying a longer stay has created statewide confusion, with news reports now suggesting that the end of the stay will lead to statewide issuance of same-sex marriage licenses, even though only one of Florida's 67 clerks of court is a party below.[1] Some clerks who are not parties to this litigation have announced that, absent a stay, they will begin issuing licenses on January 6.[2] Concerns about inconsistency and confusion recently led the Fifth

---

[1] *See* Steve Rothaus, *Appeals court: gay-marriage stay in Florida to end Jan. 5; weddings could begin next day*, MIAMI HERALD, Dec. 3, 2014, http://www.miamiherald.com/news/local/community/gay-south-florida/article426199 7.html; Steve Rothaus, *Confusion remains over when gay couples can wed in Florida*, MIAMI HERALD, Dec. 5, 2014, http://www.miamiherald. com/news/local/community/gay-south-florida/article 4304014.html; Sean Daly, *Visit Tampa Bay plans target LGBT tourists as gay marriage legalization nears*, TAMPA BAY TIMES, Dec. 5, 2014, http://www.tampabay.com/news/business/tourism/visit-tampa-bay-to-target-lgbt-tourists-as-florida-same-sex-marriage-nears/2209129.

[2] *See* Claire McNeill, *Tampa Bay area prepares to issue same-sex marriage licenses*, TAMPA BAY TIMES, Dec. 4, 2014, http://www.tampabay.com/ news/humaninterest/bay-area-prepares-to-issue-same-sex-marriage-licenses/2208 997; Adolfo Pesquera, *Clerks Ready for Same-Sex Marriages, Whenever They Happen*, DAILY BUSINESS REVIEW, Dec. 4, 2014, http://www.dailybusinessreview.

Circuit to grant a stay in a similar situation. The day after the Eleventh Circuit denied the stay in this case, the Fifth Circuit entered an order granting a stay and explaining that "considerations of intra-circuit uniformity and the avoidance of confusion, should this court lift the stay that is currently in place only to shift gears after individuals have relied on this change in law, also militate in favor of granting the State's motion." *Campaign for S. Equal. v. Bryant*, Case No. 14-60837, at 4 (5th Cir. Dec. 4, 2014) (mem. order). The Fifth Circuit also recognized that "[t]he inevitable disruption that would arise from a lack of continuity and stability in this important area of law presents a potential harm not just to [the State] but to the Plaintiffs themselves and to the public interest at large." *Id.*

Earlier this year, under similar circumstances, Justice Sotomayor (after referral to the full Court) granted a stay of a district court order enjoining enforcement of traditional state marriage definitions, pending disposition of an appeal to the Tenth Circuit. *See Herbert v. Kitchen*, 134 S. Ct. 893 (2014) (No. 13A687). Several circuits subsequently stayed orders in other cases based on that stay. In fact, the district court in this case stayed its order pending disposition of three certiorari petitions that presented the same constitutional questions. App. A, Order at 32-33. This Court denied all of those petitions, and the stays in the other circuits ended. But the rationale justifying the stay pending appeal in the Tenth Circuit (which had then not yet addressed the constitutional question) also justifies a stay pending appeal in the Eleventh Circuit (which has not yet addressed the

com/id=1202678062785/Clerks-Ready-for-SameSex-Marriages-Whenever-They-Happen.

constitutional question). In addition, there is now a clear circuit split on the constitutional issue. *See DeBoer v. Snyder*, Case No. 14-1341, -- F.3d --, 2014 WL 5748990 (6th Cir. Nov. 6, 2014). Thus, this Court's review is more likely now than before.

## BACKGROUND

Two sets of plaintiffs (here, collectively, the respondents) filed suit in the United States District Court for the Northern District of Florida. Each complaint challenged the constitutionality of Florida's marriage laws, which limit the definition and recognition of marriage to the legal union of one man and one woman.

The respondents sought relief against the Health Secretary based on his authority to issue and amend death certificates that reflect marital status, and they sought relief against the DMS Secretary based on his authority to manage Florida's public employee health insurance and retirement and pension plans, which in part depend on marital status. Two respondents sought relief against the Clerk of Court based on his authority to issue marriage licenses in Washington County. *See generally* App. A, Order at 4-7, 12-15.

On August 21, 2014, the district court entered identical preliminary injunctions in each of the consolidated cases. *Id.* at 27, 30-32. The injunctions barred the Secretaries from enforcing Florida's marriage laws. *Id.*, Order at 31. They also required the Clerk of Court to issue a marriage license to the two respondents who sought one. *Id.*, Order at 31-32. The applicants appealed.

The district court stayed its injunctions (except regarding one amended death certificate) until 91 days following the denial or lifting of stays in three federal circuit court cases—*Bishop v. Smith*, 760 F.3d 1070 (10th Cir. 2014), *Bostic v. Schaefer*, 760 F.3d 352 (4th Cir. 2014), and *Kitchen v. Herbert*, 755 F.3d 1193 (10th Cir. 2014). App. A, Order at 32-33. The stays in *Bishop*, *Bostic*, and *Kitchen* ended after this Court denied certiorari in those cases on October 6, so the current stay is set to expire on January 5, 2015 (91 days later). *Cf.* App. B, Order at 2, 4, 6.

Both sides moved to modify the stay. The respondents moved to lift the stay almost immediately. App. B, Order at 1, 4. The applicants moved to extend the stay beyond January 5, 2015, and throughout the appeal. *Id.* at 1-2, 4. The district court denied all the requests and left the original stay expiration date in place. *Id.* at 2, 6. According to its order, the public interest was "sufficient to support the 90-day delay so that the Eleventh Circuit can consider the matter with all deliberate speed." *Id.* at 4.

The district court stated that the "public interest will support a longer stay only if, having considered the matter, the Eleventh Circuit concludes that the defendants have a substantial likelihood of success on appeal. In light of the unbroken line of circuit decisions striking down bans on same-sex marriage and the Supreme Court's decision to leave those decisions intact, I conclude that a longer stay is not warranted." *Id.* at 5.

On November 6, 2014, that unbroken line of circuit decisions was broken when the Sixth Circuit upheld state marriage laws like Florida's. *See DeBoer*, 2014 WL 5748990. No fewer than four certiorari petitions followed from that decision and remain with this Court. *See infra*. Despite the clear circuit split and this Court's prior willingness to grant certiorari to consider the issue, *see Hollingsworth v. Perry*, 133 S. Ct. 2652 (2013), on December 3, 2014, the Eleventh Circuit denied, without substantive explanation, the applicants' request to stay the injunctions for the duration of the appeals. *See* App. C.

## JURISDICTION

The applicants seek a stay of a district court's preliminary injunctions against enforcement of Florida's marriage laws while the injunctions undergo appellate review. The district court had original jurisdiction because the cases presented issues of federal law. *See* 28 U.S.C. §§ 1331, 1343(a). The Eleventh Circuit has appellate jurisdiction because the district court ordered injunctive relief. *See* 28 U.S.C. § 1292(a).

On November 5, 2014, the district court denied the applicants' request to extend the stay beyond January 5, 2015. App. B. On December 3, 2014, the Eleventh Circuit denied the same relief. App. C.[3] Therefore, the stay sought "is not available from any other court or judge." Sup. Ct. R. 23.3.

This Court has jurisdiction to review cases properly in a circuit court. *See* 28 U.S.C. § 1254(1); *Coleman v. Paccar Inc.*, 424 U.S. 1301, 1303 (1976) (Rehnquist,

---

[3] The Eleventh Circuit's local rules do not allow for *en banc* review of that court's orders on motions to stay. *See* 11th Cir. R. 35-4.

6

Circuit Justice) (noting that under section 1254, Court "has jurisdiction to review by certiorari *any* case in a court of appeals") (emphasis supplied); *United States v. Nixon*, 418 U.S. 683, 690 (1974) (explaining that "petition is properly before this Court for consideration," even before a decision by circuit court, if case otherwise "was properly 'in' the Court of Appeals when the petition for certiorari was filed"); *Land v. Dollar*, 330 U.S. 731, 734 n.2 (1947) ("Although the judgment below was not a final one, we considered it appropriate for review because it involved an issue fundamental to the further conduct of the case.") (internal quotation omitted).

This Court also has jurisdiction to consider and grant a stay for the pendency of the appeal and any subsequent petition for certiorari. *Cf. Nken v. Holder*, 556 U.S. 418, 426-27 (2009) (explaining that an appellate court's authority to stay an order while the order's legality is assessed is "inherent," "traditional," and "firmly embedded"—and "preserved in the grant of authority to federal courts" through section 1651(a)—to "ensur[e] that appellate courts can responsibly fulfill their role in the judicial process"); *see* 28 U.S.C. § 1651(a); *see also Twentieth Century Airlines v. Ryan*, 74 S. Ct. 8, 10-11 (1953) (Reed, J., in chambers) (noting that power of any justice to act on stay application, even regarding stay of a non-final order, "is assumed"); *San Diegans for Mt. Soledad Nat'l War Mem'l v. Paulson*, 548 U.S. 1301, 1302, 1304 (2006) (Kennedy, Circuit Justice) (granting stay of injunction pending appeal in circuit court).

## REASONS FOR GRANTING THE STAY

The respondents contend the Fourteenth Amendment requires states to recognize same-sex marriage. Several circuits (two with divided panels) recently held that the respondents' view is correct. *See DeBoer*, 2014 WL 5748990, at *7 (collecting cases). The Sixth Circuit (also with a divided panel) held that the States' view is correct. *See generally id.* Other circuits, including the Fifth Circuit, *see DeLeon v. Perry*, Case No. 14-50196 (5th Cir.); *Bryant*, Case No. 14-60837; and the Eleventh Circuit in this case, have the issue before them but have not yet ruled. Notably, the Fifth Circuit just granted a stay pending its review in a case before it where a stay had not been granted by the district court. *See Bryant*, Case No. 14-60837 (5th Cir. Dec. 4, 2014) (mem. order) (appeal from the Southern District of Mississippi); *cf. DeLeon v. Perry*, 975 F. Supp. 2d 632, 666 (W.D. Tex. 2014) (staying injunction, pursuant to this Court's stay in *Herbert*, pending appellate review). The constitutional issue is a serious one, and it deserves appellate review before the injunctions should become effective.

