# APPENDIX B

**Appeal Nos. 14-14061-AA, 14-14066-AA**

*Brenner v. Sec'y, Fla. Dep't of Health*
*Grimsley v. Sec'y Dep't of Health*

**CERTIFICATE OF INTERESTED PERSONS AND
<u>CORPORATE DISCLOSURE STATEMENT</u>**

Appellants Secretary of the Florida Department of Health; Secretary of the

Florida Department of Management Services; and Clerk of the Court and

Comptroller for Washington County, Florida; pursuant to 11th Cir. R. 26.1-1,

certify that the following persons and entities have an interest in the outcome of

this case and/or appeal:

American Civil Liberties Union of Florida, Inc., The

American Civil Liberties Union Foundation, Inc.

American Civil Liberties Union Foundation of Florida, Inc., The

Albu, Joyce

Andrade, Carlos

Armstrong, Dr. John H.

Ausley & McMullen, P.A.

Bazzell, Harold

Bledsoe, Schmidt & Wilkinson, P.A.

Bondi, Pamela Jo

Brenner, James Domer

C-1 of 4

**Appeal Nos. 14-14061-AA, 14-14066-AA**

*Brenner v. Sec'y, Fla. Dep't of Health*
*Grimsley v. Sec'y Dep't of Health*

Collier, Bob

Cooper, Leslie

Crampton, Stephen M.

Del Hierro, Juan

DeMaggio, Bryan E.

Emmanuel, Stephen C.

Fitzgerald, John

Florida Conference of Catholic Bishops, Inc.

Florida Family Action, Inc.

Gantt, Thomas, Jr.

Goldberg, Arlene

Goldwasser, Carol (deceased)

Goodman, James J., Jr.

Graessle, Jonathan W.

Grimsley, Sloan

Hankin, Eric

Hinkle, Hon. Robert L.

Hueso, Denise

**Appeal Nos. 14-14061-AA, 14-14066-AA**

***Brenner v. Sec'y, Fla. Dep't of Health***
***Grimsley v. Sec'y Dep't of Health***

Humlie, Sarah

Hunziker, Chuck

Jacobson, Samuel

Jacobson Wright & Sussman, P.A.

Jones, Charles Dean

Kachergus, Matthew R.

Kayanan, Maria

Liberty Counsel, Inc.

Liberty Counsel Action, Inc.

Loupo, Robert

Mihet, Horatio G.

Milstein, Richard

Myers, Lindsay

Newson, Sandra

Nichols, Craig J.

Podhurst Orseck, P.A.

Rosenthal, Stephen F.

Russ, Ozzie

**Appeal Nos. 14-14061-AA, 14-14066-AA**

***Brenner v. Sec'y, Fla. Dep't of Health***
***Grimsley v. Sec'y Dep't of Health***

Save Foundation, Inc.

Schlairet, Stephen

Scott, Rick

Sevier, Chris

Sheppard, White, Kachergus and DeMaggio, P.A.

Sheppard, William J.

Stampelos, Hon. Charles A.

Staver, Anita L.

Staver, Mathew D.

Stevenson, Benjamin James

Tanenbaum, Adam S.

Tilley, Daniel B.

Ulvert, Christian

White, Elizabeth L.

Winsor, Allen C.

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

_____

Nos. 14-14061-AA,
14-14066-AA

_____

| JAMES BRENNER, *et al.*, | SLOAN GRIMSLEY, *et al.*, |
|---|---|
| *Appellees*, | *Appellees*, |
| v. | v. |
| SEC'Y, FLA. DEP'T OF HEALTH, *et al.* | SEC'Y, FLA. DEP'T OF HEALTH and SEC'Y, FLA. DEP'T OF MGMT. SERVS., |
| *Appellants*. | *Appellants*. |

**APPELLANTS' MOTION TO EXTEND STAY OF PRELIMINARY INJUNCTIONS PENDING APPEAL, AND FOR EXPEDITED TREATMENT OF THIS MOTION**

Appellants, the Secretary of the Florida Department of Health ("Health Secretary"), the Secretary of the Florida Department of Management Services ("DMS Secretary"), and the Clerk of Court of Washington County (collectively, the "Enjoined Officials"), pursuant to Federal Rule of Appellate Procedure 8(a), move to stay the preliminary injunctions pending appeal.

**INTRODUCTION**

The issue in these appeals is whether the Fourteenth Amendment requires Florida to recognize same-sex marriages. The district court held that it did, and it preliminarily enjoined enforcement of Florida's marriage laws. Exh. A. But there

is a circuit split on this issue, and this Court has yet to weigh in. Until it does, this Court should stay the lower-court order to maintain the status quo.

As the district court correctly recognized, "[t]here is a substantial public interest . . . in not having, as some states have had, a decision that is on-again, off-again." Exh. A, Order at 28-29. "This is so for marriages already entered elsewhere, and it is more clearly so for new marriages." *Id.* at 29. The district court entered a limited stay after recognizing the "substantial public interest in stable marriage laws," *id.*, but it denied the Enjoined Officials' motion to continue the stay through these appeals, Exh. B, Order at 4-5. The district court's stay is set to expire on January 5, 2015. *Id.* at 6. This Court should extend the stay because, on balance, it is in the public's best interest to wait for an appellate decision before implementing an order of this significance.

## PROCEDURAL BACKGROUND

Earlier this year, two sets of plaintiffs filed suit in the United States District Court for the Northern District of Florida. Each complaint challenged the constitutionality of Florida's marriage laws, which limit the definition and recognition of marriage to the legal union of one man and one woman.

The plaintiffs sought relief against the Health Secretary based on his authority to issue and amend certifications of death that reflect marital status, and they sought relief against the DMS Secretary based on his authority to manage

Florida's retirement and pension plans, which in part provide specific benefits based on marital status. Two plaintiffs sought relief against the Clerk of Court based on his authority to issue marriage licenses in Washington County. *See generally* Exh. A.

On August 21, 2014, the district court entered identical preliminary injunctions in the consolidated cases. Exh. A. The injunctions barred the Secretaries from enforcing Florida's marriage laws and required the Clerk of Court to issue a marriage license to two of the plaintiffs. *Id.*, Order at 31-32. The Enjoined Officials appealed.

The district court stayed its injunctions (except regarding one amended death certificate) until 91 days following the denial or lifting of stays in three federal circuit court decisions—*Bostic v. Schaefer* (4th Cir.), *Bishop v. Smith* (10th Cir.) and *Kitchen v. Herbert* (10th Cir.). Exh. A, Order at 32-33. The stays in *Bostic*, *Bishop*, and *Kitchen* expired or were lifted after the United States Supreme Court denied certiorari petitions in those cases on October 6, so the current stay is set to expire on January 5, 2015 (91 days later). Exh. B, Order at 4, 6.

Both sides moved to modify the stay. The plaintiffs moved to lift the stay almost immediately. Exh. B, Order at 1, 4. The Enjoined Officials opposed those motions and asked the district to extend its stay beyond January 5, 2015, and to keep it in place until this Court resolves these appeals. Exh. B, Order at 1-2, 4. The

district court denied all the requests and left the original stay expiration date in place. *Id*. at 2, 6. According to its order, the public interest "is sufficient to support the 90-day delay so that the Eleventh Circuit can consider the matter with all deliberate speed." *Id.* at 4.

The district court stated that the "public interest will support a longer stay only if, having considered the matter, the Eleventh Circuit concludes that the defendants have a substantial likelihood of success on appeal. In light of the unbroken line of circuit decisions striking down bans on same-sex marriage and the Supreme Court's decision to leave those decisions intact, I conclude that a longer stay is not warranted." Exh. B, Order at 5.

On November 6, 2014, that unbroken line of circuit decisions was broken when the Sixth Circuit upheld state marriage laws like Florida's. *See DeBoer v. Snyder*, Case No. 14-1341, -- F.3d --, 2014 WL 5748990 (6th Cir. Nov. 6, 2014). The Enjoined Officials now ask that this Court continue the district court's stay for the duration of this appeal.

## SUBJECT-MATTER AND APPELLATE JURISDICTION

The district court entered the injunctions on August 21, 2014. Exh. A. That court had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a), because the case raised federal questions and alleged deprivations of constitutional rights. The appellants timely filed notices of appeal in both cases on September 4, 2014. This

Court has jurisdiction under 28 U.S.C. § 1292(a), because the orders grant injunctions. This Court has the authority to consider this motion under Federal Rule of Appellate Procedure 8(a)(2)(A)(ii). This motion requests the same relief that the district court already denied. *See supra*.

## ARGUMENT

The plaintiffs contend the Fourteenth Amendment requires states to recognize same-sex marriage. Several Circuits (two with divided panels) recently held that the plaintiffs' view is correct. *See DeBoer*, 2014 WL 5748990, at *7 (collecting cases). More recently, the Sixth Circuit (also with a divided panel) held that the States' view is correct. *See generally id.* Other Circuits, including the Fifth Circuit and this Court, have cases pending but have not yet ruled. *See DeLeon v. Perry*, Case No. 14-50196 (5th Cir.). The issue on appeal is a serious one, and it deserves this Court's review before the injunctions become effective.

