# APPENDIX C

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

_____

Nos. 14-14061-AA,
14-14066-AA

_____

| JAMES BRENNER, *et al.*, | SLOAN GRIMSLEY, *et al.*, |
|---|---|
| *Appellees,* | *Appellees,* |
| v. | v. |
| SEC'Y, FLA. DEP'T OF HEALTH, *et al.* | SEC'Y, FLA. DEP'T OF HEALTH and SEC'Y, FLA. DEP'T OF MGMT. SERVS., |
| *Appellants.* | *Appellants.* |

_____

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA

_____

### JOINT INITIAL BRIEF OF ALL APPELLANTS

PAMELA JO BONDI
ATTORNEY GENERAL

JAMES J. GOODMAN, JR.                ALLEN WINSOR
JEFF GOODMAN, P.A.                        *Solicitor General*
946 Main Street                              ADAM S. TANENBAUM
Chipley, Florida 32428                      *Chief Deputy Solicitor General*
Phone: (850) 638-9722
Fax: (850) 638-9724                       OFFICE OF THE ATTORNEY GENERAL
office@jeffgoodmanlaw.com         The Capitol – PL01
*Counsel for the Clerk of Court*       Tallahassee, FL 32399-1050
                                                      Phone: (850) 414-3688
                                                      Fax: (850) 410-2672
                                                      allen.winsor@myfloridalegal.com
                                                      adam.tanenbaum@myfloridalegal.com
                                                      *Counsel for the Secretaries*

**Appeal Nos. 14-14061-AA, 14-14066-AA**

*Brenner v. Sec'y, Fla. Dep't of Health*
*Grimsley v. Sec'y Dep't of Health*

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Appellants Secretary of the Florida Department of Health, Secretary of the Florida Department of Management Services, and Clerk of the Court of Washington County, Florida, pursuant to 11th Cir. R. 26.1-1, certify that the following is a list of those who have an interest in the outcome of this case and/or appeal:

American Civil Liberties Union of Florida, Inc., The

American Civil Liberties Union Foundation, Inc.

American Civil Liberties Union Foundation of Florida, Inc., The

Albu, Joyce

Andrade, Carlos

Armstrong, Dr. John H.

Ausley & McMullen, P.A.

Bazzell, Harold

Bledsoe, Schmidt & Wilkinson, P.A.

Bondi, Pamela Jo

Brenner, James Domer

Collier, Bob

*Brenner v. Sec'y, Fla. Dep't of Health*
*Grimsley v. Sec'y, Fla. Dep't of Health*
*Appeal Nos. 14-14061-AA, 14-14066-AA*

Cooper, Leslie

Crampton, Stephen M.

Del Hierro, Juan

DeMaggio, Bryan E.

Emmanuel, Stephen C.

Fitzgerald, John

Florida Conference of Catholic Bishops, Inc.

Florida Family Action, Inc.

Gantt, Thomas, Jr.

Goldberg, Arlene

Goldwasser, Carol (deceased)

Goodman, James J., Jr.

Graessle, Jonathan W.

Grimsley, Sloan

Hankin, Eric

Hinkle, Hon. Robert L.

Hueso, Denise

Humlie, Sarah

Hunziker, Chuck

*Brenner v. Sec'y, Fla. Dep't of Health*
*Grimsley v. Sec'y, Fla. Dep't of Health*
*Appeal Nos. 14-14061-AA, 14-14066-AA*

Jacobson, Samuel

Jacobson Wright & Sussman, P.A.

Jones, Charles Dean

Kachergus, Matthew R.

Kayanan, Maria

Liberty Counsel, Inc.

Liberty Counsel Action, Inc.

Loupo, Robert

Mihet, Horatio G.

Milstein, Richard

Myers, Lindsay

Newson, Sandra

Nichols, Craig J.

Podhurst Orseck, P.A.

Rosenthal, Stephen F.

Russ, Ozzie

Save Foundation, Inc.

Schlairet, Stephen

Scott, Rick

*Brenner v. Sec'y, Fla. Dep't of Health*
*Grimsley v. Sec'y, Fla. Dep't of Health*
*Appeal Nos. 14-14061-AA, 14-14066-AA*

Sevier, Chris

Sheppard, White, Kachergus and DeMaggio, P.A.

Sheppard, William J.

Stampelos, Hon. Charles A.

Staver, Anita L.

Staver, Mathew D.

Stevenson, Benjamin James

Tanenbaum, Adam S.

Tilley, Daniel B.

Ulvert, Christian

White, Elizabeth L.

Winsor, Allen C.

## STATEMENT REGARDING ORAL ARGUMENT

This case presents a constitutional challenge to Florida's marriage laws. Because of the importance of this issue, the appellants respectfully request oral argument.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
DISCLOSURE STATEMENT ...........................................................C-1

STATEMENT REGARDING ORAL ARGUMENT ............................... i

TABLE OF CITATIONS ...................................................... iv

STATEMENT OF SUBJECT-MATTER AND APPELLATE
JURISDICTION..............................................................x

STATEMENT OF THE ISSUE.............................................1

STATEMENT OF THE CASE..............................................2

SUMMARY OF THE ARGUMENT ....................................................7

ARGUMENT ....................................................................9

I.    The District Court's Order Is Inconsistent with Principles of
      Federalism..............................................................10

      A.    States Have Nearly Exclusive Authority to Define and
            Regulate Marriage. ..............................................11

      B.    *Loving v. Virginia* Does Not Undermine States' Authority
            to Define Marriage as a Union Between One Man and One
            Woman. ..........................................................13

      C.    *Baker v. Nelson* Remains Binding Precedent......................15

II.   Even Putting Aside Federalism and *Baker v. Nelson*, Florida's
      Marriage Laws Do Not Violate the Fourteenth Amendment........................21

      A.    Florida's Marriage Laws Do Not Violate the Fundamental
            Right to Marry. ..................................................22

      B.    Florida's Marriage Laws Do Not Otherwise Require
            Heightened Scrutiny..............................................27

      C.    Florida's Long-Standing, Traditional Definition of
            Marriage Satisfies the Rational Basis Standard. ..................27

# TABLE OF CONTENTS – *cont'd*

**Contents**                                                          **Page(s)**

III.   The Plaintiffs' Remaining Constitutional Claims Cannot
       Succeed. ........................................................................................33

    A.   Florida's Marriage Laws Do Not Impair the Right to
       Travel..........................................................................................33

    B.   Florida's Marriage Laws Do Not Violate the
       Establishment Clause. ................................................................34

    C.   Florida's Marriage Laws Do Not Interfere with a
       Fundamental Right to Intimate Association........................................35

IV.   The Plaintiffs Cannot Satisfy the Preliminary Injunction Factors. ...............36

CONCLUSION ..........................................................................................38

CERTIFICATE OF COMPLIANCE.......................................................39

CERTIFICATE OF SERVICE ...............................................................40

# TABLE OF CITATIONS

## Cases

\* *Agostni v. Felton*,
  521 U.S. 203, 117 S. Ct. 1997 (1997) .................................................. 18, 19

*Alden v. Maine*,
  527 U.S. 706, 119 S. Ct. 2240 (1999) ..........................................................11

*Am. Civil Liberties Union of Fla., Inc. v. Miami-Dade Cnty. Sch. Bd.*,
  557 F.3d 1177 (11th Cir. 2009) ...............................................................6, 36

\* *Baker v. Nelson*,
  191 N.W.2d 185 (Minn. 1971) ....................................................... 15, 16, 30

\* *Baker v. Nelson*,
  409 U.S. 810, 93 S. Ct. 37 (1972) ...................................................... *passim*

*Bishop v. Smith*,
  760 F.3d 1070 (10th Cir. 2014) ....................................................................24

*Bond v. United States*,
  131 S. Ct. 2355 (2011)...................................................................................11

*Bostic v. Schaefer*,
  760 F.3d 352 (4th Cir. 2014) ................................................................ 24, 25

*Church of Scientology Flag Serv. Org., Inc. v. City of Clearwater*,
  2 F.3d 1514 (11th Cir. 1993) .......................................................................35

\* *Citizens for Equal Prot. v. Bruning*,
  455 F.3d 859 (8th Cir. 2006) ......................................................... 26, 28, 31

*Collins v. City of Harker Heights, Tex.*,
  503 U.S. 115, 112 S. Ct. 1061 (1992) .........................................................23

\* *Conde-Vidal v. Garcia-Padilla*,
  Case No. 14-cv-1253, -- F. Supp. 3d --,
  2014 WL 5361987 (D.P.R. Oct. 21, 2014)...................................... 19, 21, 26