Whether a stay is appropriate depends on "the circumstances of the particular case." *Nken*, 556 U.S. at 433 (internal quotation and citation omitted). "In considering stay applications on matters pending before the Court of Appeals, a Circuit Justice must try to predict whether four Justices would vote to grant certiorari should the Court of Appeals affirm the District Court order without modification; try to predict whether the Court would then set the order aside; and balance the so-called 'stay equities.'" *San Diegans*, 548 U.S. at 1302-03 (Kennedy,

8

Circuit Justice) (quoting *INS v. Legalization Assistance Project of L.A. Cnty. Fed'n of Labor*, 510 U.S. 1301, 1304 (1993) (O'Connor, Circuit Justice)) (internal quotations omitted); *accord Hollingsworth v. Perry*, 558 U.S. 183, 190 (2010). These considerations all point toward issuing a stay.

## I. THERE IS A LIKELIHOOD THAT CERTIORARI WILL BE GRANTED IF THE COURT OF APPEALS AFFIRMS.

At this point, there is a probability that four Justices will vote to grant one or more of the petitions for certiorari coming out of the Sixth Circuit cases. The decision in *DeBoer* creates a clear circuit split on the question of whether the Fourteenth Amendment requires the States to redefine marriage to include same-sex marriage. *Compare DeBoer*, 2014 WL 5748990, *with Bostic*, 760 F.3d 352; *Latta v. Otter*, 771 F.3d 456 (9th Cir. 2014); *Baskin v. Bogan*, 766 F.3d 648 (7th Cir. 2014); *Bishop*, 760 F.3d 1070; *and Kitchen*, 755 F.3d 1193; *see also* Sup. Ct. R. 10(a) (listing among the "compelling reasons" for granting certiorari a "conflict with the decision of another United States court of appeals on the same important matter"). Already, four petitions for certiorari have arrived at this Court challenging the Sixth Circuit's decision. *See* Petition for Writ of Certiorari, *Bourke v. Beshear*, No. 14-574 (filed Nov. 18, 2014); Petition for Writ of Certiorari, *DeBoer v. Snyder*, No. 14-571 (filed Nov. 14, 2014); Petition for Writ of Certiorari, *Tanco v. Haslam*, No. 14-562 (filed Nov. 14, 2014); Petition for Writ of Certiorari, *Obergefell v. Hodges*, No. 14-556 (filed Nov. 14, 2014). A fifth petition is before this Court out of the Fifth Circuit and seeks review, before appellate judgment, of a district court order that upheld Louisiana's traditional marriage laws (and therefore conflicts with the

decisions of the Fourth, Seventh, Ninth, and Tenth Circuits). *See* Petition for Writ of Certiorari, *Robicheaux v. George*, No. 14-596 (filed Nov. 20, 2014).[4] And the issue is one of persistent national attention and of particular importance in States—like Florida—whose voters affirmed the traditional definition of marriage in their constitutions.

It is true that this Court recently denied certiorari in cases invalidating traditional marriage laws. But those denials came before the Sixth Circuit established the current circuit split, which enhanced the need for a decision from this Court.[5] Because this Court is unlikely to allow the circuit split to continue, it is likely that the Court will grant certiorari in the Sixth Circuit cases.

## II.   THERE IS A LIKELIHOOD THAT THE DISTRICT COURT'S DECISION WILL BE OVERTURNED AND THE INJUNCTION HELD INVALID.

When the Court does decide the issue, it will likely reaffirm the States' nearly exclusive authority to define marriage and hold that the Fourteenth Amendment allows states to define marriage as Florida has. The Court is therefore likely to affirm the Sixth Circuit's judgment. And if the Eleventh Circuit in the interim affirmed the district court's injunction, this Court likely would vacate that decision.

---

[4] So far, in the *Bourke*, *DeBoer*, *Obergefell*, and *Robicheaux* cases, the respondents have submitted briefs in support of certiorari on the constitutional question at issue here. In the *DeBoer* and *Robicheaux* cases, the petitioners have filed letters waiving a reply and the 14-day waiting period before circulation.

[5] The Court's recent denials of stays in other marriage lawsuits have arisen from circuits that already decided the ultimate issue. *See Wilson v. Condon*, 574 U.S. – (No. 14A533) (application out of State of South Carolina, in the Fourth Circuit); *Moser v. Marie*, 574 U.S. – (No. 14A503) (application out of State of Kansas, in the Tenth Circuit); *Parnell v. Hamby*, 574 U.S. – (No. 14A413) (application out of State of Alaska, in the Ninth Circuit).

1.    The district court's decision conflicts with this Court's decision in *Baker v. Nelson*, 409 U.S. 810 (1972), which determined that state laws prohibiting same-sex marriages do not give rise to a substantial federal question. *Baker* was an appeal from the Minnesota Supreme Court presenting the issue here—whether a State's decision not to allow same-sex marriage violated due process or equal protection under the Fourteenth Amendment. *See Baker*, 409 U.S. 810; Jurisdictional Statement of Appellants at 3, *Baker v. Nelson*, No. 71-1027 (U.S. Feb. 11, 1971); *Baker v. Nelson*, 191 N.W.2d 185, 185-87 (Minn. 1971). The Minnesota Supreme Court held that the state's law did not violate federal due process or equal protection, *Baker*, 191 N.W.2d at 186-87, and the plaintiffs asked this Court to reverse. On direct appeal, this Court summarily dismissed. *See Baker*, 409 U.S. 810. That decision was one on the merits, "without doubt reject[ing] the specific challenges presented in the statement of jurisdiction," and "prevent[ing] lower courts from coming to opposite conclusions on the precise issues presented." *Mandel v. Bradley*, 432 U.S. 173, 176 (1977).

Although *Baker* preceded this Court's decisions in cases like *Romer v. Evans*, 517 U.S. 620 (1996), *Lawrence v. Texas*, 539 U.S. 558 (2003), and *United States v. Windsor*, 133 S. Ct. 2675 (2013), the decision in *Baker* remains consistent with long-standing precedent that recognizes the States' virtually exclusive authority to define and regulate marriage. Indeed, the Court reaffirmed that state authority just last year. *Windsor*, 133 S. Ct. at 2691. "*Windsor* invalidated a federal law that refused to respect state laws permitting gay marriage, while *Baker* upheld the right

11

of the people of a State to define marriage as they see it. To respect one decision does not slight the other." *DeBoer*, 2014 WL 5748990, at *6; *accord Conde-Vidal v. Garcia-Padilla*, Case No. 14-cv-1253, -- F. Supp. 3d --, 2014 WL 5361987, at *8 (D.P.R. Oct. 21, 2014) (court cannot "interpret *Windsor*'s endorsement of the state control of marriage as eliminating the state control of marriage.").

2.     The district court also held that Florida's marriage laws, by precluding same-sex marriages, violated the fundamental right to marry. But the "right to marry" that this Court repeatedly has recognized necessarily refers to traditional marriage. Because same-sex marriage is a relatively new concept—having not appeared in the United States until 2003, *see Windsor*, 133 S. Ct. at 2715 (Alito, J., dissenting)—it is not objectively or deeply rooted in this Nation's history and tradition, so it is not a fundamental right. *Cf. Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997).

This Court has never held that there is a fundamental right to same-sex marriage. This Court's decisions affirming a fundamental right to marry were premised on marriage being a legal union between one man and one woman. *See, e.g.*, *Loving v. Virginia*, 388 U.S. 1 (1967); *Zablocki v. Redhail*, 434 U.S. 374 (1978); *Turner v. Safley*, 482 U.S. 78 (1987). At the time of *Loving*, "marriage between a man and a woman no doubt [was] thought of . . . as essential to the very definition of that term." *Windsor*, 133 S. Ct. at 2689; *see also DeBoer*, 2014 WL 5748990, at *16 ("In referring to 'marriage' rather than 'opposite-sex marriage,' *Loving* confirmed only that 'opposite-sex marriage' would have been considered redundant,

not that marriage included same-sex couples."); *see also id.* at *17 ("When *Loving* and its progeny used the word marriage, they did not redefine the term but accepted its traditional meaning.").

The respondents thus effectively seek to establish a new fundamental right rather than protect an existing one. This Court has shown a reluctance to recognize a new right not only because "guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended," *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992), but also because of the separation of powers. "By extending constitutional protection to an asserted right or liberty interest, [courts], to a great extent, place the matter outside the arena of public debate and legislative action." *Glucksberg*, 521 U.S. at 720.

This Court likely would affirm the Sixth Circuit's judgment that the district courts went beyond their authority in enjoining States from enforcing their traditional marriage laws; similarly, this Court likely would vacate the Eleventh Circuit's judgment if it were to affirm the district court's order here.

## III.   THE BALANCE OF EQUITIES WEIGHS IN FAVOR OF A STAY.

The district court correctly recognized that "[t]here is a substantial public interest in stable marriage laws." App. A, Order at 29. That interest will be just as great on January 6, 2015, as it is now. If Florida's law is going to change in the substantial manner the injunction would require, it should happen only after the order undergoes appellate review. The public interest is not served by on-again, off-again marriage laws.

The district court also recognized the "substantial public interest in allowing those who would enter same-sex marriages the same opportunity for due deliberation that opposite-sex couples routinely are afforded. Encouraging a rush to the marriage officiant, in an effort to get in before an appellate court enters a stay, serves the interests of nobody." App. A, Order at 29; *accord Bryant*, No. 14-60837, at 4 (5th Cir. Dec. 4, 2014) (mem. order) (granting stay pending appeal after recognizing that "a race to the courthouse—with same-sex couples rushing to the circuit clerk's office, and the State rushing to the Fifth Circuit—does not serve anyone's interest") (quoting district court's rationale for temporary stay). The same is true if those efforts are to rush to the marriage officiant before the Eleventh Circuit or this Court rules on the merits.