Whether a stay is appropriate depends on "the circumstances of the particular case." *Nken v. Holder*, 556 U.S. 418, 433, 129 S. Ct. 1749, 1760 (2009) (internal quotation and citation omitted). There are four factors to be considered: (1) the likelihood of prevailing on the merits on appeal; (2) irreparable harm to the movant if no stay is granted; (3) harm to the adverse parties if a stay is granted; and (4) the public interest. *See Garcia-Mir v. Meese*, 781 F.2d 1450, 1453 (11th Cir.

1986); *see also Nken*, 556 U.S. at 434, 129 S. Ct. at 1761. In this case, the last factor—the overall public interest—is the most important.

### 1.   __The Public Interest:__

The district court correctly recognized that "[t]here is a substantial public interest in stable marriage laws." Exh. A., Order at 29. If Florida's law is going to change in the substantial manner plaintiffs seek, it should be only after the plaintiffs' legal claims undergo appellate review. The public interest is not served by on-again, off-again marriage laws.

The district court also recognized the "substantial public interest in allowing those who would enter same-sex marriages the same opportunity for due deliberation that opposite-sex couples routinely are afforded. Encouraging a rush to the marriage officiant, in an effort to get in before an appellate court enters a stay, serves the interests of nobody." Exh. A, Order at 29. The same is true if those efforts are to rush to the marriage officiant before this Court (or the United States Supreme Court) rules on the merits.

In addition, there is a substantial interest in uniformity throughout the State. The plaintiffs sued only one clerk of court; the other 66 are not parties here. The public interest is not served by having two sets of marriage laws in Florida.[1]

---

[1] The Health and DMS Secretaries acknowledge that the injunctions as to them would have statewide effect, because the Secretaries have statewide duties and the order preliminarily enjoins their enforcing the marriage laws.

Moreover, those who did marry based on the preliminary injunction, would face uncertainty regarding their marital status if this Court reversed.

Next, if the district court's injunction is not stayed pending appeal, the DMS Secretary will have to reconfigure the State's public employee retirement and health insurance systems and recognize same-sex marriages performed in other States in myriad public employment circumstances, and the Health Secretary will have to reconfigure various aspects of the State's vital records system. If the district court's decision is overturned, those costs will be compounded by the need to return the systems and participants to the position before the injunctions went into effect.

The public interest led other courts to issue stays in similar circumstances. The orders on review with the Sixth Circuit, for example, were stayed while they were on appeal.[2] *See Tanco v. Haslam*, Case No. 14-5297 (mem. order) (6th Cir. Apr. 25, 2014) (granting stay pending appeal in Tennessee case after district court denied stay; finding that "public interest requires granting a stay" in light of "hotly contested issue in the contemporary legal landscape" and possible confusion, cost, and inequity if State ultimately successful) (following and quoting *Henry v. Himes*, No. 1:14-cv-129, 2014 WL 1512541, at *1 (S.D. Ohio Apr. 16, 2014)); *DeBoer v.*

---

[2] The one exception to this general statement was one Ohio case in which the order was limited to requiring two death certificates be amended to list the decedents' same-sex partners as their spouses.

*Snyder*, No. 14-1341 (mem. order) (6th Cir. Mar. 25, 2014) (Michigan case); *Love v. Beshear*, 989 F. Supp. 2d 536, 550 (W.D. Ky. 2014); *Bourke v. Beshear*, 996 F. Supp. 2d 542, 558 (W.D. Ky. 2014) ("One judge may decide a case, but ultimately others have a final say . . . . It is best that these momentous changes occur upon full review, rather than risk premature implementation or confusing changes."). The Fifth Circuit is considering the issue as well, *see supra*, and a stay remains in place there, too. *See DeLeon v. Perry*, 975 F. Supp. 2d 632, 666 (W.D. Tex. 2014). The public interest rationale that justified these stays applies with equal force here.

### 2.   The Likelihood of Success On Appeal:

Ordinarily, a party seeking a stay must show a substantial likelihood of success on the merits. But when there is a "serious legal question" involved, *Ruiz v. Estelle*, 650 F.2d 555, 565 (5th Cir. Unit A June 1981), and the balance of the equities identified in the other factors "weighs heavily in favor of granting the stay," the stay may issue upon a "lesser showing of a substantial case on the merits," *Garcia-Mir*, 781 F.2d at 1452 (internal quotations, brackets, and citations omitted).

An appeal defending the constitutional validity of Florida's marriage laws certainly presents a serious legal question. And the Enjoined Officials have shown,

at the very least, a substantial case on the merits.[3] First, the Supreme Court's decision in *Baker v. Nelson*, 409 U.S. 810, 93 S. Ct. 37 (1972)—which determined that state laws prohibiting same-sex marriages do not give rise to a substantial federal question—remains binding precedent. Several district courts (including one in this circuit) and three circuit courts (the First, Sixth, and Eighth) have concluded that *Baker* forecloses claims like the ones brought by the plaintiffs. *See DeBoer*, 2014 WL 5748990, at \*5; *Conde-Vidal v. Garcia-Padilla*, Case No. 14-cv-1253, -- F. Supp. 3d --, 2014 WL 5361987, at \*6 (D.P.R. Oct. 21, 2014); *Massachusetts. v. HHS*, 682 F.3d 1, 8 (1st Cir. 2012); *McConnell v. Nooner*, 547 F.2d 54, 55-56 (8th Cir. 1976); *Sevcik v. Sandoval*, 911 F. Supp. 2d 996, 1002-03 (D. Nev. 2012), *rev'd sub nom. Latta v. Otter*, -- F.3d --, 2014 WL 4977682 (9th Cir. Oct. 7, 2014); *Wilson v. Ake*, 354 F. Supp. 2d 1298, 1304-05 (M.D. Fla. 2005). The district court in this case concluded otherwise.

The decision in *Baker* is consistent with long-standing precedent that recognizes the States' virtually exclusive authority to define and regulate marriage. The Supreme Court, as recently as last year in *Windsor*, reaffirmed that States had that authority, free from federal interference. *United States v. Windsor*, 133 S. Ct. 2675, 2691 (2013). The district court again concluded otherwise, holding that the Fourteenth Amendment compelled Florida to recognize same-sex marriage.

---

[3] On November 14, the Enjoined Officials filed their joint initial brief, presenting their arguments on the merits.

The district court also held that Florida's marriage laws, by precluding same-sex marriages, violated the fundamental right to marry. But the "right to marry" the Supreme Court has recognized necessarily refers to traditional marriage. Because same-sex marriage is a relatively new concept, it is not deeply rooted in this Nation's history and tradition, so it is not a fundamental right. *Cf. Washington v. Glucksberg*, 521 U.S. 702, 720-21, 117 S. Ct. 2258, 2268 (1997). At bottom, neither this Court nor the Supreme Court has ever held that there is a fundamental right to same-sex marriage.

Nor has this Court or the Supreme Court held that sexual orientation is a suspect class. *See Lofton v. Sec'y, Fla. Dep't of Children & Family Servs.*, 358 F.3d 804, 817-18 (11th Cir. 2004) (rejecting recognition of "a new fundamental right to private sexual intimacy" stemming from sexual orientation and rejecting application of heightened scrutiny to classifications based on sexual orientation). With no suspect class or fundamental right at issue, the claims are subject only to rational basis review, which the state laws easily satisfy. *See, e.g., DeBoer*, 2014 WL 5748990, at *11 (finding rational basis and explaining that "a State might wish to wait and see before changing a norm that our society (like all others) has accepted for centuries").

The plaintiffs may argue in response to all of this—as they argued below—that several circuits have agreed with their arguments. That is true, but two circuits

issued divided opinions, whose lengthy dissents showed, at the least, a serious legal question. *See Kitchen v. Herbert*, 755 F.3d 1193 (10th Cir. 2014); *Bostic v. Schaefer*, 760 F.3d 352 (4th Cir. 2014). And the Sixth Circuit held to the contrary, creating a circuit split and further showing a serious issue. *See supra*.

The plaintiffs also may point out that the United States Supreme Court recently denied certiorari in cases invalidating traditional marriage laws. That is also true, but the Supreme Court has "often stated [that] the 'denial of a writ of certiorari imports no expression of opinion upon the merits of the case.'" *Teague v. Lane*, 489 U.S. 288, 296, 109 S. Ct. 1060, 1067 (1989) (quoting *United States v. Carver,* 260 U.S. 482, 490, 43 S. Ct. 181, 182 (1923) (Holmes, J.)); *see also Powell v. Barrett*, 541 F.3d 1298, 1312 n.5 (11th Cir. 2008) (en banc) ("For at least eight decades the Supreme Court has instructed [courts], time and again, over and over, that the denial of certiorari does not in any way or to any extent reflect or imply any view on the merits."). Moreover, the United States Supreme Court may review the issue now that there is a circuit split. Already, no fewer than four petitions for certiorari have arrived at the United States Supreme Court challenging the Sixth Circuit's decision. *See* Petition for Writ of Certiorari, *DeBoer v. Snyder* (filed Nov. 17, 2014) (No. __);[4] Petition for Writ of Certiorari, *Love v. Beshear*,

---

[4]   Available   at   http://sblog.s3.amazonaws.com/wp-content/uploads/2014/11/Michigan-marriage-cert-petition-11-17-14.pdf.

(filed Nov. 17, 2014) (No. __);[5] Petition for Writ of Certiorari, *Obergefell v. Hodges* (filed Nov. 14, 2014) (No. 14-556); Petition for Writ of Certiorari, *Tanco v. Haslam* (filed Nov. 14, 2014) (No. 14-562).