*Coogler v. Rogers*,
  7 So. 391 (Fla. 1889) .......................................................................... 10, 29

iv

## TABLE OF CITATIONS – *cont'd*

*Dean v. District of Columbia*,
   653 A.2d 307 (D.C. 1995) ...........................................................30

\* *DeBoer v. Snyder*,
   -- F.3d --, 2014 WL 5748990 (6th Cir. Nov. 6, 2014) ......................... *passim*

\* *Doe v. Moore*,
   410 F.3d 1337 (11th Cir. 2005) ..................................... 22, 27, 28

*FCC v. Beach Commc'ns, Inc.*,
   508 U.S. 307, 113 S. Ct. 2096 (1993) ..........................................28

*Forsyth Cnty. v. U.S. Army Corps of Eng'rs*,
   633 F.3d 1032 (11th Cir. 2011) ...................................................6

*Haddock v. Haddock*,
   201 U.S. 562, 26 S. Ct. 525 (1906) ............................................11

*Haitian Refugee Ctr., Inc. v. Baker*,
   953 F.2d 1498 (11th Cir. 1992) ....................................................6

*Heller v. Doe*,
   509 U.S. 312, 113 S. Ct. 2637 (1993) ..........................................28

*Hicklin v. Orbeck*,
   437 U.S. 518, 98 S. Ct. 2482 (1978) ............................................34

*Hicks v. Miranda*,
   422 U.S. 332, 95 S. Ct. 2281 (1975) ..................................... 17, 18

*Hollingsworth v. Perry*,
   133 S. Ct. 2652 (2013)...............................................................9

*In re Burrus*,
   136 U.S. 586, 10 S. Ct. 850 (1890) ............................................11

*In re Marriage of J.B. and H.B.*,
   326 S.W.3d 654 (Tex. App. 2010) ..............................................30

*Jackson v. Abercrombie*,
   884 F. Supp. 2d 1065 (D. Haw. 2012)..................................... 17, 30

## TABLE OF CITATIONS – *cont'd*

*Lackey v. Texas*,
    514 U.S. 1045, 115 S. Ct. 1421 (1995) ......................................................21

*Lawrence v. Texas*,
    539 U.S. 558, 123 S. Ct. 2472 (2003) ...................................... 19, 20, 29, 35

*Lemon v. Kurtzman*,
    403 U.S. 602, 91 S. Ct. 2105 (1971) ......................................................35

\* *Lofton v. Sec'y, Fla. Dep't of Children & Family Servs.*,
    358 F.3d 804 (11th Cir. 2004) ............................................... *passim*

*Loving v. Virginia*,
    388 U.S. 1, 87 S. Ct. 1817 (1967) ...................................... *passim*

*Mandel v. Bradley*,
    432 U.S. 173, 97 S. Ct. 2238 (1977) ......................................................16

*Maryland v. King*,
    133 S. Ct. 1 (2012)......................................................36

*McGowan v. Maryland*,
    366 U.S. 420, 81 S. Ct. 1101 (1961) ......................................................35

*Massachusetts v. HHS*,
    682 F.3d 1 (1st Cir. 2012).....................................................17

*McConnell v. Nooner*,
    547 F.2d 54 (8th Cir. 1976) .....................................................17

*McCray v. New York*,
    461 U.S. 961, 103 S. Ct. 2438 (1983) ......................................................21

*Michael M. v. Superior Court*,
    450 U.S. 464, 101 S. Ct. 1200 (1981) ......................................................32

*Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville*,
    896 F.2d 1283 (11th Cir. 1990)..................................................37

*New Motor Vehicle Bd. of Calif. v. Orrin W. Fox Co.*,
    434 U.S. 1345, 98 S. Ct. 359 (1977) ......................................................36

## TABLE OF CITATIONS – *cont'd*

*Palmore v. Sidoti*,
    466 U.S. 429, 104 S. Ct. 1879 (1984) ................................................ 14, 15

*Pennoyer v. Neff*,
    95 U.S. (5 Otto) 714 (1877)..........................................................................12

*Powell v. Barrett*,
    541 F.3d 1298 (11th Cir. 2008) ....................................................................21

*Reno v. Flores*,
    507 U.S. 292, 113 S. Ct. 1439 (1993) ..........................................................23

\*  *Robicheaux v. Caldwell*,
    2 F. Supp. 3d 910 (E.D. La. 2014)............................................ 25, 26, 29, 30

\*  *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*,
    490 U.S. 477, 109 S. Ct. 1917 (1989) ..........................................................18

*Romer v. Evans*,
    517 U.S. 620, 116 S. Ct. 1620 (1996) ............................................ 12, 20, 28

*Saenz v. Roe*,
    526 U.S. 489, 119 S. Ct. 1518 (1999) .................................................. 33, 34

*Schuette v Coal. to Defend Affirmative Action*,
    134 S. Ct. 1623 (2014).................................................................................32

*Sevcik v. Sandoval*,
    911 F. Supp. 2d 996 (D. Nev. 2012) .................................................... 17, 30

*Shahar v. Bowers*,
    114 F.3d 1097 (11th Cir. 1997) ....................................................................35

*Singer v. Hara*,
    522 P.2d 1187 (Wash. Ct. App. 1974) .........................................................30

\*  *Sosna v. Iowa*,
    419 U.S. 393, 95 S. Ct. 553 (1975) ...................................................... 12, 15

*Standhardt v. Superior Court*,
    77 P.3d 451 (Ariz. Ct. App. 2003) ...............................................................30

# TABLE OF CITATIONS – *cont'd*

*Turner v. Safely*,
    482 U.S. 78, 107 S. Ct. 2254 (1987) ...........................................................25

*United States v. Carver*,
    260 U.S. 482, 43 S. Ct. 181 (1923) ............................................................21

*United States v. O'Brien*,
    391 U.S. 367, 88 S. Ct. 1673 (1968) .........................................................32

\* *United States v. Windsor*,
    133 S. Ct. 2675 (2013).......................................................... *passim*

*Vance v. Bradley*,
    440 U.S. 93, 99 S. Ct. 939 (1979) ..............................................................31

\* *Washington v. Glucksberg*,
    521 U.S. 702, 117 S. Ct. 2258 (1997) .................................................. 22, 23

\* *Williams v. Attorney Gen. of Ala.*,
    378 F.3d 1232 (11th Cir. 2004) ........................................................... 20, 26

*Wilson v. Ake*,
    354 F. Supp. 2d 1298 (M.D. Fla. 2005) ....................................................18

*Winter v. Natural Res. Def. Council, Inc.*,
    555 U.S. 7, 129 S. Ct. 365 (2008) ..............................................................36

*Zablocki v. Redhail*,
    434 U.S. 374, 98 S. Ct. 673 (1978) ...........................................................25

*Zobel v. Williams*,
    457 U.S. 55, 102 S. Ct. 2309 (1982) ..........................................................34

## Statutes

§ 741.04, Fla. Stat. ......................................................................................4, 10

§ 741.212, Fla. Stat. ....................................................................................4, 10

28 U.S.C. § 1257 ..............................................................................................16

28 U.S.C. § 1292 ................................................................................................x

## TABLE OF CITATIONS – *cont'd*

28 U.S.C. § 1331 ............................................................................................x

28 U.S.C. § 1343 ............................................................................................x

Pub. L. No. 100-352 .....................................................................................16

**Constitutional Provisions**

Art. I, § 27, Fla. Const. ................................................................................4

U.S. Const. amend. XIV .................................................................. *passim*

**Other Authorities**

Fla. Dep't of State, Div. of Elections,
   http://election.dos.state.fl.us/initiatives/
   initdetail.asp?account=41550&seqnum=1 ...................................10

Jurisdictional Statement of Appellants, *Baker v. Nelson*, No. 71-1027 (U.S.
   Feb. 11, 1971) ......................................................................... 15, 16

## STATEMENT OF SUBJECT-MATTER
## AND APPELLATE JURISDICTION

This is a consolidated interlocutory appeal from preliminary injunction orders in two cases. The United States District Court for the Northern District of Florida entered the injunctions on August 21, 2014. (DE-cv107 74; DE-cv138 23).[1] That court had original jurisdiction because the case raises federal questions. *See* 28 U.S.C. § 1331; *see also* 28 U.S.C. § 1343(a). The appellants timely filed notices of appeal in both cases on September 4, 2014. (DE-cv107 77; DE-cv138 25). This Court has jurisdiction because the orders on appeal granted injunctions. *See* 28 U.S.C. § 1292(a).

---

[1] Docket entries in the *Brenner* case (Case No. 14-cv-107) are cited as "DE-cv107 X at Y," and entries in the *Grimsley* case (Case No. 14-cv-138) are cited as "DE-cv138 X at Y." "X" refers to the docket entry number, and "Y" refers to the page of that entry when appropriate.