In addition, there is a substantial interest in uniformity throughout the State. *See Bryant*, No. 14-60837, at 4 (noting that considerations of uniformity and avoidance of confusion "militate in favor of granting the State's motion" for stay; "The inevitable disruption that would arise from a lack of continuity and stability in this important area of law presents a potential harm not just to Mississippi but to the Plaintiffs themselves and to the public interest at large."). The respondents sued only one clerk of court; the other 66 county clerks are not parties. The public interest is not served by having two sets of marriage laws in Florida or by confusion about the law.[6] *See supra* at 2-3. Moreover, those who did marry based on the

---

[6] The Health and DMS Secretaries acknowledge that the injunctions as to them would have statewide effect, because the Secretaries have statewide duties and the order preliminarily enjoins their enforcing the marriage laws.

preliminary injunction would face uncertainty regarding their marital status if this Court affirms the Sixth Circuit and vacates any affirmance by the Eleventh Circuit (or if the Eleventh Circuit reverses).

Next, if the district court's injunction is not stayed pending appeal, the DMS Secretary will have to reconfigure the State's public employee health insurance, retirement, and pension systems and recognize same-sex marriages performed in other States in myriad public employment circumstances, and the Health Secretary will have to reconfigure various aspects of the State's vital records system. *See Legalization Assistance Project*, 510 U.S. at 1305 (considering in balance of equities that "[t]he order would impose a considerable administrative burden") (O'Connor, Circuit Justice). If the district court's decision is overturned, those costs will be compounded by the need to return the systems and participants to the position before the injunctions went into effect.

The public interest led other courts to issue stays in similar circumstances. The orders on review with the Sixth Circuit, for example, were stayed while they were on appeal.[7] *See Tanco v. Haslam*, Case No. 14-5297 (6th Cir. Apr. 25, 2014) (mem. order) (granting stay pending appeal in Tennessee case after district court denied stay; finding that "public interest requires granting a stay" in light of "hotly contested issue in the contemporary legal landscape" and possible confusion, cost, and inequity if State ultimately successful) (following and quoting *Henry v. Himes*,

---

[7] The one exception to this general statement was one Ohio case in which the order was limited to requiring two death certificates be amended to list the decedents' same-sex partners as their spouses.

Case No. 1:14-cv-129, 2014 WL 1512541, at *1 (S.D. Ohio Apr. 16, 2014)); *DeBoer v. Snyder*, Case No. 14-1341 (6th Cir. Mar. 25, 2014) (mem. order) (Michigan case); *Love v. Beshear*, 989 F. Supp. 2d 536, 550 (W.D. Ky. 2014); *Bourke v. Beshear*, 996 F. Supp. 2d 542, 558 (W.D. Ky. 2014) ("One judge may decide a case, but ultimately others have a final say . . . . It is best that these momentous changes occur upon full review, rather than risk premature implementation or confusing changes."). And, as also noted, the Fifth Circuit granted a stay pending its review of a district court's invalidation of Texas's marriage laws. *See Bryant*, Case No. 14-60837 (Dec. 4, 2014) (mem. order); *see also DeLeon*, 975 F. Supp. 2d at 666. The public interest rationale that justified these stays applies with no less force here.

Finally, "statutes are presumptively constitutional and, absent compelling equities on the other side . . . should remain in effect pending a final decision on the merits by this Court." *New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1352 (1977) (Rehnquist, Circuit Justice) (citing *Marshall v. Barlow's Inc.*, 429 U.S. 1347, 1348 (1977) (Rehnquist, Circuit Justice)). Any time a court enjoins a State "from effectuating statutes enacted by representatives of its people," there is an equity on the side of granting a stay. *New Motor Vehicle Bd. of Cal.*, 434 U.S. at 1351 (Rehnquist, Circuit Justice); *see Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*, 134 S. Ct. 506, 506 (2013) (noting that effect on State of court injunction against enforcement of one of its statutes is one of the two most critical factors weighing in favor of stay) (Scalia, J., concurring in upholding stay); *Maryland v. King*, 133 S. Ct. 1, 3 (2012) (Roberts, Circuit Justice) (determining that

16

State's inability to "employ a duly enacted statute" weighs in favor of stay); *Walters v. Nat'l Ass'n of Radiation Survivors*, 468 U.S. 1323, 1324 (1984) (Rehnquist, Circuit Justice) (noting that presumption of constitutionality attaching to statute "is not merely a factor to be considered in evaluating success on the merits, but an equity to be considered in favor of applicants in balancing hardships").

It is true that any denial of a constitutional right is a real injury, but the existence of that constitutional right is the contested issue on appeal. Regardless, any conceivable injury to the respondents today is no greater than the injury to the respondents earlier in this case, when the district court decided on balance to stay the injunctions in the first place. There is no need for immediate relief now that alters that balance of equities away from entering the stay.

## CONCLUSION

The applicants respectfully request a stay of the district court's injunction orders while they are on appeal, and through disposition of any petition for certiorari if the Eleventh Circuit were to affirm.

Respectfully submitted,

PAMELA JO BONDI
  *Attorney General of Florida*

ALLEN WINSOR
  *Solicitor General*
    *Counsel of Record*
ADAM S. TANENBAUM
  *Chief Deputy Solicitor General*

OFFICE OF THE ATTORNEY GENERAL
The Capitol – PL01
Tallahassee, Florida 32399-1050
Phone: (850) 414-3681
allen.winsor@myfloridalegal.com

*Counsel for Applicants*

18

**APPENDIX**

App. A                District Court Order Denying the Motions to Dismiss, Granting
                      a Preliminary Injunction, and Temporarily Staying the
                      Injunction, dated August 21, 2014

App. B                District Court Order Denying the Motions to Alter the Stay,
                      dated November 5, 2014

App. C                Eleventh Circuit Order Denying Further Stay, dated December
                      3, 2014

# APPENDIX

## A
**District Court Order Denying the Motions to Dismiss, Granting a Preliminary Injunction, and Temporarily Staying the Injunction, dated August 21, 2014**

Case 4:14-cv-00107-RH-CAS Document 1031 Filed 12/29/14 Page 29 of 71
Case 4:14-cv-00107-RH-CAS Document 74 Filed 08/21/14 Page 1 of 33
Page 1 of 33

# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA TALLAHASSEE DIVISION

JAMES DOMER BRENNER et al.,

      Plaintiffs,

v.                                   CASE NO.  4:14cv107-RH/CAS

RICK SCOTT, etc., et al.,

      Defendants.

_____/

SLOAN GRIMSLEY et al.,

      Plaintiffs,

v.                                   CASE NO.  4:14cv138-RH/CAS

RICK SCOTT, etc., et al.,

      Defendants.

_____/

## ORDER DENYING THE MOTIONS TO DISMISS, GRANTING A PRELIMINARY INJUNCTION, AND <u>TEMPORARILY STAYING THE INJUNCTION</u>

Case 4:14-cv-00107-RH-CAS Document 1034-1 Filed 12/29/14 Page 30 of 71
Case 4:14-cv-00107-RH-CAS Document 1074-1 Filed 08/21/14 Page 2 of 33

Page 2 of 33

The issue in these consolidated cases is the constitutionality of Florida's refusal to allow same-sex marriages or to recognize same-sex marriages lawfully entered elsewhere.

The founders of this nation said in the preamble to the United States Constitution that a goal was to secure the blessings of liberty to themselves and their posterity. Liberty has come more slowly for some than for others. It was 1967, nearly two centuries after the Constitution was adopted, before the Supreme Court struck down state laws prohibiting interracial marriage, thus protecting the liberty of individuals whose chosen life partner was of a different race. Now, nearly 50 years later, the arguments supporting the ban on interracial marriage seem an obvious pretext for racism; it must be hard for those who were not then of age to understand just how sincerely those views were held. When observers look back 50 years from now, the arguments supporting Florida's ban on same-sex marriage, though just as sincerely held, will again seem an obvious pretext for discrimination. Observers who are not now of age will wonder just how those views could have been held.

The Supreme Court struck down part of the federal Defense of Marriage Act last year. *United States v. Windsor*, 133 S. Ct. 2675 (2013). Since that decision, 19 different federal courts, now including this one, have ruled on the constitutionality of state bans on same-sex marriage. The result: 19 consecutive

Case 4:14-cv-00107-RH-CAS Document 1031 Filed 12/29/14 Page 31 of 71
Case 4:14-cv-00107-RH-CAS Document 74 Filed 08/21/14 Page 3 of 33

Page 3 of 33

victories for those challenging the bans.  Based on these decisions, gays and lesbians, like all other adults, may choose a life partner and dignify the relationship through marriage.  To paraphrase a civil-rights leader from the age when interracial marriage was first struck down, the arc of history is long, but it bends toward justice.

These consolidated cases are here on the plaintiffs' motions for a preliminary injunction and the defendants' motions to dismiss.  This order holds that marriage is a fundamental right as that term is used in cases arising under the Fourteenth Amendment's Due Process and Equal Protection Clauses, that Florida's same-sex marriage provisions thus must be reviewed under strict scrutiny, and that, when so reviewed, the provisions are unconstitutional.  The order dismisses the claims against unnecessary defendants but otherwise denies the motions to dismiss. The order grants a preliminary injunction but also grants a temporary stay.

All of this accords with the unbroken line of federal authority since *Windsor*. Indeed, except for details about these specific parties, this opinion could end at this point, merely by citing with approval the circuit decisions striking down state bans on same-sex marriage: *Bostic v. Schaefer*, Nos. 14–1167, 14–1169, 14–1173, 2014 WL 3702493 (4th Cir. July 28, 2014); *Bishop v. Smith*, Nos. 14–5003, 14–5006, 2014 WL 3537847 (10th Cir. July 18, 2014); and *Kitchen v. Herbert*, No. 13–4178, 2014 WL 2868044 (10th Cir. June 25, 2014).

Case 4:14-cv-00107-RH-CAS Document 1031 Filed 12/29/14 Page 32 of 71
Case 4:14-cv-00107-RH-CAS Document 74 Filed 08/21/14 Page 4 of 33

Page 4 of 33

# I.  Background

This order addresses two cases that have been consolidated for pretrial purposes.  The order sometimes refers to Case No. 4:14cv107 as the "Brenner case."  The order sometimes refers to Case No. 4:14cv138 as the "Grimsley case."

## A. The Plaintiffs

The combined total of 22 plaintiffs in the two cases includes 9 sets of same-sex spouses who were lawfully married in New York, the District of Columbia, Iowa, Massachusetts, or Canada; the surviving spouse of a New York same-sex marriage; 2 individuals who have been in a same-sex relationship for 15 years, are not married, but wish to marry in Florida; and an organization asserting the rights of its members who lawfully entered same-sex marriages outside Florida.  All the individual plaintiffs live in Florida.  The details follow.