This Court should conclude that there is a substantial case on the merits that warrants careful consideration and a stay pending appeal.

### 3.    <u>The Balance of Equities:</u>

"[S]tatutes are presumptively constitutional and, absent compelling equities on the other side … should remain in effect pending a final decision on the merits by this Court." *New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1352, 98 S. Ct. 359, 364 (1977) (Rehnquist, J., in chambers) (citing *Marshall v. Barlow's Inc.*, 429 U.S. 1347, 1348, 97 S. Ct. 776, 777 (1977) (Rehnquist, J., in chambers)). Any time a court enjoins a State "from effectuating statutes enacted by representatives of its people," there is a significant impact on it that can tip the balance in favor of a stay. *See New Motor Vehicle Bd. of Cal.*, 434 U.S. at 1351, 98 S. Ct. at 363 (Rehnquist, J., in chambers); *Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*, 134 S. Ct. 506, 506 (2013) (noting that effect on State of court injunction against enforcement of one of its statutes is one of the two most critical factors weighing in favor of stay) (Scalia, J., concurring in upholding stay).

---

[5]    Available    at    http://sblog.s3.amazonaws.com/wp-content/uploads/2014/11/Kentucky-marriage-joint-cert-petition-11-17-14.pdf

In these particular cases, where the definition of marriage is so inextricably intertwined with the operation of whole chapters of the State's code, unless the stay remains in place pending appeal, there is considerable risk of confusion—reorienting whole systems to accommodate the preliminary injunctions while this appeal is pending, and potentially trying to undo that reorientation if the injunctions are reversed.

The district court found that Florida's laws violate the plaintiffs' constitutional rights—the central issue on appeal. It is true that any denial of a constitutional right is a real injury, but that also was true when the district court decided, on balance in this unique case, to stay the injunctions in the first place. There is no need for immediate relief now that alters that balance of equities away from entering the stay and toward lifting the stay. The plaintiffs are no differently situated than those located in the four States of the Sixth Circuit, the three States of the Fifth Circuit, or the other two States in this Circuit. The laws in those States, like those in Florida, limit the definition of marriage to the legal union of one man and one woman. In the Fifth and Sixth Circuits, those laws remain in force while federal appellate review continues. So it should be here. In fact, there is no more urgency for any of the plaintiffs now than existed when the district court entered the stay in August, or than when the plaintiffs filed suit earlier this year.

13

**CONCLUSION**

For the reasons the district court originally recognized, there is a substantial public interest in a stay. The Enjoined Officials respectfully request that this Court extend the district court's stay until these consolidated appeals are complete. Because the existing stay is set to expire on January 5, 2015, the Enjoined Officials also respectfully request expedited treatment of this Motion.

WHEREFORE, the Enjoined Officials respectfully ask that this Court continue the district court's stay of the preliminary injunctions while the injunctions remain on review with this Court.

Respectfully submitted:

PAMELA JO BONDI
ATTORNEY GENERAL

/s/ James J. Goodman, Jr.

JAMES J. GOODMAN, JR. (FBN 71877)
**JEFF GOODMAN, P.A.**
946 Main Street
Chipley, Florida 32428
Phone: (850) 638-9722
Fax: (850) 638-9724
office@jeffgoodmanlaw.com

*Counsel for Washington County Clerk of Court*

/s/ Adam S. Tanenbaum

ALLEN WINSOR (FBN 16295)
  *Solicitor General*
ADAM S. TANENBAUM (FBN 117498)
  *Chief Deputy Solicitor General*

**OFFICE OF THE
ATTORNEY GENERAL**
The Capitol – PL01
Tallahassee, FL 32399-1050
Phone: (850) 414-3688
Fax: (850) 410-2672
allen.winsor@myfloridalegal.com
adam.tanenbaum@myfloridalegal.com

*Counsel for the Secretary of the Florida Department of Health and for the Secretary of the Florida Department of Management Services*

15

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on this 18th day of November, 2014, a true copy of the foregoing motion and its attachments was filed electronically with the Clerk of Court using the Court's CM/ECF system, which will send by e-mail a notice of docketing activity to the registered Attorney Filers listed on the attached electronic service list; and a true copy in paper form was served by first-class mail on the following unregistered counsel: Stephen C. Emmanuel, Ausley & McMullen, P.A., Post Office Box 391, Tallahassee, Florida 32302-0391, *Counsel for Amicus*.

*/s/ Adam S. Tanenbaum*
ADAM S. TANENBAUM
Florida Bar No. 117498

## ELECTRONIC SERVICE LIST (SERVICE BY NDA)

WILLIAM J. SHEPPARD
sheplaw@att.net
ELIZABETH L. WHITE
sheplaw@att.net
BRYAN E. DEMAGGIO
sheplaw@att.net
**SHEPPARD, WHITE &
KACHERGUS, P.A.**
215 Washington Street
Jacksonville, Florida 32202
*Counsel for Plaintiffs-Appellees
in Case No. 14-14061*

SAMUEL S. JACOBSON
sam@jacobsonwright.com
**BLEDSOE, JACOBSON, SCHMIDT,
WRIGHT** *et al.*
1301 Riverplace Boulevard, Suite 1818
Jacksonville, Florida 32207
*Counsel for Plaintiffs-Appellees
In Case No. 14-14061*

MARIA KAYANAN
mkayanan@aclufl.org
DANIEL B. TILLEY
dtilley@aclufl.org
**ACLU FOUNDATION OF
FLORIDA, INC.**
4500 Biscayne Blvd Ste 340
Miami, Florida 33137-3227
*Counsel for Plaintiffs-Appellees
in Case No. 14-14066*

STEPHEN F. ROSENTHAL
srosenthal@podhurst.com
**PODHURST ORSECK, P.A.**
25 West Flagler Street, Suite 800
Miami, Florida 33130
*Counsel for Plaintiffs-Appellees in Case
No. 14-14066*

HORATIO G. MIHET
hmihet@liberty.edu
**LIBERTY COUNSEL**
1055 Maitland Center Commons Floor 2
Maitland, Florida 32751-7214
*Counsel for Amicus*

# EXHIBIT A

Case 4:14-cv-00107-RH-CAS Document 1032 Filed 12/29/14 Page 24 of 63
Case 4:14-cv-00107-RH-CAS Document 74 Filed 08/21/14 Page 1 of 33
Case: 14-14061 Date Filed: 11/18/2014 Page: 23 of 62
Page 1 of 33

# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

JAMES DOMER BRENNER et al.,

      Plaintiffs,

v.                                 CASE NO.  4:14cv107-RH/CAS

RICK SCOTT, etc., et al.,

      Defendants.

_____/

SLOAN GRIMSLEY et al.,

      Plaintiffs,

v.                                 CASE NO.  4:14cv138-RH/CAS

RICK SCOTT, etc., et al.,

      Defendants.

_____/

## ORDER DENYING THE MOTIONS TO DISMISS,
## GRANTING A PRELIMINARY INJUNCTION, AND
## <u>TEMPORARILY STAYING THE INJUNCTION</u>

The issue in these consolidated cases is the constitutionality of Florida's refusal to allow same-sex marriages or to recognize same-sex marriages lawfully entered elsewhere.

The founders of this nation said in the preamble to the United States Constitution that a goal was to secure the blessings of liberty to themselves and their posterity.  Liberty has come more slowly for some than for others.  It was 1967, nearly two centuries after the Constitution was adopted, before the Supreme Court struck down state laws prohibiting interracial marriage, thus protecting the liberty of individuals whose chosen life partner was of a different race.  Now, nearly 50 years later, the arguments supporting the ban on interracial marriage seem an obvious pretext for racism; it must be hard for those who were not then of age to understand just how sincerely those views were held.  When observers look back 50 years from now, the arguments supporting Florida's ban on same-sex marriage, though just as sincerely held, will again seem an obvious pretext for discrimination.  Observers who are not now of age will wonder just how those views could have been held.

The Supreme Court struck down part of the federal Defense of Marriage Act last year.  *United States v. Windsor*, 133 S. Ct. 2675 (2013).  Since that decision, 19 different federal courts, now including this one, have ruled on the constitutionality of state bans on same-sex marriage.  The result: 19 consecutive

victories for those challenging the bans.  Based on these decisions, gays and
lesbians, like all other adults, may choose a life partner and dignify the relationship
through marriage.  To paraphrase a civil-rights leader from the age when interracial
marriage was first struck down, the arc of history is long, but it bends toward
justice.

These consolidated cases are here on the plaintiffs' motions for a
preliminary injunction and the defendants' motions to dismiss.  This order holds
that marriage is a fundamental right as that term is used in cases arising under the
Fourteenth Amendment's Due Process and Equal Protection Clauses, that Florida's
same-sex marriage provisions thus must be reviewed under strict scrutiny, and that,
when so reviewed, the provisions are unconstitutional.  The order dismisses the
claims against unnecessary defendants but otherwise denies the motions to dismiss.
The order grants a preliminary injunction but also grants a temporary stay.

All of this accords with the unbroken line of federal authority since *Windsor*.
Indeed, except for details about these specific parties, this opinion could end at this
point, merely by citing with approval the circuit decisions striking down state bans
on same-sex marriage: *Bostic v. Schaefer*, Nos. 14–1167, 14–1169, 14–1173, 2014
WL 3702493 (4th Cir. July 28, 2014); *Bishop v. Smith*, Nos. 14–5003, 14–5006,
2014 WL 3537847 (10th Cir. July 18, 2014); and *Kitchen v. Herbert*, No. 13–4178,
2014 WL 2868044 (10th Cir. June 25, 2014).