## STATEMENT OF THE ISSUE

Whether the district court abused its discretion in preliminarily enjoining enforcement of Florida's marriage laws based on that court's conclusion that the Fourteenth Amendment to the United States Constitution requires States to allow same-sex marriage.

## STATEMENT OF THE CASE

These consolidated appeals raise the question whether the Fourteenth Amendment to the United States Constitution bars the State of Florida from defining marriage as a legal union between one man and one woman.

### Course of Proceedings, Trial Court Disposition, and Statement of the Facts

Two sets of plaintiffs filed two separate actions, both challenging Florida's marriage laws. Both sets sued the same four Florida officials—the Governor, the Attorney General, the Secretary of the Florida Department of Health (the "Health Secretary"), and the Secretary of the Florida Department of Management Services (the "DMS Secretary"). The *Brenner* plaintiffs (Case No. 4:14-cv-107) also sued the Clerk of the Court for Washington County, Florida (the "Clerk"), who is responsible for issuing marriage licenses in the county where two plaintiffs reside. The district court consolidated the two cases. (DE-cv107 34 at 2; DE-cv138 at 2).

The *Brenner* plaintiffs are four men: James Brenner, Charles Jones, Stephen Schlairet, and Ozzie Russ. (DE-cv107 10 at 1-2). Brenner and Jones, both State employees, married in Canada in 2009. (DE-cv107 10 at 2-3). When enrolling in the State's employee deferred retirement program, Brenner could not designate Jones as a joint annuitant because Florida law does not treat the two as married. (DE-cv107 10 at 3). Ordinarily, an employee may designate his spouse as a joint annuitant, who would receive certain benefits upon the employee's death. (DE-

cv107 10 at 3). The DMS Secretary administers the State's employee retirement and pension programs and its employee health insurance plan. (DE-cv107 10 at 6; DE-cv138 16 at 9).

Schlairet and Russ have been in a relationship since 1999. (DE-cv107 10 at 4). They registered as domestic partners in Fort Lauderdale in 2001 and held a public commitment ceremony. (DE-cv107 10 at 4). When they sought a marriage license from the Clerk earlier this year, the Clerk refused because Florida's marriage laws preclude issuance of such a license to same-sex couples. (DE-cv107 10 at 4-5).

The second set of plaintiffs—the *Grimsley* plaintiffs—include Sloan Grimsley, her same-sex partner Joyce Albu, fifteen other individuals, and Save Foundation, Inc., an advocacy group. (DE-cv138 16 at 1, 4-8). All of the *Grimsley* individual plaintiffs entered same-sex marriages in other jurisdictions. (DE-cv138 16 at 1). Several are current or former State employees who want to designate their partners to receive state retirement, pension, or health insurance benefits. (DE-cv138 16 at 4-6, 9; DE-cv107 42 at 11).

One of the *Grimsley* plaintiffs, Arlene Goldberg, married Carol Goldwasser in New York in 2011. (DE-cv138 16 at 7). Ms. Goldwasser died in Florida in 2014. (DE-cv138 16 at 7). Her death certificate listed "Never Married" for marital status, and "None" for spouse. (DE-cv138 16 at 8). Ms. Goldberg wanted the death

certificate amended to reflect her marriage to Ms. Goldwasser. (DE-cv138 16 at 8). The Health Secretary is responsible for creating forms for certifications of death in Florida and for maintaining those certifications as vital records once they have been completed and submitted. (DE-cv138 16 at 9).

Both suits challenged article I, section 27, of the Florida Constitution, and section 741.212, Florida Statutes, which define marriage as the legal union of one man and one woman and preclude recognition of other types of unions. (DE-cv107 10 at 7-8; DE-cv138 16 at 1-2). The *Brenner* complaint also challenged section 741.04(1), which precludes issuance of a marriage license to same-sex couples. (DE-cv107 10 at 7-8).

Both sets of plaintiffs moved for preliminary injunctions, (DE-cv107 11, 42), and the defendants moved to dismiss, (DE-cv107 49, 50). The district court dismissed the Governor and the Attorney General as defendants in both cases, but it otherwise denied the motions to dismiss. (DE-cv107 74 at 30; DE-cv138 23 at 30).

The district court granted the plaintiffs' motions for preliminary injunction. (DE-cv107 74 at 31; DE-cv138 23 at 31) (the "Order"). After concluding that Florida's marriage laws implicate a fundamental right to marry and could not survive strict scrutiny analysis, the district court determined that the plaintiffs were likely to prevail on the merits. (Order at 3, 27). The court enjoined the Health

Secretary and the DMS Secretary from enforcing Florida's marriage provisions. (Order at 31). The injunctions also required the Health Secretary to "issue a corrected death certificate for Carol Goldwasser showing that at the time of her death she was married to Arlene Goldberg." (Order at 31). Finally, the district court ordered the Clerk of Court to issue a marriage license to Schlairet and Russ. (Order at 32).

The district court temporarily stayed the injunctions pending the outcome of petitions for certiorari filed with the United States Supreme Court regarding appeals in the Fourth and Tenth Circuits, "and for an additional 90 days [thereafter] to allow the defendants to seek a longer stay from this court or a stay from the Eleventh Circuit or Supreme Court." (Order at 29).[2] On October 6, the United States Supreme Court denied those petitions, so the district court's stay is currently scheduled to end on January 5, 2015. (DE-cv107 95 at 1).[3]

The district court entered a separate, but identical, preliminary injunction order in each of the two consolidated cases. (DE-cv107 74 at 30; DE-cv138 23 at 30). All appellants timely appealed. (DE-cv107 77; DE-cv138 25). This Court consolidated the two appeals.

---

[2] The district court did not stay the portion of the order requiring an amended death certificate. (Order at 29).

[3] By a separate motion to be filed shortly, the defendants will ask this Court to stay the Order pending resolution of this appeal. The district court recently denied that relief. (DE-cv107 95).

**Standard of Review**

This Court reviews a district court's entry of a preliminary injunction for an abuse of discretion, but it reviews *de novo* the legal conclusions on which it turns. *Am. Civil Liberties Union of Fla., Inc. v. Miami-Dade Cnty. Sch. Bd.*, 557 F.3d 1177, 1198 (11th Cir. 2009). Therefore, even on review of a preliminary injunction, this Court "will review and correct [] error without deference to [the trial] court's determination." *Haitian Refugee Ctr., Inc. v. Baker*, 953 F.2d 1498, 1505 (11th Cir. 1992); *see also Forsyth Cnty. v. U.S. Army Corps of Eng'rs*, 633 F.3d 1032, 1039 (11th Cir. 2011) (district court abuses its discretion if it applies incorrect legal standard).

## SUMMARY OF THE ARGUMENT

Florida has long defined marriage as the union of one man and one woman. In 2008, voters amended the Florida Constitution to reaffirm that policy. The United States Constitution does not prohibit Florida or its voters from making that choice, and the district court's contrary conclusion was wrong.

As the Supreme Court has recognized, States have the virtually exclusive authority to define and regulate marriage. Consistent with that authority, States may choose to allow same-sex marriage, as several States have. But States may also choose to maintain a traditional definition of marriage, as several other States have. Principles of federalism leave the choice to the States.

The United States Supreme Court's decision in *Baker v. Nelson* is consistent with these principles. In *Baker*, the plaintiffs claimed the Fourteenth Amendment required States to allow same-sex marriage, the same claim the plaintiffs present here. The Supreme Court's summary dismissal was a decision on the merits that rejected those claims, and it is binding on this Court. None of the more recent Supreme Court cases undermine *Baker*, much less overrule it. In fact, the Supreme Court's most recent decision regarding same-sex marriage, *United States v. Windsor*, is fully consistent with the principle that federalism allows States to define marriage.

No fundamental right is at issue here because same-sex marriage is not deeply rooted in this Nation's history and tradition. The decisions recognizing marriage as a fundamental right, including *Loving v. Virginia*, all turned on the historical understanding of marriage as the union of a man and a woman.

Because no fundamental right is at issue, and because there is no other basis for applying heightened scrutiny, only rational basis applies. Florida's laws satisfy this deferential standard. Florida's laws therefore do not violate the Due Process and Equal Protection Clauses of the Fourteenth Amendment. Nor do they violate the right to travel, the Establishment Clause, or a right to intimate association.

This Court should reverse.