The first two Brenner-case plaintiffs are James D. Brenner and Charles D. Jones.  Mr. Brenner has worked for the Florida Forest Service since 1981.  Mr. Jones has worked for the Florida Department of Education since 2003.  They were married in Canada in 2009.  Mr. Brenner asserts that the state's refusal to recognize their marriage eliminates a retirement option that would provide for Mr. Jones after Mr. Brenner's death.

Brenner-case plaintiffs Stephen Schlairet and Ozzie Russ live in Washington County, Florida.  They are not married in any jurisdiction.  They meet all

Case 4:14-cv-00107-RH-CAS Document 1034 Filed 12/29/14 Page 33 of 71
Case 4:14-cv-00107-RH-CAS Document 74 Filed 08/21/14 Page 5 of 33

Page 5 of 33

requirements for marriage in Florida except that they are both men. They wish to marry and have applied to the defendant Washington County Clerk of Court for a marriage license. During breaks in employment, they have been unable to obtain healthcare coverage under one another's insurance plans because of Florida's challenged marriage provisions. Based solely on those provisions, the Clerk refuses to issue a license.

Grimsley-case plaintiffs Sloan Grimsley and Joyce Albu have been together for 9 years and were married in New York in 2011. They have two adopted minor children. Ms. Grimsley is a firefighter and paramedic for the City of Palm Beach Gardens, Florida. Ms. Grimsley and Ms. Albu are concerned that if something happens to Ms. Grimsley in the line of duty, Ms. Albu will not receive the same support the state provides to surviving opposite-sex spouses of first responders.

Grimsley-case plaintiffs Chuck Hunziker and Bob Collier have been together for over 50 years. They lived most of their lives in New York and were married there in 2013. They now are retired and live in Florida.

Grimsley-case plaintiffs Lindsay Myers and Sarah Humlie have been together for nearly 4 years and were married in the District of Columbia in 2012. They live in Pensacola, Florida. Ms. Myers works for the University of West Florida. Ms. Myers seeks the option to designate Ms. Humlie as her joint annuitant for pension purposes. Ms. Humlie does not receive health insurance through her

Case 4:14-cv-00107-RH-CAS Document 1031 Filed 12/29/14 Page 34 of 71
Case 4:14-cv-00107-RH-CAS Document 74 Filed 08/21/14 Page 6 of 33

Page 6 of 33

employer. Because state law prohibits public employers from providing insurance for same-sex spouses, Ms. Myers cannot get coverage for Ms. Humlie on Ms. Myers's health plan. The couple makes substantial payments each month for private health insurance for Ms. Humlie.

Grimsley-case plaintiffs Robert Loupo and John Fitzgerald have been together for 12 years. They were married in New York in 2013. Mr. Loupo is employed with the Miami-Dade County public schools. Mr. Fitzgerald is retired but previously worked for Miami-Dade County. Mr. Loupo wishes to designate Mr. Fitzgerald as his retirement-plan joint annuitant.

Grimsley-case plaintiffs Denise Hueso and Sandra Newson were married in Massachusetts in 2009. They lived in Massachusetts, but now they live in Miami. They have had custody of their now 15-year-old son for 5 years, first as foster parents and now as adoptive parents.

Grimsley-case plaintiffs Juan del Hierro and Thomas Gantt, Jr., have been together for 6 years and were married in Washington, D.C., in 2010. They live in North Miami Beach. They have an adopted son under age 2. Mr. Gantt taught for more than a decade in public schools but now works at a virtual school. If their marriage were recognized, Mr. Gantt would designate Mr. del Hierro as his pension beneficiary.

Case 4:14-cv-00107-RH-CAS Document 1031 Filed 12/29/14 Page 35 of 71
Case 4:14-cv-00107-RH-CAS Document 74 Filed 08/21/14 Page 7 of 33

Page 7 of 33

Grimsley-case plaintiffs Christian Ulvert and Carlos Andrade live in Miami.
They have been together for 4 years and were married in the District of Columbia
in 2013. Mr. Ulvert previously worked for the Florida Legislature and wishes to
designate Mr. Andrade as his pension beneficiary. They wish to someday adopt
children.

Grimsley-case plaintiffs Richard Milstein and Eric Hankin live in Miami
Beach. They have been together for 12 years and were married in Iowa in 2010.

Grimsley-case plaintiff Arlene Goldberg married Carol Goldwasser in New
York in 2011. Ms. Goldwasser died in March 2014. The couple had been together
for 47 years. Ms. Goldwasser was the toll-facilities director for Lee County,
Florida, for 17 years. Ms. Goldberg is retired but works part time at a major
retailer. The couple had been living with and taking care of Ms. Goldwasser's
elderly parents, but now Ms. Goldberg cares for them alone. Social-security
benefits are Ms. Goldberg's primary income. Florida's refusal to recognize the
marriage has precluded Ms. Goldberg from obtaining social-security survivor
benefits. Ms. Goldberg says that for that reason only, she will have to sell her
house, and Ms. Goldwasser's parents are looking for another place to live. Ms.
Goldberg also wishes to amend Ms. Goldwasser's death certificate to reflect their
marriage.

Case 4:14-cv-00107-RH-CAS Document 1031 Filed 12/29/14 Page 36 of 71
Case 4:14-cv-00107-RH-CAS Document 74 Filed 08/21/14 Page 8 of 33

Page 8 of 33

Grimsley-case plaintiff SAVE Foundation, Inc. was established in 1993 and is dedicated to promoting, protecting, and defending equality for lesbian, gay, bisexual, and transgendered people.  SAVE's activities include education initiatives, outreach, grassroots organizing, and advocacy.  In this action SAVE asserts the rights of its members who are same-sex couples and have lawfully married outside of Florida.

**B. The Defendants**

The Brenner and Grimsley cases have four defendants in common.  The Brenner case adds a fifth.

The defendants in common are State of Florida officers, all in their official capacities: the Governor, the Attorney General, the Surgeon General, and the Secretary of the Department of Management Services.  This order sometimes refers to these four defendants as the "state defendants."  The order sometimes refers to the Secretary of the Department of Management Services as "the Secretary."

The fifth defendant in the Brenner case is the Clerk of Court of Washington County, Florida, again in his official capacity.  This order sometimes refers to him as the "Clerk of Court" or simply "the Clerk."

Case 4:14-cv-00107-RH-CAS Document 10341 Filed 12/29/14 Page 37 of 71
Case 4:14-cv-00107-RH-CAS Document 74 Filed 08/21/14 Page 9 of 33

Page 9 of 33

### C. The Claims

In each case, the plaintiffs have filed an amended complaint. Each amended complaint asserts that the Florida same-sex marriage provisions violate the Fourteenth Amendment's Due Process and Equal Protection Clauses. On the Equal Protection claim, the Brenner plaintiffs say the challenged provisions improperly discriminate based on sexual orientation, while the Grimsley plaintiffs assert improper discrimination based on both sexual orientation and sex (that is, gender). The Brenner plaintiffs assert additional claims based on the First Amendment's right of association, the Establishment Clause, and the Supremacy Clause.

### D. The Challenged Provisions

The Brenner and Grimsley plaintiffs all challenge Article I, § 27, of the Florida Constitution, and Florida Statutes § 741.212. The Brenner plaintiffs also challenge Florida Statutes § 741.04(1).

Article I, § 27 provides:

> *Marriage defined.*—Inasmuch as marriage is the legal union of only one man and one woman as husband and wife, no other legal union that is treated as marriage or the substantial equivalent thereof shall be valid or recognized.

Florida Statutes § 741.212 provides:

> (1) Marriages between persons of the same sex entered into in any jurisdiction, whether within or outside the State of Florida, the United States, or any other jurisdiction, either

Case 4:14-cv-00107-RH-CAS Document 103-1 Filed 12/29/14 Page 38 of 71
Case 4:14-cv-00107-RH-CAS Document 174 Filed 08/21/14 Page 10 of 33

Page 10 of 33

domestic or foreign, or any other place or location, or relationships between persons of the same sex which are treated as marriages in any jurisdiction, whether within or outside the State of Florida, the United States, or any other jurisdiction, either domestic or foreign, or any other place or location, are not recognized for any purpose in this state.

(2) The state, its agencies, and its political subdivisions may not give effect to any public act, record, or judicial proceeding of any state, territory, possession, or tribe of the United States or of any other jurisdiction, either domestic or foreign, or any other place or location respecting either a marriage or relationship not recognized under subsection (1) or a claim arising from such a marriage or relationship.

(3) For purposes of interpreting any state statute or rule, the term "marriage" means only a legal union between one man and one woman as husband and wife, and the term "spouse" applies only to a member of such a union.

Florida Statutes § 741.04(1) provides:

No county court judge or clerk of the circuit court in this state shall issue a license for the marriage of any person . . . unless one party is male and the other party is female.

## E. The Pending Motions

In each case, the plaintiffs have moved for a preliminary injunction barring enforcement of the challenged provisions. The defendants oppose the motions and assert that if a preliminary injunction is granted, it should be stayed pending appeal.

In each case, the state defendants have moved to dismiss the amended complaint. They do not contest the standing of most of the plaintiffs to bring these

Case 4:14-cv-00107-RH-CAS Document 103-1 Filed 12/29/14 Page 39 of 71
Case 4:14-cv-00107-RH-CAS Document 74 Filed 08/21/14 Page 11 of 33

Page 11 of 33

cases.  They acknowledge that the Secretary of the Department of Management
Services is a proper defendant, but they assert that the Governor, Attorney General,
and Surgeon General are not.  They say these defendants have no role in enforcing
the challenged provisions.  On the merits, the state defendants say the state's same-
sex marriage provisions are constitutional.

The Clerk of Court has moved to dismiss the Brenner amended complaint—
the only one in which the Clerk is named as a defendant—on the ground that he
has done nothing more than comply with state law, that he therefore is not a proper
defendant, and that, in any event, the state's same-sex marriage provisions are
constitutional.

All parties have agreed that these motions should be decided based on the
existing record, without further evidence.