Case 4:14-cv-00107-RH-CAS Document 1034 Filed 12/19/14 Page 27 of 63
Case 4:14-cv-00107-RH-CAS Document 74 Filed 08/21/14 Page 4 of 33
Case: 14-14061     Date Filed: 11/18/2014     Page: 26 of 62

Page 4 of 33

# I.  Background

This order addresses two cases that have been consolidated for pretrial purposes.  The order sometimes refers to Case No. 4:14cv107 as the "Brenner case."  The order sometimes refers to Case No. 4:14cv138 as the "Grimsley case."

## A. The Plaintiffs

The combined total of 22 plaintiffs in the two cases includes 9 sets of same-sex spouses who were lawfully married in New York, the District of Columbia, Iowa, Massachusetts, or Canada; the surviving spouse of a New York same-sex marriage; 2 individuals who have been in a same-sex relationship for 15 years, are not married, but wish to marry in Florida; and an organization asserting the rights of its members who lawfully entered same-sex marriages outside Florida.  All the individual plaintiffs live in Florida.  The details follow.

The first two Brenner-case plaintiffs are James D. Brenner and Charles D. Jones.  Mr. Brenner has worked for the Florida Forest Service since 1981.  Mr. Jones has worked for the Florida Department of Education since 2003.  They were married in Canada in 2009.  Mr. Brenner asserts that the state's refusal to recognize their marriage eliminates a retirement option that would provide for Mr. Jones after Mr. Brenner's death.

Brenner-case plaintiffs Stephen Schlairet and Ozzie Russ live in Washington County, Florida.  They are not married in any jurisdiction.  They meet all

requirements for marriage in Florida except that they are both men. They wish to marry and have applied to the defendant Washington County Clerk of Court for a marriage license. During breaks in employment, they have been unable to obtain healthcare coverage under one another's insurance plans because of Florida's challenged marriage provisions. Based solely on those provisions, the Clerk refuses to issue a license.

Grimsley-case plaintiffs Sloan Grimsley and Joyce Albu have been together for 9 years and were married in New York in 2011. They have two adopted minor children. Ms. Grimsley is a firefighter and paramedic for the City of Palm Beach Gardens, Florida. Ms. Grimsley and Ms. Albu are concerned that if something happens to Ms. Grimsley in the line of duty, Ms. Albu will not receive the same support the state provides to surviving opposite-sex spouses of first responders.

Grimsley-case plaintiffs Chuck Hunziker and Bob Collier have been together for over 50 years. They lived most of their lives in New York and were married there in 2013. They now are retired and live in Florida.

Grimsley-case plaintiffs Lindsay Myers and Sarah Humlie have been together for nearly 4 years and were married in the District of Columbia in 2012. They live in Pensacola, Florida. Ms. Myers works for the University of West Florida. Ms. Myers seeks the option to designate Ms. Humlie as her joint annuitant for pension purposes. Ms. Humlie does not receive health insurance through her

employer.  Because state law prohibits public employers from providing insurance for same-sex spouses, Ms. Myers cannot get coverage for Ms. Humlie on Ms. Myers's health plan.  The couple makes substantial payments each month for private health insurance for Ms. Humlie.

Grimsley-case plaintiffs Robert Loupo and John Fitzgerald have been together for 12 years.  They were married in New York in 2013.  Mr. Loupo is employed with the Miami-Dade County public schools.  Mr. Fitzgerald is retired but previously worked for Miami-Dade County.  Mr. Loupo wishes to designate Mr. Fitzgerald as his retirement-plan joint annuitant.

Grimsley-case plaintiffs Denise Hueso and Sandra Newson were married in Massachusetts in 2009.  They lived in Massachusetts, but now they live in Miami. They have had custody of their now 15-year-old son for 5 years, first as foster parents and now as adoptive parents.

Grimsley-case plaintiffs Juan del Hierro and Thomas Gantt, Jr., have been together for 6 years and were married in Washington, D.C., in 2010.  They live in North Miami Beach.  They have an adopted son under age 2.  Mr. Gantt taught for more than a decade in public schools but now works at a virtual school.  If their marriage were recognized, Mr. Gantt would designate Mr. del Hierro as his pension beneficiary.

Grimsley-case plaintiffs Christian Ulvert and Carlos Andrade live in Miami.
They have been together for 4 years and were married in the District of Columbia
in 2013. Mr. Ulvert previously worked for the Florida Legislature and wishes to
designate Mr. Andrade as his pension beneficiary. They wish to someday adopt
children.

Grimsley-case plaintiffs Richard Milstein and Eric Hankin live in Miami
Beach. They have been together for 12 years and were married in Iowa in 2010.

Grimsley-case plaintiff Arlene Goldberg married Carol Goldwasser in New
York in 2011. Ms. Goldwasser died in March 2014. The couple had been together
for 47 years. Ms. Goldwasser was the toll-facilities director for Lee County,
Florida, for 17 years. Ms. Goldberg is retired but works part time at a major
retailer. The couple had been living with and taking care of Ms. Goldwasser's
elderly parents, but now Ms. Goldberg cares for them alone. Social-security
benefits are Ms. Goldberg's primary income. Florida's refusal to recognize the
marriage has precluded Ms. Goldberg from obtaining social-security survivor
benefits. Ms. Goldberg says that for that reason only, she will have to sell her
house, and Ms. Goldwasser's parents are looking for another place to live. Ms.
Goldberg also wishes to amend Ms. Goldwasser's death certificate to reflect their
marriage.

Case: 4:14-cv-00107-RH-CAS Document 1072 Filed 12/29/14 Page 31 of 63
Case: 4:14-cv-00107-RH-CAS Document 1072 Filed 08/21/14 Page 8 of 33
Case: 14-14061    Date Filed: 11/18/2014    Page: 30 of 62
Page 8 of 33

Grimsley-case plaintiff SAVE Foundation, Inc. was established in 1993 and is dedicated to promoting, protecting, and defending equality for lesbian, gay, bisexual, and transgendered people. SAVE's activities include education initiatives, outreach, grassroots organizing, and advocacy. In this action SAVE asserts the rights of its members who are same-sex couples and have lawfully married outside of Florida.

**B. The Defendants**

The Brenner and Grimsley cases have four defendants in common. The Brenner case adds a fifth.

The defendants in common are State of Florida officers, all in their official capacities: the Governor, the Attorney General, the Surgeon General, and the Secretary of the Department of Management Services. This order sometimes refers to these four defendants as the "state defendants." The order sometimes refers to the Secretary of the Department of Management Services as "the Secretary."

The fifth defendant in the Brenner case is the Clerk of Court of Washington County, Florida, again in his official capacity. This order sometimes refers to him as the "Clerk of Court" or simply "the Clerk."

## C. The Claims

In each case, the plaintiffs have filed an amended complaint.  Each amended

complaint asserts that the Florida same-sex marriage provisions violate the

Fourteenth Amendment's Due Process and Equal Protection Clauses.  On the

Equal Protection claim, the Brenner plaintiffs say the challenged provisions

improperly discriminate based on sexual orientation, while the Grimsley plaintiffs

assert improper discrimination based on both sexual orientation and sex (that is,

gender).  The Brenner plaintiffs assert additional claims based on the First

Amendment's right of association, the Establishment Clause, and the Supremacy

Clause.

## D. The Challenged Provisions

The Brenner and Grimsley plaintiffs all challenge Article I, § 27, of the

Florida Constitution, and Florida Statutes § 741.212.  The Brenner plaintiffs also

challenge Florida Statutes § 741.04(1).

Article I, § 27 provides:

> *Marriage defined*.—Inasmuch as marriage is the legal
> union of only one man and one woman as husband and wife, no
> other legal union that is treated as marriage or the substantial
> equivalent thereof shall be valid or recognized.

Florida Statutes § 741.212 provides:

> (1) Marriages between persons of the same sex entered
> into in any jurisdiction, whether within or outside the State of
> Florida, the United States, or any other jurisdiction, either

domestic or foreign, or any other place or location, or relationships between persons of the same sex which are treated as marriages in any jurisdiction, whether within or outside the State of Florida, the United States, or any other jurisdiction, either domestic or foreign, or any other place or location, are not recognized for any purpose in this state.

(2) The state, its agencies, and its political subdivisions may not give effect to any public act, record, or judicial proceeding of any state, territory, possession, or tribe of the United States or of any other jurisdiction, either domestic or foreign, or any other place or location respecting either a marriage or relationship not recognized under subsection (1) or a claim arising from such a marriage or relationship.

(3) For purposes of interpreting any state statute or rule, the term "marriage" means only a legal union between one man and one woman as husband and wife, and the term "spouse" applies only to a member of such a union.

Florida Statutes § 741.04(1) provides:

No county court judge or clerk of the circuit court in this state shall issue a license for the marriage of any person . . . unless one party is male and the other party is female.

## E. The Pending Motions

In each case, the plaintiffs have moved for a preliminary injunction barring

enforcement of the challenged provisions. The defendants oppose the motions and

assert that if a preliminary injunction is granted, it should be stayed pending

appeal.