## ARGUMENT

"The public is currently engaged in an active political debate over whether same-sex couples should be allowed to marry." *Hollingsworth v. Perry*, 133 S. Ct. 2652, 2659 (2013). Many people understandably have strong feelings about the issue, and the debate—with "good people on all sides," *United States v. Windsor*, 133 S. Ct. 2675, 2710 (2013) (Scalia, J., dissenting)—has generated plenty of passion. It has also generated political change. Since 2003, when same-sex marriage first appeared in the United States, a number of States have amended their laws through the democratic process to recognize those marriages. *See id.* at 2689 (majority opinion); *see also id.* at 2715 (Alito, J., dissenting) (tracing relatively recent chronology of same-sex marriage recognition). Florida has not. The issue in this case is whether this Court should short-circuit the political process, remove voters from the policy determinations, and hold that the United States Constitution mandates how States must define marriage.

As it has in other contexts, this Court should "exercise great caution when asked to take sides in an ongoing public policy debate," and it should leave Florida's important policy determination to Florida's citizens. *Lofton v. Sec'y, Fla. Dep't of Children & Family Servs.*, 358 F.3d 804, 827 (11th Cir. 2004). Recently, Florida's voters engaged in "a statewide deliberative process that enabled [them] to discuss and weigh arguments for and against same-sex marriage." *Windsor*, 133 S.

Ct. at 2689. Millions of them voted on the matter in 2008, and a majority decided to re-affirm Florida's long-standing definition of marriage as the union of one man and one woman,[4] a definition long existing in Florida, *see, e.g., Coogler v. Rogers*, 7 So. 391, 393 (Fla. 1889), and specifically codified by the Legislature, *see* §§ 741.212, § 741.04(1), Fla. Stat.

This case is not about which policy choice is better. It is about whether the voters (and their elected officials) get to decide. As the political debate continues, Florida's voters may one day decide differently. They may not. But in the meantime, this Court should allow the political process to continue; it should protect the voters' right to decide. Because the United States Constitution permits the choice Florida's voters made, this Court should reverse.

## I.   THE DISTRICT COURT'S ORDER IS INCONSISTENT WITH PRINCIPLES OF FEDERALISM.

The Supreme Court has repeatedly recognized that the definition, regulation, and recognition of marriage have been the "virtually exclusive province of the States." *Windsor*, 133 S. Ct. at 2691. This federal deference is consistent with principles of federalism and was necessarily central to *Baker v. Nelson*, which decades ago rejected the claim that the Fourteenth Amendment requires States to allow same-sex marriage. *See* 409 U.S. 810, 93 S. Ct. 37 (1972).

---

[4]     *See*   Fla.   Dep't   of   State,   Div.   of   Elections, http://election.dos.state.fl.us/initiatives/initdetail.asp?account=41550&seqnum=1 (last visited November 14, 2014).

### A.   States Have Nearly Exclusive Authority to Define and Regulate Marriage.

Under our system of federalism, States are "residuary sovereigns and joint participants in the governance of the Nation." *Alden v. Maine*, 527 U.S. 706, 748, 119 S. Ct. 2240, 2263 (1999). "The federal system rests on what might at first seem a counterintuitive insight, that 'freedom is enhanced by the creation of two governments, not one.'" *Bond v. United States*, 131 S. Ct. 2355, 2364 (2011) (quoting *Alden*, 527 U.S. at 758, 119 S. Ct. at 2268). But when they "split[] the atom of sovereignty," *Alden*, 527 U.S. at 751, 119 S. Ct. at 2265 (internal quotation and citation omitted), the Founders indeed "did so to *enhance* liberty, not to allow the National Government to *divest* liberty protections granted by the States," *DeBoer v. Snyder*, Case No. 14-1341, -- F.3d --, 2014 WL 5748990, at *19 (6th Cir. Nov. 6, 2014).

One of the spheres of power reserved to the States is domestic relations, including the definition of marriage. "[A]t the time of the adoption of the Constitution, [the States] possessed full power over the subject of marriage and divorce," and "the Constitution delegated no authority to the government of the United States on the subject." *Haddock v. Haddock*, 201 U.S. 562, 575, 26 S. Ct. 525, 529 (1906); *see also In re Burrus*, 136 U.S. 586, 593-94, 10 S. Ct. 850, 853 (1890) ("The whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the states, and not to the laws of the United

States."). States therefore had the "absolute right to prescribe the conditions upon which the marriage relation between its own citizens shall be created, and the causes for which it may be dissolved." *Pennoyer v. Neff*, 95 U.S. (5 Otto) 714, 734-35 (1877). More recently, the Supreme Court reiterated and reaffirmed this idea: Regulation of marriage and other areas of domestic relations have "long been regarded as a virtually exclusive province of the States." *Sosna v. Iowa*, 419 U.S. 393, 404, 95 S. Ct. 553, 559 (1975).

Even in *United States v. Windsor*, on which the district court and plaintiffs heavily rely, the Supreme Court recognized that "[b]y history and tradition the definition and regulation of marriage . . . has been treated as being within the authority and realm of the separate States." 133 S. Ct. at 2689-90; *see also id.* at 2691 ("The recognition of civil marriages is central to state domestic relations law applicable to its residents and citizens," and "[t]he definition of marriage is the foundation of the State's broader authority to regulate the subject of domestic relations . . . ."). In fact, it was precisely because the federal Defense of Marriage Act "depart[ed] from this history and tradition of reliance on state law to define marriage" that it suggested a "discrimination[] of an unusual character" warranting invalidation. *Id.* at 2692 (majority opinion) (quoting *Romer v. Evans*, 517 U.S. 620, 633, 116 S. Ct. 1620, 1628 (1996)); *cf. id.* at 2697 (Roberts, C.J., dissenting) ("The dominant theme of the majority opinion is that the Federal Government's intrusion

into an area 'central to state domestic relations law applicable to its residents and citizens' is sufficiently 'unusual' to set off alarm bells . . . . [I]t is undeniable that its judgment is based on federalism."); *DeBoer*, 2014 WL 5748990, at *6 ("*Windsor* hinges on the Defense of Marriage Act's unprecedented intrusion into the States' authority over domestic relations.").

Rather than recognize the history of federal deference to States in areas of marital relations, the district court suggested that any such deference ended with *Loving v. Virginia*, 388 U.S. 1, 87 S. Ct. 1817 (1967). (Order at 15-16). But the district court misunderstood the holding of *Loving*, an important case that rightly ended bans on interracial marriage, but which said nothing about how States *define* marriage. *See DeBoer*, 2014 WL 5748990, at *16 ("*Loving* addressed, and rightly corrected, an unconstitutional eligibility requirement for marriage; it did not create a new definition of marriage.").

### B.    *Loving v. Virginia* Does Not Undermine States' Authority to Define Marriage as a Union Between One Man and One Woman.

At the time of *Loving*, "marriage between a man and a woman no doubt [was] thought of . . . as essential to the very definition of that term." *Windsor*, 133 S. Ct. at 2689; *see also DeBoer*, 2014 WL 5748990, at *16 ("In referring to 'marriage' rather than 'opposite-sex marriage,' *Loving* confirmed only that 'opposite-sex marriage' would have been considered redundant, not that marriage included same-sex couples."). The issue in *Loving* was not whether to change that

13

definition; the issue was whether Virginia could "proscribe generally accepted conduct if engaged in by members of different races." *Loving*, 388 U.S. at 11, 87 S. Ct. at 1823. The Court correctly held that Virginia could not. But not because the parties in *Loving* had a federal constitutional right to marry anyone at all—it was because "restricting the freedom to marry solely because of racial classifications violates the central meaning of the Equal Protection Clause." *Id.* at 12, 87 S. Ct. at 1823. Indeed, the Virginia laws violated "[t]he clear and central purpose of the Fourteenth Amendment," which "was to eliminate all official state sources of invidious racial discrimination in the States." *Id.* at 10, 87 S. Ct. at 1823.

In *Palmore v. Sidoti*, like in *Loving* before it, "the Constitution's commitment to eradicating discrimination based on race" justified the Supreme Court's intervention in a State's domestic relations province. 466 U.S. 429, 432, 104 S. Ct. 1879, 1881 (1984). *Palmore* involved a state court judgment "divesting a natural mother of the custody of her infant child because of her remarriage to a person of a different race." *Id.* at 430, 104 S. Ct. at 1880. Reiterating that the "core purpose of the Fourteenth Amendment was to do away with all governmentally imposed discrimination based on race," *id.* at 432, 104 S. Ct. at 1881-82 (note omitted), the Supreme Court reversed a state court custody determination because of the unjustified racial classification that resulted in "removing an infant child from the custody of its natural mother." *Id.* at 434, 104 S. Ct. at 1882-83. Noting

that "a child custody decision is not ordinarily a likely candidate for review by this Court," the case nevertheless "raise[d] important federal concerns arising from the Constitution's commitment to eradicating discrimination based on race." *Id.* at 431-32, 104 S. Ct. at 1881.