## II.  Standing

The plaintiffs whose financial interests are directly affected by the Florida
marriage provisions plainly have standing to challenge them.  This apparently
includes most or all of the individual plaintiffs.  The effect is the most direct for
current or former public employees who are unable to obtain for themselves or
their spouses the same benefits—primarily retirement benefits and healthcare
coverage—as are available to opposite-sex couples.  The defendants do not
challenge the plaintiffs' standing in this respect.

Case 4:14-cv-00107-RH-CAS Document 103-1 Filed 12/29/14 Page 40 of 71
Case 4:14-cv-00107-RH-CAS Document 74 Filed 08/21/14 Page 12 of 33

Page 12 of 33

The defendants question only Ms. Goldberg's standing to pursue a change in

Ms. Goldwasser's death certificate or to seek social-security benefits based on their

marriage. But Ms. Goldberg has standing on each basis. The death certificate says

Ms. Goldwasser was "never married" and, in the blank for listing a spouse, says

"none." That a spouse would find this offensive and seek to have it changed is

neither surprising nor trivial. Ms. Goldberg has a sufficient personal stake in

pursuing this relief to have standing.

### III. The Proper Defendants

Under *Ex parte Young*, 209 U.S. 123 (1908), a plaintiff may pursue a federal

constitutional claim for prospective relief against an official-capacity state

defendant who "is responsible for the challenged action" or who, " 'by virtue of his

office, has some connection' with the unconstitutional act or conduct complained

of." *Luckey v. Harris*, 860 F.2d 1012, 1015-16 (11th Cir. 1988) (quoting *Ex parte*

*Young*, 209 U.S. at 157).

The state defendants acknowledge that the Secretary meets this test. The

Secretary administers the retirement and healthcare provisions that apply to current

and former state employees. As required by the challenged provisions, the

Secretary refuses to recognize same-sex marriages. The plaintiffs assert that the

Secretary thus violates the United States Constitution.

Case 4:14-cv-00107-RH-CAS Document 103-1 Filed 12/29/14 Page 41 of 71
Case 4:14-cv-00107-RH-CAS Document 174 Filed 08/21/14 Page 13 of 33

Page 13 of 33

The Surgeon General also meets the test.  The Surgeon General is the head of the Department of Health.  The Surgeon General thus must "execute the powers, duties, and functions" of the department.  Fla. Stat. § 20.05(1)(a).  Those functions include establishing the official form for death certificates, which must include the decedent's "marital status."  *Id*. § 382.008(6).  The official form includes a blank for listing the decedent's spouse.  The Department may change a death certificate's marital information when the name of a "surviving spouse" is omitted or based on an order from "a court of competent jurisdiction."  *Id*. § 382.016(2).  This is a court of competent jurisdiction, Ms. Goldberg seeks such an order, and the person to whom such an order should properly be directed is the Surgeon General.  He is a proper defendant in this action.

Whether the Governor and Attorney General are proper defendants is less clear.  It also makes no difference.  As the state defendants acknowledge, an order directed to the Secretary—or, for matters relating to the death certificate, to the Surgeon General—will be sufficient to provide complete relief.  The Eleventh Circuit has held that a district court may dismiss claims against redundant official-capacity defendants.  *See Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) (approving the dismissal of official-capacity defendants whose presence was merely redundant to the naming of an institutional defendant).  The prudent course here is to dismiss the Governor and Attorney General on this basis.  *See generally*

Case 4:14-cv-00107-RH-CAS Document 103-1 Filed 12/29/44 Page 42 of 71
Case 4:14-cv-00107-RH-CAS Document 74 Filed 08/22/14 Page 14 of 33

Page 14 of 33

*Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 341, 345-46 (1936) (Brandeis, J., concurring) (setting out fundamental principles of constitutional adjudication, including that, "The Court will not 'anticipate a question of constitutional law in advance of the necessity of deciding it' ") (quoting earlier authorities in part); *see also Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445 (1988) ("A fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them."), *quoted with approval in United States v. $242,484.00*, 318 F.3d 1240, 1242 n.2 (11th Cir. 2003).

If it turns out later that complete relief cannot be afforded against the Secretary and Surgeon General, any necessary and proper additional defendant can be added.

Finally, the Clerk of Court for Washington County is plainly a proper defendant. The Clerk denied a marriage license to Mr. Schlairet and Mr. Russ and would properly be ordered to issue the license if they prevail on their claims in this action. That the Clerk was acting in accordance with state law does not mean he is not a proper defendant. Quite the contrary. The whole point of *Ex parte Young* is to provide a remedy for unconstitutional action that is taken under state authority, including, as here, a state constitution or laws.

Case 4:14-cv-00107-RH-CAS Document 103-1 Filed 12/29/14 Page 43 of 71
Case 4:14-cv-00107-RH-CAS Document 174 Filed 08/21/14 Page 15 of 33

Page 15 of 33

In sum, this action will go forward against the Secretary, the Surgeon General, and the Clerk. The claims against the Governor and Attorney General will be dismissed without prejudice as redundant.

## IV. The Merits

The Fourteenth Amendment provides, among other things, that a state shall not "deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." The amendment was added to the Constitution after the Civil War for the express purpose of protecting rights against encroachment by state governments. By that time it was well established that a federal court had the authority—indeed, the duty—to strike down an unconstitutional statute when necessary to the decision in a case or controversy properly before the court. The State of Florida has itself asked federal courts to do so. So the suggestion that this is just a federalism case— that the state's laws are beyond review in federal court—is a nonstarter.

That this case involves marriage does not change this result. The Supreme Court recognized this in *Loving v. Virginia*, 388 U.S. 1 (1967). There the Court struck down a Virginia statute that prohibited interracial marriage. The defendants say interracial marriage is different from same-sex marriage. But on the question of whether a federal court has the authority—indeed, the duty—to strike down a state marriage provision if it conflicts with a party's rights under the Fourteenth

Case 4:14-cv-00107-RH-CAS Document 103-1 Filed 12/29/14 Page 44 of 71
Case 4:14-cv-00107-RH-CAS Document 174 Filed 08/21/14 Page 16 of 33

Page 16 of 33

Amendment, *Loving* is on point and controlling. So are *Zablocki v. Redhail*, 434

U.S. 374 (1978), and *Turner v. Safley*, 482 U.S. 78 (1987), where the Court

invalidated state provisions restricting marriage. Further, in *Windsor*, the Court

said—three times—that a state's interest "in defining and regulating marital

relations" is "subject to constitutional guarantees." 133 S. Ct. at 2691, 2692. In

short, it is settled that a state's marriage provisions must comply with the

Fourteenth Amendment and may be struck down when they do not.

It bears noting, too, that the defendants' invocation of Florida's prerogative

as a state to set the rules that govern marriage loses some of its force when the

issue raised by 20 of the 22 plaintiffs is the validity of marriages lawfully entered

in other jurisdictions. The defendants do not explain why, if a state's laws on

marriage are indeed entitled to such deference, the State of Florida is free to ignore

the decisions of other equally sovereign states, including New York, Iowa, and

Massachusetts.

In sum, the critical issue is whether the challenged Florida provisions

contravene the plaintiffs' rights to due process and equal protection. The general

framework that applies to such claims is well settled.

First, the Due Process Clause includes a substantive element—a check on a

state's authority to enact certain measures regardless of any procedural safeguards

the state may provide. Substantive due process is an exceedingly narrow concept

Case 4:14-cv-00107-RH-CAS Document 103-1 Filed 12/29/44 Page 45 of 71
Case 4:14-cv-00107-RH-CAS Document 74 Filed 08/21/44 Page 17 of 33

Page 17 of 33

that protects only fundamental rights. When governmental action impinges on fundamental rights and is challenged in a case properly before a court, the court reviews the governmental action with strict scrutiny. Whether some actions that impinge on fundamental rights are properly subject to a lower level of scrutiny— sometimes labeled intermediate scrutiny—is unsettled and ultimately makes no difference here.

Second, under the Equal Protection Clause, a court applies strict scrutiny to governmental actions that impinge on fundamental rights or employ suspect classifications. Most other governmental actions are subject to only rational-basis review. Some actions are properly subject to intermediate equal-protection scrutiny, but the scope of actions subject to intermediate scrutiny is unsettled and ultimately makes no difference here.

So the first step in analyzing the merits in these cases, as both sides agree, is determining whether the right asserted by the plaintiffs is a fundamental right as that term is used in due-process and equal-protection jurisprudence. Almost every court that has addressed the issue since the Supreme Court's 2013 decision in *Windsor* has said the answer is yes. That view is correct.

The right asserted by the plaintiffs is the right to marry. The Supreme Court has repeatedly recognized that this is a fundamental right. Thus, for example, in *Loving*, the Court held that Virginia's ban on interracial marriage violated the Due

Case 4:14-cv-00107-RH-CAS Document 103-1 Filed 12/29/14 Page 46 of 71
Case 4:14-cv-00107-RH-CAS Document 74 Filed 08/21/14 Page 18 of 33

Page 18 of 33

Process and Equal Protection Clauses, even though similar bans were widespread and of long standing. The Court did not cast the issue as whether the right to *interracial* marriage was fundamental. *See Kitchen v. Herbert*, 961 F. Supp. 2d 1181, 1202 (D. Utah 2013) ("Instead of declaring a new right to interracial marriage, the Court held [*in Loving*] that individuals could not be restricted from exercising their existing right to marry on account of the race of their chosen partner.").

Similarly, in *Zablocki*, the Court labeled the right to marry fundamental and struck down, on equal-protection grounds, a Wisconsin statute that prohibited residents with unpaid court-ordered child-support obligations from entering new marriages. The Court did not ask whether the right not to pay child support was fundamental, or whether the right to marry while owing child support was fundamental; the Court started and ended its analysis on this issue with the accepted principle that the right *to marry* is fundamental.

The Court took the same approach in *Turner*. A Missouri regulation prohibited prisoners from marrying other than for a compelling reason. The Court said the state's interests in regulating its prisons were insufficient to overcome the prisoners' fundamental right to marry. The Court did not ask whether there is a fundamental right to marry while in prison, as distinguished from the more general right to marry.