In each case, the state defendants have moved to dismiss the amended

complaint. They do not contest the standing of most of the plaintiffs to bring these

Case: 4:14-cv-00107-RH-CAS Document 103-2 Filed 12/29/14 Page 34 of 63
Case: 4:14-cv-00107-RH-CAS Document 74 Filed 08/21/14 Page 11 of 33
Case: 14-14061    Date Filed: 11/18/2014    Page: 33 of 62    Page 11 of 33

cases.  They acknowledge that the Secretary of the Department of Management Services is a proper defendant, but they assert that the Governor, Attorney General, and Surgeon General are not.  They say these defendants have no role in enforcing the challenged provisions.  On the merits, the state defendants say the state's same-sex marriage provisions are constitutional.

The Clerk of Court has moved to dismiss the Brenner amended complaint—the only one in which the Clerk is named as a defendant—on the ground that he has done nothing more than comply with state law, that he therefore is not a proper defendant, and that, in any event, the state's same-sex marriage provisions are constitutional.

All parties have agreed that these motions should be decided based on the existing record, without further evidence.

## II.  Standing

The plaintiffs whose financial interests are directly affected by the Florida marriage provisions plainly have standing to challenge them.  This apparently includes most or all of the individual plaintiffs.  The effect is the most direct for current or former public employees who are unable to obtain for themselves or their spouses the same benefits—primarily retirement benefits and healthcare coverage—as are available to opposite-sex couples.  The defendants do not challenge the plaintiffs' standing in this respect.

The defendants question only Ms. Goldberg's standing to pursue a change in

Ms. Goldwasser's death certificate or to seek social-security benefits based on their

marriage. But Ms. Goldberg has standing on each basis. The death certificate says

Ms. Goldwasser was "never married" and, in the blank for listing a spouse, says

"none." That a spouse would find this offensive and seek to have it changed is

neither surprising nor trivial. Ms. Goldberg has a sufficient personal stake in

pursuing this relief to have standing.

### III. The Proper Defendants

Under *Ex parte Young*, 209 U.S. 123 (1908), a plaintiff may pursue a federal

constitutional claim for prospective relief against an official-capacity state

defendant who "is responsible for the challenged action" or who, " 'by virtue of his

office, has some connection' with the unconstitutional act or conduct complained

of." *Luckey v. Harris*, 860 F.2d 1012, 1015-16 (11th Cir. 1988) (quoting *Ex parte

Young*, 209 U.S. at 157).

The state defendants acknowledge that the Secretary meets this test. The

Secretary administers the retirement and healthcare provisions that apply to current

and former state employees. As required by the challenged provisions, the

Secretary refuses to recognize same-sex marriages. The plaintiffs assert that the

Secretary thus violates the United States Constitution.

The Surgeon General also meets the test. The Surgeon General is the head of the Department of Health. The Surgeon General thus must "execute the powers, duties, and functions" of the department. Fla. Stat. § 20.05(1)(a). Those functions include establishing the official form for death certificates, which must include the decedent's "marital status." *Id*. § 382.008(6). The official form includes a blank for listing the decedent's spouse. The Department may change a death certificate's marital information when the name of a "surviving spouse" is omitted or based on an order from "a court of competent jurisdiction." *Id*. § 382.016(2). This is a court of competent jurisdiction, Ms. Goldberg seeks such an order, and the person to whom such an order should properly be directed is the Surgeon General. He is a proper defendant in this action.

Whether the Governor and Attorney General are proper defendants is less clear. It also makes no difference. As the state defendants acknowledge, an order directed to the Secretary—or, for matters relating to the death certificate, to the Surgeon General—will be sufficient to provide complete relief. The Eleventh Circuit has held that a district court may dismiss claims against redundant official-capacity defendants. *See Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) (approving the dismissal of official-capacity defendants whose presence was merely redundant to the naming of an institutional defendant). The prudent course here is to dismiss the Governor and Attorney General on this basis. *See generally*

*Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 341, 345-46 (1936) (Brandeis, J.,

concurring) (setting out fundamental principles of constitutional adjudication,

including that, "The Court will not 'anticipate a question of constitutional law in

advance of the necessity of deciding it' ") (quoting earlier authorities in part); *see

also Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445 (1988) ("A

fundamental and longstanding principle of judicial restraint requires that courts

avoid reaching constitutional questions in advance of the necessity of deciding

them."), *quoted with approval in United States v. $242,484.00*, 318 F.3d 1240,

1242 n.2 (11th Cir. 2003).

     If it turns out later that complete relief cannot be afforded against the

Secretary and Surgeon General, any necessary and proper additional defendant can

be added.

     Finally, the Clerk of Court for Washington County is plainly a proper

defendant.  The Clerk denied a marriage license to Mr. Schlairet and Mr. Russ and

would properly be ordered to issue the license if they prevail on their claims in this

action.  That the Clerk was acting in accordance with state law does not mean he is

not a proper defendant.  Quite the contrary.  The whole point of *Ex parte Young* is

to provide a remedy for unconstitutional action that is taken under state authority,

including, as here, a state constitution or laws.

In sum, this action will go forward against the Secretary, the Surgeon General, and the Clerk. The claims against the Governor and Attorney General will be dismissed without prejudice as redundant.

## IV. The Merits

The Fourteenth Amendment provides, among other things, that a state shall not "deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." The amendment was added to the Constitution after the Civil War for the express purpose of protecting rights against encroachment by state governments. By that time it was well established that a federal court had the authority—indeed, the duty—to strike down an unconstitutional statute when necessary to the decision in a case or controversy properly before the court. The State of Florida has itself asked federal courts to do so. So the suggestion that this is just a federalism case— that the state's laws are beyond review in federal court—is a nonstarter.

That this case involves marriage does not change this result. The Supreme Court recognized this in *Loving v. Virginia*, 388 U.S. 1 (1967). There the Court struck down a Virginia statute that prohibited interracial marriage. The defendants say interracial marriage is different from same-sex marriage. But on the question of whether a federal court has the authority—indeed, the duty—to strike down a state marriage provision if it conflicts with a party's rights under the Fourteenth

Amendment, *Loving* is on point and controlling.  So are *Zablocki v. Redhail*, 434 U.S. 374 (1978), and *Turner v. Safley*, 482 U.S. 78 (1987), where the Court invalidated state provisions restricting marriage.  Further, in *Windsor*, the Court said—three times—that a state's interest "in defining and regulating marital relations" is "subject to constitutional guarantees."  133 S. Ct. at 2691, 2692.  In short, it is settled that a state's marriage provisions must comply with the Fourteenth Amendment and may be struck down when they do not.

It bears noting, too, that the defendants' invocation of Florida's prerogative as a state to set the rules that govern marriage loses some of its force when the issue raised by 20 of the 22 plaintiffs is the validity of marriages lawfully entered in other jurisdictions.  The defendants do not explain why, if a state's laws on marriage are indeed entitled to such deference, the State of Florida is free to ignore the decisions of other equally sovereign states, including New York, Iowa, and Massachusetts.

In sum, the critical issue is whether the challenged Florida provisions contravene the plaintiffs' rights to due process and equal protection.  The general framework that applies to such claims is well settled.

First, the Due Process Clause includes a substantive element—a check on a state's authority to enact certain measures regardless of any procedural safeguards the state may provide.  Substantive due process is an exceedingly narrow concept

Case 4:14-cv-00107-RH-CAS Document 103-2 Filed 12/29/14 Page 40 of 63
Case 4:14-cv-00107-RH-CAS Document 74 Filed 08/21/14 Page 17 of 33
Case: 14-14061    Date Filed: 11/18/2014    Page: 39 of 62    Page 17 of 33

that protects only fundamental rights.  When governmental action impinges on fundamental rights and is challenged in a case properly before a court, the court reviews the governmental action with strict scrutiny.  Whether some actions that impinge on fundamental rights are properly subject to a lower level of scrutiny—sometimes labeled intermediate scrutiny—is unsettled and ultimately makes no difference here.

Second, under the Equal Protection Clause, a court applies strict scrutiny to governmental actions that impinge on fundamental rights or employ suspect classifications.  Most other governmental actions are subject to only rational-basis review.  Some actions are properly subject to intermediate equal-protection scrutiny, but the scope of actions subject to intermediate scrutiny is unsettled and ultimately makes no difference here.

So the first step in analyzing the merits in these cases, as both sides agree, is determining whether the right asserted by the plaintiffs is a fundamental right as that term is used in due-process and equal-protection jurisprudence.  Almost every court that has addressed the issue since the Supreme Court's 2013 decision in *Windsor* has said the answer is yes.  That view is correct.

The right asserted by the plaintiffs is the right to marry.  The Supreme Court has repeatedly recognized that this is a fundamental right.  Thus, for example, in *Loving*, the Court held that Virginia's ban on interracial marriage violated the Due

Case: 4:14-cv-00107-RH-CAS  Document 103-2  Filed 12/29/14  Page 41 of 63
Case: 14-14061    Date Filed: 11/18/2014    Page: 40 of 62

Page 18 of 33

Process and Equal Protection Clauses, even though similar bans were widespread and of long standing. The Court did not cast the issue as whether the right to *interracial* marriage was fundamental. *See Kitchen v. Herbert*, 961 F. Supp. 2d 1181, 1202 (D. Utah 2013) ("Instead of declaring a new right to interracial marriage, the Court held [*in Loving*] that individuals could not be restricted from exercising their existing right to marry on account of the race of their chosen partner.").