When *Windsor* explained that a State's marriage laws "must respect the constitutional rights of persons," 133 S. Ct. at 2691 (citing *Loving*), it did so in the context of noting that marriage remains the "virtually exclusive province of the States," *id.* (quoting *Sosna*, 419 U.S. at 404, 95 S. Ct. at 559). Just as the holding in *Palmore* did not give federal courts wide latitude to intrude into child custody disputes, the holding in *Loving* does nothing to undermine State's authority to define marriage as the union of one man and one woman.

### C.    *Baker v. Nelson* Remains Binding Precedent.

Only five years after *Loving*, the Supreme Court unanimously dismissed, "for want of a substantial federal question," an appeal from the Minnesota Supreme Court presenting precisely the issue here—whether a State's decision not to allow same-sex marriage violated due process or equal protection under the Fourteenth Amendment. *Baker v. Nelson*, 409 U.S. 810, 93 S. Ct. 37 (1972); Jurisdictional Statement of Appellants at 3, *Baker v. Nelson*, No. 71-1027 (U.S. Feb. 11, 1971); *Baker v. Nelson*, 191 N.W.2d 185, 185-87 (Minn. 1971).

In *Baker*, two men were unable to marry because Minnesota law defined marriage as being between a man and a woman. Jurisdictional Statement of Appellants at 3-4, *Baker v. Nelson*, No. 71-1027 (U.S. Feb. 11, 1971); *Baker*, 191 N.W.2d at 185. The Minnesota Supreme Court held that the law did not violate federal due process or equal protection, *Baker*, 191 N.W.2d at 186-87, and the plaintiffs asked the United States Supreme Court to reverse. On direct appeal, the Supreme Court summarily dismissed. *See Baker v. Nelson*, 409 U.S. 810, 93 S. Ct. 37 (1972).[5] That decision was one on the merits, "without doubt reject[ing] the specific challenges presented in the statement of jurisdiction," and "prevent[ing] lower courts from coming to opposite conclusions on the precise issues presented." *Mandel v. Bradley*, 432 U.S. 173, 176, 97 S. Ct. 2238, 2240 (1977).

*Baker*'s determination is fully consistent with the Supreme Court's earlier pronouncements regarding the States' authority in domestic relations. Coming just five years after *Loving*, it also highlights the unique exception that the Supreme Court carved out to eliminate racial discrimination in a State's domestic relations laws, consistent with the central purpose of the Fourteenth Amendment. *Cf. Baker*, 191 N.W.2d at 187 ("[I]n commonsense and in a constitutional sense, there is a

---

[5] The dismissal was of a mandatory appeal brought pursuant to a former provision of 28 U.S.C. § 1257. That particular provision was repealed in 1988. *See* Pub. L. No. 100-352.

clear distinction between a marital restriction based merely upon race and one based upon the fundamental difference in sex.").

*Baker* remains binding for federal courts "until such time as the [Supreme] Court informs them that [it is] not." *Hicks v. Miranda*, 422 U.S. 332, 344-45, 95 S. Ct. 2281, 2289 (1975) (quotations, brackets, and citation omitted). Until *Windsor*, numerous federal courts recognized that *Baker* continued to control on the issue it presented. *See, e.g.*, *Massachusetts. v. HHS*, 682 F.3d 1, 8 (1st Cir. 2012) (stating that *Baker v. Nelson* forecloses arguments that "presume or rest on a constitutional right to same-sex marriage"); *McConnell v. Nooner*, 547 F.2d 54, 55-56 (8th Cir. 1976) (recognizing that *Baker v. Nelson* "is binding on the lower federal courts" regarding absence of federal right to same-sex marriage); *Sevcik v. Sandoval*, 911 F. Supp. 2d 996, 1002-03 (D. Nev. 2012) (concluding that *Baker v. Nelson* precludes equal protection challenge to "a state's refusal to recognize same-sex marriage"), *rev'd sub nom. Latta v. Otter*, -- F.3d --, 2014 WL 4977682 (9th Cir. Oct. 7, 2014); *Jackson v. Abercrombie*, 884 F. Supp. 2d 1065, 1088 (D. Haw. 2012) (noting that *Baker* "is the last word from the Supreme Court" that "state law limiting marriage to opposite-sex couples" does not violate the Equal Protection Clause and "remains binding on this Court"), *vacated as moot*, -- F. App'x --, 2014 WL 5088199 (9th Cir. Oct. 10, 2014); *Wilson v. Ake*, 354 F. Supp. 2d 1298, 1304-

05 (M.D. Fla. 2005) (noting that "*Baker v. Nelson* is binding precedent upon this Court" regarding Fourteenth Amendment challenge to Florida's marriage law).

Some recent federal court decisions, however, have found *Baker v. Nelson* no longer binding because of "doctrinal developments." To be sure, the Supreme Court explained that "inferior federal courts had best adhere to the view that if the Court has branded a question as unsubstantial, it remains so *except when doctrinal developments indicate otherwise*." *Hicks*, 422 U.S. at 344, 95 S. Ct. at 2289 (quotations and citation omitted; emphasis supplied). But the "doctrinal developments" exception is necessarily a narrow one. After *Hicks*, the Supreme Court stated without qualification that "[i]f a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, [lower courts] should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions." *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484, 109 S. Ct. 1917, 1921-22 (1989).

In this case, the district court concluded in a single sentence "that the intervening doctrinal developments—as set out in *Lawrence*, *Romer*, and *Windsor*—have sapped *Baker*'s precedential force." (Order at 25). But this runs contrary to the Supreme Court's instruction that lower courts not "conclude [that] more recent [Supreme Court] cases have, *by implication*, overruled an earlier precedent." *Agostni v. Felton*, 521 U.S. 203, 237, 117 S. Ct. 1997, 2017 (1997)

18

(emphasis supplied); *accord id.* at 208-09, 237-38, 117 S. Ct. at 2003, 2017 (explaining that lower court correctly recognized that binding earlier Court precedent had to be followed, even if it could not "be squared" with later Court jurisprudence in area, "unless and until this Court reinterpreted the binding precedent"). It also runs contrary to recent federal court decisions recognizing *Baker*'s continued vitality. *See DeBoer*, 2014 WL 5748990, at *5 ("[W]e have no license to engage in a guessing game about whether the Court will change its mind or, more aggressively, to assume authority to overrule *Baker* ourselves."); *Conde-Vidal v. Garcia-Padilla*, Case No. 14-cv-1253, -- F. Supp. 3d  --, 2014 WL 5361987, at *6 (D.P.R. Oct. 21, 2014) (following *Baker v. Nelson* as still-binding authority). More importantly, in concluding that *Romer v. Evans* and *Lawrence v. Texas* signaled the end of *Baker*, the district court disregarded this Court's statements about those decisions' limited effects.

The issue in *Lawrence v. Texas* was whether state laws criminalizing homosexual conduct violated the federal constitution. 539 U.S. 558, 563-64, 123 S. Ct. 2472, 2476 (2003). This Court recognized that decision's narrow reach, explaining that "[t]he [Supreme] Court itself stressed the limited factual situation it was addressing in *Lawrence*." *Lofton*, 358 F.3d at 815-17, 826-27. The Court then quoted *Lawrence*'s acknowledgment that the case "does not involve whether the government must give formal recognition to any relationship that homosexual

persons seek to enter." *Id.* at 817 (quoting *Lawrence*, 539 U.S. at 578, 123 S. Ct. at 2484). And although this Court later noted that the Supreme Court "may in due course expand *Lawrence*'s precedent," it recognized that for this Court "preemptively to take that step would exceed [its] mandate as a lower court." *Williams v. Attorney Gen. of Ala.*, 378 F.3d 1232, 1238 (11th Cir. 2004).

This Court has also declined to expand *Romer v. Evans*'s narrow holding. In *Romer*, the Supreme Court invalidated a State constitutional amendment that repealed and barred protections against sexual-orientation discrimination. The "rare" law represented "discrimination[] of an unusual character." 517 U.S. at 633, 116 S. Ct. at 1628 (internal quotation and citation omitted). This Court later held that *Romer* presented a "unique factual situation and narrow holding" that did not guide this Court on the question of whether states could restrict adoption rights of homosexuals. *Lofton*, 358 F.3d at 826-27. That "narrow holding" did not overrule *Baker*. Indeed, "neither *Lawrence* nor *Romer* mentions *Baker*, and neither is inconsistent with its outcome." *DeBoer*, 2014 WL 5748990, at *16.