Case 4:14-cv-00107-RH-CAS Document 103-1 Filed 12/29/14 Page 47 of 71
Case 4:14-cv-00107-RH-CAS Document 74 Filed 08/21/14 Page 19 of 33

Page 19 of 33

In other cases, too, the Court has said the right to marry is fundamental. Indeed, the Court has sometimes listed marriage as the very paradigm of a fundamental right. *See, e.g.*, *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997) (refusing to recognize assisted suicide as a fundamental right, listing rights that *do* qualify as fundamental, and placing the right to marry first on the list); *Griswold v. Connecticut*, 381 U.S. 479, 485–86 (1965) (including the right to marry in the fundamental right to privacy); *Skinner v. Oklahoma ex rel. Williamson*, 316 U.S. 535, 541 (1942) (labeling marriage "one of the basic civil rights of man"); *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923) (saying that "[w]ithout doubt" the right "to marry" is within the liberty protected by the Due Process Clause); *Maynard v. Hill*, 125 U.S. 190, 205 (1888) (labeling marriage "the most important relation in life").

Perhaps recognizing these authorities, the defendants do not, and could not plausibly, assert that the right to marry is not a fundamental right for due-process and equal-protection purposes. Few rights are *more* fundamental. The defendants assert, though, that the right at issue in the cases at bar is the right to marry a person of the same sex, not just the right to marry. In support of this assertion, the defendants cite a principle derived from *Glucksberg*: due-process analysis requires a " 'careful description' of the asserted fundamental liberty interest." 521 U.S. at 721 (citing *Reno v. Flores*, 507 U.S. 292, 302 (1993)).

Case 4:14-cv-00107-RH-CAS Document 103-1 Filed 12/29/14 Page 48 of 71
Case 4:14-cv-00107-RH-CAS Document 74 Filed 08/21/14 Page 20 of 33

Page 20 of 33

A careful description means only an accurate one, determined at the appropriate level of generality. Indeed, *Glucksberg* itself said the right to marry is fundamental, describing the right at that level of generality. 521 U.S. at 720. And *Loving*, *Zablocki*, and *Turner* applied the right to marry at that level of generality, without asking whether the specific application of the right to marry—to interracial marriage or debtor marriage or prisoner marriage—was fundamental when viewed in isolation.

This approach makes sense. The point of fundamental-rights analysis is to protect an individual's liberty against unwarranted governmental encroachment. So it is a two-step analysis: is the right fundamental, and, if so, is the government encroachment unwarranted (that is, does the encroachment survive strict scrutiny)? At the first step, the right to marry—to choose one's own spouse—is just as important to an individual regardless of whom the individual chooses to marry. So the right to marry is just as important when the proposed spouse is a person of the same race and different sex (as in the most common marriages, those that have been approved without controversy for the longest period), or a person of a different race (as in *Loving*), or a person with unpaid child-support obligations (as in *Zablocki*), or a prisoner (as in *Turner*), or a person of the same sex (as in the cases at bar).

Case 4:14-cv-00107-RH-CAS Document 103-1 Filed 12/29/14 Page 49 of 71
Case 4:14-cv-00107-RH-CAS Document 174 Filed 08/21/14 Page 21 of 33

Page 21 of 33

It is only at the second step—on the question of whether the government encroachment is unwarranted—that the nature of the restriction becomes critical. The governmental interest in *overriding* a person's fundamental right to marry may be different in these different situations—that certainly was the case in *Zablocki* and *Turner*, for example—but that is a different issue from whether the right itself is fundamental. The right to marry is as fundamental for the plaintiffs in the cases at bar as for any other person wishing to enter a marriage or have it recognized.

That leaves for analysis the second step, the application of strict scrutiny. A state may override a fundamental right through measures that are narrowly tailored to serve a compelling state interest. A variety of justifications for banning same-sex marriages have been proffered by these defendants and in the many other cases that have plowed this ground since *Windsor*. The proffered justifications have all been uniformly found insufficient. Indeed, the states' asserted interests would fail even intermediate scrutiny, and many courts have said they would fail rational-basis review as well. On these issues the circuit decisions in *Bostic*, *Bishop*, and *Kitchen* are particularly persuasive. All that has been said there is not repeated here.

Just one proffered justification for banning same-sex marriage warrants a further note. The defendants say the critical feature of marriage is the capacity to procreate. Same-sex couples, like opposite-sex couples and single individuals, can

Case 4:14-cv-00107-RH-CAS Document 103-1 Filed 12/29/14 Page 50 of 71
Case 4:14-cv-00107-RH-CAS Document 74 Filed 08/21/14 Page 22 of 33

Page 22 of 33

adopt, but same-sex couples cannot procreate.  Neither can many opposite-sex couples.  And many opposite-sex couples do not wish to procreate.

Florida has never conditioned marriage on the desire or capacity to procreate.  Thus individuals who are medically unable to procreate can marry in Florida.  If married elsewhere, their marriages are recognized in Florida.  The same is true for individuals who are beyond child-bearing age.  And individuals who have the capacity to procreate when married but who voluntarily or involuntarily become medically unable to procreate, or pass the age when they can do so, are allowed to remain married.  In short, the notion that procreation is an essential element of a Florida marriage blinks reality.

Indeed, defending the ban on same-sex marriage on the ground that the capacity to procreate is the essence of marriage is the kind of position that, in another context, might support a finding of pretext.  It is the kind of argument that, in another context, might be "accompanied by a suspicion of mendacity." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993).  The undeniable truth is that the Florida ban on same-sex marriage stems entirely, or almost entirely, from moral disapproval of the practice.  Properly analyzed, the ban must stand or fall on the proposition that the state can enforce that moral disapproval without violating the Fourteenth Amendment.

The difficulty for the defendants is that the Supreme Court has made clear that moral disapproval, standing alone, cannot sustain a provision of this kind. *Windsor* so indicates. Further, in *Bowers v. Hardwick,* 478 U.S. 186 (1986), the Court upheld a state law prohibiting sodomy, basing the decision on the state's prerogative to make moral choices of this kind. But later, in *Lawrence v. Texas*, 539 U.S. 558 (2003), the Court revisited the issue, struck down a statute prohibiting gay sex, and expressly overruled *Bowers*. In his *Lawrence* dissent, Justice Scalia made precisely the point set out above—that a ban on same-sex marriage must stand or fall on the proposition that the state can enforce moral disapproval of the practice without violating the Fourteenth Amendment. Justice Scalia put it this way: "State laws against . . . same-sex marriage . . . are likewise sustainable only in light of *Bowers'* validation of laws based on moral choices." *Lawrence*, 539 U.S. at 590 (Scalia, J., dissenting).

Had we begun with a clean slate, one might have expected the defendants to lead off their arguments in this case by invoking the state's moral disapproval of same-sex marriage. But the defendants did not start there, undoubtedly because any such defense would run headlong into the Supreme Court's decisions in *Lawrence* and *Windsor*. *See also Romer v. Evans*, 517 U.S. 620 (1996) (striking down a state constitutional amendment that discriminated based on sexual orientation). Each of these decisions rejected moral disapproval of same-sex

Case 4:14-cv-00107-RH-CAS Document 103-1 Filed 12/29/14 Page 52 of 71
Case 4:14-cv-00107-RH-CAS Document 174 Filed 08/21/14 Page 24 of 33

Page 24 of 33

orientation as a legitimate basis for a law. *See also Bowers*, 478 U.S. at 216 (Stevens, J., dissenting) ("[T]he fact that the governing majority in a State has traditionally viewed a particular practice as immoral is not a sufficient reason for upholding a law prohibiting the practice; neither history nor tradition could save a law prohibiting miscegenation from constitutional attack.").

In short, we do not write on a clean slate. Effectively stripped of the moral-disapproval argument by binding Supreme Court precedent, the defendants must fall back on make-weight arguments that do not withstand analysis. Florida's same-sex marriage provisions violate the Due Process and Equal Protection Clauses.

In reaching this conclusion, I have not overlooked the defendants' reliance on *Baker v. Nelson*, 409 U.S. 810 (1972), and *Lofton v. Sec'y of Dep't of Children & Family Servs.*, 358 F.3d 804 (11th Cir. 2004).

In *Baker*, the Supreme Court dismissed for want of a substantial federal question an appeal from a state supreme court decision rejecting a constitutional challenge to the state's ban on same-sex marriage. Such a summary disposition binds lower federal courts unless "doctrinal developments" in the Supreme Court undermine the decision. *See Hicks v. Miranda*, 422 U.S. 332, 344-45 (1975) (holding that a summary disposition binds lower courts "except when doctrinal developments indicate otherwise") (quoting *Port Auth. Bondholders Protective*

Case 4:14-cv-00107-RH-CAS Document 103-1 Filed 12/29/14 Page 53 of 71
Case 4:14-cv-00107-RH-CAS Document 74 Filed 08/21/14 Page 25 of 33

Page 25 of 33

*Comm. v. Port of New York Auth.*, 387 F.2d 259, 263 n.3 (2d Cir. 1967) (Friendly,

J.)).  The Eleventh Circuit has recognized this principle:

> Doctrinal developments need not take the form of an outright reversal of the earlier case. The Supreme Court may indicate its willingness to reverse or reconsider a prior opinion with such clarity that a lower court may properly refuse to follow what appears to be binding precedent.  Even less clear-cut expressions by the Supreme Court can erode an earlier summary disposition because summary actions by the Court do not carry the full precedential weight of a decision announced in a written opinion after consideration of briefs and oral argument. The Court could suggest that a legal issue once thought to be settled by a summary action should now be treated as an open question, and it could do so without directly mentioning the earlier case. At that point, lower courts could appropriately reach their own conclusions on the merits of the issue.

*Hardwick v. Bowers*, 760 F.2d 1202 (11th Cir. 1985) (citations omitted), *rev'd on*

*other grounds, Bowers v. Hardwick*, 478 U.S. 186 (1986), *overruled by Lawrence*

*v. Texas*, 539 U.S. 558 (2003).

Every court that has considered the issue has concluded that the intervening

doctrinal developments—as set out in *Lawrence*, *Romer*, and *Windsor*—have

sapped *Baker*'s precedential force.