Similarly, in *Zablocki*, the Court labeled the right to marry fundamental and struck down, on equal-protection grounds, a Wisconsin statute that prohibited residents with unpaid court-ordered child-support obligations from entering new marriages. The Court did not ask whether the right not to pay child support was fundamental, or whether the right to marry while owing child support was fundamental; the Court started and ended its analysis on this issue with the accepted principle that the right *to marry* is fundamental.

The Court took the same approach in *Turner*. A Missouri regulation prohibited prisoners from marrying other than for a compelling reason. The Court said the state's interests in regulating its prisons were insufficient to overcome the prisoners' fundamental right to marry. The Court did not ask whether there is a fundamental right to marry while in prison, as distinguished from the more general right to marry.

In other cases, too, the Court has said the right to marry is fundamental.
Indeed, the Court has sometimes listed marriage as the very paradigm of a
fundamental right.  *See, e.g.*, *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997)
(refusing to recognize assisted suicide as a fundamental right, listing rights that *do*
qualify as fundamental, and placing the right to marry first on the list); *Griswold v.
Connecticut*, 381 U.S. 479, 485–86 (1965) (including the right to marry in the
fundamental right to privacy); *Skinner v. Oklahoma ex rel. Williamson*, 316 U.S.
535, 541 (1942) (labeling marriage "one of the basic civil rights of man"); *Meyer
v. Nebraska*, 262 U.S. 390, 399 (1923) (saying that "[w]ithout doubt" the right "to
marry" is within the liberty protected by the Due Process Clause); *Maynard v. Hill*,
125 U.S. 190, 205 (1888) (labeling marriage "the most important relation in life").

Perhaps recognizing these authorities, the defendants do not, and could not
plausibly, assert that the right to marry is not a fundamental right for due-process
and equal-protection purposes.  Few rights are *more* fundamental.  The defendants
assert, though, that the right at issue in the cases at bar is the right to marry a
person of the same sex, not just the right to marry.  In support of this assertion, the
defendants cite a principle derived from *Glucksberg*: due-process analysis requires
a " 'careful description' of the asserted fundamental liberty interest."  521 U.S. at
721 (citing *Reno v. Flores*, 507 U.S. 292, 302 (1993)).

A careful description means only an accurate one, determined at the appropriate level of generality.  Indeed, *Glucksberg* itself said the right to marry is fundamental, describing the right at that level of generality.  521 U.S. at 720. And *Loving*, *Zablocki*, and *Turner* applied the right to marry at that level of generality, without asking whether the specific application of the right to marry— to interracial marriage or debtor marriage or prisoner marriage—was fundamental when viewed in isolation.

This approach makes sense.  The point of fundamental-rights analysis is to protect an individual's liberty against unwarranted governmental encroachment. So it is a two-step analysis: is the right fundamental, and, if so, is the government encroachment unwarranted (that is, does the encroachment survive strict scrutiny)? At the first step, the right to marry—to choose one's own spouse—is just as important to an individual regardless of whom the individual chooses to marry.  So the right to marry is just as important when the proposed spouse is a person of the same race and different sex (as in the most common marriages, those that have been approved without controversy for the longest period), or a person of a different race (as in *Loving*), or a person with unpaid child-support obligations (as in *Zablocki*), or a prisoner (as in *Turner*), or a person of the same sex (as in the cases at bar).

Case: 4:14-cv-00107-RH-CAS Document 103-2 Filed 12/29/14 Page 44 of 63
Case: 4:14-cv-00107-RH-CAS Document 74-2 Filed 03/2/9/14 Page 21 of 33
Case: 14-14061    Date Filed: 11/18/2014    Page: 43 of 62
Page 21 of 33

It is only at the second step—on the question of whether the government encroachment is unwarranted—that the nature of the restriction becomes critical. The governmental interest in *overriding* a person's fundamental right to marry may be different in these different situations—that certainly was the case in *Zablocki* and *Turner*, for example—but that is a different issue from whether the right itself is fundamental. The right to marry is as fundamental for the plaintiffs in the cases at bar as for any other person wishing to enter a marriage or have it recognized.

That leaves for analysis the second step, the application of strict scrutiny. A state may override a fundamental right through measures that are narrowly tailored to serve a compelling state interest. A variety of justifications for banning same-sex marriages have been proffered by these defendants and in the many other cases that have plowed this ground since *Windsor*. The proffered justifications have all been uniformly found insufficient. Indeed, the states' asserted interests would fail even intermediate scrutiny, and many courts have said they would fail rational-basis review as well. On these issues the circuit decisions in *Bostic*, *Bishop*, and *Kitchen* are particularly persuasive. All that has been said there is not repeated here.

Just one proffered justification for banning same-sex marriage warrants a further note. The defendants say the critical feature of marriage is the capacity to procreate. Same-sex couples, like opposite-sex couples and single individuals, can

Case 4:14-cv-00107-RH-CAS Document 103-2 Filed 12/29/14 Page 45 of 63
Case: 14-14061   Date Filed: 11/18/2014   Page: 44 of 62

Page 22 of 33

adopt, but same-sex couples cannot procreate.  Neither can many opposite-sex couples.  And many opposite-sex couples do not wish to procreate.

Florida has never conditioned marriage on the desire or capacity to procreate.  Thus individuals who are medically unable to procreate can marry in Florida.  If married elsewhere, their marriages are recognized in Florida.  The same is true for individuals who are beyond child-bearing age.  And individuals who have the capacity to procreate when married but who voluntarily or involuntarily become medically unable to procreate, or pass the age when they can do so, are allowed to remain married.  In short, the notion that procreation is an essential element of a Florida marriage blinks reality.

Indeed, defending the ban on same-sex marriage on the ground that the capacity to procreate is the essence of marriage is the kind of position that, in another context, might support a finding of pretext.  It is the kind of argument that, in another context, might be "accompanied by a suspicion of mendacity." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993).  The undeniable truth is that the Florida ban on same-sex marriage stems entirely, or almost entirely, from moral disapproval of the practice.  Properly analyzed, the ban must stand or fall on the proposition that the state can enforce that moral disapproval without violating the Fourteenth Amendment.

The difficulty for the defendants is that the Supreme Court has made clear that moral disapproval, standing alone, cannot sustain a provision of this kind. *Windsor* so indicates.  Further, in *Bowers v. Hardwick,* 478 U.S. 186 (1986), the Court upheld a state law prohibiting sodomy, basing the decision on the state's prerogative to make moral choices of this kind.  But later, in *Lawrence v. Texas*, 539 U.S. 558 (2003), the Court revisited the issue, struck down a statute prohibiting gay sex, and expressly overruled *Bowers*.  In his *Lawrence* dissent, Justice Scalia made precisely the point set out above—that a ban on same-sex marriage must stand or fall on the proposition that the state can enforce moral disapproval of the practice without violating the Fourteenth Amendment.  Justice Scalia put it this way: "State laws against . . . same-sex marriage . . . are likewise sustainable only in light of *Bowers'* validation of laws based on moral choices." *Lawrence*, 539 U.S. at 590 (Scalia, J., dissenting).

Had we begun with a clean slate, one might have expected the defendants to lead off their arguments in this case by invoking the state's moral disapproval of same-sex marriage.  But the defendants did not start there, undoubtedly because any such defense would run headlong into the Supreme Court's decisions in *Lawrence* and *Windsor*.  *See also Romer v. Evans*, 517 U.S. 620 (1996) (striking down a state constitutional amendment that discriminated based on sexual orientation).  Each of these decisions rejected moral disapproval of same-sex

orientation as a legitimate basis for a law.  *See also Bowers*, 478 U.S. at 216

(Stevens, J., dissenting) ("[T]he fact that the governing majority in a State has

traditionally viewed a particular practice as immoral is not a sufficient reason for

upholding a law prohibiting the practice; neither history nor tradition could save a

law prohibiting miscegenation from constitutional attack.").

In short, we do not write on a clean slate.  Effectively stripped of the moral-

disapproval argument by binding Supreme Court precedent, the defendants must

fall back on make-weight arguments that do not withstand analysis.  Florida's

same-sex marriage provisions violate the Due Process and Equal Protection

Clauses.

In reaching this conclusion, I have not overlooked the defendants' reliance

on *Baker v. Nelson*, 409 U.S. 810 (1972), and *Lofton v. Sec'y of Dep't of Children*

*& Family Servs.*, 358 F.3d 804 (11th Cir. 2004).

In *Baker*, the Supreme Court dismissed for want of a substantial federal

question an appeal from a state supreme court decision rejecting a constitutional

challenge to the state's ban on same-sex marriage.  Such a summary disposition

binds lower federal courts unless "doctrinal developments" in the Supreme Court

undermine the decision.  *See Hicks v. Miranda*, 422 U.S. 332, 344-45 (1975)

(holding that a summary disposition binds lower courts "except when doctrinal

developments indicate otherwise") (quoting *Port Auth. Bondholders Protective*

Case: 4:14-cv-00107-RH-CAS Document 103-2 Filed 12/29/14 Page 48 of 63
Case: 4:14-cv-00107-RH-CAS Document 74 Filed 08/21/14 Page 25 of 33
Case: 14-14061   Date Filed: 11/18/2014   Page: 47 of 62   Page 25 of 33

*Comm. v. Port of New York Auth.*, 387 F.2d 259, 263 n.3 (2d Cir. 1967) (Friendly,

J.)).  The Eleventh Circuit has recognized this principle:

> Doctrinal developments need not take the form of an outright reversal of the earlier case. The Supreme Court may indicate its willingness to reverse or reconsider a prior opinion with such clarity that a lower court may properly refuse to follow what appears to be binding precedent.  Even less clear-cut expressions by the Supreme Court can erode an earlier summary disposition because summary actions by the Court do not carry the full precedential weight of a decision announced in a written opinion after consideration of briefs and oral argument. The Court could suggest that a legal issue once thought to be settled by a summary action should now be treated as an open question, and it could do so without directly mentioning the earlier case. At that point, lower courts could appropriately reach their own conclusions on the merits of the issue.