That leaves *Windsor*. But *Windsor* no more overruled *Baker* than did *Lawrence* or *Romer*. It dealt with a *federal* law defining marriage, repeatedly discussed the virtually exclusive province of states to define marriage, and never even mentioned *Baker*. "*Windsor* invalidated a federal law that refused to respect state laws permitting gay marriage, while *Baker* upheld the right of the people of a

State to define marriage as they see it. To respect one decision does not slight the other." *DeBoer*, 2014 WL 5748990, at *6; *accord Conde-Vidal*, 2014 WL 5361987, at *8 (court cannot "interpret *Windsor*'s endorsement of the state control of marriage as eliminating state control of marriage."). In fact, *Windsor* only reaffirmed the principle underlying *Baker*—that definitions of marriage are left to the States.[6]

## II. EVEN PUTTING ASIDE FEDERALISM AND *BAKER V. NELSON*, FLORIDA'S MARRIAGE LAWS DO NOT VIOLATE THE FOURTEENTH AMENDMENT.

Because *Baker* controls, this Court need look no further. But even without *Baker* or the principles of federalism that support it, the district court's decision was wrong.

---

[6] The United States Supreme Court's recent orders denying certiorari in several cases that rejected *Baker* do not change this. "For at least eight decades the Supreme Court has instructed [courts], time and again, over and over, that the denial of certiorari does not in any way or to any extent reflect or imply any view on the merits." *Powell v. Barrett*, 541 F.3d 1298, 1312 n.5 (11th Cir. 2008) (en banc); *accord United States v. Carver*, 260 U.S. 482, 490, 43 S. Ct. 181, 182 (1923) (denial of certiorari "imports no expression of opinion upon the merits of the case, as the bar has been told many times"). Rather than signal the end of the issue, "[o]ften, a denial of certiorari on a novel issue will permit the state and federal courts to 'serve as laboratories in which the issue receives further study before it is addressed by [the Supreme] Court.'" *Lackey v. Texas*, 514 U.S. 1045, 1045, 115 S. Ct. 1421, 1422 (1995) (Stevens, J., respecting denial of certiorari petition) (quoting *McCray v. New York*, 461 U.S. 961, 963, 103 S. Ct. 2438, 2439 (1983)).

A.   **Florida's Marriage Laws Do Not Violate the Fundamental Right to Marry.**

Relying again on *Loving*, the district court found a fundamental right to same-sex marriage protected by the Fourteenth Amendment. (Order at 3). The court then applied strict scrutiny and held Florida's marriage laws unconstitutional. (Order at 3). This was error.

The Due Process Clause includes a substantive component that "provides heightened protection against government interference with certain fundamental rights and liberty interests"—but only "those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition. . . and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Washington v. Glucksberg*, 521 U.S. 702, 720-21, 117 S. Ct. 2258, 2267-68 (1997) (internal quotations and citations omitted); *accord Doe v. Moore*, 410 F.3d 1337, 1342-43 (11th Cir. 2005). Having not appeared in the United States until 2003, *see Windsor*, 133 S. Ct. at 2715 (Alito, J., dissenting), same-sex marriage is not objectively or deeply rooted in this Nation's history. Therefore, rather than protect an existing fundamental right, the plaintiffs seek to establish a new one.

The creation of a new fundamental right is no easy task. The Supreme Court and this Court have been "very reluctant to expand substantive due process by recognizing new fundamental rights." *Moore*, 410 F.3d at 1343; *accord Lofton*,

22

358 F.3d at 816 (discussing reluctance to find new right). Judicial caution in this area is important not only because "guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended," *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 125, 112 S. Ct. 1061, 1068 (1992), but also because of the separation of powers. "By extending constitutional protection to an asserted right or liberty interest, [courts], to a great extent, place the matter outside the arena of public debate and legislative action." *Glucksberg*, 521 U.S. at 720, 117 S. Ct. at 2267-68. And without great caution, too much could be removed from the arena of public debate and decided instead by "the policy preferences of the Members of [the] Court." *Id.* at 720, 117 S. Ct. at 2268.

Consistent with this judicial reluctance to expand fundamental rights, courts require that parties asserting fundamental rights must provide a "careful description of the asserted right." *Reno v. Flores*, 507 U.S. 292, 302, 113 S. Ct. 1439, 1447 (1993); *accord Glucksberg*, 521 U.S. at 721, 117 S. Ct. at 2268. Then, "to rein in the subjective elements that are necessarily present in due-process judicial review," the court must carefully examine that carefully described right and rest its substantive due process analysis on "concrete examples involving fundamental rights found to be deeply rooted in our legal tradition." *Glucksberg*, 521 U.S. at 722, 117 S. Ct. at 2268.

The district court exhibited no such reluctance to expand fundamental rights. Rather than carefully describing the right actually asserted by the plaintiffs as the right to marry someone of the same sex, the district court viewed marriage as any union between any two people, as though same-sex marriage were a necessary component of marriage as historically defined. The court made no effort to identify what the term "marriage" was understood to mean when used in cases discussing the "fundamental right to marry." Instead, it only addressed what the "appropriate level of generality" should be for describing that right, ultimately settling on the right "to choose one's spouse." (Order at 19-20).

The district court effectively engaged in what one circuit judge labeled "dictionary jurisprudence, which defines terms as convenient to attain an end." *See Bostic v. Schaefer*, 760 F.3d 352, 386, 391 (4th Cir.), *cert. denied sub nom. Rainey v. Bostic*, 135 S. Ct. 286 (2014) (Niemeyer, J., dissenting) ("This analysis is fundamentally flawed because it fails to take into account that the 'marriage' that has long been recognized by the Supreme Court as a fundamental right is distinct from the newly proposed relationship of a 'same-sex marriage.'"); *cf. Bishop v. Smith*, 760 F.3d 1070, 1113 (10th Cir.), *cert. denied*, 135 S. Ct. 271 (2014) (Kelly, J., concurring in part and dissenting in part) ("Removing gender complementarity from the historical definition of marriage is simply contrary to the careful analysis prescribed by the Supreme Court when it comes to substantive due process.").

24

The district court looked to three cases—*Loving*, *Zablocki v. Redhail*,[7] and *Turner v. Safely*[8]—to justify the level of generality at which it considered the asserted right. By the district court's analysis, the Supreme Court did not look to whether the right asserted was one "to interracial marriage or debtor marriage or prisoner marriage," only to the right "to choose one's own spouse . . . regardless of whom the individual chooses to marry." (Order at 20). But those cases do not guarantee the right to marry "by everyone and to anyone," *Bostic*, 760 F.3d at 386 (Niemeyer, J., dissenting) or "to everyone without limitation," *Robicheaux v. Caldwell*, 2 F. Supp. 3d 910, 922 n.13 (E.D. La. 2014).

Those cases did not examine whether "interracial marriage or debtor marriage or prisoner marriage" was deeply rooted in the Nation's history or tradition, because they did not have to. "While the context for asserting the right varied in each of those cases, it varied only in ways irrelevant to the concept of marriage. The type of relationship sought was always the traditional, man-woman relationship to which the term 'marriage' was theretofore always assumed to refer." *Bostic*, 760 F.3d at 390-91 (Niemeyer, J., dissenting); *accord DeBoer*, 2014 WL 5748990, at *17 ("When *Loving* and its progeny used the word marriage, they did not redefine the term but accepted its traditional meaning.").

---

[7] 434 U.S. 374, 98 S. Ct. 673 (1978).

[8] 482 U.S. 78, 107 S. Ct. 2254 (1987).

Another problem with the district court's approach to the asserted right is that it provides no endpoint. If the district court were correct that at issue is the right to choose any spouse, (Order at 20), then numerous other restrictions on that right—age restrictions to name just one—would be at risk under strict scrutiny. *Cf. Citizens for Equal Prot. v. Bruning*, 455 F.3d 859, 867 (8th Cir. 2006) (states can legitimately impose age restrictions and other reasonable restrictions on those eligible to marry); *see also Robicheaux*, 2 F. Supp. 3d at 922 n.13 (noting that the fundamental rights argument would cut against other State restrictions on marriages); *Conde-Vidal*, 2014 WL 5361987, at *10 (same). The district court's rule provides no limiting principle.

On the other hand, "[o]ne of the virtues of the democratic process is that, unlike the judicial process, it need not take matters to their logical conclusion." *Williams*, 378 F.3d at 1250. Therefore, other States that have allowed same-sex marriage through their lawmaking processes have not had to adopt the broad rule that the district court adopts; they have not had to open the door to other types of challenges. The line-drawing problems the district court's determination presents are among the reasons this Court should leave Florida's definition of marriage to Florida's citizens.