In *Lofton*, the plaintiffs challenged a Florida statute that prohibited adoptions

by gays.  Circuit precedent held, and both sides agreed, that adoption was *not* a

fundamental right.  The court said sexual orientation was not a suspect

classification.  With no fundamental right and no suspect classification, the court

Case 4:14-cv-00107-RH-CAS Document 103-1 Filed 12/29/14 Page 54 of 71
Case 4:14-cv-00107-RH-CAS Document 174 Filed 08/21/14 Page 26 of 33

Page 26 of 33

applied only rational-basis scrutiny, not strict or intermediate scrutiny. And the
court said that, because of the primacy of a child's welfare, "the state can make
classifications for adoption purposes that would be constitutionally suspect in other
arenas." 358 F.3d at 810. The court criticized the Supreme Court's *Lawrence*
decision, 358 F.3d at 816-17, and apparently gave it little or no sway. The court
upheld the Florida statute. The statute—the last in the nation banning gay
adoption—was later struck down by Florida's own courts. *See Florida Dep't of
Children & Families v. Adoption of X.X.G.*, 45 So. 3d 79, 81 (Fla. 3d DCA 2010).

The plaintiffs argue, with considerable force, that *Lofton* does not square
with *Lawrence*, *Romer*, and *Windsor*. But *Lofton* is the law of the circuit. It
establishes that, at least for now, sexual orientation is not a suspect classification in
this circuit for equal-protection purposes. But *Lofton* says nothing about whether
marriage is a fundamental right. *Lofton* does not change the conclusion that
Florida's same-sex marriage provisions violate the Due Process and Equal
Protection Clauses.

The institution of marriage survived when bans on interracial marriage were
struck down, and the institution will survive when bans on same-sex marriage are
struck down. Liberty, tolerance, and respect are not zero-sum concepts. Those
who enter opposite-sex marriages are harmed not at all when others, including
these plaintiffs, are given the liberty to choose their own life partners and are

Case 4:14-cv-00107-RH-CAS  Document 103-1  Filed 12/29/44  Page 55 of 71
Case 4:14-cv-00107-RH-CAS  Document 174-1  Filed 08/21/44  Page 27 of 31

Page 27 of 33

shown the respect that comes with formal marriage.  Tolerating views with which one disagrees is a hallmark of civilized society.

## V.  Preliminary Injunction

As a prerequisite to a preliminary injunction, a plaintiff must establish a substantial likelihood of success on the merits, that the plaintiff will suffer irreparable injury if the injunction does not issue, that the threatened injury outweighs whatever damage the proposed injunction may cause a defendant, and that the injunction will not be adverse to the public interest.  *See*, *e.g.*, *Charles H. Wesley Educ. Found., Inc. v. Cox*, 408 F.3d 1349, 1354 (11th Cir. 2005); *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc).

For the reasons set out above, the plaintiffs are likely to prevail on the merits.  The plaintiffs also meet the other requirements for a preliminary injunction.  The plaintiffs will suffer irreparable harm if an injunction is not issued. Indeed, the ongoing unconstitutional denial of a fundamental right almost always constitutes irreparable harm.  The threatened injury to the plaintiffs outweighs whatever damage the proposed injunction may cause the defendants, that is, the state.  And a preliminary injunction will not be adverse to the public interest. Vindicating constitutional rights almost always serves the public interest.

This order requires the plaintiffs' to give security for costs in a modest amount.  Any party may move at any time to adjust the amount of security.

Case 4:14-cv-00107-RH-CAS  Document 103-1  Filed 12/29/14  Page 56 of 71
Case 4:14-cv-00107-RH-CAS  Document 74  Filed 08/21/14  Page 28 of 33

Page 28 of 33

# VI.  Stay

A four-part test governs stays pending appeal: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies."  *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987).  *See also Venus Lines Agency v. CVG Industria Venezolana De Aluminio, C.A.*, 210 F.3d 1309, 1313 (11th Cir. 2000) (applying the same test).

The four-part test closely tracks the four-part test governing issuance of a preliminary injunction.  Because the governing four-part tests are so similar, it is a rare case in which a preliminary injunction is properly stayed pending appeal.  This is the rare case.

As set out above, the state's interest in refusing to allow or recognize the plaintiffs' same-sex marriages is insufficient to override the plaintiffs' interest in vindicating their constitutional rights.  The public interest does not call for a different result.  So the preliminary injunction will issue, eliminating any delay in this court, and allowing an enjoined party to go forward in the Eleventh Circuit.

But at the stay-pending-appeal stage, an additional public interest comes into play.  There is a substantial public interest in implementing this decision just once—in not having, as some states have had, a decision that is on-again, off-

Case 4:14-cv-00107-RH-CAS Document 103-1 Filed 12/29/14 Page 57 of 71
Case 4:14-cv-00107-RH-CAS Document 174 Filed 08/21/14 Page 29 of 33

Page 29 of 33

again.  This is so for marriages already entered elsewhere, and it is more clearly so for new marriages.  There is a substantial public interest in stable marriage laws.  Indeed, there is a substantial public interest in allowing those who would enter same-sex marriages the same opportunity for due deliberation that opposite-sex couples routinely are afforded.  Encouraging a rush to the marriage officiant, in an effort to get in before an appellate court enters a stay, serves the interests of nobody.

A stay thus should be entered for long enough to provide reasonable assurance that the opportunity for same-sex marriages in Florida, once opened, will not again close.  The stay will remain in effect until stays have been lifted in *Bostic*, *Bishop*, and *Kitchen*, and for an additional 90 days to allow the defendants to seek a longer stay from this court or a stay from the Eleventh Circuit or Supreme Court.

There is one exception to the stay.  The exception is the requirement to correct Ms. Goldwasser's death certificate.  The correction is important to Ms. Goldberg.  There is little if any public interest on the other side of the scale.  There is no good reason to further deny Ms. Goldberg the simple human dignity of being listed on her spouse's death certificate.  Indeed, the state's refusal to let that happen is a poignant illustration of the controversy that brings us here.

Case 4:14-cv-00107-RH-CAS Document 103-1 Filed 12/29/14 Page 58 of 71
Case 4:14-cv-00107-RH-CAS Document 74 Filed 08/21/14 Page 30 of 33

Page 30 of 33

## VII. Filing

Because this is an appealable order, it will be filed separately in each of the consolidated cases. Any notice of appeal must be filed separately in each case to which it applies.

## VIII. Conclusion

The Supreme Court has repeatedly recognized the fundamental right to marry. The Court applied the right to interracial marriage in 1967 despite state laws that were widespread and of long standing. Just last year the Court struck down a federal statute that prohibited federal recognition of same-sex marriages lawfully entered in other jurisdictions. The Florida provisions that prohibit the recognition of same-sex marriages lawfully entered elsewhere, like the federal provision, are unconstitutional. So is the Florida ban on entering same-sex marriages.

For the reasons set out in this order,

IT IS ORDERED:

1.     The state defendants' motion to dismiss, ECF No. 50 in Case No. 4:14cv107, is granted in part and denied in part. All claims against the defendant Governor and Attorney General are dismissed without prejudice as redundant. I do *not* direct the entry of judgment under Federal Rule of Civil Procedure 54(b). In all other respects the motion to dismiss is denied.

Case 4:14-cv-00107-RH-CAS Document 103-1 Filed 12/29/14 Page 59 of 71
Case 4:14-cv-00107-RH-CAS Document 74 Filed 08/21/14 Page 31 of 33

Page 31 of 33

2.    The defendant Clerk of Court's motion to dismiss, ECF No. 49 in Case No. 4:14cv107, is denied.

3.    The plaintiffs' motions for a preliminary injunction, ECF Nos. 2, 11, and 42 in Case No. 4:14cv107, are granted against the remaining defendants.

4.    The defendant Secretary of the Florida Department of Management Services and the defendant Florida Surgeon General must take no steps to enforce or apply these Florida provisions on same-sex marriage: Florida Constitution, Article I, § 27; Florida Statutes § 741.212; and Florida Statutes § 741.04(1).  The preliminary injunction set out in this paragraph will take effect upon the posting of security in the amount of $500 for costs and damages sustained by a party found to have been wrongfully enjoined.  The preliminary injunction binds the Secretary, the Surgeon General, and their officers, agents, servants, employees, and attorneys—and others in active concert or participation with any of them—who receive actual notice of this injunction by personal service or otherwise.

5.    The defendant Florida Surgeon General must issue a corrected death certificate for Carol Goldwasser showing that at the time of her death she was married to Arlene Goldberg.  The deadline for doing so is the later of (a) September 22, 2014, or (b) 14 days after all information is provided that would be required in the ordinary course of business as a prerequisite to listing an opposite-sex spouse on a death certificate.  The preliminary injunction set out in this

Case 4:14-cv-00107-RH-CAS Document 103-1 Filed 12/29/14 Page 60 of 71
Case 4:14-cv-00107-RH-CAS Document 74 Filed 08/21/14 Page 32 of 33

Page 32 of 33

paragraph will take effect upon the posting of security in the amount of $100 for costs and damages sustained by a party found to have been wrongfully enjoined. The preliminary injunction binds the Surgeon General and his officers, agents, servants, employees, and attorneys—and others in active concert or participation with any of them—who receive actual notice of this injunction by personal service or otherwise.

6.    The defendant Clerk of Court of Washington County, Florida, must issue a marriage license to Stephen Schlairet and Ozzie Russ. The deadline for doing so is the later of (a) 21 days after any stay of this preliminary injunction expires or (b) 14 days after all information is provided and all steps are taken that would be required in the ordinary course of business as a prerequisite to issuing a marriage license to an opposite-sex couple. The preliminary injunction set out in this paragraph will take effect upon the posting of security in the amount of $100 for costs and damages sustained by a party found to have been wrongfully enjoined. The preliminary injunction binds the Clerk of Court and his officers, agents, servants, employees, and attorneys—and others in active concert or participation with any of them—who receive actual notice of this injunction by personal service or otherwise.

The preliminary injunctions set out in paragraphs 4 and 6 are stayed and will not take effect until 91 days after stays have been denied or lifted in *Bostic v. Schaefer*,

Case 4:14-cv-00107-RH-CAS Document 103-1 Filed 12/29/14 Page 61 of 71
Case 4:14-cv-00107-RH-CAS Document 74 Filed 08/21/14 Page 33 of 33

Page 33 of 33

Nos. 14–1167, 14–1169, 14–1173, 2014 WL 3702493 (4th Cir. July 28, 2014);

*Bishop v. Smith*, Nos. 14–5003, 14–5006, 2014 WL 3537847 (10th Cir. July 18,

2014); and *Kitchen v. Herbert*, No. 13–4178, 2014 WL 2868044 (10th Cir. June

25, 2014).  The stay may be lifted or extended by further order.