*Hardwick v. Bowers*, 760 F.2d 1202 (11th Cir. 1985) (citations omitted), *rev'd on*

*other grounds, Bowers v. Hardwick*, 478 U.S. 186 (1986), *overruled by Lawrence*

*v. Texas*, 539 U.S. 558 (2003).

Every court that has considered the issue has concluded that the intervening

doctrinal developments—as set out in *Lawrence*, *Romer*, and *Windsor*—have

sapped *Baker*'s precedential force.

In *Lofton*, the plaintiffs challenged a Florida statute that prohibited adoptions

by gays.  Circuit precedent held, and both sides agreed, that adoption was *not* a

fundamental right.  The court said sexual orientation was not a suspect

classification.  With no fundamental right and no suspect classification, the court

applied only rational-basis scrutiny, not strict or intermediate scrutiny. And the court said that, because of the primacy of a child's welfare, "the state can make classifications for adoption purposes that would be constitutionally suspect in other arenas." 358 F.3d at 810. The court criticized the Supreme Court's *Lawrence* decision, 358 F.3d at 816-17, and apparently gave it little or no sway. The court upheld the Florida statute. The statute—the last in the nation banning gay adoption—was later struck down by Florida's own courts. *See Florida Dep't of Children & Families v. Adoption of X.X.G.*, 45 So. 3d 79, 81 (Fla. 3d DCA 2010).

The plaintiffs argue, with considerable force, that *Lofton* does not square with *Lawrence*, *Romer*, and *Windsor*. But *Lofton* is the law of the circuit. It establishes that, at least for now, sexual orientation is not a suspect classification in this circuit for equal-protection purposes. But *Lofton* says nothing about whether marriage is a fundamental right. *Lofton* does not change the conclusion that Florida's same-sex marriage provisions violate the Due Process and Equal Protection Clauses.

The institution of marriage survived when bans on interracial marriage were struck down, and the institution will survive when bans on same-sex marriage are struck down. Liberty, tolerance, and respect are not zero-sum concepts. Those who enter opposite-sex marriages are harmed not at all when others, including these plaintiffs, are given the liberty to choose their own life partners and are

Case 4:14-cv-00107-RH-CAS Document 103-2 Filed 12/29/14 Page 50 of 63
Case: 14-14061    Date Filed: 11/18/2014    Page: 49 of 62

Page 27 of 33

shown the respect that comes with formal marriage.  Tolerating views with which

one disagrees is a hallmark of civilized society.

## V.  Preliminary Injunction

As a prerequisite to a preliminary injunction, a plaintiff must establish a

substantial likelihood of success on the merits, that the plaintiff will suffer

irreparable injury if the injunction does not issue, that the threatened injury

outweighs whatever damage the proposed injunction may cause a defendant, and

that the injunction will not be adverse to the public interest.  *See*, *e.g.*, *Charles H.*

*Wesley Educ. Found., Inc. v. Cox*, 408 F.3d 1349, 1354 (11th Cir. 2005); *Siegel v.*

*LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc).

For the reasons set out above, the plaintiffs are likely to prevail on the

merits.  The plaintiffs also meet the other requirements for a preliminary

injunction.  The plaintiffs will suffer irreparable harm if an injunction is not issued.

Indeed, the ongoing unconstitutional denial of a fundamental right almost always

constitutes irreparable harm.  The threatened injury to the plaintiffs outweighs

whatever damage the proposed injunction may cause the defendants, that is, the

state.  And a preliminary injunction will not be adverse to the public interest.

Vindicating constitutional rights almost always serves the public interest.

This order requires the plaintiffs' to give security for costs in a modest

amount.  Any party may move at any time to adjust the amount of security.

Case 4:14-cv-00107-RH-CAS Document 103-2 Filed 12/29/14 Page 51 of 63
Case: 14-14061    Date Filed: 11/18/2014    Page: 50 of 62

Page 28 of 33

# VI.  Stay

A four-part test governs stays pending appeal: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987).  *See also Venus Lines Agency v. CVG Industria Venezolana De Aluminio, C.A.*, 210 F.3d 1309, 1313 (11th Cir. 2000) (applying the same test).

The four-part test closely tracks the four-part test governing issuance of a preliminary injunction.  Because the governing four-part tests are so similar, it is a rare case in which a preliminary injunction is properly stayed pending appeal.  This is the rare case.

As set out above, the state's interest in refusing to allow or recognize the plaintiffs' same-sex marriages is insufficient to override the plaintiffs' interest in vindicating their constitutional rights.  The public interest does not call for a different result.  So the preliminary injunction will issue, eliminating any delay in this court, and allowing an enjoined party to go forward in the Eleventh Circuit.

But at the stay-pending-appeal stage, an additional public interest comes into play.  There is a substantial public interest in implementing this decision just once—in not having, as some states have had, a decision that is on-again, off-

again.  This is so for marriages already entered elsewhere, and it is more clearly so for new marriages.  There is a substantial public interest in stable marriage laws. Indeed, there is a substantial public interest in allowing those who would enter same-sex marriages the same opportunity for due deliberation that opposite-sex couples routinely are afforded.  Encouraging a rush to the marriage officiant, in an effort to get in before an appellate court enters a stay, serves the interests of nobody.

A stay thus should be entered for long enough to provide reasonable assurance that the opportunity for same-sex marriages in Florida, once opened, will not again close.  The stay will remain in effect until stays have been lifted in *Bostic*, *Bishop*, and *Kitchen*, and for an additional 90 days to allow the defendants to seek a longer stay from this court or a stay from the Eleventh Circuit or Supreme Court.

There is one exception to the stay.  The exception is the requirement to correct Ms. Goldwasser's death certificate.  The correction is important to Ms. Goldberg.  There is little if any public interest on the other side of the scale.  There is no good reason to further deny Ms. Goldberg the simple human dignity of being listed on her spouse's death certificate.  Indeed, the state's refusal to let that happen is a poignant illustration of the controversy that brings us here.

## VII. Filing

Because this is an appealable order, it will be filed separately in each of the consolidated cases.  Any notice of appeal must be filed separately in each case to which it applies.

## VIII. Conclusion

The Supreme Court has repeatedly recognized the fundamental right to marry.  The Court applied the right to interracial marriage in 1967 despite state laws that were widespread and of long standing.  Just last year the Court struck down a federal statute that prohibited federal recognition of same-sex marriages lawfully entered in other jurisdictions.  The Florida provisions that prohibit the recognition of same-sex marriages lawfully entered elsewhere, like the federal provision, are unconstitutional.  So is the Florida ban on entering same-sex marriages.

For the reasons set out in this order,

IT IS ORDERED:

1.    The state defendants' motion to dismiss, ECF No. 50 in Case No. 4:14cv107, is granted in part and denied in part.  All claims against the defendant Governor and Attorney General are dismissed without prejudice as redundant.  I do *not* direct the entry of judgment under Federal Rule of Civil Procedure 54(b).  In all other respects the motion to dismiss is denied.

Case 4:14-cv-00107-RH-CAS Document 103-2 Filed 12/29/14 Page 54 of 63
Case 4:14-cv-00107-RH-CAS Document 74 Filed 08/21/14 Page 31 of 33
Case: 14-14061    Date Filed: 11/18/2014    Page: 53 of 62
Page 31 of 33

2.    The defendant Clerk of Court's motion to dismiss, ECF No. 49 in Case No. 4:14cv107, is denied.

3.    The plaintiffs' motions for a preliminary injunction, ECF Nos. 2, 11, and 42 in Case No. 4:14cv107, are granted against the remaining defendants.

4.    The defendant Secretary of the Florida Department of Management Services and the defendant Florida Surgeon General must take no steps to enforce or apply these Florida provisions on same-sex marriage: Florida Constitution, Article I, § 27; Florida Statutes § 741.212; and Florida Statutes § 741.04(1). The preliminary injunction set out in this paragraph will take effect upon the posting of security in the amount of $500 for costs and damages sustained by a party found to have been wrongfully enjoined. The preliminary injunction binds the Secretary, the Surgeon General, and their officers, agents, servants, employees, and attorneys—and others in active concert or participation with any of them—who receive actual notice of this injunction by personal service or otherwise.

5.    The defendant Florida Surgeon General must issue a corrected death certificate for Carol Goldwasser showing that at the time of her death she was married to Arlene Goldberg. The deadline for doing so is the later of (a) September 22, 2014, or (b) 14 days after all information is provided that would be required in the ordinary course of business as a prerequisite to listing an opposite-sex spouse on a death certificate. The preliminary injunction set out in this

paragraph will take effect upon the posting of security in the amount of $100 for costs and damages sustained by a party found to have been wrongfully enjoined. The preliminary injunction binds the Surgeon General and his officers, agents, servants, employees, and attorneys—and others in active concert or participation with any of them—who receive actual notice of this injunction by personal service or otherwise.