Undoubtedly, to many people (and several States), the definition of marriage is changing. "But that does not transform the fundamental-rights decision of

*Loving* under the old definition into a constitutional right under the new definition." *DeBoer*, 2014 WL 5748990, at \*17.  Instead, it remains that the only fundamental right to marry "deeply rooted in this Nation's history and tradition" is the traditionally understood one—the union of one man and one woman. Therefore, Florida's laws do not infringe on any fundamental right.

### B.   Florida's Marriage Laws Do Not Otherwise Require Heightened Scrutiny.

There is no other basis for subjecting Florida's marriage laws to heightened scrutiny. This Court has expressly rejected the recognition of "a new fundamental right to private sexual intimacy" stemming from sexual orientation. *See Lofton*, 358 F.3d at 815-16, 818. This Court also rejected application of any heightened scrutiny to classifications based on sexual orientation. *See id.* at 817-18. And Florida's marriage laws do not discriminate on the basis of sex because they apply equally to men and women. Absent implication of a fundamental right or a suspect classification, a statute's constitutionality under the Fourteenth Amendment must be analyzed under the highly deferential rational basis standard. *See id.* at 818; *Moore*, 410 F.3d at 1345, 1346. Florida's laws satisfy that deferential standard.

### C.   Florida's Long-Standing, Traditional Definition of Marriage Satisfies the Rational Basis Standard.

Rational-basis review is not about "the wisdom, fairness, or logic of legislative choices." *FCC v. Beach Commc'ns, Inc.,* 508 U.S. 307, 313, 113 S. Ct.

2096, 2101 (1993). It turns on the presumption that "even improvident decisions will eventually be rectified by the democratic process and that judicial intervention is generally unwarranted no matter how unwisely we may think a political branch has acted." *Id.* at 314 (quotation and citation omitted). The question is simply whether the challenged legislation is rationally related to a legitimate state interest. *See Heller v. Doe,* 509 U.S. 312, 320, 113 S. Ct. 2637, 2642 (1993).

Under this deferential standard, a legislative classification "is accorded a strong presumption of validity," *id.* at 319, 113 S. Ct. at 2642, and it must be upheld if there is any "conceivable basis which might support it," *id.* at 320, 113 S. Ct. at 2643 (internal quotation and citation omitted). This holds true "even if the law seems unwise or works to the disadvantage of a particular group, or if the rationale for it seems tenuous." *Romer*, 517 U.S. at 632, 116 S. Ct. at 1627. Furthermore, legislative choices "may be based on rational speculation unsupported by evidence or empirical data," and "it is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature." *Beach Commc'ns*, 508 U.S. at 315, 113 S. Ct. at 2102.

Because the analysis is so deferential, "[a]lmost every statute subject to [this] standard is found to be constitutional." *Moore*, 410 F.3d at 1346-47 (quotation and citation omitted); *cf. Bruning*, 455 F.3d at 867 (noting that because

"the institution of marriage has always been, in our federal system, the predominant concern of state government . . . rational-basis review must be particularly deferential").

Florida has an unbroken history of defining marriage as being between a man and woman. *See, e.g., Coogler v. Rogers*, 7 So. 391, 393 (Fla. 1889) (defining marriage as "a contract . . . by a man and woman, reciprocally engaging to live [as] husband and wife"). No one can argue credibly that the States' historical treatment of marriage universally—and since the Nation's founding—has been irrational. In turn, a State's effort to preserve the institution of marriage in its traditional form— a form that prevails in many States today—also is not irrational. *See Lawrence*, 539 U.S. at 585, 123 S. Ct. at 2487-88 (O'Connor, J., concurring) (treating "preserving the traditional institution of marriage" as a "legitimate state interest"); *see also DeBoer*, 2014 WL 5748990, at *9 ("A dose of humility makes us hesitant to condemn as unconstitutionally irrational a view of marriage shared not long ago by every society in the world, shared by most, if not all, of our ancestors, and shared still today by a significant number of the States."); *Robicheaux*, 2 F. Supp. 3d at 920 ("The Court is persuaded that a meaning of what is marriage that has endured in history for thousands of years, and prevails in a majority of states today, is not universally irrational on the constitutional grid.").

Moreover, it is rational for Florida to consider the experience of other states before deciding whether to change the definition of marriage. As the Sixth Circuit concluded, "a State might wish to wait and see before changing a norm that our society (like all others) has accepted for centuries." *DeBoer*, 2014 WL 5748990, at *11. This is consistent with the principle of federalism that "permits laboratories of experimentation . . . allowing one State to innovate one way, another State another, and a third State to assess the trial and error over time." *Id.*

Numerous courts have found rational bases for traditional marriage laws like Florida's. *See, e.g.*, *Robicheaux*, 2 F. Supp. 3d at 919-20 (finding state law that defined and recognized marriage only in terms of opposite-sex couples furthered "legitimate state interest in safeguarding that fundamental social change . . . is better cultivated through democratic consensus"); *DeBoer*, 2014 WL 5748990, at *9-13; *Sevcik*, 911 F. Supp. 2d at 1014-17; *Jackson,* 884 F. Supp. 2d at 1106-18 & n.36; *In re Marriage of J.B. and H.B.*, 326 S.W.3d 654, 677-78 (Tex. App. 2010); *Standhardt v. Superior Court*, 77 P.3d 451, 461-65 (Ariz. Ct. App. 2003); *Singer v. Hara*, 522 P.2d 1187, 1197 (Wash. Ct. App. 1974); *Baker*, 191 N.W.2d at 187; *see also generally Dean v. District of Columbia*, 653 A.2d 307, 331-33 (D.C. 1995) (refusing to find new right to strike down traditional marriage law). In order for this Court to find invalidate Florida's marriage laws, it first would have to conclude that the identified bases in all of these cited cases were completely

irrational. There is a conceivable rational basis for Florida to define marriage as it has.

Florida's decision to preclude recognition of same-sex marriages entered into in other States is likewise rational. "[A] State does not behave irrationally by insisting upon its own definition of marriage rather than deferring to the definition adopted by another State." *DeBoer*, 2014 WL 5748990, at *24. The State's ability to decide whether to recognize—or not recognize—out-of-state marriages preserves the State's authority to define marriage in the first place. *Id.* It serves the additional purpose of "discourag[ing] evasion of the State's marriage laws by allowing individuals to go to another State, marry there, then return home." *Id.*

Regarding Florida's decision to limit certain benefits to traditional married couples, there is another critical point. "The package of government benefits and restrictions that accompany the institution of formal marriage serve a variety of other purposes. The legislature—or the people through the initiative process—may rationally choose not to expand in wholesale fashion the groups entitled to those benefits." *Bruning*, 455 F.3d at 868; *accord Vance v. Bradley*, 440 U.S. 93, 109, 99 S. Ct. 939, 948 (1979) (accepting "imperfection" of package of benefits afforded a class of employees because it was "rationally related to the secondary objective of legislative convenience").

The legitimate justifications for Florida's laws undermine any argument that they were motivated purely by animus. Although the plaintiffs pursued an animus theory below, they offered nothing beyond the isolated comments of a few individuals; they did not demonstrate that those comments reflected the motivations of the Legislature that passed the statutes or the millions of Floridians who voted for the constitutional amendment. As Justice Kennedy, writing for three justices earlier this year, explained: "It is demeaning to the democratic process to presume that the voters are not capable of deciding an issue of this sensitivity on decent and rational grounds." *Schuette v Coal. to Defend Affirmative Action*, 134 S. Ct. 1623, 1637 (2014) (plurality).

Regardless, it "is a familiar practice of constitutional law that this court will not strike down an otherwise constitutional statute on the basis of an alleged illicit legislative motive.'" *Michael M. v. Superior Court*, 450 U.S. 464, 472, 101 S. Ct. 1200, 1205 n.7 (1981) (quoting *United States v. O'Brien*, 391 U.S. 367, 383, 88 S. Ct. 1673, 1682 (1968)); *see also Lofton*, 358 F.3d at 820 ("[I]t is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature. Instead, the question before us is [what] the Florida legislature *could* have reasonably believed . . . .") (internal citation and quotations omitted).

32

It has been, and continues to be, rational for Florida to maintain the traditional version of marriage. Florida's marriage laws therefore do not violate due process or equal protection guarantees.

## III.  THE PLAINTIFFS' REMAINING CONSTITUTIONAL CLAIMS CANNOT SUCCEED.

The *Brenner* plaintiffs presented additional constitutional claims that the district court did not address. None of these additional claims provides any basis to invalidate Florida's laws.

### A.    Florida's Marriage Laws Do Not Impair the Right to Travel.

The *Brenner* plaintiffs asserted that Florida's marriage provisions violated their right to interstate travel. (DE-cv107 10 at 13-14). The constitutional "right to travel" actually protects three distinct rights: (1) "the right of a citizen of one State to enter and to leave another State"; (2) "the right to be treated as a welcome visitor rather than an unfriendly alien when temporarily present in the second State"; and (3) for a traveler electing to become a permanent resident of another State, "the right to be treated like other citizens of that State." *Saenz v. Roe*, 526 U.S. 489, 500, 119 S. Ct. 1518, 1525 (1999).