      SO ORDERED on August 21, 2014.

                      s/Robert L. Hinkle
                      United States District Judge

# APPENDIX

## B
## District Court Order Denying the Motions to Alter
## the Stay, dated November 5, 2014

Case 4:14-cv-00107-RH-CAS   Document 103-1   Filed 12/29/14   Page 63 of 71
Case 4:14-cv-00107-RH-CAS   Document 95   Filed 12/03/14   Page 1 of 6

Page 1 of 6

# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA TALLAHASSEE DIVISION

JAMES DOMER BRENNER et al.,

       Plaintiffs,

v.                         CASE NO.  4:14cv107-RH/CAS

RICK SCOTT, etc., et al.,

       Defendants.

_____/


SLOAN GRIMSLEY et al.,

       Plaintiffs,

v.                         CASE NO.  4:14cv138-RH/CAS

RICK SCOTT, etc., et al.,

       Defendants.

_____/


## ORDER DENYING THE MOTIONS TO ALTER THE STAY

A stay of the preliminary injunction entered in these consolidated cases is

currently in effect through January 5, 2015.  Each side has moved to alter the

stay—the plaintiffs to end it sooner, the defendants to extend it until their appeal is

Case 4:14-cv-00107-RH-CAS Document 103-1 Filed 12/09/14 Page 64 of 71
Case 4:14-cv-00107-RH-CAS Document 95 Filed 11/05/14 Page 2 of 6

Page 2 of 6

resolved.  This order denies the motions, leaving the stay in effect through January 5.

I

The issue on the merits is the constitutionality of Florida's refusal to allow same-sex marriages or to recognize same-sex marriages lawfully entered elsewhere.  The order of August 21, 2014, held the challenged Florida provisions unconstitutional.

The order relied in part on the Supreme Court's decision in *United States v. Windsor*, 133 S. Ct. 2675 (2013), and three circuit decisions that were rendered after *Windsor*.  The circuit decisions were *Bostic v. Schaefer*, 760 F.3d 352 (4th Cir. 2014); *Bishop v. Smith*, 760 F.3d 1070 (10th Cir. 2014); and *Kitchen v. Herbert*, 755 F.3d 1193 (10th Cir. 2014).  Now two more circuits have reached the same result.  *See Latta v. Otter*, No. 14-35420, 2014 WL 4977682 (9th Cir. Oct. 7, 2014); *Baskin v. Bogan*, 766 F.3d 648 (7th Cir. 2014).

The August 21 order granted a preliminary injunction for the plaintiffs but stayed the order in substantial part.  The order said:

> A four-part test governs stays pending appeal: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies."  *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987).  *See also Venus Lines Agency v. CVG Industria Venezolana De Aluminio, C.A.*, 210 F.3d 1309, 1313 (11th Cir. 2000) (applying the same test).

Case 4:14-cv-00107-RH-CAS Document 103-1 Filed 12/03/14 Page 65 of 71
Case 4:14-cv-00107-RH-CAS Document 93 Filed 11/05/14 Page 3 of 6

Page 3 of 6

The four-part test closely tracks the four-part test governing issuance of a preliminary injunction. Because the governing four-part tests are so similar, it is a rare case in which a preliminary injunction is properly stayed pending appeal. This is the rare case.

As set out above, the state's interest in refusing to allow or recognize the plaintiffs' same-sex marriages is insufficient to override the plaintiffs' interest in vindicating their constitutional rights. The public interest does not call for a different result. So the preliminary injunction will issue, eliminating any delay in this court, and allowing an enjoined party to go forward in the Eleventh Circuit.

But at the stay-pending-appeal stage, an additional public interest comes into play. There is a substantial public interest in implementing this decision just once—in not having, as some states have had, a decision that is on-again, off-again. This is so for marriages already entered elsewhere, and it is more clearly so for new marriages. There is a substantial public interest in stable marriage laws. Indeed, there is a substantial public interest in allowing those who would enter same-sex marriages the same opportunity for due deliberation that opposite-sex couples routinely are afforded. Encouraging a rush to the marriage officiant, in an effort to get in before an appellate court enters a stay, serves the interests of nobody.

A stay thus should be entered for long enough to provide reasonable assurance that the opportunity for same-sex marriages in Florida, once opened, will not again close. The stay will remain in effect until stays have been lifted in *Bostic*, *Bishop*, and *Kitchen*, and for an additional 90 days to allow the defendants to seek a longer stay from this court or a stay from the Eleventh Circuit or Supreme Court.

Order of August 21, 2014, ECF No. 74, at 28-29.

On October 6, 2014, the Supreme Court denied certiorari in *Bostic*, *Bishop*, and *Kitchen*. The stays were lifted the same day. *See Bostic v. Schaefer*. No. 14-1167, 2014 WL 4960335 (4th Cir Oct. 6, 2014); *Bishop v. Smith*, No. 14-5003,

Case 4:14-cv-00107-RH-CAS Document 103-1 Filed 12/09/14 Page 66 of 71
Case 4:14-cv-00107-RH-CAS Document 95 Filed 11/05/14 Page 4 of 6

Page 4 of 6

2014 WL 4960523 (10th Cir. (Oct. 6, 2014); *Kitchen v. Herbert*, No. 13-4178,

2014 WL 4960471 (10th Cir. Oct. 6, 2014).

The stay entered in this case on August 21, by its terms and the operation of

Federal Rule of Civil Procedure 6(a)(1)(C), remains in effect until the end of the

day on January 5, 2015. That is the first workday at least 90 days after October 6,

2014.

II

The plaintiffs assert the stay should be lifted immediately or in any event

within 7 days. This would leave the Eleventh Circuit insufficient time to make a

considered judgment on whether the stay should remain in place and thus would be

inconsistent with the public interest in implementing just once the constitutional

decision on same-sex marriage in Florida. This order denies the plaintiffs' motion.

III

The defendants assert the stay should remain in effect for as long as their

appeal in these cases remains pending. But the plaintiffs have a substantial interest

in exercising their constitutional rights without undue and indefinite delay. The

public interest in implementing the constitutional decision just once is sufficient to

support the 90-day delay so that the Eleventh Circuit can consider the matter with

all deliberate speed.

Case 4:14-cv-00107-RH-CAS Document 103-1 Filed 12/09/14 Page 67 of 71
Case 4:14-cv-00107-RH-CAS Document 93 Filed 11/03/14 Page 5 of 6

Page 5 of 6

That public interest will support a longer stay only if, having considered the matter, the Eleventh Circuit concludes that the defendants have a substantial likelihood of success on appeal. In light of the unbroken line of circuit decisions striking down bans on same-sex marriage and the Supreme Court's decision to leave those decisions intact, I conclude that a longer stay is not warranted.

The decision not to extend the stay is consistent with the Supreme Court's treatment of this issue. The stays the Supreme Court put into effect prior to October 6 were vacated on that day. Since October 6, no Supreme Court stay has been in effect for more than two days, and no Supreme Court stay is now in place. *See Parnell v. Hamby*, No. 14A413, 2014 WL 5311581 (U.S. Oct. 17, 2014) (denying a stay of a district-court decision holding a state's same-sex marriage ban unconstitutional); *Otter v. Latta*, No. 14A374, 2014 WL 5094190 (U.S. Oct. 10, 2014) (denying a stay of a circuit-court decision holding a state's same-sex marriage ban unconstitutional and vacating a stay entered two days earlier). No circuit that has decided the same-sex marriage issue on the merits has stayed its ruling.

One other matter deserves mention. The defendants say I should stay this federal decision so that the Florida Supreme Court can rule in pending state cases. But the issue here is a *federal* constitutional issue. The Florida Supreme Court has the last word on state law, but here state law is clear; there is no dispute over state

Case 4:14-cv-00107-RH-CAS Document 103-1 Filed 12/09/14 Page 68 of 71
Case 4:14-cv-00107-RH-CAS Document 95 Filed 11/05/14 Page 6 of 6

Page 6 of 6

law.  The issue here arises under the United States Constitution.  The United States

Supreme Court will make the final ruling that definitively resolves this federal

constitutional issue.  And if the United States Supreme Court does not take up the

issue, the final ruling that governs in Florida (and in Alabama and Georgia) will be

the decision of the United States Court of Appeals for the Eleventh Circuit.

Waiting for a decision of the Florida Supreme Court will serve no purpose.

IV

For these reasons,

IT IS ORDERED:

The motions to alter the stay, ECF Nos. 87, 88, and 92, are DENIED.  The

stay remains in place and will expire at the end of the day on January 5, 2015.

SO ORDERED on November 5, 2014.

s/Robert L. Hinkle_____
United States District Judge

# APPENDIX

## C
## Eleventh Circuit Order Denying
## Further Stay, dated December 3, 2014

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-14061-AA
_____

D.C. Docket No. 4:14-cv-107-RH/CAS

JAMES DOMER BRENNER, *et al.*,

Plaintiffs - Appellees,

versus

JOHN H. ARMSTRONG, *et al.*,

Defendants - Appellants.

_____

No. 14-14066-AA
_____

D.C. Docket No. 4:14-cv-138-RH/CAS

SLOAN GRIMSLEY, *et al.*,

Plaintiffs - Appellees,

versus

JOHN H. ARMSTRONG, *et al.*,

Defendants - Appellants.

_____

Appeals from the United States District Court
for the Northern District of Florida

_____

Before:   HULL, WILSON, and JORDAN, Circuit Judges.

BY THE COURT:

On November 18, 2014, the Appellants in the above appeals, the Secretary of the Florida Department of Health, the Secretary of the Florida Department of Management Services, and the Clerk of Court of Washington County (collectively, Appellants), jointly filed a Motion to Extend Stay of Preliminary Injunctions Pending Appeal and for Expedited Treatment of This Motion (the Motion). Appellees James Domer Brenner, *et al.*, and Appellees Sloan Grimsley, *et al*., filed separate responses in opposition to the Motion.

Appellants' request for expedited review of the Motion is granted.   Having reviewed and fully considered the Motion, the parties' briefs, and the orders issued by the District Court in the proceedings below, the Court hereby denies Appellants' Motion.   The stay of preliminary injunctions entered by the District Court expires at the end of the day on January 5, 2015.