6.     The defendant Clerk of Court of Washington County, Florida, must issue a marriage license to Stephen Schlairet and Ozzie Russ. The deadline for doing so is the later of (a) 21 days after any stay of this preliminary injunction expires or (b) 14 days after all information is provided and all steps are taken that would be required in the ordinary course of business as a prerequisite to issuing a marriage license to an opposite-sex couple. The preliminary injunction set out in this paragraph will take effect upon the posting of security in the amount of $100 for costs and damages sustained by a party found to have been wrongfully enjoined. The preliminary injunction binds the Clerk of Court and his officers, agents, servants, employees, and attorneys—and others in active concert or participation with any of them—who receive actual notice of this injunction by personal service or otherwise.

The preliminary injunctions set out in paragraphs 4 and 6 are stayed and will not take effect until 91 days after stays have been denied or lifted in *Bostic v. Schaefer*,

Case 4:14-cv-00107-RH-CAS Document 103-2 Filed 12/29/14 Page 56 of 63
Case: 14-14061   Date Filed: 11/18/2014   Page: 55 of 62
Case 4:14-cv-00107-RH-CAS Document 74 Filed 08/21/14 Page 33 of 33

Page 33 of 33

Nos. 14–1167, 14–1169, 14–1173, 2014 WL 3702493 (4th Cir. July 28, 2014);

*Bishop v. Smith*, Nos. 14–5003, 14–5006, 2014 WL 3537847 (10th Cir. July 18,

2014); and *Kitchen v. Herbert*, No. 13–4178, 2014 WL 2868044 (10th Cir. June

25, 2014).  The stay may be lifted or extended by further order.

   SO ORDERED on August 21, 2014.

                                   s/Robert L. Hinkle
                                   United States District Judge

# EXHIBIT B

# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

JAMES DOMER BRENNER et al.,

      Plaintiffs,

v.                                    CASE NO.  4:14cv107-RH/CAS

RICK SCOTT, etc., et al.,

      Defendants.

_____/

SLOAN GRIMSLEY et al.,

      Plaintiffs,

v.                                    CASE NO.  4:14cv138-RH/CAS

RICK SCOTT, etc., et al.,

      Defendants.

_____/

## ORDER DENYING THE MOTIONS TO ALTER THE STAY

A stay of the preliminary injunction entered in these consolidated cases is

currently in effect through January 5, 2015.  Each side has moved to alter the

stay—the plaintiffs to end it sooner, the defendants to extend it until their appeal is

Case 4:14-cv-00107-RH-CAS   Document 103-2   Filed 12/09/14   Page 59 of 63
Case: 14-14061   Date Filed: 11/18/2014   Page: 58 of 62

Page 2 of 6

resolved.  This order denies the motions, leaving the stay in effect through January 5.

## I

The issue on the merits is the constitutionality of Florida's refusal to allow same-sex marriages or to recognize same-sex marriages lawfully entered elsewhere.  The order of August 21, 2014, held the challenged Florida provisions unconstitutional.

The order relied in part on the Supreme Court's decision in *United States v. Windsor*, 133 S. Ct. 2675 (2013), and three circuit decisions that were rendered after *Windsor*.  The circuit decisions were *Bostic v. Schaefer*, 760 F.3d 352 (4th Cir. 2014); *Bishop v. Smith*, 760 F.3d 1070 (10th Cir. 2014); and *Kitchen v. Herbert*, 755 F.3d 1193 (10th Cir. 2014).  Now two more circuits have reached the same result.  *See Latta v. Otter*, No. 14-35420, 2014 WL 4977682 (9th Cir. Oct. 7, 2014); *Baskin v. Bogan*, 766 F.3d 648 (7th Cir. 2014).

The August 21 order granted a preliminary injunction for the plaintiffs but stayed the order in substantial part.  The order said:

> A four-part test governs stays pending appeal: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies."  *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987).  *See also Venus Lines Agency v. CVG Industria Venezolana De Aluminio, C.A.*, 210 F.3d 1309, 1313 (11th Cir. 2000) (applying the same test).

The four-part test closely tracks the four-part test governing issuance of a preliminary injunction. Because the governing four-part tests are so similar, it is a rare case in which a preliminary injunction is properly stayed pending appeal. This is the rare case.

As set out above, the state's interest in refusing to allow or recognize the plaintiffs' same-sex marriages is insufficient to override the plaintiffs' interest in vindicating their constitutional rights. The public interest does not call for a different result. So the preliminary injunction will issue, eliminating any delay in this court, and allowing an enjoined party to go forward in the Eleventh Circuit.

But at the stay-pending-appeal stage, an additional public interest comes into play. There is a substantial public interest in implementing this decision just once—in not having, as some states have had, a decision that is on-again, off-again. This is so for marriages already entered elsewhere, and it is more clearly so for new marriages. There is a substantial public interest in stable marriage laws. Indeed, there is a substantial public interest in allowing those who would enter same-sex marriages the same opportunity for due deliberation that opposite-sex couples routinely are afforded. Encouraging a rush to the marriage officiant, in an effort to get in before an appellate court enters a stay, serves the interests of nobody.

A stay thus should be entered for long enough to provide reasonable assurance that the opportunity for same-sex marriages in Florida, once opened, will not again close. The stay will remain in effect until stays have been lifted in *Bostic*, *Bishop*, and *Kitchen*, and for an additional 90 days to allow the defendants to seek a longer stay from this court or a stay from the Eleventh Circuit or Supreme Court.

Order of August 21, 2014, ECF No. 74, at 28-29.

On October 6, 2014, the Supreme Court denied certiorari in *Bostic*, *Bishop*,

and *Kitchen*. The stays were lifted the same day. *See Bostic v. Schaefer*. No. 14-

1167, 2014 WL 4960335 (4th Cir Oct. 6, 2014); *Bishop v. Smith*, No. 14-5003,

Case 4:14-cv-00107-RH-CAS Document 103-2 Filed 12/09/14 Page 61 of 63
Case 4:14-cv-00107-RH-CAS Document 93 Filed 11/05/14 Page 4 of 6
Case: 14-14061    Date Filed: 11/18/2014    Page: 60 of 62
Page 4 of 6

2014 WL 4960523 (10th Cir. (Oct. 6, 2014); *Kitchen v. Herbert*, No. 13-4178,

2014 WL 4960471 (10th Cir. Oct. 6, 2014).

The stay entered in this case on August 21, by its terms and the operation of

Federal Rule of Civil Procedure 6(a)(1)(C), remains in effect until the end of the

day on January 5, 2015. That is the first workday at least 90 days after October 6,

2014.

## II

The plaintiffs assert the stay should be lifted immediately or in any event

within 7 days. This would leave the Eleventh Circuit insufficient time to make a

considered judgment on whether the stay should remain in place and thus would be

inconsistent with the public interest in implementing just once the constitutional

decision on same-sex marriage in Florida. This order denies the plaintiffs' motion.

## III

The defendants assert the stay should remain in effect for as long as their

appeal in these cases remains pending. But the plaintiffs have a substantial interest

in exercising their constitutional rights without undue and indefinite delay. The

public interest in implementing the constitutional decision just once is sufficient to

support the 90-day delay so that the Eleventh Circuit can consider the matter with

all deliberate speed.

That public interest will support a longer stay only if, having considered the matter, the Eleventh Circuit concludes that the defendants have a substantial likelihood of success on appeal. In light of the unbroken line of circuit decisions striking down bans on same-sex marriage and the Supreme Court's decision to leave those decisions intact, I conclude that a longer stay is not warranted.

The decision not to extend the stay is consistent with the Supreme Court's treatment of this issue. The stays the Supreme Court put into effect prior to October 6 were vacated on that day. Since October 6, no Supreme Court stay has been in effect for more than two days, and no Supreme Court stay is now in place. *See Parnell v. Hamby*, No. 14A413, 2014 WL 5311581 (U.S. Oct. 17, 2014) (denying a stay of a district-court decision holding a state's same-sex marriage ban unconstitutional); *Otter v. Latta*, No. 14A374, 2014 WL 5094190 (U.S. Oct. 10, 2014) (denying a stay of a circuit-court decision holding a state's same-sex marriage ban unconstitutional and vacating a stay entered two days earlier). No circuit that has decided the same-sex marriage issue on the merits has stayed its ruling.

One other matter deserves mention. The defendants say I should stay this federal decision so that the Florida Supreme Court can rule in pending state cases. But the issue here is a *federal* constitutional issue. The Florida Supreme Court has the last word on state law, but here state law is clear; there is no dispute over state

Case 4:14-cv-00107-RH-CAS Document 103-2 Filed 12/09/14 Page 63 of 63
Case: 14-14061 Date Filed: 11/18/2014 Page: 62 of 62

Page 6 of 6

law.  The issue here arises under the United States Constitution.  The United States Supreme Court will make the final ruling that definitively resolves this federal constitutional issue.  And if the United States Supreme Court does not take up the issue, the final ruling that governs in Florida (and in Alabama and Georgia) will be the decision of the United States Court of Appeals for the Eleventh Circuit. Waiting for a decision of the Florida Supreme Court will serve no purpose.

IV

For these reasons,

IT IS ORDERED:

The motions to alter the stay, ECF Nos. 87, 88, and 92, are DENIED.  The stay remains in place and will expire at the end of the day on January 5, 2015.

SO ORDERED on November 5, 2014.

s/Robert L. Hinkle_____
United States District Judge