The first species of the right to travel addresses the right to move physically from State to State. *See id.* at 500-01, 119 S. Ct. at 1525. The plaintiffs are residents, not travelers, rendering this first component inapplicable. The second species of right rests with a citizen from one State who travels temporarily into

another State. *See id.* at 501-02, 119 S. Ct. at 1525-26. A State cannot treat nonresidents differently from its own citizens, based solely on their state citizenship. *See Hicklin v. Orbeck*, 437 U.S. 518, 523-25, 98 S. Ct. 2482, 2486-87 (1978). Again, the plaintiffs are Florida residents, not visitors, so this component is inapplicable. That leaves the third aspect of the right to travel, which the Supreme Court characterized as "the right of the newly arrived citizen to the same privileges and immunities enjoyed by other citizens of the same State." *Saenz*, 526 U.S. at 502, 119 S. Ct. at 1526. This right "embraces the citizen's right to be treated equally in her new State of residence . . . ." *Id.* at 505, 119 S. Ct. at 1527. A State's law cannot distinguish between new residents and old residents to favor the latter. *See Zobel v. Williams*, 457 U.S. 55, 65, 102 S. Ct. 2309, 2315 (1982). The challenged laws make no distinction between or among citizens of Florida based upon the length of their residency in Florida, so this component is likewise inapplicable.

### B.    Florida's Marriage Laws Do Not Violate the Establishment Clause.

The *Brenner* plaintiffs also claimed that Florida's marriage laws violated the Establishment Clause. (DE-cv107 10 at 14-15). Whether the Establishment Clause is implicated depends on whether a law (1) has a secular legislative purpose; (2) has as its primary effect to advance or inhibit religion; or (3) fosters an excessive entanglement with religion. *See Lemon v. Kurtzman*, 403 U.S. 602, 612, 91 S. Ct.

2105, 2111 (1971). Having a religious purpose alone is not enough to invalidate a law. *Church of Scientology Flag Serv. Org., Inc. v. City of Clearwater*, 2 F.3d 1514, 1527 (11th Cir. 1993). Rather, a statute violates the Establishment Clause "only if it does not have a clearly secular purpose." *Id.* (internal quotations and emphasis omitted).

Nor does a law violate the Establishment Clause just because it coincides with the tenets of a dominant religion. *See McGowan v. Maryland*, 366 U.S. 420, 442, 81 S. Ct. 1101, 1113-14 (1961) (upholding Sunday closing law). There are ample non-religious justifications for Florida's traditional definition of marriage, so the Establishment Clause claim cannot succeed.

## C. Florida's Marriage Laws Do Not Interfere with a Fundamental Right to Intimate Association.

Finally, the *Brenner* plaintiffs claimed that Florida's marriage laws interfere with their right of intimate association. (DE-cv107 10 at 13). In *Lofton*, this Court addressed and rejected the conversion of a negative, private right of intimate association—free from criminal prosecution or some other state-sanctioned punitive measure (discussed in *Lawrence v. Texas*)—into an "affirmative right to receive official and public recognition." *Lofton*, 358 F.3d at 817; *cf. Shahar v. Bowers*, 114 F.3d 1097, 1099 (11th Cir. 1997) (en banc) (expressing "considerable doubt" about existence of "federal right [of woman] to be 'married' to another

woman" as part of "right of intimate association"). The plaintiffs cannot prevail on an intimate association claim.

## IV. THE PLAINTIFFS CANNOT SATISFY THE PRELIMINARY INJUNCTION FACTORS.

To obtain a preliminary injunction, plaintiffs must show a likelihood of success on the merits, irreparable harm, a balance of equities in their favor, and that an injunction serves the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20, 129 S. Ct. 365, 374 (2008). "Failure to show any of the four factors is fatal, and the most common failure is not showing a substantial likelihood of success on the merits." *Am. Civil Liberties Union of Fla., Inc.*, 557 F.3d at 1198. For the reasons above, the plaintiffs cannot show a likelihood of success on the merits. But they also cannot bear their burden on the other factors.

The plaintiffs cannot demonstrate any immediacy to their claims; they allege no harm that cannot await the outcome of the case. On the other hand, an injunction against democratically enacted legislation prohibits the State from implementing the will of Florida's voters. *See Maryland v. King*, 133 S. Ct. 1, 2 (2012) (Roberts, C.J., in chambers); *New Motor Vehicle Bd. of Calif. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351, 98 S. Ct. 359, 363 (1977) (Rehnquist, J., in chambers) ("[A]ny time a State is enjoined by a Court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury."); *cf. also Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of*

*Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990) ("[P]reliminary injunctions of legislative enactments—because they interfere with the democratic process and lack the safeguards against abuse or error that come with a full trial on the merits— must be granted reluctantly . . . ."). Neither the balance of equities nor the public interest supports the district court's decision.

## CONCLUSION

Through its democratic process, Florida has chosen to maintain the historical definition of marriage. Because this choice did not violate the United States Constitution, this Court should reverse the orders on appeal.

Respectfully submitted:

PAMELA JO BONDI
ATTORNEY GENERAL

/s/ James J. Goodman, Jr.
JAMES J. GOODMAN, JR. (FBN 71877)
**JEFF GOODMAN, P.A.**
946 Main Street
Chipley, Florida 32428
Phone: (850) 638-9722
Fax: (850) 638-9724
office@jeffgoodmanlaw.com

*Counsel for Washington County Clerk of Court*

/s/ Adam S. Tanenbaum
ALLEN WINSOR (FBN 16295)
   *Solicitor General*
ADAM S. TANENBAUM (FBN 117498)
   *Chief Deputy Solicitor General*

**OFFICE OF THE
ATTORNEY GENERAL**
The Capitol – PL01
Tallahassee, FL 32399-1050
Phone: (850) 414-3688
Fax: (850) 410-2672
allen.winsor@myfloridalegal.com
adam.tanenbaum@myfloridalegal.com

*Counsel for the Secretary of the Florida Department of Health and for the Secretary of the Florida Department of Management Services*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations set forth in Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 8,712 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

This brief also complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2007 in 14-point Times New Roman.

*/s/ Adam S. Tanenbaum*
ADAM S. TANENBAUM
*Counsel for the Secretaries*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on this 14th day of November, 2014, a true copy of the foregoing brief was filed electronically with the Clerk of Court using the Court's CM/ECF system, which will send by e-mail a notice of docketing activity to the registered Attorney Filers listed on the attached electronic service list; and a true copy in paper form was served by first-class mail on the following unregistered counsel: Stephen C. Emmanuel, Ausley & Mcmullen, P.A., Post Office Box 391, Tallahassee, Florida 32302-0391, *Counsel for Amicus*.

*/s/ Adam S. Tanenbaum*
ADAM S. TANENBAUM
Florida Bar No. 117498

## ELECTRONIC SERVICE LIST (SERVICE BY NDA)

WILLIAM J. SHEPPARD
sheplaw@att.net
ELIZABETH L. WHITE
sheplaw@att.net
BRYAN E. DEMAGGIO
sheplaw@att.net
**SHEPPARD, WHITE &
KACHERGUS, P.A.**
215 Washington Street
Jacksonville, Florida 32202
*Counsel for Plaintiffs-Appellees
in Case No. 14-14061*

SAMUEL S. JACOBSON
sam@jacobsonwright.com
**BLEDSOE, JACOBSON, SCHMIDT,
WRIGHT** *et al.*
1301 Riverplace Boulevard, Suite 1818
Jacksonville, Florida 32207
*Counsel for Plaintiffs-Appellees
In Case No. 14-14061*

MARIA KAYANAN
mkayanan@aclufl.org
DANIEL B. TILLEY
dtilley@aclufl.org
**ACLU FOUNDATION OF
FLORIDA, INC.**
4500 Biscayne Blvd Ste 340
Miami, Florida 33137-3227
*Counsel for Plaintiffs-Appellees
in Case No. 14-14066*

STEPHEN F. ROSENTHAL
srosenthal@podhurst.com
**PODHURST ORSECK, P.A.**
25 West Flagler Street, Suite 800
Miami, Florida 33130
*Counsel for Plaintiffs-Appellees in Case
No. 14-14066*

HORATIO G. MIHET
hmihet@liberty.edu
**LIBERTY COUNSEL**
1055 Maitland Center Commons Floor 2
Maitland, Florida 32751-7214
*Counsel for Amicus*

41